1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Damon Kalt
(DC Bar No. 996078, *admitted pro hac vice*)
*dkalt@steptoe.com*
Andrew K. Magloughlin
(DC Bar No. 1780168, *admitted pro hac vice*)
*amagloughlin@steptoe.com*
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000; Fax: (202) 429-3902

Attorneys for Defendants
ACE BUSINESS SOLUTIONS LLC and
SANDRA BARNES

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STRATICS NETWORKS INC., et al.,<br><br>Defendants. | Case No.: 3:23-CV-00313-BAS-KSC<br><br>The Honorable Judge Cynthia Bashant<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES' MOTION TO DISMISS COMPLAINT**<br><br>Date: July 17, 2023<br>Ctrm: 1280<br><br>No Oral Argument Unless Ordered by the Court. |

1  Destinae Demery (CA Bar No. 335292)
2  *ddemery@steptoe.com*
   **STEPTOE & JOHNSON LLP**
3  633 West Fifth Street, Suite 1900
4  Los Angeles, California 90071
   Tel.: (213) 439-9400; Fax: (213) 439-9599
5
6  Attorneys for Defendants
   ACE BUSINESS SOLUTIONS LLC and
7  SANDRA BARNES
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO.: 3:23-CV-00313-BAS-KSC
DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Ace Business Solutions LLC ....................................................2

    B.    The Commission Conducted Virtually No Investigation of Ace..........3

    C.    Plaintiff's Allegations Regarding Ace ...................................4

LEGAL STANDARD.............................................................................................6

ARGUMENT ........................................................................................................6

I.    Plaintiff Fails to Allege that Ace Violated the TSR.................................7

    A.    The Complaint Fails to Allege that Ace is a "Telemarketer" ..............8

    B.    The Complaint Fails to Allege that Ace is a "Seller" ........................10

    C.    The Complaint Fails to Allege That Ace Received a Fee in Advance of Providing a "Debt Relief Service".................................12

        1.    Debt Validation Is Not Debt Relief Services Under the TSR ..12

        2.    Plaintiff Fails to Allege that Ace Represented that it Provided "Debt Relief Services" on Behalf of Provident .......................13

II.    Plaintiff's Vicarious Liability Theory Cannot Save Its Pleading Deficiencies .................................................................................14

    A.    Plaintiff's Attempt to Invert Vicarious Liability Fails......................15

    B.    TSR Case Law Does Not Support Plaintiff's Vicarious Liability Theory .................................................................................17

III.    The Complaint Contradicts the Commission's Business Guidance, TSR Commentary, and Enforcement Practices .........................................18

    A.    Plaintiff's Claim Contradicts the Commission's Own Interpretation of the TSR...........................................................................19

    B.    Plaintiff's Claim that Ace is a Seller Defies Past Commission Enforcement and Lacks Support in TSR Case Law.............................20

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    C.     Commission Guidance and Enforcement Precedent Should Inform Interpretation of the TSR ................................................................21

IV.   At a Minimum, Plaintiff's Claim for Civil Penalties Must Be Dismissed....23

V.    For-Cause Removal Protections for FTC Commissioners Make this Enforcement Action Unconstitutional............................................................24

VI.   CONCLUSION ............................................................................................25

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
  141 S. Ct. 1341 (2021) .......................................................................... 1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 6

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ............................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 6, 11, 24

*Bhd. Mut. Ins. Co. v. Vinkov*,
  No. EDCV 19-01821-CJC, 2020 WL 2735623
  (C.D. Cal. Mar. 23, 2020) .................................................................... 6

*CFPB v. Commonwealth Equity Group, LLC*,
  554 F. Supp. 3d 202 (D. Mass. 2021) .................................................. 8

*CFPB v. IrvineWebWorks, Inc.*,
  No. SACV 14-1967 JVS (ANx), 2016 WL 1056662
  (C.D. Cal. Feb. 5, 2016) ..................................................................... 17

*CFPB v. Morgan Drexen, Inc.*,
  60 F. Supp. 3d 1082 (C.D. Cal. 2014) ............................................... 17

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
  770 F. Supp. 2d 1074 (S.D. Cal. 2010) ......................................... 10, 11

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................................ 24

*FTC v. All US Marketing LLC*,
  No. 6:15-cv-1016-Orl-28KRS, 2017 WL 9398643
  (M.D. Fla. Apr. 13, 2017), *report and recommendation adopted*
  *FTC v. All US Mktg. LLC*, No. 6:15-cv-1016-Orl-28KRS, 2017
  WL 2256650 (M.D. Fla. May 22, 2017) ............................................ 8, 9

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*FTC v. Alliance Document Preparation*,
   296 F. Supp. 3d 1197 (C.D. Cal. 2017) ................................................................17

*FTC v. Am. Fin. Benefits Ctr.*,
   324 F. Supp. 3d 1067 (N.D. Cal. 2018) ................................................................17

*FTC v. Chapman*,
   714 F.3d 1211 (10th Cir. 2013) ..........................................................................21

*FTC v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611 (6th Cir. 2014) ...............................................................................18

*FTC v. Elegant Solutions, Inc.*, No. SACV 19-1333 JVS (KESx),
   2020 WL 4390381 (C.D. Cal. July 6, 2020), *aff'd* No. 20-55766,
   2022 WL 2072735 (9th Cir. June 9, 2022) .........................................................17

*FTC v. HES Merch. Servs. Co., Inc.*,
   No. 6:12-cv-1618-Orl-22KRS, 2014 WL 6863506 (M.D. Fla. Nov.
   18, 2014), *aff'd FTC v. HES Merch. Servs. Co., Inc.*, 652 F. App'x
   837 (11th Cir. 2016) ...........................................................................................21

*FTC v. Lake*,
   181 F. Supp. 3d 692 (C.D. Cal. 2016) ................................................................20

*FTC v. PSC Administrative, LLC*,
   No. 15-0084-WS-B, 2016 WL 3406113 (S.D. Ala. June 17, 2016) ...........13, 23

*FTC v. Walmart Inc.*,
   No. 22 CV 3372, 2023 WL 2646741 (N.D. Ill. Mar. 27, 2023) ............................1

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ..............................................................................................7

*Goffney v. Becerra*,
   995 F.3d 737 (9th Cir. 2021) ...............................................................................22

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) .....................................................................................24, 25

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010) ............................................................................................23

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019)................................................................21, 22

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ....................................................10, 11

*Meyer v. Holley*,
    537 U.S. 280 (2003)...........................................................................15

*Morrison v. Olson*,
    487 US 654 (1988) .............................................................................25

*Price v. Stevedoring Servs. of Am., Inc.*,
    697 F.3d 820 (9th Cir. 2012) ...........................................................22

*Saha v. George Washington Univ.*,
    577 F. Supp. 2d 439 (D.D.C. 2008), *aff'd*, 358 F. App'x 205
    (D.C. Cir. 2009) ................................................................................15

*Seila L. LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................................24, 25

*United States v. Corporations for Character, L.C.*,
    116 F. Supp. 3d 1258 (D. Utah 2015) ..............................................23

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ......................................................15, 23

*W. Va. v. EPA*,
    142 S. Ct. 2587 (2022).........................................................................1

*Worsham v. Discount Power, Inc.*,
    No. RDB-20-0008, 2021 WL 3212589 (D. Md. July 29, 2021),
    *aff'd*, No. 22-1942, 2023 WL 2570961
    (4th Cir. Mar. 20, 2023)...............................................................9, 10

**Statutes**

15 U.S.C. § 45(m)(1)(A)..........................................................................23

15 U.S.C. § 46.............................................................................................4

15 U.S.C. § 49.............................................................................................4

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

15 U.S.C. § 57b-1 ...................................................................................4

15 U.S.C. § 1692(e) .........................................................................12, 13

15 U.S.C § 1692g ....................................................................................12

Fair Debt Collection Practice Act .........................................................12

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 6

U.S. Const. art. II § 3 ........................................................................24, 25

**Other Authorities**

16 C.F.R. § 310.2(dd) (2015) ...........................................................8, 10\

16 C.F.R. § 310.2(ff) (2015) ....................................................................8

16 C.F.R. § 310.2(gg) (2015) .............................................................8, 10

16 C.F.R. § 310.2(o) (2015).................................................8, 12, 13, 14

16 C.F.R. § 310.3(b) (2015)...............................................................*passim*

16 C.F.R. § 310.4(a) (2015) .....................................................................7

16 C.F.R. § 310.4(a)(5)(i) (2015) ............................................................6

16 C.F.R. § 310.4(a)(5)(i)(A) (2015)...................................................7, 8

16 C.F.R. § 310.4(a)(5)(i)(B) (2015) ..................................................7, 8

16 C.F.R. § 310.6(b)(6) (2015) .............................................................16

68 Fed. Reg. 4580, 4611 (Jan. 29, 2003) .............................................16

Daniel A. Crane, *Debunking Humphrey's Executor*,
    83 Geo. Wash. L. Rev. 1853 (2015)...............................................25

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,
2   Defendants Ace Business Solutions LLC and Sandra Barnes (collectively, "Ace")
3   respectfully request that the Court dismiss Plaintiff United States of America's
4   Complaint. (Compl. (ECF No. 1).)  This Motion is made following the conferences
5   of counsel which took place on February 22, 2023, and April 10, 2023.

## INTRODUCTION

7   Plaintiff seeks to impermissibly expand the scope of the Telemarketing Sales
8   Rule ("TSR") to impose what amounts to strict liability on Ace for TSR violations
9   allegedly committed by other Defendants.  The Complaint stretches the law so far
10  that it ignores established guidance and enforcement precedent under the TSR.  This
11  case is yet another example of blatant government overreach.  *See AMG Cap.*
12  *Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1347-49 (2021); *FTC v. Walmart Inc.*, No. 22
13  CV 3372, 2023 WL 2646741 (N.D. Ill. Mar. 27, 2023); *cf. W. Va. v. EPA*, 142 S.
14  Ct. 2587, 2612-14 (2022).  This Court should reject Plaintiff's uncharted effort.

15  The Complaint alleges a far-reaching, unlawful scheme to bombard
16  consumers with tens of millions of "ringless voicemails" carried out by Defendants
17  Stratics Networks Inc. ("Stratics"); Netlatitude, Inc. ("Netlatitude"); Tek Ventures,
18  LLC (d/b/a Provident Solutions) ("Provident"); Atlas Marketing Partners, Inc. and
19  Atlas Ventures, LLC (collectively, "Atlas"); and Kasm (also d/b/a Kasm, Inc.).  A
20  scheme in which Ace took no part.  Despite Ace's lack of involvement in the alleged
21  scheme, Plaintiff shoehorned Ace into the Complaint by tacking on a single,
22  baseless claim.  By doing so, Plaintiff misapplies the TSR, stretches the paltry facts
23  alleged about Ace's connection with the telemarketing scheme, and contravenes the
24  Commission's own TSR guidance and enforcement precedent.

25  Plaintiff's sole claim against Ace alleges that Ace violated the "advance fees"
26  provision of the TSR by receiving fees from consumers before Ace "renegotiate[d],
27  settle[d], reduce[d], or otherwise alter[ed] the terms of at least one debt[.]"  (Compl.
28  ¶¶ 80-81, 144.)  But under that provision, Plaintiff must allege that Ace is a

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  "telemarketer" or "seller" that provides a "debt-relief service." The Complaint fails
2  to plausibly allege all three.

3        First, Ace is not a "telemarketer" because it did not "induce" purchases from
4  consumers.  Second, Ace is not a "seller" because it did not receive consideration
5  from consumers in exchange for its services.  Third, Ace did not provide debt relief
6  services because it never attempted to renegotiate the terms of consumers' debt.
7  And fourth, Ace cannot be vicariously liable under the TSR for the Atlas
8  Defendants' alleged marketing and sales pitch misrepresentations regarding their
9  debt relief program.  Context also colors Plaintiff's baseless claim—it contradicts
10 the Commission's own TSR debt relief guidance and enforcement precedent.  Both
11 show that "back-end" fulfillment and payment processing services only come in
12 under a "substantial assistance" liability theory.  In short, Plaintiff's departure from
13 past practice confirms that the Commission is stretching the definitions of "seller"
14 and "telemarketer" beyond their breaking points.

15       Further, Plaintiff slaps Ace with a civil penalty, but fails to plead any facts
16 showing that Ace knew or should have known that it violated the TSR.  And even
17 in a pretend world where Plaintiff had successfully pleaded all of the above, the
18 FTC commissioners' for-cause removal protections make their vote to sue Ace
19 unconstitutional.

20       Overall, Plaintiff stretches the TSR to oblivion, rewrites age-old tort
21 principles, and forgets its own guidance.  But it fails to state a claim, so this Court
22 should dismiss with prejudice.

23                                **BACKGROUND**
24 **A.    Ace Business Solutions LLC**
25       Ace, founded in 2008, provides "back-end" fulfillment services, among
26 other services, to businesses in the debt industry.  (Declaration of Sandra Barnes
27 ("Barnes Decl.") ¶ 1.)  In 2019, Ace agreed to provide fulfillment services to Mr.
28 Peterson and Mr. DiRoberto's debt services company (eventually known as

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Provident). (*Id.* ¶ 6.) The main functions Ace provided for Provident's customers were as follows. Ace used its proprietary software to input consumer information into debt validation form letters provided by Provident. The form letter was written as if it was coming from the consumer, not Ace or even Provident. Ace then sent those letters—by email, fax or occasionally direct mail—to creditors or debt collectors of Provident's customers. Ace did not communicate with those creditors or debt collectors. Lastly, Ace processed customer Automated Clearing House (ACH) payments on behalf of Provident. Like most payment processing companies, Ace transferred the customer payments to Provident after deducting the modest flat fees Ace was owed for its fulfillment services to Provident. (*Id.* ¶ 7.)

## B. The Commission Conducted Virtually No Investigation of Ace

Plaintiff appears to have hastily tacked on to the end of the Complaint its baseless claim against Ace, as Ace is barely mentioned in the Complaint's voluminous allegations against Defendants involved in the "ringless voicemail" scheme. Perhaps that is because the Commission never thoroughly investigated Ace. The Commission first informed Ace of its ringless voicemail investigation on February 16, 2022, when it sent Ace a document preservation notice. (Barnes Decl. ¶ 2; Declaration of Damon Kalt ("Kalt Decl.") ¶ 5, Exh. D, Document Preservation Notice.) That notice directed Ace to preserve all records in its possession, custody, or control related to Atlas. (*Id.*) But importantly, the Commission's notice did not state that Ace was a target of the investigation. (*Id.*) And in subsequent telephone conversations about the preservation notice, Commission staff told Ace and its counsel that Ace was not a target of the investigation. (Barnes Decl. ¶ 3.)

Thereafter, Ace had no further contact with Commission Staff for over four months. (*Id.* ¶ 4.) Ace never received a voluntary request for information (which is standard procedure in Commission investigations), let alone a civil investigative

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

demand.[1]  (*Id.* ¶ 5.)  In short, Commission staff failed to investigate Ace's role—or lack thereof—in the "ringless voicemail" scheme.  On information and belief, Commission staff conducted thorough investigations of the Atlas Defendants, including investigative hearings of the entities' principals, who also are named defendants.  (*Id.* ¶ 8.)

Nonetheless, on June 23, 2022, Commission staff sent Ace their draft complaint that accused Ace of violating the TSR.  In later correspondence, Commission staff made clear that they were disinterested in Ace's defenses because they determined unequivocally that Ace violated the TSR.  The Commission's disdain towards Ace became apparent in December 2022 when—contrary to Commission procedure—two Commissioners, including the Chair, refused to meet with Ace to allow Mrs. Barnes to present her and Ace's defense.  (*Id.* ¶ 9.)

## C.    Plaintiff's Allegations Regarding Ace

The Complaint claims numerous TSR violations against multiple defendants related to an alleged unlawful scheme to "bombard[] consumers with tens of millions of 'ringless voicemails.'"  (Compl. ¶ 3.)  According to the Complaint, Defendants Stratics and Netlatitude "provided and implemented" the ringless voicemail technology, (*id.* ¶ 2), which enabled Atlas to initiate millions of ringless voicemails marketing their debt relief services.  (*Id.* ¶¶ 59-61.)  Many of the voicemails allegedly offered to "'resolve [the consumer's] credit card debt in 24 months with affordable repayment options.'"  (*Id.* ¶¶ 66, 70-72.)  When consumers called Atlas in response to its ringless voicemails, Atlas's live telemarketers answered their calls.  (*Id.* ¶ 71.)  Atlas's telemarketers allegedly:

- interviewed "interested consumers about their credit card debt to determine how much they could afford to pay for debt relief services each month,"

---

[1]Pursuant to 15 U.S.C. §§ 46, 49, and 57b-1, the Commission has authority to issue various forms of compulsory process, including document demands, request for interrogatories, depositions, and other discovery methods.

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

- registered "consumers for the debt relief program," and
- instructed "consumers to provide their personal information, such as bank account and routing numbers, so that [Atlas] could collect payment from consumers for the debt relief service."

(*Id.* ¶ 74.)  Atlas told consumers who signed up for services that the seller was Provident Solutions.  (*Id.* ¶ 73.)  Atlas's telemarketers often told consumers that some of their monthly payments would pay their debts.  (*Id.* ¶ 76.)

After Atlas's telemarketers registered consumers for its debt relief program, they transferred those consumers (or called them later) for "quality control calls" conducted by Ace employees.  (*Id.* ¶ 75.)  Atlas subcontracted its debt validation letter writing and payment processing services to Ace, a Nevada LLC owned and directed by Mrs. Sandra Barnes (*Id.* ¶¶ 16-17; Kalt Decl. ¶ 2, Exh. A § 1.3, Service Agreement.)  Once Atlas transferred a registered consumer to Ace, Ace would conduct a quality control call that "verified the consumer's banking information, payment amount, and draft date."  (Compl. ¶ 75; Kalt Decl. ¶ 3, Exh. B, Quality Control Call Script.)  During the quality control calls, Ace further asked consumers to "affirm that they understood the monthly payments were for [Atlas'] fees only." (Compl. ¶ 77; Kalt Decl., Exh. B.)

The Complaint further alleges that after completing quality control calls, Ace would send "a series of debt validation letters … to consumers' creditors challenging the validity of the consumers' debt."  (Compl. ¶ 79.)  According to the Complaint, Ace requested and received monthly bank withdrawals from consumers approximately 30 days after the consumers enrolled in the Atlas Defendants' debt program, regardless of whether Ace had sent any debt validation letters.  (*Id.* ¶ 80.)  Once Ace processed consumers' payments, it distributed them to Atlas, after deducting the much smaller, fixed fees that Atlas owed Ace for its provision of fulfilment and payment processing services to Atlas.  (*Id.*; Kalt Decl., Exh. A.)

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

For this alleged conduct, the Complaint claims that Ace violated 16 C.F.R. § 310.4(a)(5)(i) (2015) by "request[ing]or receiv[ing] payment of a fee or consideration for a debt relief service before: (a) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (b) the consumer has made at least one payment pursuant to that agreement." (Compl. ¶ 144.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal [under Fed. R. Civ. P. 12(b)(6)] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Bhd. Mut. Ins. Co. v. Vinkov*, No. EDCV 19-01821-CJC (SPx), 2020 WL 2735623, at *4 (C.D. Cal. Mar. 23, 2020). When resolving a motion to dismiss, a court accepts the allegations in the complaint as true, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

## ARGUMENT

Plaintiff pleads a claim against Ace so specious that it contradicts the Commission's own interpretation of the TSR. According to the Commission's TSR guidance and precedents, Ace's alleged provision of "back-end" fulfillment services (*e.g.*, processing customer files and payments) falls under the "substantial assistance" provision of the TSR. *Infra* Section III.A. That provision prohibits providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  engaged in any act or practice that violates [the TSR]." 16 C.F.R. § 310.3(b) (2015).
2  The Supreme Court has held that conscious avoidance is a high bar that exceeds
3  recklessness and is virtually equivalent to actual knowledge. *Glob.-Tech*
4  *Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011).  But Plaintiff cannot
5  allege that Ace provided substantial assistance to the other Defendants in the alleged
6  ringless voicemail scheme because there is no evidence that Ace knew of or
7  consciously avoided learning of the other Defendants' alleged TSR violations.

8  Instead, Plaintiff seeks to avoid the obligation to allege Ace's knowledge or
9  conscious avoidance by shoehorning Ace's conduct into a contrived theory of TSR
10  liability —under which Ace does not fit—by alleging that:  (i) Ace's quality control
11  calls conducted on behalf of Provident constituted "live telemarketing"; (ii) Ace's
12  provision of backend fulfillment and payment processing services make it a
13  "seller"; (iii) Ace provided "debt relief services"; and (iv) Ace is vicariously liable
14  for the Atlas Defendants' alleged misrepresentations regarding their debt program.
15  The Complaint falls short across the board on each point.  Likewise, the
16  Commission also fails to demonstrate that Ace knew or should have known its
17  conduct is illegal, as is required for a civil penalty.  And, in any event, FTC
18  Commissioners sit in unconstitutional offices, so their vote to sue Ace is void.
19  Accordingly, the Complaint should be dismissed with prejudice.

20  **I.    <u>Plaintiff Fails to Allege that Ace Violated the TSR</u>**

21  The TSR, 16 C.F.R. § 310.4(a) (2015), prohibits any telemarketer or seller
22  from engaging in abusive telemarketing acts or practices. Abusive conduct includes:
23  "[r]equesting or receiving payment of any fee or consideration for any debt relief
24  service until and unless:

25  (A) The seller or telemarketer has renegotiated, settled, reduced, or
26  otherwise altered the terms of at least one debt pursuant to a settlement
27  agreement, debt management plan, or other such valid contractual
     agreement executed by the customer;
28

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector.

16 C.F.R. § 310.4(a)(5)(i)(A), (B) (2015).  Violation of this provision requires the alleged actor to be a "telemarketer" or "seller" as defined by 16 C.F.R. §§ 310.2(dd), (ff) (2015). The actor must also have provided "debt relief services."  16 C.F.R. § 310.2(o) (2015).  As explained below, the Complaint fails to allege any of these elements as to Ace.

## A.    The Complaint Fails to Allege that Ace is a "Telemarketer"

Plaintiff inflates the TSR's scope by claiming that Ace's quality control calls were "telemarketing," but fails to allege that Ace "induced" any purchases by consumers, as the TSR requires.  The TSR defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer."   16 C.F.R. § 310.2(ff) (2015).   That definition requires a connection to "telemarketing," which the TSR defines as "a plan, program, or campaign which is conducted to *induce* the purchase of goods or services [by telephone]."  16 C.F.R. § 310.2(gg) (2015) (emphasis added).  Thus, a telemarketer under the TSR initiates or receives calls to or from a customer in connection with *inducing* the purchase of goods or services.

Indeed, courts have held that inducement is key to being a "telemarketer" under the TSR.  In *CFPB v. Commonwealth Equity Group, LLC,* a fraudulent credit repair service was a telemarketer because it induced purchases by "develop[ing] a plan to offer credit relief services to consumers, and … carr[ying] out that plan by *advertising and promoting those services*."  554 F. Supp. 3d 202, 208 (D. Mass. 2021) (emphasis added).  Likewise, in *FTC v. All US Marketing LLC*, two companies that offered lower credit card interest rates to consumers in robocalls, and registered customers for those services when they called in, were telemarketers because their actions "induce[d] the purchase of credit card interest rate reduction

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   services." No. 6:15-cv-1016-Orl-28KRS, 2017 WL 9398643, at *3-4, 8 (M.D. Fla.

2   Apr. 13, 2017), *report and recommendation adopted FTC v. All US Mktg. LLC*, No.

3   6:15-cv-1016-Orl-28KRS, 2017 WL 2256650 (M.D. Fla. May 22, 2017). As these

4   cases make clear, a "telemarketer" under the TSR must induce—or cause—the

5   purchase of goods or services.

6        In contrast, in *Worsham v. Discount Power, Inc.*, the court rejected a claim

7   that pre-recorded calls offering rebates on power bills constituted unlawful

8   telemarketing in violation of the TSR, because the plaintiff failed to allege that the

9   power company was a "telemarketer" (or a "seller"). No. RDB-20-0008, 2021 WL

10  3212589, at *5 (D. Md. July 29, 2021), *aff'd*, No. 22-1942, 2023 WL 2570961 (4th

11  Cir. Mar. 20, 2023). To establish that the power company qualified as a

12  telemarketer, Worsham needed to allege that the calls at issue "sought to *induce* the

13  purchase" of a service. *Id.* at *6. (emphasis added). But the calls at issue were pre-

14  recorded messages to offer a rebate on defendant's "*already-purchased*" electrical

15  services. *Id.* at *5. (emphasis added). There were not "any facts to support

16  Worsham's claim that the messages encouraged purchase of any product or

17  services." *Id.* Thus, the rebate calls did not make the company a "telemarketer"

18  under the TSR because offering discounts on already purchased services does not

19  *induce* purchases. *Id.*

20       As in *Worsham*, the Complaint fails to allege that Ace is a telemarketer

21  because Ace did not induce customers to purchase goods or services. Per the

22  Complaint, Ace had no contact with Atlas's customers until *after* Atlas registered

23  them for services. (Compl., ¶¶ 74-75.) Indeed, the Complaint alleges that Atlas'

24  live telemarketers interviewed interested consumers and "*register[ed]*" them for the

25  debt relief program. (*Id*. ¶ 74 (emphasis added).) Atlas' live telemarketers also

26  asked consumers for their personal information and banking information, so they

27  could begin collecting payments for the debt relief program. (*Id.*) After Atlas' live

28  telemarketers registered consumers for services, Atlas would then transfer

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

customers to Ace for "quality control calls," where Ace merely "verified the consumer's banking information, payment amount, and draft date." (*Id.* ¶ 75; Kalt Decl., Exh. B.)  Ace further "asked consumers to affirm that they understood the monthly payments were for [Atlas] fees only." (Compl. ¶ 77; Kalt Decl., Exh. B.)

As the Complaint alleges, by the time Ace conducted the quality control calls with Atlas' customers, the inducement was over because Atlas had already registered the customer for services.   Thus, Ace's quality control calls with consumers—conducted on behalf of Atlas—did not occur in connection with any "telemarketing," because those calls were not "conducted to *induce* the purchase of goods or services."  16 C.F.R. § 310.2(gg) (2015); *Worsham*, 2021 WL 3212589, at *6 (emphasis added).  Accordingly, the Complaint fails to allege that Ace is a "telemarketer" under the TSR.

### B.    The Complaint Fails to Allege that Ace is a "Seller"

Plaintiff further stretches the scope of the TSR by claiming that Ace is a "seller," even though the Complaint does not allege that Ace received consideration from Provident's customers in exchange for services.  Under the TSR, a seller is "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer *in exchange for consideration*."  16 C.F.R. § 310.2(dd) (2015)) (emphasis added). Although the TSR does not define the term "consideration," this Court has held that "[f]or consideration to be valid, the promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) and the benefit or prejudice 'must actually be bargained for as the exchange for the promise." *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1077 (S.D. Cal. 2010) (cleaned up). Likewise, in *Kremen v. Cohen*, plaintiff did not pay a fee to defendant—the exclusive domain name registrar at the time—to register plaintiff's domain name because a third party paid the registrar to perform such services on a fixed-fee basis. 337 F.3d at 1028-29 (9th Cir. 2003).  Thus, the Ninth Circuit held that there was no

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1    consideration exchanged between plaintiff and the registrar because plaintiff did not

2    pay or exchange some other property in return for domain registration.  *Id.*

3         The Complaint does not allege that Ace contracted with any Atlas customer

4    for the promise of providing services.  Rather, the Complaint alleges that Ace was

5    "a subcontractor for Provident," one of the Atlas entities. (Compl. ¶ 16; *see also id*.

6    ¶¶ 81-82; Kalt Decl., Exh. A § 1.3.)   Unsurprisingly, the Complaint lacks any

7    allegations of consumers paying consideration to Ace for services.  The Complaint

8    merely alleges that Ace "provided debt validation letter writing services to

9    consumers in exchange for consideration." (Compl. ¶ 78.)  But a bare recitation of

10   the legal definition of a "seller" under the TSR is insufficient.  *See Twombly*, 550

11   U.S. at 555.

12        The Complaint does not allege that Ace contracted with, charged fees to, or

13   received any other form of consideration from any Provident customer.  (Kalt Decl.

14   ¶ 4, Exh. C, Provident Customer Agreement).   Rather, Atlas' customers paid

15   Provident pursuant to their contracts with Provident.  (*Id*.)  Ace received a flat fee

16   *from Provident* for providing payment processing and back-end fulfilment services

17   for Provident's customers.  (*Id*. § 2.)  Thus, just as in *Kremen*, Provident's customers

18   did not pay a fee to Ace or exchange some other property in return for the provision

19   of services because Provident paid Ace on a flat-fee basis.  Therefore, the Complaint

20   fails to allege that Ace provided services to Provident's customers *in exchange for*

21   *consideration* because no customers provided a "bargained for" benefit to Ace.  *See*

22   *CRV Imperial-Worthington*, 770 F. Supp. 2d at 1077.

23        Further, Plaintiff fails to allege that the monthly fees collected by Ace from

24   Provident's customers—on behalf of Provident—were in exchange for Ace's

25   purported "debt validation letter writing services." (Compl. ¶ 78.)  To the contrary,

26   Plaintiff alleges that Ace "asked consumers to affirm that they understood the

27   monthly payments were for the [Atlas'] fees only," rather than fees for Ace's debt

28   validation writing services.  (Compl. ¶ 77; Kalt Decl., Exh. B.)  The Complaint

11   CASE NO.: 3:23-CV-00313-BAS-KSC

further alleges that Atlas "charged consumers … for multiple debt validation letters." (Compl. ¶ 82.)  Thus, Plaintiff's own allegations concede that Atlas—not Ace—received consideration from consumers.  Accordingly, the Complaint fails to allege that Ace is a "seller" because it does not plead that customers paid consideration to Ace in exchange for services, as required by the TSR.

## C. The Complaint Fails to Allege That Ace Received a Fee in Advance of Providing a "Debt Relief Service"

Even if Plaintiff had alleged that Ace was a "telemarketer" or "seller"—it has not—Plaintiff also fails to allege that Ace provided any "debt relief services" to Provident's customers.  The TSR defines debt relief service as "any program or service represented, directly or by implication, *to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt* between a person and one or more unsecured creditors or debt collectors." 16 C.F.R. § 310.2(o) (2015) (emphasis added).  But, Plaintiff conflates the debt *validation* fulfillment services provided by Ace—on behalf of Provident—with debt *relief* services, as defined by the TSR.  Further, the Complaint fails to allege that Ace—on any occasion—represented to consumers that it or Provident provided debt relief services.

### 1. Debt Validation Is Not Debt Relief Services Under the TSR

The Complaint alleges that Ace provided "debt validation writing services" and processed payments from customers on behalf of Atlas. (Compl. ¶¶ 16, 78-80; Kalt Decl., Exh. A.)  But debt validation is a lawful practice established by the Fair Debt Collection Practice Act ("FDCPA") that differs from "debt relief service." *See* 15 U.S.C § 1692g.

Under the FDCPA, consumers are able to demand that a third-party debt collector "validate" any debt within 30 days of receiving it.  15 U.S.C § 1692g.  After receiving a validation demand, a debt collector cannot collect on its purported debt until it provides "verification of the debt or a copy of a judgment." *Id*.  The FDCPA's purpose is to "eliminate abusive debt collection practices by debt

collectors." 15 U.S.C. § 1692(e). Thus, by the plain terms of the FDCPA, debt validation solely involves confirming the legitimacy of debts allegedly owed to debt collectors, not "renegotiat[ing], settl[ing], or in any way alter[ing] the terms of payment or other terms of the debt." 16 C.F.R. § 310.2(o) (2015).

No court has held that debt validation constitutes "debt relief services" under the TSR. That is because requiring a creditor to validate a debt is not "renegotiat[ing], settl[ing], or in any way alter[ing]" the terms that debt. *Id.* The only court of which Ace is aware to consider this issue declined to hold that debt validation is debt relief service. In *FTC v. PSC Administrative, LLC*, the court found "problems" with the Commission's argument that debt validation amounts to debt relief service and declined to find that offerings of debt validation services can amount to promises to "renegotiate, settle, or reduce … consumers' debts." No. 15-0084-WS-B, 2016 WL 3406113, at *10 (S.D. Ala. June 17, 2016) (expressing "no fixed opinion" on whether "debt validation … constitutes 'debt relief services'").

Nevertheless, Plaintiff bloats the scope of the TSR by claiming that debt validation constitutes debt relief service. (Compl. ¶ 79.) But such a claim, if true, would lead to absurd results. If Ace engaged in "debt relief services" under the TSR by helping Provident's customers prepare and send debt validation letters, then so too would anyone who contacts any creditor about a mistake made by the creditor, debt buyer, collection agency, or credit bureau. The Court should reject Plaintiff's unrealistically broad definition of "debt relief service."

### 2. Plaintiff Fails to Allege that Ace Represented that it Provided "Debt Relief Services" on Behalf of Provident

The Complaint describes in great detail the Atlas Defendants' "ringless voicemail" operation that marketed their alleged "debt relief services." (Compl. ¶¶ 59-79.) Tellingly, the Complaint is devoid of any allegations that Ace participated in the alleged operation, marketed the Atlas Defendants' debt program, or otherwise represented to consumers that it provided debt relief services for Provident.

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1
2
3
4
5
6
7
8
9

In particular, the Complaint lacks any allegations that Ace "represented, directly or by implication," to any consumer that the fees it collected for Provident would be used to "renegotiate, settle, or in any way alter the terms of payment or other terms," of the consumer's debt.  16 C.F.R. § 310.2(o) (2015).  To the contrary, the Complaint concedes that during the quality control calls Ace asked consumers to "affirm that they understood the monthly payments were for [Atlas'] fees only." (Compl. ¶ 77; Kalt Decl., Exh. B.)  Further, to complete the quality control call, the consumer had to affirm that Provident was *not* a "debt consolidation," "debt settlement," or "credit restoration company."  (Kalt Decl., Exh. B.)

10
11
12
13
14
15

Plaintiff also fails to allege that Ace contacted creditors or debt collectors on behalf of Provident's customers.  Indeed, nothing in Ace's Services Agreement with Provident indicates that Ace made such contacts.  (Kalt Decl., Exh. A.)  Moreover, Provident's customer contract explained that Provident would refer customers to debt settlement companies when appropriate.  (Kalt Decl., Exh. C.)  If Provident were offering debt settlement, then there would be no reason for referral.

16
17
18
19
20

Thus, Plaintiff does not allege that Ace represented on quality control calls (or otherwise) that it provided debt relief services to Provident's customers. Accordingly, the Complaint fails to allege facts sufficient to support a finding that Ace "[r]equest[ed] or receiv[ed] payment of any fee or consideration for any debt relief service."  16 C.F.R. § 310.4(a)(5)(i) (2015).

21
22

## II.   Plaintiff's Vicarious Liability Theory Cannot Save Its Pleading Deficiencies

23
24
25
26
27
28

Not content with inflating the TSR, Plaintiff also inverts basic tort principles to impose what amounts to vicarious liability on Ace for alleged misrepresentations made by the Atlas Defendants regarding their debt program.  Plaintiff appears to claim that Ace somehow provided "debt relief services" to Provident's customers because "the discrepancy between the representations made during the sales pitch [by the Atlas Defendants] and the quality control calls [conducted by Ace] led to

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   consumer confusion." (Compl. ¶¶ 75-78.)  But Plaintiff's claim that Ace should
2   somehow be liable under the TSR for the Atlas Defendants' alleged delivery of
3   "prerecorded messages to induce the purchase of debt relief services," (*id.* ¶ 67),
4   amounts to *reverse* vicarious liability, where an agent would be liable for the acts
5   of its principal.  That theory has no basis in the TSR or case law interpreting it.

6      **A.   Plaintiff's Attempt to Invert Vicarious Liability Fails**

7         Vicarious liability is a common law doctrine that holds one party liable for
8   the conduct of another.  As the Supreme Court has stated: "traditional vicarious
9   liability rules ordinarily make principals … vicariously liable for acts of their agents
10  … in the scope of their authority or employment."  *Meyer v. Holley*, 537 U.S. 280,
11  285 (2003).  But the reverse is not true.  Agents generally are not liable for acts
12  committed by disclosed principals. *Saha v. George Washington Univ.*, 577 F. Supp.
13  2d 439 (D.D.C. 2008), *aff'd*, 358 F. App'x 205 (D.C. Cir. 2009).  In *Saha*, George
14  Washington University's employees (agents) could not be vicariously liable for
15  breach of contract claimed against the university (principal).  *Id.*  To be sure,
16  vicarious liability can make principals liable for TSR violations committed by their
17  agents. *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020)
18  (finding DISH Network—a principal—vicariously liable for TSR violations
19  committed by the acts of its telemarketing agents).  But the TSR does not invert
20  vicarious liability by making *agents* liable for the acts of their principals.

21        Therefore, Plaintiff's claim that Ace somehow provided "debt relief services"
22  because consumers were allegedly "confused," (Compl. ¶ 77), upends traditional
23  vicarious liability by attempting to hold Ace liable for the Atlas Defendants' alleged
24  marketing misrepresentations.  The Complaint does not—and cannot—allege that
25  the Atlas Defendants were Ace's agents or that Ace had control over their alleged
26  marketing misrepresentations to consumers.  Thus, Ace cannot be vicariously liable
27  for any alleged misrepresentations made by the Atlas Defendants indicating they
28  provided debt relief services, including that they could "'resolve the consumer's

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

credit card debt in 24 months with affordable repayment options.'" (*Id.* ¶ 66.) Holding otherwise would invert vicarious liability.

To that point, the Commission's discussion of its 2003 amendments to the TSR confirmed that Ace cannot be vicariously liable for Provident's alleged misrepresentations. Several comments to the amendments related to an exemption to the TSR for inbound calls from a customer in response to a "direct mail solicitation" that "clearly, conspicuously, and truthfully" discloses certain required information. 16 C.F.R. § 310.6(b)(6) (2015). Regarding that exemption, one commenter expressed concern that a company could be held vicariously liable under the TSR for untruthful direct mail solicitations sent by a ***different*** company. Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4611 (Jan. 29, 2003). That hypothetical situation closely resembles what Plaintiff alleges transpired here: the Atlas Defendants' made misrepresentations to consumers via "ringless voicemail" messages and telemarketing calls, then transferred customers to Ace for quality control calls, during which Ace made accurate representations about Provident's debt validation services (although crucially, unlike the commenter's hypothetical company, Ace is not a telemarketer or seller under the TSR). (Compl. ¶¶ 75-78.) Regarding the commenter's hypothetical, the Commission responded that:

> [U]nder § 310.3(b), the assisting and facilitating provision, liability would only attach if a telemarketer knew or consciously avoided knowing that there was a disparity between the material representations in a direct mail piece and the telemarketing script being used in inbound calls in response to that solicitation.

Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4611 (Jan. 29, 2003). The same logic applies equally to Ace. But Plaintiff does not—and cannot—allege that Ace "knew or consciously avoided knowing" that there was a disparity between what the Atlas Defendants' ringless voicemails and live telemarketers represented to induce consumers to register for services and what Ace told the customer during quality control calls. Thus, Plaintiff's inverted vicarious liability theory fails.

16   CASE NO.: 3:23-CV-00313-BAS-KSC

**B.     TSR Case Law Does Not Support Plaintiff's Vicarious Liability Theory**

While many TSR cases have held defendants liable for misrepresenting *their own services* or hiring agent telemarketers that misrepresented their services, Ace is not aware of any case in which a court has held a company liable under the debt-related provisions of the TSR for *another company's* alleged misrepresentations. For example, in *FTC v. E.M.A. Nationwide, Inc.*, a debt relief company violated the debt relief service provisions of the TSR by "conduct[ing] cold calls to target struggling American consumers and [making] promises to consumers that the record establishes were rarely, if ever, kept."  767 F.3d 611, 620 (6th Cir. 2014); *see also CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1094 (C.D. Cal. 2014) (holding company that misrepresented its debt relief services in advertising directly liable under TSR); *CFPB v. IrvineWebWorks, Inc.*, No. SACV 14-1967 JVS (ANx), 2016 WL 1056662, at *3, *8 (C.D. Cal. Feb. 5, 2016) (same).

Ace's alleged conduct is also easily distinguishable from cases holding defendants liable under the TSR for intentionally misrepresenting *their own services* to consumers and then later trying to disclaim those misrepresentations. For example, in *FTC v. Alliance Document Preparation*, defendants constituting a common enterprise could not escape TSR liability for telemarketing misrepresentations they made about the nature of their student debt relief services by pointing to contradictory disclaimers in their consumer contracts.  296 F. Supp. 3d 1197, 1207-09 (C.D. Cal. 2017); *see also FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1081-82 (N.D. Cal. 2018) (finding TSR liability for company that induced customers to purchase services with misrepresentations of "100% total loan forgiveness," but then claimed in fine print text that it merely provided "document preparation" and "processing" services rather than debt relief); *FTC v. Elegant Solutions, Inc.*, No. SACV 19-1333 JVS (KESx), 2020 WL 4390381, at *14 (C.D. Cal. July 6, 2020), *aff'd* No. 20-55766, 2022 WL 2072735 (9th Cir. June 9, 2022)

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

(defendant violated the TSR where it *both* explained in its service agreement that it would seek to consolidate its clients' loans *and* labeled itself a "document preparation" service).

In each of these cases, defendants were liable under the TSR for their *own misrepresentations,* either as a common enterprise or as an individual entity. In contrast, Plaintiff does not allege that Ace and the Atlas Defendants were a common enterprise, because they are not. Moreover, not only does Plaintiff fail to allege that Ace represented to Provident's customers that it (or Provident) provided debt relief services, Plaintiff concedes that during the quality control calls Ace asked consumers to "affirm that they understood the monthly payments were for [Atlas'] fees only." (Compl. ¶ 77; Kalt Decl., Exh. B.) Further, to complete the quality control call successfully, the consumer had to affirm that Provident was *not* a "debt consolidation," "debt settlement," or "credit restoration company." (*Id.*) In short, the TSR case law further demonstrates that Plaintiff's attempt to hold Ace vicariously liable for the Atlas Defendants' alleged representations must fail.

## III.   The Complaint Contradicts the Commission's Business Guidance, TSR Commentary, and Enforcement Practices

Plaintiff's claim against Ace stretches the law so far that it contradicts the Commission's own TSR guidance. Commission guidance states that payment processing, "back-end" fulfillment service of customer files, and even contacting creditors on behalf of consumers, exemplify conduct that falls under the TSR's substantial assistance liability provision. (Kalt Decl. ¶ 6, Exh. E, FTC Debt Relief Guidance.) Furthermore, Ace is not aware of any prior enforcement action where the Commission alleged that an entity like Ace—a provider of payment processing and fulfillment services—was a seller under the TSR. Third-party providers of payment processing and other fulfillment services like Ace may be liable under the TSR only if they provide "substantial assistance" to a TSR violator and either know of or consciously avoid knowledge of the other party's TSR violation. 16 C.F.R. §

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

310.3(b) (2015).   But Plaintiff cannot allege that Ace provided substantial assistance to the Atlas Defendants in the alleged "ringless voicemail" scheme because there is no evidence that Ace knew of or consciously avoided learning of the Atlas Defendants' alleged TSR violations.   Nonetheless, the Complaint proffers a new interpretation of the TSR that contradicts Commission guidance and enforcement precedent by attempting to shoehorn conduct that has always fallen under the substantial assistance provision of the TSR into the definition of "seller."

### A.   Plaintiff's Claim Contradicts the Commission's Own Interpretation of the TSR

Plaintiff bases its claim against Ace on alleged conduct that Commission guidance places under the TSR's "substantial assistance" provision. Plaintiff's theory, if true, would render the Commission's public guidance and comments incoherent because it would be pointless to pursue a substantial assistance claim against a provider of back-end fulfillment and payment processing services if such third-party providers could instead be liable under the TSR as "sellers."

Indeed, the Commission's own guidance regarding compliance with the debt relief service provisions of the TSR states that payment processing, "back-end" fulfilment service, and even contacting creditors on behalf of consumers are conduct that fall under substantial assistance liability: "[w]hat amounts to substantial assistance depends on the facts," and "may include … helping a debt relief company with its back-room operations, for example, by reviewing customer files, processing customers' payments or contacting customers' creditors once they've signed up."  (Kalt Decl., Exh. E.).

The Complaint alleges that Ace provided exactly these types of "back-room operations" for Provident: Ace processed payments and provided debt validation writing services for Provident's customers.  (Compl. ¶ 16; Kalt Decl., Exh. A § 1.5.)  According to the *Commission's own TSR guidance*, such conduct may constitute "substantial assistance," but does *not* constitute "directly sell[ing] or provid[ing]"

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

any services.  (Kalt Decl., Exh. E. (indicating that companies providing services similar to Ace's do not "directly sell or provide debt relief services").)  Put simply, any allegation that Ace is a seller under the TSR would require Plaintiff to defeat the logic of the Commission's own guidance to prove its claim against Ace.

## B.  Plaintiff's Claim that Ace is a Seller Defies Past Commission Enforcement and Lacks Support in TSR Case Law

Plaintiff's theory that Ace is a "seller" under the TSR is unprecedented. Indeed, the Commission has adhered to its public interpretation of the TSR when pursuing other enforcement actions: it has brought substantial assistance claims against third-party payment processors and "back-room" service providers where there was evidence that they "knew or consciously avoided knowing about" other parties' TSR violations.  Importantly, however, the Commission has not sought to hold such third parties liable as "sellers."  Ace is not aware of any case holding a "back-room" fulfilment services provider or payment processor liable under any TSR provision other than Section 310.3(b)'s prohibition against providing "substantial assistance" to a seller or telemarketer while knowing or consciously avoiding knowing that that party is violating the TSR.

For example, in *FTC v. Lake*, the Commission brought TSR claims, including an advance fees claim, against six defendants, and a separate substantial assistance claim against Lake.  (Lake Compl. ¶¶ 84-95; *FTC v. Lake*, No. 15-00585-CJC (JPRx), Complaint (ECF No. 1) (C.D. Cal. Apr. 14, 2015).)  The Commission alleged that the six main defendants were "sellers or telemarketers," (Lake Compl. ¶ 78), and that *Lake* provided "substantial assistance or support to sellers or telemarketers" in violation of Section 310.3(b).)  (*Id.* ¶¶ 92-94.)  The court held that Lake was liable for substantial assistance because he provided "'back-end' processing services" and "acted as a 'back office'" for the other defendants, while knowing of the underlying TSR violations and taking steps to conceal customers from discovering them.  *FTC v. Lake*, 181 F. Supp. 3d 692, 699-700 (C.D. Cal.

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

2016)*; see also FTC v. Chapman*, 714 F.3d 1211, 1216-20 (10th Cir. 2013) (finding Chapman liable for substantial assistance for providing various "back-room" services to the primary defendants while knowing about multiple misrepresentations in the primary defendants' marketing materials); *FTC v. HES Merch. Servs. Co., Inc.*, No. 6:12-cv-1618-Orl-22KRS, 2014 WL 6863506, at *4 (M.D. Fla. Nov. 18, 2014), *aff'd* 652 F. App'x 837 (11th Cir. 2016) (finding defendants liable for substantial assistance for providing "credit card payment processing services" to the sellers and telemarketers, while consciously avoiding several "red flags" regarding the main defendants).

Like the substantial assistance defendants in *Lake, Chapman,* and *HES Merchant Services*, Plaintiff alleges that Ace processed payments and provided debt validation letter writing services for Provident's customers (Compl. ¶ 16; Kalt Decl., Exh. A § 1.5.) Yet the Commission *never* alleged in those other cases that such substantial assistance defendants were "sellers" under the TSR, nor did any court so hold. Rather, the Commission alleged that they were—and courts held them liable for—providing substantial assistance to TSR violators while knowing or consciously avoiding knowing of the underlying TSR violations.

Lacking evidence that Ace knew or consciously avoided knowing of the Atlas Defendants' alleged underlying TSR violations, Plaintiffs attempt an impermissible end-run around the strict "conscious avoidance" standard required to prove substantial assistance by bringing a baseless claim that Ace is a "seller" or "telemarketer." In short, the Plaintiff's tactics are at odds with the underlying principles of the TSR, the Commission's past enforcement, and the case law.

## C.   Commission Guidance and Enforcement Precedent Should Inform Interpretation of the TSR

The Commission's guidance and enforcement precedent should inform this Court's interpretation of the TSR. Courts generally defer to agencies' interpretations of their own ambiguous rules. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   (2019).  However, deference cannot apply to an agency's inconsistent interpretation

2   of such rules.  *Id*. at 2418.  An agency's interpretation of its own rules must be a

3   "fair and considered judgment," and not "a merely convenient litigating position or

4   post hoc rationalizatio[n]."  *Id.* at 2417 (cleaned up).  Nor can a court "defer to a

5   new interpretation, whether or not introduced in litigation, that creates 'unfair

6   surprise' to regulated parties."  *Id.* at 2418.  In particular, when the agency

7   "substitutes one view of a rule for another" in litigation.  *Id.*  Refusal to defer to

8   post hoc rationalizations or contrived litigation positions "protects reliance interests

9   associated with longstanding agency practices or interpretations."  *Goffney v.*

10   *Becerra*, 995 F.3d 737, 745 (9th Cir. 2021); *Price v. Stevedoring Servs. of Am., Inc.*,

11   697 F.3d 820, 830 (9th Cir. 2012).

12        Plaintiff's position—that Ace is a "seller" or "telemarketer" (Compl. ¶ 16)—

13   is plainly at odds with the Commission's interpretation of the TSR's "substantial

14   assistance" provision and its prior enforcements.  While the TSR does not define

15   "substantial assistance," as explained above, the Commission's own guidance

16   makes clear that back-end services such as "reviewing customer files, processing

17   customers' payments or contacting customers' creditors once they've signed up"

18   fall under substantial assistance liability.  (Kalt Decl., Exh. E.)  Yet, Plaintiff alleges

19   that Ace is "seller" because Ace processed payments and provided debt validation

20   writing services for Provident's customers.  (*Id*.; Kalt Decl., Exh. A § 1.5

21        This Court should reject Plaintiff's new and convenient read of "seller"

22   because it contravenes Commission guidance, creating an "unfair surprise" for Ace.

23   If Plaintiff's contrived interpretation of the TSR were correct, then anyone that

24   substantially assists a TSR violation could be deemed a "seller," making the

25   "substantial assistance" provision of the TSR surplusage.  Plaintiff's claim against

26   Ace should be dismissed for its fast and loose application of the TSR.

27

28

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**IV.**   <u>**At a Minimum, Plaintiff's Claim for Civil Penalties Must Be Dismissed**</u>

Plaintiff's claim for civil monetary penalties against Ace also fails.  Section 45(m) of the FTC Act authorizes the Commission to seek civil penalties against anyone who "violates any rule under this subchapter … with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is *prohibited by such rule*."  15 U.S.C. § 45(m)(1)(A) (emphasis added).  The Supreme Court has interpreted Section 45(m)'s to provide for a "mistake of law" defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010).  Thus, Plaintiff must allege that Ace "knew or should have known" that its conduct was illegal.  *Dish Network*, 954 F.3d at 978.

The Complaint fails to meet that standard.  First, the Complaint alleges that Ace knew or should have known that it violated the TSR because it "engage[d] and "interact[ed] with telemarketing compliance legal counsel." (Compl. ¶ 84.)  But engaging with counsel does not explain that Ace knew or should have known that the provision of back-end fulfillment services for debt validation violates the TSR. In other cases where the plaintiff successfully alleged knowledge based on interactions with compliance counsel, it showed more than a threadbare assertion of hiring a lawyer. For example, in *United States v. Corporations for Character, L.C.*, the plaintiff alleged that a company should have known it violated the "do-not-call" provisions of the TSR because it downloaded the do-not-call registry and implemented a policy to prevent calls to numbers on the registry at the advice of counsel, but later abandoned that policy.  116 F. Supp. 3d 1258, 1275 (D. Utah 2015). There, the company knew or should have known that calling do-not-call numbers violates the TSR because its counsel had said so.  But here, the Complaint fails to allege that counsel advised Ace that its debt validation fulfillment services violated the TSR or made it responsible for the misconduct of its principal, Provident.  Indeed, no court has held that accurately-represented debt validation service violates the TSR.  *See PSC Administrative*, 2016 WL 3406113, at *10.

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1
2
3
4
5
6
7
8

Second, Plaintiff asserts that Ace's receipt and review of customer complaints of purported TSR violations are sufficient to allege that Ace knew or should have known that its conduct violated the TSR.  (Compl. ¶ 84.)  But Plaintiff pleads no facts regarding the content or validity of such purported consumer complaints; let alone, that the customer complaints alleged that Ace's provision of "debt validation letter writing services," violated the TSR.  Such bare bones, conclusory allegations are insufficient.  *See Twombly*, 550 U.S. at 555 (a plaintiff must plead "more than labels and conclusions").

9
10
11
12
13
14
15
16
17

Moreover, the arguments above demonstrating that Ace's alleged conduct does not violate the TSR refute Plaintiff's implication that Ace knew or should have known it was violating the law.  "[L]aws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  Thus, even if Plaintiff could somehow shoehorn Ace's conduct into a theory of TSR liability, Plaintiff cannot plausibly allege that Ace knew or should have known that its provision of "debt validation letter writing services," alone violated the TSR.  This would be the first case to so hold.  Accordingly, Plaintiff's claim for civil penalties against Ace must fail.

18
19

## V.   For-Cause Removal Protections for FTC Commissioners Make this Enforcement Action Unconstitutional

20
21
22
23
24
25
26
27
28

Nearly a century ago, the Supreme Court held that the FTC Act's for-cause removal protection for commissioners does not violate the president's removal powers.  *Humphrey's Executor v. United States*, 295 U.S. 602, 626 (1935).  Since then, *Humphrey's Executor* has been widely criticized.  Despite the Constitution's command that "[t]he executive Power shall be vested in a President of the United States of America," U.S. Const. art. II § 1, cl. 1, *Humphrey's Executor* cabined executive power in a "*de facto* fourth branch of Government—independent agencies" without presidential oversight.  *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2212 (2020) (Thomas, J., concurring).  *Humphrey's Executor* was "six quick pages

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   devoid of textual or historical precedent for the novel principle it set forth,"

2   *Morrison v. Olson*, 487 US 654, 726 (1988) (Scalia, J., dissenting), and the

3   Supreme Court "has repudiated almost every aspect of …. this erroneous

4   precedent" in recent opinions.  *Seila L. LLC*, 140 S. Ct. at 2188.

5        *Humphrey's Executor* held that for-cause removal limits do not infringe on

6   the President's removal power based on a fable that FTC Commissioners do not

7   wield executive power.  *See Humphrey's Executor*, 295 U.S. at 628; *Seila L. LLC*

8   *v. CFPB*, 140 S. Ct. 2183, 2188 (2020).  The Supreme Court based its decision on

9   wishful thinking that the Commission would be a "body of experts who shall gain

10  experience by length of service … independent of executive authority … free to

11  exercise its judgment without the leave or hindrance of any other official or any

12  department of the government."  *Humphrey's Executor*, 295 U.S. at 625-26.  But

13  experience proves that false.  *See* Daniel A. Crane, *Debunking Humphrey's*

14  *Executor*, 83 Geo. Wash. L. Rev. 1853, 1850-68 (2015).

15       Consider this case.  The Constitution states that the President "shall take care

16  that the laws be faithfully executed."  U.S. Const. art. II § 3.  Yet here, the

17  Commission purportedly seeks to execute the law through enforcement against

18  Ace.  That is executive power.  *Seila L. LLC*, 140 S. Ct. at 2200 (holding that

19  "enforcement authority . . . to seek daunting monetary penalties against private

20  parties on behalf of the United States in federal court" is "a quintessentially

21  executive power not considered in *Humphrey's Executor*").  *Humphrey's Executor*

22  was wrongly decided, which means that the Commissioners who voted to sue Ace

23  and Mrs. Barnes sit in unconstitutional offices, and their vote is accordingly void.

24  **VI.   CONCLUSION**

25       Ace and Mrs. Barnes are not telemarketers, not sellers, and not providers of

26  debt relief service. They also lacked the requisite knowledge for a civil penalty, and

27  in any event, the Commission is unconstitutional.  Accordingly, this Court should

28  dismiss with prejudice.

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1    Dated:  June 7, 2023                    STEPTOE & JOHNSON LLP

2

3                                            By:  /s/  *Damon Kalt*
                                                  Damon Kalt (*admitted pro hac vice*)
4                                                 *dkalt@steptoe.com*
                                                  Andrew K. Magloughlin (*admitted pro*
5                                                 *hac vice*)
6                                                 Destinae Demery

7
                                                  Attorneys for Defendants
8                                                 ACE BUSINESS SOLUTIONS LLC
9                                                 and SANDRA BARNES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS ACE BUSINESS SOLUTIONS LLC AND SANDRA BARNES'
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT