MANATT, PHELPS & PHILLIPS, LLP
Christine M. Reilly (SBN 226388)
Cody A. DeCamp (SBN 311327)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
CReilly@manatt.com
CDeCamp@manatt.com

Bezalel A. Stern (*pro hac vice* to be filed)
1050 Connecticut Ave. NW, Suite 600
Washington, DC 20036
Telephone: 202.585.6500
BStern@manatt.com

GARDNER BREWER HUDSON
Richard P. Lawson (*pro hac vice* to be filed)
400 N. Ashley Dr., Suite 1100
Tampa, FL 33602
Telephone: 813.444.5562
rlawson@gardnerbrewer.com

COUNSEL FOR THE ATLAS DEFENDANTS
Atlas Marketing Partners, Inc.,
Atlas Investment Ventures LLC,
Tek Ventures, LLC, Eric Petersen,
and Todd DiRoberto

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>STRATICS NETWORKS, INC., *et al.*<br><br>        Defendants. | CASE NO. 3:23-cv-00313-BAS-KSC<br><br>**ATLAS DEFENDANTS' MOTION TO DISMISS AND TO STRIKE** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION..................................................................................... 1

II.   BACKGROUND..................................................................................... 2

III.  STANDARD OF REVIEW ....................................................................... 5

IV.  ARGUMENT ....................................................................................... 5

    A.    Ringless Voicemail Is Not a "Telephone Call" Under Its Plain Reading.............. 6

    B.    The TSR Does Not Regulate Ringless Voicemail Technology ............................ 8

        1.    Neither the Statute nor the TSR Reference Ringless Voicemail................. 8

        2.    The Text of the Statute and the TSR Clarify That "Telephone Call" Does Not Include Ringless Voicemail ........................................................ 8

        3.    Legislative and Regulatory History Show That Ringless Voicemail Is Not a "Telephone Call" ........................................................ 11

    C.    The FTC Exceeded Its Authority ................................................................. 14

        1.    The FTC Failed to Provide Specificity or Fair Notice Under the TSR............................................................................................ 14

        2.    FTC Exceeded Its Authority by Failing to Engage in Rulemaking ......... 16

        3.    The FTC Cannot Create New Law Through Adjudication...................... 20

    D.    The Government Cannot Recover Civil Penalties .................................................. 23

        1.    DOJ Lacks Authority to Pursue Civil Penalties........................................ 23

        2.    DOJ Has Not Pled a Basis for Imposing Civil Penalties........................... 26

        3.    DOJ Cannot Plead a Basis for Imposing Civil Penalties .......................... 27

    E.    The Misrepresentation and DRS Claims Should Be Dismissed .......................... 29

        1.    DOJ Fails to Plead With Particularity Under Rule 9(b)........................... 29

        2.    DOJ Does Not Allege a "Debt Relief Service"........................................ 30

    F.    DOJ Cannot Obtain Section 13(b) Injunctive Relief ............................................ 32

    G.    This Enforcement Action is Constitutionally Infirm............................................. 33

        1.    This Action Violates Atlas Defendants' Due Process Rights ................... 33

        2.    This Action Violates the Major Questions and Non-Delegation Doctrines ............................................................................................ 34

    H.    The Individual Defendants Should Be Dismissed................................................. 35

V.   CONCLUSION ....................................................................................... 36

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

## CASES

*AMG Cap. Mgmt., LLC v. FTC,*
141 S. Ct. 1341 (2021) .............................................................................. 20, 33

*Axon Enter., Inc. v. FTC,*
143 S. Ct. 890 (2023) ................................................................................ 25, 26

*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1990) ............................................................................ 5

*Bayview Hunters Point Cmty. Advocates v. Metro. Trans. Comm'n,*
366 F.3d 692 (9th Cir. 2004) ............................................................................ 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................ 5

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 559 (1996) ...................................................................................... 34

*Bowsher v. Synar,*
478 U.S. 714 (1986) ...................................................................................... 26

*Buckley v. Valeo,*
424 U.S. 1 (1976) .......................................................................................... 26

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012) ........................................................................ 21, 22, 28

*Cmty. Television of S. Cal. v. Gottfried,*
459 U.S. 498 (1983) ...................................................................................... 21

*Diamond Roofing Co., Inc. v. Occupational Safety and Health Rev. Comm'n.,*
528 F.2d 645 (5th Cir. 1976) .......................................................................... 15

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ...................................................................................... 33

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ...................................................................................... 35

*FDIC v. Meyer,*
510 U.S. 471 (1994) ........................................................................................ 6

*Fogerty v. Fantasy, Inc.,*
984 F.2d 1524 (9th Cir. 1993) .......................................................................... 5

*Ford Motor Co. v. FTC,*
673 F.2d 1008 (9th Cir. 1981) .......................................................... 21, 22, 23

*FTC v. D-Link Sys., Inc.,*
3:17-CV-00039-JD, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) ............. 29

*FTC v. Elec. Payment Sols. of Am. Inc.,*
No. CV-17-02535-PHX-SMM, 2021 WL 3661138 (D. Ariz. Aug. 11, 2021) ........ 32

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

*FTC v. ELH Consulting, LLC*,
No. CV 12-02246-PHX-FJM, 2013 WL 4759267 (D. Ariz. Sept. 4, 2013) .......................... 29

*FTC v. Evans Prod. Co.*,
775 F.2d 1084 (9th Cir. 1985) ........................................................................... 32, 33

*FTC v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021) ................................................................................ 33

*FTC v. Garvey*,
383 F.3d 891 (9th Cir. 2004) ..................................................................................... 35

*FTC v. Lights of Am., Inc.*,
760 F. Supp. 2d 848 (C.D. Cal. 2010) ........................................................................ 29

*FTC v. Publishers Bus. Services, Inc.*,
821 F. Supp. 2d 1205 (D. Nev. 2010) ............................................................. 6, 11, 14

*FTC v. Shire ViroPharma Inc*,
917 F.3d 147 (3d Cir. 2019) ....................................................................................... 32

*FTC v. Swish Mktg.*,
No. C 09–03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ......................... 35, 36

*FTC v. Walmart, Inc.*,
No. 22 CV 3372, 2023 WL 2646741 (N.D. Ill. Mar. 27, 2023) ................................... 28

*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) ....................................................................................... 33

*Gates & Fox Co., Inc. v. Occupational Safety and Health Review Comm'n.*,
790 F.2d 154 (D.C. Cir. 1986) .................................................................................... 34

*Gundy v. United States*,
139 S. Ct. 2116 (2019) ............................................................................................... 34

*Hsieh v. FCA US LLC*,
440 F. Supp. 3d 1157 (S.D. Cal. 2020) ......................................................................... 5

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ...................................................................................... 24, 25, 26

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010) ................................................................................................... 29

*Katharine Gibbs Sch. (Inc.) v. FTC*,
612 F.2d 658 (2d Cir. 1979) ....................................................................................... 15

*Kornea v. J.S.D Mgt., Inc.*,
366 F. Supp. 3d 660 (E.D. Pa. 2019) .......................................................................... 31

*Logue v. Curtis Mgmt. Co., Inc.*,
No. 19-CV-189-BAS-NLS, 2019 WL 2249981 (S.D. Cal. May 24, 2019) ................ 5, 23

*Marshall v. Anaconda Co.*,
596 F.2d 370 (9th Cir. 1979) ..................................................................................... 23

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1

2

# TABLE OF AUTHORITIES

**Page**

3

4
*Montgomery Ward & Co., Inc. v. FTC,*
  691 F.2d 1322 (9th Cir. 1982)................................................ 15, 22, 23, 28

5
*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989).................................................................... 29

6

7
*Nat'l. Fed'n. of the Blind v. FTC,*
  303 F. Supp. 2d 707 (D. Md. 2004)......................................................... 13

8
*Nat'l. Fed'n. of the Blind v. FTC,*
  420 F.3d 331 (4th Cir. 2005).............................................................. 11, 13

9
*NLRB. v. Bell Aerospace Co. Div. of Textron,*
  416 U.S. 267 (1974)............................................................................ 20, 22

10

11
*Patel v. Immigr. & Naturalization Serv.,*
  638 F.2d 1199 (9th Cir. 1980)................................................................. 23

12
*Pfaff v. U.S. Dept. of Hous. and Urb. Dev.,*
  88 F.3d 739 (9th Cir. 1996)..................................................................... 22

13
*Phelps Dodge Corp. v. Fed. Mine Safety and Health Rev. Comm'n.,*
  681 F.2d 1189 (9th Cir. 1982)........................................................... 15, 20

14

15
*Ruangswang v. Immigr. & Naturalization Serv.,*
  591 F.2d 39 (9th Cir. 1978)............................................................... 21, 22

16
*Safe Air For Everyone v. Envtl. Prot. Agency,*
  488 F.3d 1088 (9th Cir. 2007).................................................................... 6

17

18
*Safeco Ins. Co. of Am. v. Burr,*
  551 U.S. 47 (2007)................................................................................... 28

19
*Seila Law LLC v. CFPB,*
  140 S. Ct. 2183 (2020)....................................................................... 25, 26

20
*Sessions v. Dimaya,*
  584 U.S. ——, 138 S. Ct. 1204 (2018).................................................... 34

21

22
*Sidney-Vinstein v. A.H. Robins Co.,*
  697 F.2d 880 (9th Cir. 1983)..................................................................... 5

23
*The Broad. Team, Inc. v. FTC,*
  429 F. Supp. 2d 1292 (M.D. Fla. 2006)............................................. 10, 12

24

25
*Touby v. United States,*
  500 U.S. 160 (1991)................................................................................ 34

26
*United States v. AMC Ent., Inc.,*
  549 F.3d 760 (9th Cir. 2008)................................................................... 34

27

28
*United States v. Dish Network, L.L.C.,*
  No. 09-3073, 2016 WL 97688 (C.D. Ill. Jan. 7, 2016) .................... 27, 29

*United States v. Landmark Fin. Services, Inc.,*
  612 F. Supp. 623 (D. Md. 1985).............................................................. 24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

*United States v. St. Regis Paper Co.*,
   355 F.2d 688 (2d Cir. 1966)......................................................................24

*United States v. Trident Seafoods Corp.*,
   60 F.3d 556 (9th Cir. 1995)..............................................15, 16, 23, 28

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016)..............................................................30

*Util. Air. Regul. Group v. EPA*,
   573 U.S. 302 (2014)................................................................................35

*Vess v. Ciba–Geigy Corp., USA*,
   317 F.3d 1097 (9th Cir. 2003)..............................................................29

*Zablocki v. Merchants Credit Guide Co.*,
   968 F.3d 620 (7th Cir. 2020)................................................................35

## STATUTES

5 U.S.C. § 553(b) ......................................................................................16

5 U.S.C. § 553(c) ................................................................................16, 20

5 U.S.C. § 553(d) ......................................................................................16

5 U.S.C. §§ 701-706 ..................................................................................17

5 U.S.C. § 706(2)(A) ................................................................................15

15 U.S.C. § 41 ............................................................................................25

15 U.S.C. § 45(a)(1) ............................................................................17, 35

15 U.S.C. § 45(m)(1)(A) ....................................................................24, 27

15 U.S.C. § 53(b) ......................................................................................33

15 U.S.C. § 53(b)(1) ..................................................................................32

15 U.S.C. § 56(a)(1) ..................................................................................24

15 U.S.C. § 56(a)(2) ..................................................................................24

15 U.S.C. § 57a(1)(A) ................................................................................3

15 U.S.C. § 57a(2) ....................................................................................14

15 U.S.C. § 57a(a)(1)(B) ....................................................................14, 33

15 U.S.C. § 57a(b) ....................................................................................16

15 U.S.C. § 57a(b)(1) ..........................................................................16, 20

15 U.S.C. § 57a(d)(2)(B) ....................................................................16, 17

15 U.S.C. § 57a(d)(3) ................................................................................17

15 U.S.C. § 57a(e) ....................................................................................17

15 U.S.C. § 57a(e)(2) ................................................................................17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

15 U.S.C. § 57a(e)(3) ................................................................ 17

15 U.S.C. § 1692*l*(d) .............................................................. 19

15 U.S.C. § 6102(a)(1) ............................................................ 35

15 U.S.C. § 6102(a)(3)(A) ......................................................... 8

15 U.S.C. § 6102(a)(3)(B) ......................................................... 9

15 U.S.C. § 6102(a)(3)(C) ......................................................... 9

15 U.S.C. § 6102(a)(3)(D) ......................................................... 9

15 U.S.C. § 6102(b) ............................................................... 16

15 U.S.C. § 6106(4) ................................................................ 8

Administrative Procedure Act ("APA") ............................................. 4

Equal Credit Opportunity Act ("ECOA") ........................................... 24

Fair Credit Reporting Act  ("FCRA") ............................................. 28

Fair Debt Collection Practices Act ("FDCPA") ................................. 18, 19

Federal Trade Commission Act  ("FTC") ....................................... passim

Telemarketing Act ........................................................... passim

Telemarketing Sales Rule ("TSR") ............................................. 1, 32

Telephone Consumer Protection Act  ("TCPA") .................................. 4, 22

# RULES

Rule 9(b) ..................................................................... 29, 30

Rule 12(b)(6) .................................................................... 5

# REGULATORY AUTHORITIES

12 C.F.R. § 1006 ................................................................ 19

16 C.F.R. § 1.98(d) ............................................................. 23

16 C.F.R. § 310.2(x) ............................................................. 8

16 C.F.R. § 310.2(gg) ......................................................... 6, 8

16 C.F.R. § 310.2(o) ........................................................ 30, 31

16 C.F.R. § 310.3(a)(2)(x) ....................................................... 6

16 C.F.R. § 310.4(a)(5)(i) ....................................................... 6

16 C.F.R. § 310.4(b)(1)(i) .................................................... 9, 19

16 C.F.R. § 310.4(b)(1)(ii) ...................................................... 9

16 C.F.R. § 310.4(b)(1)(iv) ..................................................... 10

16 C.F.R. § 310.4(b)(1)(v) ................................................... 8, 10

-vi-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

16 C.F.R. § 310.4(b)(1)(v)(A) ............................................................................ 5

16 C.F.R. § 310.4(b)(1)(v)(B) .......................................................................... 10

16 C.F.R. § 310.4(b)(4) ................................................................................... 10

16 C.F.R. § 310.4(c) ........................................................................................ 11

16 C.F.R. § 310.4(d)(1) ................................................................................ 6, 8

16 C.F.R. § 310.6(b)(3) .................................................................................... 11

47 C.F.R. § 1.2 .................................................................................................. 5

60 Fed. Reg. 43842 (Aug. 23, 1995) .............................................................. 17

68 Fed. Reg. 4580 (Jan. 29, 2003) ............................................ 12, 13, 18, 19

73 Fed. Reg. 51164 (Aug. 29, 2008) .............................................................. 13

84 Fed. Reg. 23274 (proposed May 21, 2019) ............................................... 18

85 Fed. Reg. 76734 (Nov. 30, 3020) ......................................................... 18, 19

87 Fed. Reg. 33662 (June 3, 2022) ........................................................... 17, 20

87 Fed. Reg. 33667 (June 3, 2022) ........................................................... 17, 18

*In the Matter of Proposed Rule With Request for Public Comment, Debt Collection*
*Practices (Regulation F)*,
No. CFPB-2019-0022 ................................................................................ 19

*In the Matter of R. and Regulations Implementing the Tel. Consumer Protec. Act of 1991*
*Pet. for Declaratory Rul. of All About the Message, LLC*,
CG02-278, 2022 WL 17225556 (FCC Nov. 21, 2022) ............................... 4

## LEGISLATIVE AUTHORITIES

H.R. Rep. No. 93-1107 (1974), 1974 WL 11709 ............................................ 22

H.R. Rep. No. 103-20 (1993), 1993 WL 54276 .............................................. 15

S. Rep. No. 103-80 (1993), 1993 WL 241282 ................................................ 12

## CONSTITUTIONAL AUTHORITIES

U.S. Const. amend. V ....................................................................................... 34

U.S. Const. art. I, § 1 ...................................................................................... 34

Due Process Clause of the U.S. Constitution .................................................. 34

## OTHER AUTHORITIES

*About FTC Warning Letters*, Federal Trade Commission, https://www.ftc.gov/news-events/topics/truth-advertising/about-ftc-warning-letters (last visited May 15, 2023) ............. 3

Christine Wilson, Former FTC Commissioner, *Why I'm Resigning as an FTC*
*Commissioner*, Wall Street Journal (Feb. 14, 2023 ) ...................................... 26

# TABLE OF AUTHORITIES

**Page**

Eleanor Tyler, *Did SCOTUS Just Herald the Death of Expert Agencies?* Bloomberg Law, (Apr. 20, 2023), https://news.bloomberglaw.com/bloomberg-law-analysis/analysis-did-scotus-just-herald-the-death-of-expert-agencies ............................................................ 26

*Enforcement: Notices of Penalty Offenses*, Federal Trade Commission, https://www.ftc.gov/enforcement/penalty-offenses (last visited May 22, 2023) ..................... 4

*Enforcement: Penalty Offenses Concerning Endorsements*, Federal Trade Commission, https://www.ftc.gov/enforcement/notices-penalty-offenses/penalty-offenses-concerning-endorsements (last visited May 22, 2023) ............................................... 4

*Enforcement: Rulemaking, Retrospective Review of FTC Rules and Guides*, Federal Trade Commission, https://www.ftc.gov/enforcement/rulemaking/retrospective-review-ftc-rules-guides (last visited May 19, 2023) ........................................................ 17, 18

Federal Trade Commission, Statement of the Commission On Breaches by Health Apps and Other Connected Devices (Sept. 15, 2021), https://www.ftc.gov/system/files/documents/public_statements/1596364/statement_of_the_commission_on_breaches_by_health_apps_and_other_connected_devices.pdf ............ 3

Lauren Berg, *FTC's Khan Accused Of 'Abuse Of Power' In House Probe* (Jun. 1, 2023) .......... 26

Press Release, Federal Trade Commission, FTC Announces Tentative Agenda for May 18 Open Commission Meeting (May 11, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-announces-tentative-agenda-may-18-open-commission-meeting?utm_source=govdelivery ....................................................... 19

Press Release, Federal Trade Commission, FTC Enforcement Actions to Bar GoodRx from Sharing Consumers' Sensitive Health Info for Advertising (Feb. 1, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-enforcement-action-bar-goodrx-sharing-consumers-sensitive-health-info-advertising ................................. 3

Press Release, Federal Trade Commission, FTC Sues to Stop VoIP Service Provider That Assisted and Facilitated Telemarketers in Sending Hundreds of Millions of Illegal Robocalls to Consumers (May 12, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-sues-stop-voip-service-provider-assisted-facilitated-telemarketers-sending-hundreds-millions?utm_source=govdelivery ..................... 4

Press Release, Federal Trade Commission, FTC Warns 19 VoIP Service Providers That 'Assisting and Facilitating' Illegal Telemarketing or Robocalling is Against the Law (Jan. 30, 2020), https://www.ftc.gov/news-events/news/press-releases/2020/01/ftc-warns-19-voip-service-providers-assisting-facilitating-illegal-telemarketing-or-robocalling ................................................................................................. 4

*Telephone Call*, Oxford English Dictionary, https://www.oed.com/view/Entry/198718?redirectedFrom=telephone+call#eid18838951 (last visited June 6, 2023) ...................................................................................... 7

*Telephone Call*, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/telephone-call?q=telephone+call ................................................................................... 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**

Page

They Can't Back Up Their Product Claims (April 13, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/04/ftc-warns-almost-700-marketing-companies-they-could-face-civil-penalties-if-they-cant-back-their?utm_source=govdelivery ........................... 4

Winerman, Marc, *The Origins of the FTC: Concentration, Cooperation, Control and Competition*, 71 Antitrust L.J. 1 (2003) (quoting 38 Papers of Woodrow Wilson (Arthur S. Link ed.), 336), https://www.ftc.gov/sites/default/files/attachments/federal-trade-commission-history/origins.pdf ..................................................................................... 25

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

The government brings this enforcement action advancing for the first time its position that ringless voicemails are covered by the Telemarketing Sales Rule ("TSR" or "Rule"). In attempting to equate ringless voicemails with "telephone calls," it seeks to place a square peg into a round hole. The pieces do not fit.

Nothing in the TSR implicates ringless voicemail. That is because ringless voicemail is not a telephone call. A ringless voicemail is—by definition—"ringless." Ringless voicemails are delivered directly into a phone's voicemail system. Less intrusive and invasive than a telephone call, a consumer does not "answer" a ringless voicemail before it is placed directly into the voicemail system. The TSR does not reference, does not cover, and was not intended to cover such unobtrusive technology.

The ringless voicemails alleged in this case were sent for a limited period of time several years ago. Before and during that time, there was no guidance from the Federal Trade Commission ("FTC") that ringless voicemail technology would be deemed a "telephone call" under the TSR. The FTC did not issue any policy statement, warning letter, or notice of penalty offense on this issue. It did not initiate noticed rulemaking seeking to expand the TSR. Instead, the FTC seeks to declare that ringless voicemail technology is a "telephone call" through this novel enforcement action filed on its behalf by the Department of Justice ("DOJ"). But a review of the plain language of the Rule, and the statute that authorized it, make clear that ringless voicemails are not telephone calls. This is confirmed by the legislative and regulatory history.

Even if the TSR could be construed to cover ringless voicemail technology, the government failed to provide adequate notice of its interpretation. A regulation cannot be construed to mean what an agency did not adequately express. Nor can an agency enforce a rule where it failed to provide fair notice or where it simply advances a litigation position, as it does here. If the FTC wanted to regulate ringless voicemail, it should have initiated noticed rulemaking to amend the TSR. By shirking its rulemaking responsibilities, the FTC failed to

provide the Atlas Defendants[1] with notice of the consequences of their activities and deprived the public of an opportunity to participate in making sound policy decisions concerning technological advances (here, ringless voicemail technology).

The government also seeks massive civil penalties. *But this is not a civil penalty case.* Penalties are premised on a defendant's actual knowledge or knowledge fairly implied on the basis of objective circumstances. Penalties are not appropriate for conduct that was not obviously regulated at the time of the alleged wrongful acts. In any event, the DOJ is not authorized to bring this civil penalty action because its prosecutorial powers are derivative of the FTC's authority, and the FTC lacks constitutional authority to seek penalties.

The Complaint suffers from other infirmities as well. Some of the TSR counts allege a "debt relief service," but the allegations do not support this claim. The Complaint's misrepresentation claims sound in fraud, but they are not pled with the required specificity. Section 13(b) injunctive relief is not available because the alleged conduct ceased years ago. Also, the Complaint raises several constitutional challenges, including violations of Due Process. Lastly, the Complaint fails to allege individual liability claims against Petersen and DiRoberto.

For all these reasons, this enforcement action should be dismissed and the government's attempted overreach denied.

## II.     BACKGROUND

In 2013, the Atlas Defendants hired Defendants Kenan Azzeh and his marketing company Kasm, Inc. (collectively, the "Kasm Defendants") to perform marketing services in connection with "debt validation writing services" provided by Defendants Sandy Barnes and Ace Business Solutions, LLC (collectively, the "Ace Defendants"). Compl. ¶¶ 64, 78. The Ace Defendants prepared debt validation letters and sent them to consumer creditors challenging the validity of a consumer's debt. *Id.* ¶ 79.

Between 2019 and 2020, the Kasm Defendants contracted with Stratics Networks to send ringless voicemails to consumers using Stratics' ringless voicemail technology. *Id.* ¶¶ 64-65.

---

[1] The "Atlas Defendants" or "Defendants" refer to Atlas Marketing Partners, Inc., Atlas Investment Ventures LLC, Tek Ventures, LLC, Eric Petersen, and Todd DiRoberto.

The voicemails were placed directly into "consumers' voicemail boxes" "without giving recipients the opportunity to answer or block the incoming prerecorded message." *Id.* ¶¶ 3, 5, 39. *See also id.* ¶ 45 (messages "reached the consumer's voicemail box"). Ringless voicemail messages, as the name reflects, deliver messages "without causing the recipient's phone to ring."[2] *Id.* ¶ 39. During this time period, ringless voicemail was not considered to be a telephone call by telemarketing industry experts, including legal experts. This belief was bolstered by the lack of notice or guidance from the FTC that it would interpret the TSR to regulate ringless voicemails.

*The FTC did not issue interpretive rules or policy statements about ringless voicemail.* *See* 15 U.S.C. § 57a(1)(A). For example, in 2021, the FTC issued a Policy Statement about data breaches affecting medical data, warning that the Commission "intend[ed] to bring actions to enforce" the Health Breach Notification Rule, and that such actions could lead to penalties.[3] Only after "clarify[ing] the scope of the Rule, and plac[ing] entities on notice" did the FTC initiate enforcement actions.[4]

*The FTC did not issue warning letters on the use of ringless voicemail.* The FTC states that such letters "warn companies that their conduct is likely unlawful and that they can face serious legal consequences, such as a federal lawsuit, if they do not immediately stop."[5] For example, in 2020, the FTC sent warning letters to VoIP service providers regarding the TSR's applicability to robocalls. The letters highlighted recent enforcement actions and warned that the

---

[2] Ringless voicemails do not cause telephone lines to ring, but depending on a consumer's personalized device settings, the "voicemail box may trigger an audible and visual notification that alerts recipients that they have new voicemails." Compl. ¶ 41.

[3] *See* Federal Trade Commission, Statement of the Commission On Breaches by Health Apps and Other Connected Devices (Sept. 15, 2021), https://www.ftc.gov/system/files/documents/public_statements/1596364/statement_of_the_commission_o n_breaches_by_health_apps_and_other_connected_devices.pdf.

[4] *See* Press Release, Federal Trade Commission, FTC Enforcement Actions to Bar GoodRx from Sharing Consumers' Sensitive Health Info for Advertising (Feb. 1, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-enforcement-action-bar-goodrx-sharing-consumers-sensitive-health-info-advertising.

[5] *About FTC Warning Letters*, Federal Trade Commission, https://www.ftc.gov/news-events/topics/truth-advertising/about-ftc-warning-letters (last visited May 15, 2023) ("In many cases, warning letters are the most rapid and effective means to address the problem").

"FTC can obtain civil penalties for TSR violations."[6]  Subsequently, the FTC initiated enforcement proceedings seeking civil penalties.[7]

　　*The FTC did not issue a Notice of Penalty Offenses concerning ringless voicemail.* Authorized under Section 5(m)(1)(B) of the FTC Act, 15 U.S.C. §45(m)(1)(B), these notices list conduct that the FTC has determined, in one or more litigated administrative cases, to violate the FTC Act.  Companies that persist in these acts can face civil penalties of up to $50,120 per violation.  The purpose of the notice is "to ensure that companies understand the law – and that they are deterred from breaking it."[8]  For example, in April 2023, the FTC warned nearly 700 companies that "it will not hesitate to use its authority to target violators with large civil penalties" after issuing a Notice of Penalty Offenses for unsubstantiated advertising claims.[9]

　　*Despite the regulatory uncertainty on ringless voicemail, the FTC remained silent.*  It still has not initiated rulemaking or provided guidance on whether the TSR encompasses ringless voicemail.[10]   Instead, the FTC attempts to regulate through enforcement and seeks harsh civil

---

[6] Press Release, Federal Trade Commission, FTC Warns 19 VoIP Service Providers That 'Assisting and Facilitating' Illegal Telemarketing or Robocalling is Against the Law (Jan. 30, 2020), https://www.ftc.gov/news-events/news/press-releases/2020/01/ftc-warns-19-voip-service-providers-assisting-facilitating-illegal-telemarketing-or-robocalling

[7] Press Release, Federal Trade Commission, FTC Sues to Stop VoIP Service Provider That Assisted and Facilitated Telemarketers in Sending Hundreds of Millions of Illegal Robocalls to Consumers (May 12, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-sues-stop-voip-service-provider-assisted-facilitated-telemarketers-sending-hundreds-millions?utm_source=govdelivery (company sued by DOJ on behalf of FTC "after receiving multiple warnings").

[8] *Enforcement: Notices of Penalty Offenses*, Federal Trade Commission, https://www.ftc.gov/enforcement/penalty-offenses (last visited May 22, 2023).

[9] Press Release, Federal Trade Commission., FTC Warns Almost 700 Marketing Companies That They Could Face Civil Penalties if They Can't Back Up Their Product Claims (April 13, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/04/ftc-warns-almost-700-marketing-companies-they-could-face-civil-penalties-if-they-cant-back-their?utm_source=govdelivery, *see also Enforcement: Penalty Offenses Concerning Endorsements*, Federal Trade Commission, https://www.ftc.gov/enforcement/notices-penalty-offenses/penalty-offenses-concerning-endorsements (last visited May 22, 2023) (providing notice to companies by listing various FTC decisions).

[10] The Federal Communications Commission is the regulatory authority for a separate telecommunications statute, the Telephone Consumer Protection Act ("TCPA").  Several parties filed petitions before the FCC asking for a declaration that ringless voicemail is not covered by the TCPA.  On November 21, 2022—two years after the conduct in question here—the FCC ruled in the affirmative under the TCPA because it was "necessary to resolve a controversy and remove uncertainty about ringless voicemail."  The ruling was issued only after noticed procedures and a period for public comment pursuant to the Administrative Procedure Act.  *See In the Matter of R. and Regulations Implementing the Tel. Consumer Protec. Act of*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

penalties.  Such abuse of discretion and overreach marks this entire enforcement action.

## III.    STANDARD OF REVIEW

To avoid a Rule 12(b)(6) dismissal, the government must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory."  *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160 (S.D. Cal. 2020) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

A motion to strike is proper where a plaintiff seeks remedies to which it is not entitled. *See Logue v. Curtis Mgmt. Co., Inc.*, No. 19-CV-189-BAS-NLS, 2019 WL 2249981, at *2 (S.D. Cal. May 24, 2019) ("Motions to strike 'are commonly used to 'strike a prayer for relief where the damages sought are not recoverable as a matter of law.'") (Bashant, J.) (citation omitted). Striking "avoid[s] the expenditure of time and money that must arise from litigating spurious issues" and may "streamlin[e] the ultimate resolution of the action and focus[] ... attention on the real issues in the case." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fogerty v. Fantasy, Inc.*, 984 F.2d 1524, 1528 (9th Cir. 1993), *reversed on other grounds in Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 (1994).

## IV.    ARGUMENT

The government alleges several claims under the TSR (Counts III, IV, V and VI).  These claims require "telemarketing" and hinge on the making of "telephone calls."[11]  Specifically:

- Count III alleges that Atlas Defendants initiated or caused the initiation of "outbound ***telephone calls*** that deliver prerecorded messages."[12]

- Count IV alleges that Atlas Defendants initiated or caused the initiation of "outbound ***telephone calls*** that failed to disclose the identity of the seller . . . to the

---

*1991 Pet. for Declaratory Rul. of All About the Message, LLC*, CG02-278, 2022 WL 17225556, at *1-2 n.12 & n.17 (FCC Nov. 21, 2022).  *See also* 47 C.F.R. § 1.2.

[11] ***Bold and italics*** typeface contained in quotes throughout this brief denotes "emphasis added."

[12] Compl. ¶ 135.  *See* 16 C.F.R. § 310.4(b)(1)(v)(A).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

person receiving the **call**."[13]

- Counts V and VI allege that "in connection with **telemarketing**," the Atlas Defendants requested or received a payment of a fee for a "debt relief service" and that such conduct was an "abusive **telemarketing** act[] or practice[]."[14]

However, neither the statute nor the TSR apply to ringless voicemails, which are not telephone calls. As detailed below, because the complaint fails to allege that the Atlas Defendants made a "telephone call," the TSR claims fail to state a claim and should be dismissed.

### A.    Ringless Voicemail Is Not a "Telephone Call" Under Its Plain Reading

"Telephone call" is not defined under The Telemarketing Act, 15 U.S. Code § 6101, *et seq.*, the statute that led to promulgation of the TSR, nor in the TSR itself. Indeed, no court has analyzed whether ringless voicemails are "telephone calls" under the TSR.

"As a general interpretive principle, the Court looks to the plain meaning of the regulation and ends its inquiry there if the language is clear." *FTC v. Publishers Bus. Services, Inc.*, 821 F. Supp. 2d 1205, 1220 (D. Nev. 2010) (citing *Safe Air For Everyone v. Envtl. Prot. Agency*, 488 F.3d 1088, 1097 (9th Cir. 2007)). "A regulation should be construed to give effect to the natural and plain meaning of its words." *Bayview Hunters Point Cmty. Advocates v. Metro. Trans. Comm'n*, 366 F.3d 692, 698 (9th Cir. 2004) (quotation omitted). *See also FDIC v. Meyer*, 510 U.S. 471, 476 (1994) ("In the absence of such a definition, [courts] construe a statutory term in accordance with its ordinary or natural meaning."). "The plain language of a regulation, however, will not control if **clearly expressed** administrative intent is to the contrary or if such plain meaning would lead to absurd results." *Publishers Bus. Services*, 821 F. Supp. 2d at 1220 (quoting *Safe Air*, 488 F.3d at 1097) (quotation and alteration omitted).

Here, the plain meaning of "telephone call" is a telephonic communication in which the phone rings and the communication can be answered by the consumer. *See*, *e.g.*, *Oxford English*

---

[13] Compl. ¶ 138. *See* 16 C.F.R. § 310.4(d)(1).

[14] Compl. ¶¶ 65-66, 141, 144. *See* 16 C.F.R. § 310.3(a)(2)(x) ("It is a deceptive **telemarketing** act or practice…"); 16 C.F.R. § 310.4(a)(5)(i) (same); 16 C.F.R. § 310.2(gg) ("telemarketing" requires "use of one or more telephones and which involves more than one interstate **telephone call**").

*Dictionary* (defining "telephone call" as "the sound made by a ringing telephone"; "an instance of contacting someone by telephone; a telephone conversation");[15] *Oxford Learner's Dictionary* (defining "telephone call" as "the act of speaking to somebody on the phone");[16] *Macmillan Dictionary* (defining "telephone call" as "an occasion when you speak to someone on the telephone")[17]; *Collins English Dictionary* (defining "phone call" as "[i]f you make a phone call, you dial someone's phone number and speak to them by phone").[18]  When a consumer answers a telephone call, they speak to a live person or hear a prerecorded message begin to play.

Ringless voicemail technology is the opposite—there is no dialed connection, there is no ringing, and there is nothing to answer.  Instead, messages are delivered *directly* to a voicemail box by way of a server-to-server communication.  Compl. ¶ 39 (ringless voicemail technology delivers messages "without causing the recipient's phone to ring and without giving recipients the opportunity to answer or block the incoming prerecorded message").  *See also id.* ¶ 3 ("A ringless voicemail is a prerecorded message delivered to consumers . . . that typically does not cause their phones to ring.").  Ringless voicemail technology was, in fact, designed with the intent of *not being a telephone call*.  The technology is a non-intrusive, non-invasive form of communication since voicemail can be retrieved at a consumer's convenience.

The plain meaning of "telephone call" demonstrates that ringless voicemails are not "telephone calls."  This interpretation is bolstered by the text of the statute and regulations as well as congressional and agency intent.  Moreover, to interpret "telephone calls" under the Rule to include voicemails would lead to "absurd results."

---

[15] *Telephone Call*, Oxford English Dictionary, https://www.oed.com/view/Entry/198718?redirectedFrom=telephone+call#eid18838951 (last visited June 6, 2023).

[16] *Telephone Call*, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/telephone-call?q=telephone+call (last visited May 18, 2023).

[17] *Phone Call,* Macmillan Dictionary, https://www.macmillandictionary.com/us/dictionary/american/telephone-call (last visited May 18, 2023).

[18] *Phone Call*, Collins English Dictionary, https://www.collinsdictionary.com/dictionary/english/phone-call, (last visited June 5, 2023).

**B.**     **The TSR Does Not Regulate Ringless Voicemail Technology**

Because ringless voicemails do not ring consumer phones and cannot be answered, they are not telephone calls.  The statutory and regulatory text of the Telemarketing Act and the TSR, as well as the legislative and regulatory history, support this common sense view.

**1.**     **Neither the Statute nor the TSR Reference Ringless Voicemail**

The Telemarketing Act directed the FTC to prescribe rules prohibiting "a pattern of unsolicited *telephone calls* which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy." 15 U.S.C. § 6102(a)(3)(A).  *See also* 15 U.S.C. § 6106(4) (defining "telemarketing" to require "use of one or more telephones and which involves more than one interstate *telephone call*").  But there is not a single reference to "ringless voicemail" in the Telemarketing Act.

Similarly, the TSR references "telephone call" but does not reference ringless voicemails. *See, e.g.,* 16 C.F.R. § 310.2(x) (defining "outbound *telephone call*" as a "*telephone call* initiated by a telemarketer to induce the purchase of goods or services"); 16 C.F.R. § 310.2(gg) ("telemarketing" requires "use of one or more telephones and which involves more than one interstate *telephone call*"); 16 C.F.R. § 310.4(b)(1)(v) ("[I]t is an abusive telemarketing act or practice and a violation of this Rule" to "initiat[e] any outbound *telephone call* that delivers a prerecorded message" without prior express written consent); 16 C.F.R. § 310.4(d)(1) (the TSR is violated when a telemarketer induces the purchase of goods or services "in an outbound *telephone call*" but fails to identify the seller "to the person receiving the *call*").

**2.**     **The Text of the Statute and the TSR Clarify That "Telephone Call" Does Not Include Ringless Voicemail**

The text of the Telemarketing Act and TSR make clear that ringless voicemails are not telephone calls.  The statutory language shows that a telephone call must be a communication to a telephone line (not a voicemail system) that can be answered by a consumer.  For example, the statute excludes from the definition of "telemarketing" sales through the mailing of a catalog where the solicitor "only *receives calls* initiated by customers . . . and *during those calls takes orders only* without further solicitation." 15 U.S.C. § 6106(4).  Unlike a telephone call, it is not

1   possible to "take[] orders" while listening to a ringless voicemail.  A consumer does not answer

2   or engage with a ringless voicemail the way that a consumer does with a telephone call.

3        Other statutory references support the idea that that when Congress referenced a telephone

4   call it envisioned a communication that rings consumer telephone lines and is capable of being

5   answered.  Congress was concerned about harassment in the home, such as a ringing telephone

6   during dinner time.  *See* 15 U.S.C. § 6102(a)(3)(B) (FTC shall include "restrictions on the hours

7   of the day and night when unsolicited telephone calls can be made to consumers").  As a result,

8   the statute focuses on consumers answering the phone.  *See*, *e.g.*, 15 U.S.C. § 6102(a)(3)(C) (FTC

9   shall include "a requirement that any person engaged in telemarketing for the sale of goods or

10   services shall promptly and clearly disclose to ***the person receiving the call*** that the purpose of

11   the call is to sell goods or services."); 15 U.S.C. § 6102(a)(3)(D) (FTC shall include "a

12   requirement that any person engaged in telemarketing for the solicitation of charitable

13   contributions . . . shall promptly and clearly disclose to ***the person receiving the call*** that the

14   purpose of the call is to solicit charitable contributions . . . .").

15        The TSR, in turn, is replete with references that a telephone call rings a consumer's phone

16   and can be answered, which ringless voicemail does not.  In fact, the FTC declared that "[i]t is an

17   abusive telemarketing act or practice and a violation of this Rule" for a telemarketer to "[c]aus[e]

18   ***any telephone to ring***, or ***engag[e] any person in telephone conversation***, repeatedly or

19   continuously with intent to annoy, abuse, or harass any person at the called number.").  16 C.F.R.

20   § 310.4(b)(1)(i).  The TSR also states that it is an "abusive telemarketing act or practice" to

21   "harass[] any person who makes [] a [Do Not Call ("DNC")] request; ***hang[] up on that person***;

22   fail[] to honor the request; [and] ***requir[e] the person to listen to a sales pitch*** before accepting

23   the [DNC] request." 16 C.F.R. § 310.4(b)(1)(ii).  With ringless voicemail, it is not possible to

24   engage a consumer in live conversation, harass a person making a DNC request, "hang up" on a

25   consumer, or require a consumer to listen to a sales pitch before accepting a DNC request.  None

26   of these activities can be performed with ringless voicemail.

27        The TSR's prerecorded message provisions are also illustrative.  These provisions provide

28   that it is an abusive telemarketing act or practice to "[i]nitiat[e] any outbound ***telephone call that***

*delivers a prerecorded message*" unless certain requirements are met.  16 C.F.R. § 310.4(b)(1)(v).  These requirements include "[a]llow[ing] the *telephone to ring for at least fifteen (15) seconds or four (4) rings* before disconnecting an unanswered call."  16 C.F.R. § 310.4(b)(1)(v)(B)(i).   A recorded message must be played "[w]ithin two (2) seconds after *the completed greeting of the person called*."  16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

In creating these requirements, the FTC expressly recognized that a telephone call "could be *answered in person* by a consumer" or "could be *answered by an answering machine* or voicemail service."  16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(A) & (B).  The FTC provided consumers the ability to make a DNC request for each type of answered call.  For example, if a consumer answers a telephone call and wants to assert a DNC request, the consumer must be able to make that request "during the message" and the caller must "immediately *disconnect the call*."  16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(A)(2) & (3).  None of these requirements make sense in the context of ringless voicemail.  There is no "telephone to ring," no "greeting of the person called," no ability to "answer[] in person" or "answer[] by an answering machine," and there is nothing to "disconnect."

The call abandonment provisions further clarify that the TSR is limited to actual "telephone calls."  A telephone call is considered "abandoned" under the TSR "if a *person answers it* and the telemarketer does not *connect the call to a sales representative* within two (2) seconds of the *person's completed greeting*."  16 C.F.R. § 310.4(b)(1)(iv).  *See The Broad. Team, Inc. v. FTC*, 429 F. Supp. 2d 1292, 1295 (M.D. Fla. 2006) (noting that "the FTC's interpretation of § 310.4(b)(1)(iv) is that 'sales representative' means a 'live' sales representative, i.e., an actual person").  Likewise, there is a safe harbor for call abandonment violations, which track requirements similar to the prerecorded message provisions, including that abandoned calls shall be "no more than three (3) percent of all *calls answered by a person*," the telemarketer "allows the *telephone to ring for at least fifteen (15) seconds or four (4) rings* before disconnecting an unanswered call," and playing a recorded message "[w]henever a sales representative is not available to *speak with the person answering the call* within two (2) seconds after the *person's completed greeting*."  16 C.F.R. § 310.4(b)(4).  Again, none of these requirements make sense in

the context of ringless voicemail.  A ringless voicemail does not cause "the telephone to ring" and cannot be "answered," thus it is not possible to "connect the call to a [live] sales representative," "to speak with the person answering the call," for the consumer to "complete[] [a] greeting" or for the caller to "disconnect[]."

Further still, in light of the statutory directives from Congress, the call time restrictions are concerned with consumer phones *ringing* at all hours of the day "to a person's residence," thereby invading the privacy of consumers in their home.  16 C.F.R. § 310.4(c).  As a result, the FTC restricted when telemarketers could ring consumer telephones by limiting calling hours from 8:00 a.m. to 9:00 p.m. local time at the called person's location.  *Nat'l. Fed'n. of the Blind v. FTC*, 420 F.3d 331, 339 (4th Cir. 2005) ("The goal behind the [TSR's] time restraints . . . is not to prevent fraud, but to allow family life to proceed undisturbed by phone calls in the evening and early morning hours.").

The TSR's exemptions are also on point.  For example, the FTC exempted certain "[t]elephone calls in which the sale of goods or services . . . is not completed, and payment or authorization is not required, until after a face-to-face sales . . . presentation."  16 C.F.R. § 310.6(b)(3).  But it is not possible to complete a sale or to provide payment in the course of a ringless voicemail.  This is only possible during a telephone call, where a consumer can pick up the phone and engage with the caller.

In summary, the statutory text of the Telemarketing Act and the regulatory text of the TSR demonstrate that ringless voicemail is not a telephone call.  Since the plain meaning of the TSR is clear, the Court should "end[] its inquiry there."  *Publishers Bus. Services*, 821 F. Supp. 2d at 1220 (citation omitted).

### 3.    Legislative and Regulatory History Show That Ringless Voicemail Is Not a "Telephone Call"

If the texts of the Telemarketing Act and the TSR show that ringless voicemails are not "telephone calls," their legislative histories only confirm it.

"[T]he 1994 Telemarketing Act instructed the FTC to regulate telemarketers both to prevent fraud and to protect the privacy of the home."  *Nat'l. Fed'n. of the Blind*, 420 F.3d at 337.

1  To carry out these goals, the Telemarketing Act granted the FTC authority "to promulgate [and

2  enforce] rules regarding telemarketing practices." S. Rep. No. 103-80, at 1 (1993), 1993 WL

3  241282. But to control this grant of power, Congress drew careful lines. The Senate Report

4  explained:

5        The most significant definition [in the Telemarketing Act] is that of
        "telemarketing," which is defined as a "plan, program, or campaign which is

6        conducted to induce purchases of goods or services by significant use of one or
        more telephones and which has involved interstate *telephone calls*." *Other uses of*

7        *the telephone in connection with business or personal transactions are excluded*
        from the definition of telemarketing. . . the Committee intends the definition to

8        include any plan, program, or campaign *which is conducted over the telephone* to
        induce purchases of goods or services *during the course of the telephone call*, or

9        which is designed so that there will necessarily be substantial reliance on
        telephone communication.

10

11  S. Rep. No. 103-80, at 7. Congress expressly intended to cover telephone calls where a consumer

12  is "induce[d]" to purchase goods "over the telephone…during the course of a telephone call" and

13  expressly excluded "[o]ther uses of the telephone." Ringless voicemail plainly does not fit.

14        The TSR's regulatory history bears this out. The TSR's 2003 amendments explain that

15  "[t]he amended Rule removes any possibility of doubt that a call placed by a telemarketer is an

16  outbound *telephone call* within the meaning of the Rule, even if the telemarketer *hangs up* on the

17  called consumer without speaking to him or her . . . *A telemarketer initiates a telephone call by*

18  *causing the called consumer's telephone to ring*." Telemarketing Sales Rule, 68 Fed. Reg.

19  4580, 4643 (Jan. 29, 2003). Thus, a "telephone call" for TSR purposes *must* cause a "consumer's

20  telephone to ring." *See Broad. Team, Inc.*, 429 F. Supp. 2d at 1295 (defendant a "telemarketer"

21  under the TSR because defendant "is the entity which causes the consumer's telephone to ring").

22        The 2003 amendments also introduced call abandonment requirements. "[T]he twin evils

23  that prompted the abandoned calls rule" were hang-ups and dead air, which can only occur where

24  a consumer answers a telephone. *Id.* at 1301. The FTC was concerned about telephone

25  communications in which telemarketers hang up on consumers without speaking to them, or those

26  in which there is a prolonged period of silence between the time the consumer answers the call

27  and a live representative joins the call. 68 Fed. Reg. at 4641. The FTC noted that "abandoned

28  calls are 'one of the most invasive practices of the telemarketing industry,' because they frighten

consumers, invade their privacy, and waste their time." *Nat'l. Fed'n. of the Blind v. FTC*, 303 F. Supp. 2d 707, 716 (D. Md. 2004) (quoting 68 Fed. Reg. at 4642 n. 723), *aff'd. Nat'l. Fed'n. of the Blind*, 420 F.3d 331 (4th Cir. 2005). *See also* 68 Fed. Reg. at 4642 ("'Hang up' calls and 'dead air' frighten consumers, invade their privacy, ***cause some of them to struggle to answer the phone only to be hung up on***, and waste the time and resources of consumers working from home."). *See also Nat'l. Fed'n. of the Blind,* 420 F.3d at 343 (noting intrusions "when a family receives an abandoned call or a late night call that interrupts its evening").

In 2008, the FTC added prerecorded message restrictions to the TSR. The intent behind the amendment was to address the disruption caused by the ***ringing*** of a telephone in the privacy of one's home: "[T]he ringing of the telephone is anything but a minor ***invasion of the privacy of their homes***, particularly ***when the call they answer*** converts a ***two-way instrument of communication*** into a one-way broadcast of a prerecorded advertisement." Telephone Sales Rule, 73 Fed. Reg. 51164, 51177 (Aug. 29, 2008). *See also id.* at 51180 ("The mere ***ringing*** of the telephone to initiate such a [prerecorded] call may be disruptive.").

The concern for disrupting privacy in the home was echoed in discussions concerning "reasonable calling hours" to receive telephone calls. *Nat'l. Fed'n. of the Blind*, 303 F. Supp. 2d at 721 ("[T]he limits on calling time reflect concerns that calls at either end of the day are particularly invasive of home privacy, but they still provide a 'reasonable window [from 8:00am to 9:00pm] for telemarketers to reach their existing and potential customers.'" (quoting 68 Fed. Reg. at 4647)). Indeed, the "protection of privacy in the home" or "protecting residential peace," including from "excessive intrusions into the home" was a "government interest[] that the TSR was designed to advance." *Nat'l. Fed'n. of the Blind*, 420 F.3d at 339, 351 (noting that calling time restrictions were "to protect privacy").

Importantly, the 2008 amendment concerns *telephone calls that deliver prerecorded messages* (i.e., a telephone call that rings a consumer phone and can play a message once the consumer answers the phone). Only then is it possible to be disrupted at home and "convert[] a two-way instrument of communication into a one-way broadcast" when "they answer." 73 Fed. Reg. at 51177. All of this would be nonsensical in the context of ringless voicemail. Ringless

1   voicemail is not a "two-way instrument of communication." The phone does not ring and the

2   consumer cannot "answer." Ringless voicemail is the opposite—it alleviates "disruptive" ringing

3   because the transmission is "ringless." That is its very nature.

4       The legislative and regulatory history confirm that neither Congress nor the FTC

5   contemplated the TSR to cover the ringless voicemail technology at the center of this case. To

6   the contrary, Congress expressly envisioned that this type of technology would *not* be covered.

7                                        \*\*\*

8       The plain meaning of the TSR demonstrates that "telephone call" does not include ringless

9   voicemail. The Court should "end[s] its inquiry there." *Publishers Bus. Services, Inc.*, 821 F.

10  Supp. 2d at 1220. Should it wish to look further, Congressional intent and the FTC's

11  administrative intent support this view. Telephone calls ring telephone lines and can be

12  answered; ringless voicemails do not. Any other reading of the TSR would lead to an absurd

13  interpretation. *See id.* at 1220-21 (holding that plain reading of the TSR term "business" means

14  business-to-business telephone calls and rejecting interpretation that would lead to an "absurd

15  result"). Without a "telephone call," the TSR does not apply.

16  **C.   The FTC Exceeded Its Authority**

17      Even if a ringless voicemail could be considered a telephone call, the TSR claims still fail

18  because the FTC did not provide fair notice of its interpretation or engage in rulemaking and it

19  cannot expand the scope of the Rule through the instant litigation.

20      **1.   The FTC Failed to Provide Specificity or Fair Notice Under the TSR**

21      Pursuant to Section 5 of the FTC Act, the FTC may only prescribe "***rules which define***

22  ***with specificity*** acts or practices which are unfair or deceptive acts or practices in or affecting

23  commerce." 15 U.S.C. § 57a(a)(1)(B). By contrast, the FTC has "no authority under this

24  subchapter, other than its authority under this section, to prescribe any rule with respect to unfair

25  or deceptive acts or practices[.]" 15 U.S.C. § 57a(2).

26      The FTC failed to define the TSR with the specificity required to initiate the instant

27  enforcement action seeking the imposition of civil penalties. *See LabMD, Inc. v. FTC*, 894 F.3d

28  1221, 1236 (11th Cir. 2018) (specificity is required where "the stakes involved for a violation are

. . . severe penalties or sanctions"). "[T]he application of a regulation in a particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited." *Phelps Dodge Corp. v. Fed. Mine Safety and Health Rev. Comm'n.*, 681 F.2d 1189, 1192 (9th Cir. 1982). Moreover, "[i]f a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express." *Id.* at 1193 (quoting *Diamond Roofing Co., Inc. v. Occupational Safety and Health Rev. Comm'n.*, 528 F.2d 645, 649 (5th Cir. 1976)). This is particularly true where an agency "is merely advancing a litigation position." *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995).

The TSR cannot be construed to cover ringless voicemails. As explained in detail above, the legislative and regulatory texts, as well as the legislative and regulatory histories, show that Congress and the FTC did not intend to cover ringless voicemail under the TSR. Even assuming *arguendo* that the FTC intended to cover ringless voicemail, the language of the TSR did not provide fair warning and the Rule "cannot be construed to mean what [the] agency intended but did not adequately express." *Phelps Dodge*, 681 F.2d at 1193.

To the extent that the government seeks to extend the TSR to include ringless voicemail technology, the TSR "inadequately expresses an intention to reach the activities to which [the FTC] applied it" and the government's position is not entitled to deference. *See Phelps Dodge*, 681 F.2d at 1190, 1193 (finding abuse of discretion where regulation "did not give fair warning that it was applicable to petitioner's conduct"); *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1332 (9th Cir. 1982) (holding that FTC abused its discretion in reading of FTC rule where "the result is inconsistent with the rule" and stating that "[i]f the FTC wishes to amend the rule…it may do so in a formal rule-making proceeding"); *Katharine Gibbs Sch. (Inc.) v. FTC*, 612 F.2d 658, 662 (2d Cir. 1979) (vacating FTC rule where "trade regulation rules are needed to define with specificity conduct that violates the statute and to establish requirements to prevent unlawful conduct") (quotation omitted). *See also* 5 U.S.C. § 706(2)(A) (court must "set aside agency action . . . found to be . . . arbitrary, capricious, [or] an abuse of discretion"); H.R. Rep. No. 103-20, at 7 (1993), 1993 WL 54276 (Congress authorized the FTC to prescribe rules that

"are necessary to provide 'bright line' guidance"). This is especially true where the government is "merely advancing a litigation position" to pursue penalties in this enforcement action. *Trident Seafoods*, 60 F.3d at 559 (no deference owed to agency "when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position").

If the FTC wanted "telephone call" to encompass ringless voicemail, it should have initiated rulemaking through noticed procedures and public comment. *See* 15 U.S.C. § 6102(b); 5 U.S.C. § 553(b); 15 U.S.C. § 57a(b). It cannot engage in rulemaking through litigation.

## 2. FTC Exceeded Its Authority by Failing to Engage in Rulemaking

The FTC could engage in rulemaking concerning ringless voicemail technology under two different statutes, yet it has pursued neither.

*First*, under the Telemarketing Act, the FTC may issue rules under the Administrative Procedure Act ("APA"), 15 U.S.C. § 6102(b). The APA states, "[T]he agency shall give interested persons an opportunity to participate . . . through submission of written data, views, or arguments" and shall consider "relevant matter presented." 5 U.S.C. § 553(c). Any final or amended rule's effective date is "not less than 30 days" after notice is published in the Federal Register, 5 U.S.C. § 553(d), so impacted parties are provided adequate notice and a chance to comply with the new rule.

*Second*, the Commission may pursue its unique Magnuson-Moss rulemaking with respect to unfair or deceptive acts or practices under the FTC Act itself, which requires the Commission to, *inter alia*, issue "a notice of proposed rulemaking stating the particularity of the text of the rule, including any alternatives, which the Commission proposes to promulgate, and the reason for the proposed rule." 15 U.S.C. § 57a(b)(1). The FTC must then "allow interested persons to submit written data, views, and arguments," "make all such submissions publicly available" and "provide an opportunity for an informal hearing." *Id.* Then, if appropriate, the FTC may promulgate or amend a rule "based on the matter in the rulemaking record." *Id. See also* 15 U.S.C. § 57a(d)(2)(B) ("A substantive amendment to... a rule promulgated under subsection (a)(1)(B) shall be prescribed, and subject to judicial review, in the same manner as a rule prescribed under such subsection."). Only after notice, public comment, and review of an

informed record can the FTC pursue a Rule violation under the FTC Act.[19]  *See* 15 U.S.C. § 57a(d)(3) (once a FTC rule "takes effect a ***subsequent violation*** thereof shall constitute an unfair or deceptive act or practice in violation of section 45(a)(1)").

The FTC knows how to amend the TSR.  The TSR was first promulgated in 1995.  *See* Telemarketing Sales Rule, 60 Fed. Reg. 43842 (Aug. 23, 1995).  Since 1995, the FTC has amended the TSR four times: (1) in 2003, when it created the National Do Not Call Registry and extended the Rule to cover telemarketing calls soliciting charitable contributions; (2) in 2008, to prohibit telephone calls delivering prerecorded messages that sell a good or service or solicit charitable contributions;[20]  (3) in 2010, to ban the telemarketing of debt relief services requiring an advance fee; and (4) in 2015, to bar the use of certain novel payment mechanisms in telemarketing.[21]

Indeed, the TSR is currently under "regulatory review" right now.  As part of its regulatory review, the FTC considers the "impact of changes in the marketplace and ***new technologies*** on the Rule."[22]  It "ensure[s] [the rules] are up-to-date" and considers whether "the rule or guide [has] been affected by any technological … changes."[23]  The FTC "rel[ies] on the public, including consumers, businesses, advocates, industry experts and others to help [it] decide

---

[19] Rule amendments are also "subject to judicial review." 15 U.S.C. § 57a(d)(2)(B).  *See generally* 15 U.S.C. § 57a(e) (setting forth process and procedures for judicial review).  Further material may be submitted and the FTC "may modify or set aside its rules or make a new rule by reason of the additional submissions and presentations." 15 U.S.C. § 57a(e)(2).  A court may "set aside the rule" and "grant appropriate relief," including if "the Commission's action is not supported by substantial evidence in the rulemaking record." 15 U.S.C. § 57a(e)(3).  *See also* 5 U.S.C. §§ 701-706 (judicial review under APA).

[20] While the TSR was amended to encompass prerecorded messages calls (also known as "robocalls"), these provisions pertain to telephone calls that deliver prerecorded messages.  Unlike ringless voicemails, robocalls ring telephone lines and can be answered by consumers, such that a consumer who answers a robocall will hear a prerecorded message play.  *See* Sections IV.A & B.

[21] *See* Telemarketing Sales Rule, 87 Fed. Reg. 33667, 33678 (Notice of Proposed Rulemaking June 3, 2022), https://www.federalregister.gov/documents/2022/06/03/2022-09914/telemarketing-sales-rule.

[22] Telemarketing Sales Rule, 87 Fed. Reg. 33662, 33662 (Advanced Notice of Proposed Rulemaking June 3, 2022) ), https://www.federalregister.gov/documents/2022/06/03/2022-10922/telemarketing-sales-rule.

[23] *Enforcement: Rulemaking, Retrospective Review of FTC Rules and Guides*, Federal Trade Commission, https://www.ftc.gov/enforcement/rulemaking/retrospective-review-ftc-rules-guides (last visited May 19, 2023).

whether it's time to update a rule."[24]  Through this process, the FTC has eliminated rules and "modified others to keep pace with changes in the marketplace."[25]

In June 2022, the FTC issued a Notice of Proposed Rulemaking to amend the TSR to address business-to-business telemarketing calls and also issued an Advanced Notice of Proposed Rulemaking, seeking public feedback on other possible Rule changes.  As part of the amendment process, the FTC is seeking comment to add a new definition for "previous donor" to the TSR.  The FTC takes the position that its 2008 Amendment "makes it clear" what it "intended previous donor to mean" but acknowledges that it "did not include a definition of the term 'previous donor' to explicitly effect [its] intention."[26]  The FTC does not want the phrase to be "misinterpreted" and thus proposes a new definition.[27]  The same rationale applies here.[28]  If the FTC wanted to expand "telephone call" under the Rule to include ringless voicemail it should have engaged in noticed rulemaking procedures rather than proceeding through an enforcement action seeking massive civil penalties.

This is exactly what the Consumer Financial Protection Bureau ("CFPB") did when it amended Regulation F in order "to clarify the application of the [Fair Debt Collection Practices Act] to newer communication technologies."  Debt Collection Practices (Regulation F), 85 Fed. Reg. 76734, 76737 (Nov. 30, 3020).  The CFPB "propose[d] [] clarification because, given the specific language of FDCPA section 806(5), *the Bureau believe[d] that Congress may have intended for this provision to apply to communications that present the opportunity for the parties to engage in a live telephone conversation or that result in an audio message*."  Debt Collection Practices (Regulation F), 84 Fed. Reg. 23274, 23308 (proposed May 21, 2019).

---

[24] *Id*.

[25] *Id*.

[26] Telemarketing Sales Rule, 87 Fed. Reg. 33667, 33679 (Notice of Proposed Rulemaking June 3, 2022), https://www.federalregister.gov/documents/2022/06/03/2022-09914/telemarketing-sales-rule.

[27] *Id*.

[28] *See also* Telemarketing Sales Rule, 68 Fed. Reg. at 4587-4599 (modifying certain TSR definitions and proposing five new definitions to provide clarity and address concerns).

Interpreting similar language under the FDCPA,[29] the CFPB recognized that ringless voicemail is not a "telephone call":

> [S]ection 806(5) of the FDCPA prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." **The focus on telephone calls suggests that the provision was meant to apply to communications that present the opportunity for the parties to engage in a live telephone conversation or that result in an audio message.** Ringless voicemails are audio messages that allow debt collectors to bypass a person's opportunity to answer the telephone by connecting directly to the person's voicemail.

85 Fed. Reg. at 76802.

Accordingly, the CFPB amended Regulation F[30] to cover ringless voicemail. 85 Fed. Reg. at 76804 ("'[P]lacing a telephone call' for purposes of § 1006.14(b) includes conveying a ringless voicemail."). Notably, during the CFPB's rulemaking process, the FTC advocated for ringless voicemails to be covered by the FDCPA, in order to "ensur[e] that any protections from excessive contacts apply to calls that 'may not cause a traditional ring,' including ringless voicemails." *In the Matter of Proposed Rule With Request for Public Comment, Debt Collection Practices (Regulation F)*, No. CFPB-2019-0022; RIN 3170-AA41, 2019 WL 4635649, at *11 (Sep. 18, 2019). As the FTC acknowledged, the way to "ensure" ringless voicemail is covered is to amend the regulation.

Yet the FTC has not amended the TSR, though it has addressed emerging technology through rule amendments. For example, the FTC recently proposed amending the Health Breach Notification Rule to "help clarify technologies . . . covered by the Rule."[31] Ringless voicemail

---

[29] *Cf.* 16 C.F.R. § 310.4(b)(1)(i) ("It is an abusive telemarketing act or practice and a violation of [the TSR]" for a telemarketer to "[c]aus[e] any telephone to ring, or engag[e] any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."); Telemarketing Sales Rule, 68 Fed. Reg. at 4643 (Under the TSR, "[a] telemarketer initiates a telephone call by causing the called consumer's telephone to ring.").

[30] The CFPB issued Final Comment 14(b)-1. Commentary is the vehicle by which the CFPB supplements Regulation F, 12 C.F.R. § 1006, pursuant to the Bureau's authority to prescribe rules under 15 U.S.C. § 1692*l*(d) and in accordance with the notice-and-comment procedures for rulemaking under the APA.

[31] Press Release, Federal Trade Commission, FTC Announces Tentative Agenda for May 18 Open Commission Meeting (May 11, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-announces-tentative-agenda-may-18-open-commission-meeting?utm_source=govdelivery.

technology presents precisely the kind of situation for which rulemaking procedures were designed and from which the FTC (and the Rule) could benefit from experts explaining how ringless voicemail technology works and how it differs from a "telephone call," commentary from the public (e.g., consumers, businesses, advocates, and industry), and after reviewing a complete rulemaking record, whether and how to amend the TSR. *See, e.g.*, 5 U.S.C. § 553(c) (FTC must "give interested persons an opportunity to participate … through submission of written data, views, or arguments" and consider "relevant matter presented"); 15 U.S.C. § 57a(b)(1). That an "amendment proceeding . . . requires a substantial, long-term investment" is no justification for lack of fair notice, particularly where the FTC seeks to enforce Rules through civil penalties.[32] *See Phelps Dodge*, 681 F.2d at 1193.

Here, the FTC has not raised the issue of ringless voicemail technology for public discussion or regulatory review. Instead, the Commission seeks enforcement and civil penalties through the DOJ. In doing so, the FTC blatantly disregards its rulemaking responsibilities prescribed by Congress, ignores its own precedent and practices, and deprives the Atlas Defendants and the telemarketing industry of the opportunity to be heard on a significant amendment to the TSR and a widespread expansion of existing law.[33]

### 3. The FTC Cannot Create New Law Through Adjudication

The FTC is seeking to impose fines under the novel theory that the TSR's definition of "telephone call" encompasses ringless voicemail. But the Supreme Court has rejected the notion that adjudication is a permissible means of expanding the scope of a rule. *See NLRB. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 295 (1974) (permitting adjudication where "this is ***not*** a case in which some new liability is sought to be imposed on individuals for past actions which were taken in good-faith reliance . . . ***Nor are fines or damages involved here***.").

---

[32] Telemarketing Sales Rule, 87 Fed. Reg. at 33663.

[33] This is not the first time the FTC has overreached. For decades, the FTC skirted its administrative procedures by going directly to federal court and seeking monetary relief under Section 13(b) of the FTC Act. *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1349 (2021) (FTC could not circumvent its administrative procedures where it lacked authority to seek monetary relief under Section 13(b)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

"[T]he Court favors, whenever possible, the use of prospective quasi-legislative rule-making powers to formulate new standards rather than ad hoc adjudication." *Ruangswang v. Immigr. & Naturalization Serv.*, 591 F.2d 39, 44 (9th Cir. 1978). The Supreme Court acknowledges that "rulemaking is generally a better, fairer, and more effective method" of announcing a new rule than ad hoc adjudication. *Cmty. Television of S. Cal. v. Gottfried*, 459 U.S. 498, 511 (1983). By referring this matter to the DOJ for litigation, the FTC seeks to significantly expand the TSR and expose Defendants to crushing civil penalties. But it is well-settled that "agencies can proceed by adjudication to enforce discrete violations of existing laws where the effective scope of the rule's impact will be relatively small; *but an agency must proceed by rulemaking if it seeks to change the law and establish rules of widespread application*." *Ford Motor Co. v. FTC*, 673 F.2d 1008, 1009 (9th Cir. 1981).

In *Ford Motor*, the FTC filed an action against automobile dealerships that provided owners of repossessed vehicles with a credit for the wholesale value of their repossessed vehicle, less overhead and other expenses, and then retained any surplus earned from the resale of the vehicle. *Id.* at 1008. The FTC filed suit, alleging that this practice violated the FTC Act. *Id.* at 1009. The Ninth Circuit determined that the FTC should have engaged in rulemaking, rather than adjudication, given that the FTC was adopting a rule of widespread interpretation which had the effect of changing existing law. *Id.* In so holding, the Ninth Circuit found significant that "[b]y all accounts this adjudication is the *first agency action* against a dealer for violating [the equivalent state statute] by doing what Francis Ford does." *Id.* at 1010. "One of the basic characteristics of law is that potential violators have, or can obtain, notice of it. *No notice of the FTC's view of the law has been pointed out to us.*" *Id.*

History repeats itself. The FTC failed to provide adequate notice that ringless voicemail would be implicated by the TSR. Instead, after remaining silent on the issue, DOJ brings this "first agency action" on behalf of the FTC under the TSR to retroactively apply a previously unannounced interpretation of the law. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012) ("[W]here, as here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute.");

1   *Ruangswang*, 591 F.2d at 45 (considering "[w]hether there was adequate notice" in determining

2   agency abuse of discretion and holding that the agency "did not provide the necessary notice");

3   *Pfaff v. U.S. Dept. of Hous. and Urb. Dev.*, 88 F.3d 739, 749 (9th Cir. 1996) ("The element of

4   retroactivity in this case only amplifies the unfairness[.]").

5        Indeed, to this day, the FTC *still* has not come out with any guidance on ringless

6   voicemail technology.[34] "The FTC could have formulated its position [on ringless voicemail

7   technology] in its [regulatory review of the TSR]. It did not do so." *Ford Motor*, 673 F.2d at

8   1010. Yet the FTC's position will be far-reaching with "general application. It will not apply just

9   to [Defendants]" but to every company that uses ringless voicemail technology. *Id.* Even the

10  FTC acknowledges that rulemaking is the proper course of action in such instances: "Where

11  industry-wide practices prevail, we [the FTC] would probably prefer to promulgate rules defining

12  violative conduct (***all who would be affected would be given notice and could participate***)[.]"[35]

13       If failure to provide notice were not enough, the government demands punishment through

14  civil penalties. This is wholly inappropriate. *See Montgomery Ward & Co., Inc.*, 691 F.2d at

15  1334 (vacating FTC cease and desist order for Rule violation "which would invoke penalties" and

16  expressing concern that "[a]ny instance of non-compliance will subject [defendant] to a ***civil***

17  ***penalty***"); *SmithKline Beecham Corp.*, 567 U.S. at 157 ("[A]n agency should not change an

18  interpretation in an adjudicative proceeding where doing so would impose 'new liability . . . on

19  individuals for past actions which were taken in good-faith reliance on [agency] pronouncements'

20  ***or in a case involving 'fines or damages'***'"); *Ruangswang*, 591 F.2d at 44 ("Adjudication might

21  also be inappropriate where 'some new liability' results from 'past actions which were taken in

22  good-faith reliance on [agency] pronouncements,' ***or where 'fines or damages' are involved***.")

23  (citing *Bell Aerospace*, 416 U.S. at 295); *Pfaff*, 88 F.3d at 748 (agency abuses its discretion

24  "where fines or damages are involved, and where the new standard is very broad and general in

25  scope and prospective in application"). *See generally LabMD, Inc.*, 894 F.3d at 1235 ("Indeed,

---

[34] *See Pet. for Declaratory Rul. of All About the Message, LLC*, 2022 WL 17225556, at *1-2 n.12 & n.17 (ruling on FCC petition under TCPA was "necessary to resolve a controversy and remove uncertainty about ringless voicemail").

[35] H.R. Rep. No. 93-1107, at 7743 (1974), 1974 WL 11709.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

'[t]he most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension.'") (citation omitted).

In short, "the FTC has exceeded its authority by proceeding to create new law by adjudication rather than by rulemaking." *Ford Motor*, 673 F.2d at 1010. *See also Patel v. Immigr. & Naturalization Serv.*, 638 F.2d 1199, 1205 (9th Cir. 1980) (rule should have been established by rulemaking where it had general applicability and where agency retroactively adopts new law). If the FTC wants to expand the TSR to regulate ringless voicemail technology, it must initiate rulemaking. *See Trident Seafoods*, 60 F.3d at 559 ("[T]he responsibility to promulgate clear and unambiguous standards is on the [agency]. The test is not what [the agency] might possibly have intended, but what [was] said. If the language is faulty, the [agency] had the means and obligation to amend." (quoting *Marshall v. Anaconda Co.*, 596 F.2d 370, 377 n.6 (9th Cir. 1979)); *Montgomery Ward & Co., Inc.*, 691 F.2d at 1329 ("An amendment [of an agency rule] is proper only when adequate notice is provided to affected parties pursuant to appropriate rule-making procedures.").

\* \* \*

For all these reasons, the TSR claims (Counts III-VI) should be dismissed.

### D.      The Government Cannot Recover Civil Penalties

The government alleges that civil penalties are warranted for TSR violations. Compl. ¶ 148 (citing Section 5(m)(1)(A)). *See also* 16 C.F.R. § 1.98(d) (maximum civil penalty of $50,120 for each TSR violation). But the government cannot pursue civil penalties for conduct that was not regulated at the time of the alleged wrongful acts. Since the TSR claims must be dismissed, civil penalties should be stricken. *See Logue*, 2019 WL 2249981, at \*2. Even if the TSR claims survive, civil penalties are not recoverable for multiple reasons.

### 1.      DOJ Lacks Authority to Pursue Civil Penalties

As a threshold matter, the DOJ brings this civil penalty action pursuant to Section 5(m)(1)(A) of the FTC Act for purported acts or practices in violation of Section 5(a) of the FTC Act and the TSR. Compl. ¶ 1. But the DOJ is not authorized to seek penalties in this case.

Specifically, DOJ alleges that it has authority to prosecute this case pursuant to a referral from the FTC.[36]  Compl. ¶ 3 (DOJ is "acting upon notification and authorization to the Attorney General by the Federal Trade Commission") (citing 15 U.S.C. § 56(a)(1)).  But the DOJ's authority is limited to actions "which the **Commission**, or the Attorney General **on behalf of the Commission**, is authorized to commence[.]"  15 U.S.C. § 56(a)(1).  *See also* 15 U.S.C. § 56(a)(2) ("the Commission shall have exclusive authority to commence" civil actions pursuant to Section 13(b) injunctive relief and Section 19 consumer redress "unless the Commission authorizes the Attorney General to do so" on its behalf).

The DOJ has no independent prosecutorial or enforcement authority under the TSR except through an FTC referral.  In other words, it cannot prosecute cases under the Telemarketing Act or TSR on its own accord.  Its authority is entirely derivative of the FTC's authority.  If the FTC is not authorized to commence an action, then neither is the DOJ *on behalf of the FTC. See*, *e.g.*, *United States v. Landmark Fin. Services, Inc.*, 612 F. Supp. 623, 626 (D. Md. 1985) (concluding "that section 704(c) [of the Equal Credit Opportunity Act] allows the FTC and ***in turn the Attorney General*** to bring this action"); *United States v. St. Regis Paper Co.*, 355 F.2d 688, 695 (2d Cir. 1966) (DOJ lacked authority to seek civil penalties for violation of FTC cease and desist order where the FTC had not certified the matter to the DOJ).[37]  While Section 45(m)(1)(A) purports to give civil penalty power to the FTC, Congress' grant of that authority was unconstitutional.

When Congress created the FTC in 1914, it granted the agency only "quasi-legislative or quasi-judicial powers" and specifically, administrative adjudications, investigations and reports to Congress, and recommendations to courts as a master of chancery.  *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935).  This combination of limited fact finding, regulatory,

---

[36] DOJ fails to plead that it commenced this action within 45 days of "written notification" from the FTC. 15 U.S.C. § 56(a)(1).  Defendants reserve the right to challenge jurisdiction on these grounds.

[37] Former Section 56 provided that prior to seeking civil penalties under Section 45(*l*), "[the FTC] shall certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for [] enforcement[.]" *St. Regis Paper Co.*, 355 F.2d at 690-91 n.2.  FTC certification was "a jurisdictional prerequisite to a Section 5(*l*) civil penalty suit." *Id.* at 698.

and injunctive powers was very much the role President Wilson envisioned for the agency. Shortly after the enactment of the FTC Act, President Wilson stated:

> [A]n attempt was very properly made . . . to provide tribunals which would distinctly determine what was fair and what was unfair competition; and to supply the business community, not merely with lawyers in the Department of Justice who could cry, "Stop!", but with men in such tribunals as the Federal Trade Commission, who could say, "Go on," who could warn where things were going wrong and assist instead of check.[38]

This very limited FTC, by design, bore little resemblance to a law enforcement agency. That is why it was reviewed and blessed by the Supreme Court in *Humphrey's Executor.*

In 1975, however, Congress granted the FTC the power to obtain civil penalties under Section 45(m) and consumer redress under Section 57b. This grant of authority is unconstitutional and inconsistent with the FTC's role as an independent agency. The ability to bring enforcement suits in federal court seeking monetary relief and civil penalties is an executive power that was not considered in *Humphrey's Executor. See Humphrey's Executor*, 295 U.S. at 624, 628 (FTC powers in 1935 were not executive, instead FTC was to perform duties "as a legislative or as a judicial aid"). Congress' grant of monetary authority to the FTC exceeds the scope of powers that can be constitutionally vested in an agency whose members are not removable at will by the President. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) (refusing to extend *Humphrey's Executor* to the CFPB and holding that executive power includes the ability to remove officers on an unrestricted basis); *cf.* 15 U.S.C. § 41 (President may only remove FTC Commissioners for "inefficiency, neglect of duty, or malfeasance in office"). In other words, Congress violated the Constitution when it amended the FTC Act to grant the FTC, an independent agency, executive litigation powers.

The FTC cannot insulate itself from Constitutional challenges simply by referring this matter to the DOJ.[39] And the FTC cannot confer authority that it does not have in the first

---

[38] Winerman, Marc, *The Origins of the FTC: Concentration, Cooperation, Control and Competition*, 71 Antitrust L.J. 1 (2003) (quoting 38 Papers of Woodrow Wilson (Arthur S. Link ed.), 336, 340-41), https://www.ftc.gov/sites/default/files/attachments/federal-trade-commission-history/origins.pdf.

[39] The FTC's authority and enforcement powers—indeed its very existence—has been questioned. The Supreme Court will likely decide the issue. *See Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023) (parties may directly challenge constitutionality of FTC's structure, existence, and enforcement authority

instance.  Simply put, the DOJ cannot stand in the shoes of the FTC where the FTC itself lacks executive authority.  To allow otherwise would permit an end run around constitutional rights and violate bedrock principles rooted in this country's separation of powers.  Thus, the FTC—and DOJ on behalf of the FTC—lack constitutional authority to seek civil penalties in this action.[40] *See Humphrey's Executor*, 295 U.S. at 628–632; *Seila Law*, 140 S. Ct. at 2215 n.2 (CFPB "Director's enforcement authority includes the power to seek ***daunting monetary penalties*** against private parties on behalf of the United States in federal court [is] a quintessentially executive power not considered in *Humphrey's Executor*" and noting that "[t]he Court's conclusion [in *Humphrey's Executor*] that the FTC did not exercise executive power has not withstood the test of time"); *Buckley v. Valeo*, 424 U.S. 1 (1976) (Article II precluded agency from exercising judicial relief); *Bowsher v. Synar*, 478 U.S. 714 (1986) (executive powers vested in Comptroller General were unconstitutional).  Because neither the FTC nor DOJ on the FTC's behalf have Constitutional authority to prosecute this civil penalty case, it must be dismissed.

## 2. DOJ Has Not Pled a Basis for Imposing Civil Penalties

Even if DOJ had proper authority, this is not a civil penalty case.  The Complaint alleges that "Defendants' violations of the TSR described above were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A)."  Compl. ¶¶ 148-49.  To impose civil penalties, a defendant must have "actual knowledge or knowledge fairly implied

---

in federal district court).  Much ink has been spilled on these issues.  *See, e.g.,* Eleanor Tyler, *Did SCOTUS Just Herald the Death of Expert Agencies?* Bloomberg Law, (Apr. 20, 2023) ("The *Axon* decision is about jurisdiction and procedure—but the case is likely to return to the Supreme Court like a flaming boomerang on the merits of whether the FTC and the SEC are constitutional.  The current Court may indeed hold that the FTC, which has existed and worked for consumers for more than 100 years, never should have been."), https://news.bloomberglaw.com/bloomberg-law-analysis/analysis-did-scotus-just-herald-the-death-of-expert-agencies; Christine Wilson, Former FTC Commissioner, *Why I'm Resigning as an FTC Commissioner*, Wall Street Journal, (Feb. 14, 2023), https://www.wsj.com/articles/why-im-resigning-from-the-ftc-commissioner-ftc-lina-khan-regulation-rule-violation-antitrust-339f115d (detailing various "[a]buse[s] of regulatory authority" at the FTC, including "willful disregard of Congressionally imposed limits on agency jurisdiction, [] defiance of legal precedent, and [] abuse of power to achieve desired outcomes"); Lauren Berg, *FTC's Khan Accused Of 'Abuse Of Power' In House Probe*, Law360, (Jun. 1, 2023) (discussing investigation by House Committee on Oversight and Accountability concerning whether the FTC is "abusing its power and disregarding the rule of law" and "has become a rogue agency").  *See also supra* note 33.

[40] The same applies to consumer redress.  *But see* Compl. ¶¶ 147-48.

on the basis of objective circumstances that [an] act is unfair or deceptive **and is prohibited by such rule**." 15 U.S.C. § 45(m)(1)(A).  The government does not—and cannot—come close to meeting this standard.

The government alleges that the Atlas Defendants had the requisite knowledge that "their activities were covered by the TSR and violated it, as demonstrated by, among other things, their receipt of such complaints; their engagement of and interactions with telemarketing compliance legal counsel; [and] DiRoberto's involvement in prior TSR enforcement litigation, including *United States v. Dish Network, LLC*, No. 09-3073 (C.D. Ill.)[.]"  Compl. ¶ 84.  These allegations are plainly deficient.  None of these allegations—individually or collectively—show that the Atlas Defendants knew that ringless voicemails were regulated by the TSR.  In fact, some of the allegations show the *exact opposite*.  For example, DOJ alleges that civil penalties are warranted due to the Atlas Defendants' "engagement of and interactions with telemarketing compliance legal counsel."  In truth, this allegation shows that the Atlas Defendants did not already "know" the law and hired counsel to help them comply.[41]  On its face, it does not support civil penalties. Penalties under these circumstances would have a chilling effect on compliance, set bad precedent, and deter marketers from seeking legal advice on compliant business practices.

Nor does DiRoberto's involvement in a prior TSR enforcement proceeding show actual or implied knowledge *in this case*.  The *Dish Network* case did not involve ringless voicemail technology.  Also, DOJ's reference to "consumer complaints and correspondence" is vague and lacks any detail with regard to the scope of the TSR.  In short, the government does not allege that the Atlas Defendants knew they were violating the TSR.  The reason is simple—it cannot.

### 3. DOJ Cannot Plead a Basis for Imposing Civil Penalties

The challenge for the government on civil penalties extends well beyond the allegations of the Complaint.  Civil penalties are only appropriate where the law is clear and the government can show the requisite knowledge.[42]

---

[41] These allegations are disingenuous.  Should this case survive the pleadings, the Atlas Defendants will present the legal opinion letter they received from telemarketing counsel, previously produced to both the FTC and DOJ, opining that ringless voicemails are *not* telephone calls.

[42] This issue is the most significant impediment to any settlement of this matter, as the DOJ has been

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Here, the government cannot show that ringless voicemail implicated the TSR. Even if ringless voicemail could be deemed to be a "telephone call" for TSR purposes, the government would not be able to show the knowledge required to impose penalties given the "uncertainty" and "controversy" concerning the regulation of ringless voicemail.[43]  Stated differently, civil penalties require a showing that the Atlas Defendants actually *knew* that ringless voicemails were squarely covered by the TSR. Compl. ¶ 148. This is an impossible feat given the text and history of the Telemarketing Act and the TSR stating otherwise. There is no fair notice, much less "actual" or "implied" knowledge required to impose punishment in the form of penalties.

The government attempts to deliver "notice" through this enforcement proceeding. But "[i]t is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding[.]" *SmithKline*, 567 U.S. at 158-59.

> This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the [FTC] that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC . . . Given this dearth of guidance and the less-than-pellucid statutory text, [defendant]'s reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (discussing Fair Credit Reporting Act). Simply put, civil penalties are not appropriate in this case. *See Trident Seafoods*, 60 F.3d at 559 (corporation cannot be subject to a penalty "not clearly applicable either by statute or by regulation"); *Montgomery Ward & Co. Inc.*, 691 F.2d at 1328-32 (FTC cannot impose stricter standards in an adjudication than those plainly specified in a promulgated regulation).

The government has not and cannot plausibly allege that the Atlas Defendants knew or should have known that their actions violated the TSR. *See FTC v. Walmart, Inc.*, No. 22 CV

---

unequivocal in its intent to pursue devastating civil penalties against the Atlas Defendants.

[43] *Supra* note 34.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    3372, 2023 WL 2646741, at *20 n.33 (N.D. Ill. Mar. 27, 2023) (dismissing request for civil

2    penalties because complaint failed to allege violations of the TSR); *see also United States v. Dish*

3    *Network, L.L.C.*, No. 09-3073, 2016 WL 97688, at *1 (C.D. Ill. Jan. 7, 2016) ("A person

4    knowingly violates an FTC rule if, under the circumstances, a reasonable, prudent person would

5    have known of the existence of the rule and that his or her acts or practices violated the rule.");

6    *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010)

7    (defendant's mistake or uncertainty as to the law precludes liability).  As the FTC acknowledges,

8    it cannot "impose a monetary penalty" unless the law provides the defendant with notice of "the

9    specific . . . measures it needed to take [to comply]."  Brief for Respondent, *LabMD v. FTC*, 894

10   F.3d 1221 (11th Cir. 2018) (No. 16-16270), 2017 WL 562771, at *20.

11          **E.      The Misrepresentation and DRS Claims Should Be Dismissed**

12          Count I alleges that the Atlas Defendants made misrepresentations regarding a "debt relief

13   service" and specifically, that (1) consumers who purchase a "debt relief service" can be out of

14   credit card debt in 24 months or less and/or (2) monthly payments for "debt relief services" would

15   be applied toward consumer's debt, in violation of Section 5(a) of the FTC Act.  Compl.

16   ¶¶ 127-130.  Count V also alleges misrepresentations and Count VI alleges the charging of fees in

17   connection with a "debt relief service," both in violation of the TSR.  These counts also fail.

18          **1.      DOJ Fails to Plead With Particularity Under Rule 9(b)**

19          It is well settled in the Ninth Circuit that alleged violations of the FTC Act sounding in

20   fraud must satisfy Rule 9(b)'s specificity demands.  *See, e.g., FTC v. Lights of Am., Inc.*, 760 F.

21   Supp. 2d 848, 854 (C.D. Cal. 2010) (granting motion to dismiss because FTC's complaint did not

22   satisfy Rule 9(b)); *FTC v. D-Link Sys., Inc.*, 3:17-CV-00039-JD, 2017 WL 4150873, at *2 (N.D.

23   Cal. Sept. 19, 2017) ("The FTC's deception claims are premised on exactly these types of

24   misleading statements to consumers, and so Rule 9(b) must apply to them."); *FTC v. ELH*

25   *Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 4759267, at *1 (D. Ariz. Sept. 4, 2013)

26   (same).  *See generally Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107-08 (9th Cir. 2003).

27   As a result, the government must plead the "who, what, when, where, and how" of the fraudulent

28   conduct charged.  *Id.* at 1106.  Mere conclusory allegations are insufficient.  *Moore v. Kayport*

*Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The alleged misrepresentation claims sound in fraud, so they must be pled with particularity. They are not. For example, throughout the Complaint, the government blanketly alleges that purported fraudulent activity occurred "in numerous instances." *See, e.g.*, Compl. ¶ 76 ("In numerous instances" Atlas represented that monthly payments would be used to pay consumer debt); ¶ 128 ("In numerous instances . . . the Atlas Defendants . . . represented that . . . monthly payments for debt relief service would be applied toward consumer's debt."); ¶ 141 ("[I]n numerous instances since September 12, 2019, in connection with the telemarketing of a debt relief service, Atlas Defendants . . . have misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief service . . . .").

These allegations do not allege the requisite who, what, when, where, and how or show a misrepresentation. Counts I and V allege in conclusory fashion that the alleged misrepresentations are "false" without any supporting facts. For example, the DOJ takes issue with the alleged representation that "consumers' monthly payments for debt relief service [sic] would be applied toward consumer's debt," yet the DOJ also alleges that consumers were informed that "the monthly fees were for the Atlas Defendants' fees only." Compl. ¶¶ 77, 128(b), 141(b). Indeed, there are no examples or "instances" actually pled, just conclusory allegations. Moreover, the allegations do not differentiate between conduct committed by the Atlas Defendants and the Kasm Defendants. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) ("Broad allegations that include no particularized supporting detail do not suffice" for Rule 9(b) purposes. As such, Counts I and V should be dismissed.

### 2. DOJ Does Not Allege a "Debt Relief Service"

Counts I, V and VI rely on the premise that Defendants engaged in "debt relief services." *See* Compl. ¶ 128 (alleging advertising "of a debt relief service"); ¶ 141 (alleging "telemarketing of a debt relief service"); ¶ 144 (same). The TSR defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors[.]" 16 C.F.R. § 310.2(o).

The Complaint fails to allege that Atlas Defendants engaged in a "debt relief service." Rather, the allegations show that Ace and/or the Atlas Defendants offered document preparation for "debt validation letters." *See* Compl. ¶ 78 ("Barnes and Ace were 'sellers' that, in connection with the Atlas Defendants' telemarketing, provided debt validation letter writing services to consumers in exchange for consideration."); ¶ 79 (Atlas Defendants' services that were "carried out by Ace, consisted of a series of debt validation letters sent by Ace to consumers' creditors challenging the validity of the consumers' debt, regardless of whether the consumers believed the debt was, in fact, invalid"); ¶ 80 (Ace received payments and distributed a percentage of fees to Atlas Defendants "regardless of whether Ace had sent a debt validation letter for the consumers at that time" and that "[f]requently, no debt validation letter had been sent at that time"); ¶ 82 (Atlas Defendants charged consumers "for multiple debt validation letters over 36 to 48 months").

Preparation of "debt validation letters"—letters sent to debt collectors to confirm the validity of a debt—are not, by definition, "debt relief services." Debt relief services must "alter the terms of payment or other terms of the debt." 16 C.F.R. § 310.2(o). The alleged service provided by the Atlas Defendants is therefore distinct from a "debt relief service." Dismissal is warranted on this basis alone.

Even if the Complaint's allegations were adequate, the Atlas Defendants still cannot be liable. As explained in Sections IV.A and IV.B above, the Atlas Defendants did not initiate "telephone calls." As such, the TSR does not apply. For these reasons, Counts I, V, and VI should be dismissed. *See Kornea v. J.S.D Mgt., Inc.*, 366 F. Supp. 3d 660, 668-69 & n.32 (E.D. Pa. 2019) (dismissing TSR claims with prejudice because plaintiff failed to allege a "'plan, program, or campaign ... to induce purchases of goods or services' through interstate phone calls" or "more than one interstate telephone call").

Furthermore, the government has not shown that civil penalties are warranted. The government has not pled any facts showing that the Atlas Defendants *knew* that debt validation letters constituted a "debt relief service" under the TSR. Petersen's investigational hearing testimony, in which he allegedly stated that "most consumers would not be out of credit card debt within 24 months or less," does not demonstrate that Petersen knew that debt validation letters

1   constitute a "debt relief service."  Compl. ¶ 82.  In any event, such testimony was provided long

2   *after* the alleged conduct in question.

3        **F.        DOJ Cannot Obtain Section 13(b) Injunctive Relief**

4        The government seeks a "permanent injunction to prevent future violations of the TSR

5   and the FTC Act."  Compl., Prayer for Relief.  But the government cannot enjoin conduct that is

6   not regulated in the first instance.  *See* Sections IV.A and IV.B.  Moreover, Section 13(b) allows

7   the FTC to seek injunctive relief only when it believes "that any person, partnership, or

8   corporation ***is violating, or is about to violate***, any provision of law enforced by the Federal

9   Trade Commission."  15 U.S.C. § 53(b)(1).  Thus, Section 13(b) remedies ongoing or recurring

10  violations only.  Past violations cannot be enjoined.

11       In accordance with its plain language, courts have recognized that Section 13(b) cannot be

12  used where there is "a violation in the distant past and a vague and generalized likelihood of

13  recurrent conduct.  Instead, [Section 13(b)] means what it says—the FTC must make a showing

14  that a defendant is violating or is about to violate the law."  *FTC v. Shire ViroPharma Inc*, 917

15  F.3d 147, 159 (3d Cir. 2019).  *See also FTC v. Elec. Payment Sols. of Am. Inc*., No. CV-17-

16  02535-PHX-SMM, 2021 WL 3661138, at *16 (D. Ariz. Aug. 11, 2021) ("Section 13(b) 'cannot

17  be used to remedy past violations' of the FTC Act; thus, a permanent injunction can issue under

18  § 13(b) 'only if the wrongs are ongoing or likely to recur." (quoting *FTC v. Evans Prod. Co.*, 775

19  F.2d 1084, 1086 (9th Cir. 1985)).

20       Here, the government alleges ringless voicemails sent in 2019 and 2020, over two years

21  before this suit was filed.  Compl. ¶¶ 65, 67.  It does not allege ongoing violations, only that

22  Defendants *could* violate the law because they "remain active" as a business.  *Id.* ¶ 124.  This is

23  the type of "vague and generalized" allegation that is subject to dismissal.  Because the allegedly

24  violative conduct ceased years ago, the government cannot plausibly allege that the Atlas

25  Defendants are violating or "about to violate the law," and injunctive relief is therefore

26  inappropriate.  *See Evans Prod. Co.*, 775 F.2d at 1088 (affirming denial of injunctive relief where

27  "alleged misrepresentations ceased in 1982 long before the FTC's complaint was filed" over two

28  years later); *Shire ViroPharma*, 917 F.3d at 160 (affirming dismissal of Section 13(b) suit where

1  FTC "failed to 'plausibly suggest [Shire] is 'about to violate' any law enforced by the FTC,

2  particularly when the alleged misconduct ceased almost five years before filing of the

3  complaint'") (citation omitted); *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26-27 (D.D.C. 2021)

4  (conclusory allegation that "Facebook is likely to reinstitute [unlawful] policies" based on past

5  conduct "insufficient to establish the requisite imminence").

6       Because the government cannot obtain injunctive or monetary relief under Section 13(b),

7  Count I should be dismissed.[44]  *See AMG Cap. Mgmt., LLC*, 141 S. Ct. at 1352.

8       **G.**    **This Enforcement Action is Constitutionally Infirm**

9       **1.**    **This Action Violates Atlas Defendants' Due Process Rights**

10       It is axiomatic that "laws which regulate persons or entities must give fair notice of

11  conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253

12  (2012).  "The fair notice doctrine extends to civil cases, ***particularly where a penalty is***

13  ***imposed***." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 250 (3d Cir. 2015).  Under this

14  doctrine, a violation of law cannot be found "if the statute or regulation under which it is obtained

15  'fails to provide a person of ordinary intelligence fair notice of what is prohibited.'" *Fox*, 567

16  U.S. at 253 (citation omitted).  This is especially true where Congress mandated the promulgation

17  of rules with "specificity." 15 U.S.C. § 57a(a)(1)(B).  *See Fox*, 567 U.S. at 254 ("[T]he

18  [agency's] policy" must provide private parties with "fair notice" that the conduct at issue will be

19  treated as "a violation of [the statute] as interpreted and enforced by the agency.").

20       The TSR does not apply to ringless voicemail.  Further, the term "telephone call" under

21  the TSR is unconstitutionally vague as applied.  As a result, the Atlas Defendants did not have

22  fair notice that the TSR would be applied to ringless voicemail, especially when the plain

23  meaning of "telephone call" and the texts of the Telemarketing Act and the Rule, along with their

24

25  [44] Absent an FTC administrative proceeding, permanent injunctive relief is available only in a "proper case."  15 U.S.C. § 53(b).  The Ninth Circuit stated, in dicta, that "proper case" includes "any case

26  involving a law enforced by the FTC." *Evans Prod. Co.*, 775 F.2d at 1086.  But this broad reading ignores the statute's limiting language and Supreme Court authority.  *See AMG Cap. Mgmt., LLC*, 141 S. Ct. 1341

27  at 1348 (Section 13(b) "might also be read, for example, as granting authority for the Commission to go one step beyond the provisional and ('***in proper cases***') dispense with administrative proceedings to seek"

28  an injunction).  The government cannot meet this standard, especially given the novel issues presented.

1   legislative and regulatory histories, suggest the opposite. *See United States v. AMC Ent., Inc.*,

2   549 F.3d 760, 769 (9th Cir. 2008) (finding violation of due process and "declin[ing] to require

3   AMC to have determined the precise meaning of the regulation when the government did not do

4   so" since reading "tea-leaves does not alleviate the government from its obligation to fashion

5   coherent regulations that put citizens of 'ordinary intelligence' on notice as to what the law

6   requires of them"); *Gates & Fox Co., Inc. v. Occupational Safety and Health Review Comm'n*.,

7   790 F.2d 154, 155-56 (D.C. Cir. 1986) (sanction of penalties violated due process where agency

8   failed to provide "constitutionally adequate warning of the conduct prohibited").

9      The government's regulation through enforcement—including its request for civil

10   penalties—violates principles of fair notice under the Due Process Clause of the U.S.

11   Constitution. *See LabMD, Inc.*, 894 F.3d at 1235 (imposition of civil penalties for vague orders

12   or rules "may constitute a denial of due process"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559,

13   574 & n.22 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence

14   dictate that a person receive fair notice . . . of the conduct that will subject him to punishment . . .

15   [T]he basic protection against judgments without notice afforded by the Due Process Clause is

16   implicated by civil penalties.") (citation, quotations, and emphasis omitted); *Sessions v. Dimaya*,

17   584 U.S. ——, 138 S. Ct. 1204, 1228–29 (2018) (Gorsuch, J., concurring) (suggesting that the

18   severity of a civil penalty corresponds with the degree of fair notice that must be accorded to the

19   defendant); U.S. Const. amend. V.

20      **2.      This Action Violates the Major Questions and Non-Delegation**

21              **Doctrines**

22      Other constitutional doctrines also preclude this action. Because all legislative powers are

23   vested in Congress, "Congress may not constitutionally delegate its legislative power to another

24   branch of government." *Touby v. United States*, 500 U.S. 160, 165 (1991) (citing U.S. Const.

25   art. I, § 1). Congress may only delegate legislative power to an agency, like the FTC, when it

26   provides an "intelligible principle" directing the agency's actions. *Gundy v. United States*, 139 S.

27   Ct. 2116, 2119 (2019). Thus, if a statute fails to provide the requisite guidance, an agency's

28   action is unconstitutional.

Here, the FTC Act fails to provide an "intelligible principle" to guide the FTC's exercise of authority in prohibiting "unfair or deceptive acts or practices." 15 U.S.C. § 45(a)(1).  *See, e.g.,* *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 625-26 (7th Cir. 2020) ("[S]tatutory terms like 'unfair'" are "'as vague as they come'").  Likewise, the Telemarketing Act fails to provide an "intelligible principle" to guide the FTC's exercise of authority in prohibiting "deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1).  Rather than providing guidance, the FTC has used the vague wording of these statutes to exercise its own discretion in deciding what qualifies as wrongful conduct.  This is precisely the sort of legislating, *i.e.*, creating new laws and regulations, that the non-delegation doctrine prevents.  Congress did not constitutionally delegate near-limitless authority to the FTC to determine what is unfair, deceptive or abusive.  These statutes provide no guidance whatsoever to the FTC regarding ringless voicemail or any technology like it.

Similarly, under the major questions doctrine, Congress delegates rulemaking authority to an agency over questions of great economic or political magnitude only when it does so explicitly. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000).  Because neither the FTC Act nor the Telemarketing Act contemplate the coverage of ringless voicemail, and congressional intent indicates that ringless voicemail does not fit within the purview of a telephone call, the FTC's regulation of this technology would be "an enormous and transformative expansion of [its] regulatory authority without clear congressional authorization." *Util. Air. Regul. Group v. EPA*, 573 U.S. 302, 324 (2014).

**H.  The Individual Defendants Should Be Dismissed**

The Complaint seeks to impose individual liability against DiRoberto and Petersen.  To state a claim for individual liability, "the FTC must also show that the individual had actual knowledge of the material misrepresentations, was recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *FTC v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004).

The case of *FTC v. Swish Mktg.*, No. C 09–03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) is instructive.  There, the FTC sought to hold a company CEO individually liable under

1  the FTC Act.  The FTC alleged that the defendant was the CEO of the company and had

2  "formulated, directed, controlled, had the authority to control, or participated in the acts and

3  practices of [defendant corporation], including the acts and practices set forth in this Complaint."

4  *Id.*, at *5.  The FTC argued that individual liability was sufficiently pled as the individual

5  defendant's "status as CEO, standing alone, plausibly demonstrates his control over the company

6  (and warrants the inference of involvement in the deception)." *Id.*  The District Court disagreed,

7  holding that the FTC's "conclusory assertions of authority—untethered to virtually any

8  supportive facts—do not support an inference of [the individual defendant's] involvement." *Id.*

9       Like *Swish Marketing*, the allegations against Petersen and DiRoberto are sparse.  Indeed,

10  they mirror the allegations found to be deficient in *Swish Marketing*.  *See* Compl. ¶¶ 14-15, 20

11  (alleging that Petersen and DiRoberto are "co-owner[s] of Atlas Marketing, Atlas Investment, and

12  Provident Solutions.  [They] reside[] in San Diego, California.  Through [their] direct

13  participation in, and control over, Atlas Marketing, Atlas Investment, and Provident Solutions,

14  [DiRoberto and Petersen have] had knowledge of the acts and practices constituting the violations

15  alleged herein, had control over them, and directly participated in them.").  Also, the allegedly

16  wrongful conduct by the "Atlas Defendants" is attributable to the Kasm Defendants. *See id.*

17  ¶¶ 64-67.  While the Complaint alleges that Petersen "drafted scripts" for the ringless voicemails

18  with Azzeh and an unnamed employee, the FTC cannot show that Petersen knew that ringless

19  voicemail was regulated by the FTC.  Moreover, the FTC alleges that Petersen and DiRoberto

20  engaged "telemarketing compliance legal counsel" to advise on whether their actions complied

21  with the law. *Id.* ¶¶ 68, 84.  Under these facts, the FTC cannot show any actual knowledge or

22  reckless indifference required to state a claim for individual liability.  Thus, Defendants Petersen

23  and DiRoberto should be dismissed.

24  **V.   CONCLUSION**

25       For all of these reasons, the Complaint should be dismissed and the government's attempt

26  to regulate through enforcement should be rejected.

27

28

Respectfully        Submitted,

DATED:   June 7, 2023

MANATT, PHELPS & PHILLIPS, LLP

*/s/ Christine M. Reilly*
Christine M. Reilly
Cody DeCamp
2049 Century Park East, Suite 1700
Los Angeles, California  90067
Telephone: 310.312.4000
CReilly@manatt.com
CDeCamp@manatt.com

Bezalel A. Stern (*pro hac vice* to be filed)
1050 Connecticut Ave. NW, Suite 600
Washington, DC 20036
Telephone: 202.585.6500
BStern@manatt.com

GARDNER BREWER HUDSON
Richard P. Lawson (*pro hac vice* to be filed)
400 N. Ashley Dr., Suite 1100
Tampa, FL 33602
Telephone: 813.444.5562
rlawson@gardnerbrewer.com

*Counsel for the Atlas Defendants*