LOCKE LORD LLP
Thomas J. Cunningham (SBN: 263789)
tcunningham@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 687-6738
Fax: (213) 485-1200

Meagan S. Tom (SBN: 273489)
meagan.tom@lockelord.com
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Tel: (415) 318-8810
Fax: (415) 676-5816

Attorneys for Defendant
Stratics Networks Inc.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>vs.<br><br>STRATICS NETWORKS INC., et al.<br><br>Defendants. | CASE NO. 3:23-CV-00313-BAS-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT STRATICS NETWORKS INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>DATE: August 7, 2023<br>PLACE:  Courtroom 12B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

1

132810565v.20

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.     Whether the Government's sole claim against SNI is barred under Section 230 of the Communications Decency Act, 47 U.S.C.A. § 230(c)(1) ("CDA"), because SNI's ringless voicemail ("RVM") platform and SIP termination service are "interactive computer services" under that statute, and the Government seeks to hold SNI liable as the "publisher or speaker" of content provided solely by others.

2.     Whether the Government's claim against SNI under 16 C.F.R. § 310.3(b) for providing "substantial assistance or support" of violations of the Telemarketing Sales Rule states a claim upon which relief can be granted.

3.     Whether the Government is entitled to seek injunctive relief under Section 13(b) of the FTC Act ("FTCA"), 15 U.S.C. § 53(b), for alleged conduct of others whose accounts were permanently terminated by SNI over two years ago without Government involvement.

4.     Whether the Government is entitled to seek civil penalties against SNI under Section 5(m)(1)(A) of the FTCA, 15 U.S.C. §45(m)(1)(A) when no litigated final order of the FTC has ever found illegal the underlying activity of SNI's former users, which the Government now alleges SNI substantially assisted.

5.     Whether Congress' grant to the FTC of the purported statutory authority to bring this suit is invalid under Article II of the Constitution because the FTC Commissioners are not removable at the will of the President.

1

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 4

III.  LEGAL ARGUMENT .................................................................................. 6

    A.    Applicable Legal Standard .............................................................. 6

    B.    SNI Is Entitled to Immunity Pursuant to Section 230 of The
        Communications Decency Act.......................................................... 7

        1.    Section 230 Prevents any Claim That Seeks to Treat An
            Interactive Computer Service as a Publisher or Speaker of
            Information Provided By a Separate Information Content
            Provider............................................................................... 7

        2.    Each of SNI's RVM and SIP Termination Services Are or
            Were, Interactive Computer Services. ................................. 9

        3.    The Government's Complaint Seeks to Hold SNI Liable
            Solely as the Speaker or Publisher of Third-Party Content........... 10

        4.    The Government's Claim Against SNI is Based Exclusively
            on Information Provided By Other Information Content
            Providers. ........................................................................... 11

    C.    The Government's Complaint Fails to State a Claim against SNI
        for "Substantial Assistance" of Any Purported Violations of the
        Telemarketing Sales Rule. .............................................................. 13

        1.    Because RVMs Are not "Telephone Calls" under the
            Telemarketing Sales Rule, There Was No Underlying
            Violation to Assist as to those Voicemails ................................. 15

        2.    SNI Did Not Substantially Assist in Any Purported
            Underlying Violations of The TSR................................... 18

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

3.    SNI Neither Knew, Nor Consciously Avoided Knowing About Violations of the TSR, And Terminated Anyone Suspected of Sending Calls or RVM without Consent. ...............24

IV.   THE GOVERNMENT'S COMPLAINT FAILS TO STATE ANY CLAIM FOR INJUNCTIVE RELIEF FOR BUSINESS OPERATIONS AND BUSINESS ACTIVITY THAT SNI SHUT DOWN YEARS AGO WITHOUT GOVERNMENT WARNING OR INVOLVEMENT. .................29

V.    THE GOVERNMENT'S COMPLAINT FAILS TO STATE ANY CLAIM FOR CIVIL PENALTIES FOR BUSINESS OPERATIONS AND BUSINESS ACTIVITY THAT SNI SHUT DOWN YEARS AGO WITH NO GOVERNMENT WARNING OR INVOLVEMENT....................31

VI.   THE GOVERNMENT'S COMPLAINT VIOLATES ARTICLE II OF THE CONSTITUTION BECAUSE THE COMPLAINT ATTEMPTS TO EXERCISE EXECUTIVE AUTHORITY THAT CANNOT BE WIELDED BY AN INDEPENDENT AGENCY DESPITE CONGRESSIONAL ENACTMENT. ................................................................36

VII.  CONCLUSION ................................................................................40

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

ii

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. Wells Fargo Bank*,
No. 22-CV-0510, 2022 WL 10756885 (S.D. Cal., Oct. 17, 2022) .................22

*Alperin v. Vatican Bank*,
410 F.3d 532 (9th Cir. 2005) ................................................................6

*Am. Council on Educ. v. F.C.C.*,
451 F.3d 226 (D.C. Cir. 2006) .............................................................7

*AMG Cap. Mgmt., LLC v. FTC*,
141 S. Ct. 1341 (2021)........................................................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................5, 6, 14, 19

*In re AT&T Pet. For Waiver*,
88 F.C.C.2d 1, at 4 (Oct. 20, 1981) ......................................................7

*Axon Enter., Inc. v. FTC*,
143 S. Ct. 890 (2023)..........................................................................39

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .........................................8, 10, 11, 12

*Barr v. Am. Ass'n of Political Consultants*,
140 S. Ct. 2335 (2020)........................................................................39

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................5, 6

*Bittner v. U.S.*,
143 S. Ct. 713 (2023)..........................................................................35

*Bowsher v. Synar*,
478 U.S. 714 (1986)......................................................................38, 39

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

iii

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

*Bride v. Snap Inc.*,
   No. 21-CV-06680, 2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ........................ 9

*Buckley v. Valeo*,
   424 U.S. 1 (1976) .......................................................................................... 38

*Camacho v. Control Grp. Media Co., LLC*,
   No. 21-CV-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022) ...................... 12

*CFPB v. Daniel A. Rosen, Inc.*,
   No. 21-CV-07492, 2022 WL 1514439 (C.D. Cal. Apr. 5, 2022) ...................... 23

*CFPB v. Nesheiwat*,
   No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022) .......................... 23

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012) ...................................................................................... 34

*Coffee v. Google, LLC*,
   20-CV-03901, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) .............................. 9

*Collins v. Yellen*,
   141 S. Ct. 1761 (2020) ................................................................................... 38

*Diep v. Apple, Inc.*,
   No. 21-CV-10063, 2022 WL 4021776 (N.D. Cal. Sept. 2, 2022) .............. 10, 11

*Fair Housing Council of San Fernando Valley v. Roommates.Com*,
   521 F.3d 1157 (9th Cir. 2008) ................................................................. 8, 10, 12

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ...................................................................................... 34

*Force v. Facebook*,
   934 F.3d 53 (2d Cir. 2019) ............................................................................ 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ...................................................................................... 37

*FTC v. AbbVie Inc*,
   976 F.3d 327 (3d Cir. 2020) .......................................................................... 30

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

iv

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

*FTC v. Evans Prod. Co.*,
775 F.2d 1084 (9th Cir. 1985) ....................................................................30

*FTC v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021)................................................................31

*FTC v. Jones*,
No. SA CV 17-0058, 2017 WL 11198503 (C.D. Cal. May 25, 2017)..............23

*FTC v. Lake*,
181 F. Supp. 3d 692 (C.D. Cal. 2016) .......................................................13

*FTC v. Match Grp.*,
No. 3:19-CV-2281-K, 2022 WL 877107 (N.D. Tex. Mar. 24, 2022)...............13

*FTC v. Univ. Premium Svcs., Inc.*,
No. CV 06-0849, 2006 WL 8442134 (C.D. Cal. Mar. 14, 2006) ....................23

*FTC v. Walmart Inc.*,
No. 22 CV 3372, 2023 WL 2646741 (N.D. Ill. Mar. 27, 2023)
.................................................................................................22, 23, 26, 39

*Grijalva v. Kevin Mason, P.A.*,
No. 18-CV-02010, 2019 WL 8221076 (C.D. Cal. Dec. 30, 2019) ...................21

*Humphrey's Executor v. U.S.*,
295 U.S. 602 (1935)...............................................................................37, 38

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010 ...............................................................................34, 35

*Lemmon v. Snap, Inc.*,
995 F.3d 1085, 1091 (9th Cir. 2021) ...........................................................9

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020)........................................................................37, 38, 39

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ......................................................................6

*Twitter, Inc. v. Tammneh*,
143 S. Ct. 1206 (2023)........................................................................*passim*

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

v

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

*U.S. v. National Fin. Svcs., Inc.*,
   98 F.3d 131 (4th Cir. 1996) ................................................................35

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................6

*In re VerifoneSecs. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ................................................................6

*In the Matter of Vonage Holdings Corp.*,
   19 F.C.C. Rcd. 22404 (2004) ............................................................10

*Zango, Inc. v. Kaspersky Lab, Inc.*,
   568 F.3d 1169 (9th Cir. 2009) ............................................................9

*Zeran v. America Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ..............................................................8

**Statutes**

5 U.S.C. § 552 ...............................................................................3, 29

15 U.S.C. § 5 ...............................................................................32, 36

15 U.S.C. § 45 ...........................................................................*passim*

15 U.S.C. § 53 .............................................................30, 36, 37, 39

15 U.S.C. § 57 .................................................................................39

15 U.S.C. §57a ...............................................................................33

15 U.S.C. § 57b ...............................................................................37

15 U.S.C. § 227 ...............................................................................15

15 U.S.C. § 1692 .............................................................................34

15 U.S.C. § 1692f .............................................................................15

15 U.S.C. § 6102 .............................................................................15

15 U.S.C. § 6106 .............................................................................15

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

vi

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

47 U.S.C. § 227 ..................................................................................*passim*

47 U.S.C.A. § 230 ..............................................................................*passim*

**Legislative Authorities**

The Pallone-Thune TRACED Act, P.L. 116-105 ....................................15

Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973) ...........................37

Pub. L. No. 93-637, § 88 Stat. 2183 (1975) .............................................37

Pub. L. No. 93-637, § 205-06 (1975) ........................................................37

Pub. L. No. 93-637, § 2200-02 (1975) ......................................................37

**Regulatory Authorities**

16 C.F.R. § 310.2(x) ..................................................................................16

47 C.F.R. § 9.3 ..........................................................................................10

60 FR 30406-01 (June 8, 1995) .................................................................22

60 FR 43842, 43852 (Aug. 23, 1995) ........................................................22

68 FR 4580, 4642-43 (2003) ......................................................................16

FCC 22-85 (Nov. 21, 2022) .......................................................................25

Fourth Report and Order, FCC 20-187 (Dec. 30, 2020) ..........................27

*In re Appropriate Framework For Broadband Access*,
    20 F.C.C.R. 14853 (Sep. 23, 2005) ......................................................7

*In re Impl. of Sec. 255 and 251(a)(2) of the Comm. Act of 1934*,
    16 F.C.C.R. 6417 (Sep. 29, 1999) ........................................................7

Third Report and Order, Order on Reconsideration, and Fourth Further
    Notice of Proposed Rulemaking, FCC-20-96, 35 FCC Rcd 7614 (9),
    (July 17, 2020) ................................................................................27, 28

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

vii

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

**Rules**

Fed. R. Civ. P. 8.................................................................................6, 19, 21, 28

Fed. R. Civ. P. 9.................................................................................................19

Fed. R. Civ. P. 12.....................................................................................1, 2, 6

**Other Authorities**

About FTC Warning Letters, https://www.ftc.gov/news-
    events/topics/truth-advertising/about-ftc-warning-letters (last visited
    June 16, 2023)................................................................................................17

About What is the Industry Traceback Group?,
    https://tracebacks.org/about/ (last accessed June 16, 2023)..............................27

Berg, Lauren, *FTC's Khan Accused of "Abuse of Power" in House
    Probe*, Law360, June 1, 2023,
    https://www.law360.com/articles/1683928/.......................................................31

Chopra, R. & Levine, S. *The Case for Resurrecting the FTC Act's
    Penalty Offense Authority*, 170 U. Pa. L. Rev. 71, 95 (2021)...........................35

FTC Press Release (Jan. 30, 2020) found at https://www.ftc.gov/news-
    events/news/press-releases/2020/01/ftc-warns-19-voip-service-
    providers-assisting-facilitating-illegal-telemarketing-or-robocalling...............17

FTC Press Release (Feb. 17, 2023) found at
    https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-
    sues-stop-interconnected-web-voip-service-providers-carrying-
    robocalls-pitching-phony-debt........................................................................16

ITG Policies and Procedures, https://tracebacks.org/itg-policies-and-
    procedures/ (last accessed June 16, 2023)........................................................27

Legal Library: Warning Letters, https://www.ftc.gov/legal-
    library/browse/warning-letters (last accessed June 16, 2023)...........................17

Notice of Penalty Offenses, https://www.ftc.gov/enforcement/penalty-
    offenses (last accessed June 16, 2023) .............................................................36

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

viii

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Perlman, Matthew, *Departing FTC Member Warns White House About Leadership*, Law360, Mar. 2, 2023, https://www.law360.com/consumerprotection/articles/158175 ........................31

Rayo, A., *FTC to voice service provider: give the robocalls a rest* (Feb. 17, 2023), https://consumer.ftc.gov/consumer-alerts/2023/02/ftc-voice-service-provider-give-robocalls-rest ..........................................16

Rest. (Second) of Torts § 876, Cmt. d, Illus. 9 (1979) ...............................18

SNI's Privacy Policy as of August 3, 2020, https://web.archive.org/web/20200803180822/https:/straticsnetworks.com/privacy-policy/ (last accessed June 16, 2023) ................................. 20

SNI's Responsible Use Policy as of September 20, 2020, https://web.archive.org/web/20200926041535/https:/straticsnetworks.com/responsible-use-policy/ (last accessed June 16, 2023) .....................5

SNI's Terms and Conditions as of August 3, 2020, https://web.archive.org/web/20200803171009/https:/straticsnetworks.com/terms-conditions/ (last accessed June 16, 2023)................................5

SNI's Full TCPA Compliance Suite, https://web.archive.org/web/20200803172835/https:/straticsnetworks.com/platform-compliance-tools/ (last accessed June 16, 2023)..............................5

Sullivan, A., *FTC Actions Show Need to 'Rein In' Agency, Chamber Says*, Law360, May 17, 2023, https://www.law360.com/consumerprotection/articles/1678413 ......................31

S. Conf. Rep. 93-1408, 93d Cong., 2d Sess., 7772 (1974)......................................35

U.S. Const. Art. II ......................................................................................*passim*

Wilson, C., *Why I'm Resigning as an FTC Commissioner*, Wall St. Journal, A17 (Feb. 15, 2023) ..........................................................35

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

ix

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Stratics Networks Inc. ("SNI") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the sole count pled against it by the Government, on the grounds that SNI is immune from the Government's claims pursuant to Section 230 of the Communications Decency Act, 47 U.S.C.A. § 230 (c)(1) ("CDA"), that the Complaint fails to state a claim upon which relief can be granted, that all of the relief the Government seeks is improper, and that it violates Article II of the Constitution. The Government alleges that SNI's co-defendants engaged in activity which violated the Telemarketing Sales Rule (the "TSR"). Because the co-defendants allegedly used SNI's information systems – namely, its Ringless Voicemail ("RVM") system and, to a lesser degree, its wholesale SIP termination service – SNI is purportedly liable for "substantially assisting" the co-defendants in their alleged violations of the TSR. This claim is barred by the CDA. Moreover, even if the claim were not barred by the CDA, there are no facts pled that, even if true, could support a determination that SNI knowingly provided "substantial assistance" to those engaging in unlawful activity, or that SNI consciously avoided having such knowledge.

SNI is immune from the Government's claim in this case pursuant to the CDA. SNI's services – RVM and wholesale SIP termination (which SNI stopped providing in 2020) – are each "interactive computer services" under the CDA. The Complaint alleges no conduct by SNI other than publishing or transmitting the content of the other defendants – pre-recorded audio that those defendants – not SNI – caused to be delivered straight to computer voicemail servers. The Government does not claim that SNI had any role in the creation, development or production of any of the content the other defendants transmitted using SNI's systems, nor that SNI had any role in selecting the voicemail accounts to which the other defendants allegedly published that content. The other

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

1

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

defendants created the content and caused it to be published to voicemail accounts they alone selected. SNI's only role was the provision of the technology by which the content was published. The CDA prohibits a suit against the mere provider of such technology. Accordingly, the case should be dismissed with prejudice under Rule 12(b)(1).

The Government also fails to adequately allege the one claim it brings against SNI, requiring dismissal under Rule 12(b)(6) if it is not dismissed pursuant to Rule 12(b)(1). A claim for "substantial assistance" must adequately allege an underlying violation of a law or regulation, substantial assistance by the defendant, and knowledge or conscious avoidance of knowledge that the underlying violations were illegal. The Government fails to allege an underlying violation of the TSR because the RVMs at issue are not "outbound telephone calls" as defined by the TSR and cannot violate the TSR as a matter of law. SNI cannot be guilty of "substantially assisting" a violation that doesn't exist.

Even if it could properly allege that SNI's former users violated the TSR, the Government also fails to adequately allege that SNI substantially assisted any of them. SNI merely provided information services to these users, like it does for anyone. SNI is engaged in a lawful business, and its systems are used by thousands of users, including local and federal governments, lawfully every day. SNI requires users to warrant that they will use SNI's system only lawfully, blocks attempts to use invalid caller ID's, requires users to represent that they have scrubbed their distribution lists against the national do-not-call registry and against mobile phone numbers, blocks any caller ID's suspected of noncompliant conduct, and terminates all accounts that engage in unlawful conduct. SNI is not alleged to have participated in the allegedly unlawful behavior of the other Defendants, nor are there any allegations that, if true, would establish that SNI knew or consciously avoided knowing about any unlawful behavior by the co-defendants.

The Government's attempts to bootstrap the private "traceback requests" sent to SNI by a trade group into knowledge of violations by the co-defendants is unavailing.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

2

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Not one of these traceback requests mentioned or suggested either "fraud" or the TSR. Every request was investigated and appropriate action taken, even though SNI was under no obligation to respond. The FTC, ignoring both its own publicized procedures and due process, never sent SNI a Warning Letter, a civil investigative demand ("CID"), or a Notice of Penalty Offense regarding these former users, and ignored a Freedom of Information Act ("FOIA") request, pursuant to 5 U.S.C. § 552, from SNI about them. This lawsuit is nothing more than the FTC's improper attempt to make RVM unlawful by way of litigation, rather than legislation or regulation.

The injunctive relief the Government seeks in this lawsuit is both improper and unnecessary. SNI terminated its relationships with the co-defendants over two years ago, and the Government alleges nothing that SNI has done or failed to do since 2020. It cannot claim that it "has reason to believe" that SNI is about to violate any law, rendering injunctive relief inapplicable. And nothing SNI is alleged to have done, even in 2019 or 2020, has ever been determined to be a violation of any FTC Rule, which eliminates the possibility of any civil penalty against SNI in this case.

In addition to the other infirmities in the Government's case, the authority under which it sues is constitutionally invalid. Article II vests the entire executive authority in the President, and that power includes the power to bring suit for an injunction or civil penalties without a prior agency adjudication. The FTC is independent from the President because he cannot remove its Commissioners without cause. When Congress purported to grant the FTC the ability to sue without a prior agency adjudication, it exceeded its constitutional authority. Without valid authority to bring this suit, it must be dismissed.

SNI also incorporates by reference the arguments made by the Ace Business Defendants and the Atlas Defendants in their previously-filed Motions to Dismiss (Dkts. 42, 45) as though those arguments were set forth herein. For all these reasons, SNI respectfully requests that this Court dismiss it from this action with prejudice.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

3

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

## II.    STATEMENT OF FACTS

The Complaint says very little about what SNI affirmatively does. It does not allege SNI is a "seller or telemarketer." The Complaint alleges that SNI "offers its customers the use of its RVM platform service." Compl., ¶ 39. It alleges that SNI advertises its services. Compl., ¶ 41. It alleges that SNI's "wholesale SIP termination (outbound calling) service routed and transmitted outbound telephone calls" and "provided its customers … with the ability to route and transmit such calls." Compl., ¶ 46. And it alleges that SNI "resold wholesale SIP termination service to other voice service providers" Compl., ¶ 47, including to Netlatitude. *Id*. The Government concedes that SNI ceased providing SIP termination service in 2020. Compl., ¶ 48. The Government alleges that Atlas Networks was a "customer" of SNI, Compl. ¶ 49, and that Atlas used SNI's RVM platform to deliver messages regarding Atlas' debt-relief services. Compl., ¶ 59. The Government essentially admits that SNI stopped providing such services to Atlas in 2020 (which it did). Compl., ¶ 102.

All of the remaining allegations simply rehash that SNI provided technology which others used to transmit RVM. The Complaint alleges that SNI provided its users "with the means to initiate outbound telephone calls … via its RVM platform service," ¶ 86, and that it "permitted and enabled its RVM customers" to "deliver millions of prerecorded messages." Compl., ¶ 88. The Complaint also alleges that SNI continued to permit its RVM users to utilize its service after it received "traceback requests" by an industry trade group about those users. Compl., ¶¶ 103, 105, 107, 109.

Where the Complaint claims that SNI has "provided substantial assistance or support" to "telemarketers" (Compl., ¶¶ 85, 132), that "support" consisted only of "providing [telemarketers] with the means to initiate outbound telephone calls," (Compl., ¶ 86), and "providing RVM platform and/or wholesale SIP termination services" to telemarketers and sellers. Compl., ¶ 132. Although the Complaint claims that SNI also

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

4

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

does "other things" to provide "substantial assistance and support" to telemarketers, (Compl., ¶ 86), it makes no attempt to identify those "other things." The alleged "assistance and support" consisted of nothing more than providing access to its RVM platform service and its wholesale SIP termination service.

All users of SNI's services had to agree to the policies, terms and conditions on SNI's website in order to use SNI's technology, including its "Responsible Use Policy," its terms and conditions, and its compliance tools, which require users to scrub their contact lists against the National Do Not Call ("DNC") Registry.[1] SNI provided technology for others to use in transmitting RVM. That is a lawful business. SNI required its users to agree that they would only use its systems lawfully. SNI investigated traceback requests it received from an industry trade group. Simply put, SNI did not "substantially assist" any person in violating the TSR or FTC Act. The FTC has stated no valid claim against SNI, and this action should be dismissed with prejudice.

## III.   LEGAL ARGUMENT

### A.   Applicable Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] All information regarding SNI's website as it existed in 2019 and 2020 is available at the Internet archive, and the Government made SNI's website a part of the Complaint by referencing its terms and conditions. *See* Compl., ¶¶ 40, 41; SNI's Responsible Use Policy as of September 20, 2020, https://web.archive.org/web/20200926041535/https://straticsnetworks.com/responsible-use-policy/ (last visited June 15, 2023); SNI's Terms and Conditions as of August 3, 2020, https://web.archive.org/web/20200803171009/https://straticsnetworks.com/terms-conditions/ (last accessed June 16, 2023); SNI's Full TCPA Compliance Suite, https://web.archive.org/web/20200803172835/https://straticsnetworks.com/platform-compliance-tools/ (last accessed June 16, 2023).

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC
132810565v.20

(2007)). Thus, in resolving a Rule 12(b)(6) motion to dismiss, a court engages in a two-prong inquiry.

First, a court accepts all well-pled allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citation omitted). Nor need a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Allegations that are conclusory are not accepted as true. The court accepts as true the facts properly pleaded in the complaint, but not conclusions of law. *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re VerifoneSecs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

Second, the court determines whether the well-pled factual allegations are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Documents that are referenced in, but not attached to, the complaint may be considered on a 12(b)(6) motion:

> Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (collecting authorities).

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

## B. SNI Is Entitled to Immunity Pursuant to Section 230 of The Communications Decency Act.

Federal law provides an immunity for providers of "interactive computer services" against liability in cases that seek to treat the service provider as the "publisher or speaker" of any information provided by a third-party "information content provider." 47 U.S.C.A. § 230(c)(1). The CDA protects providers of interactive computer services such as SNI from liability stemming from content created by the users of their services, with some limited exceptions not applicable here.

### 1. Section 230 Prevents any Claim That Seeks to Treat An Interactive Computer Service as a Publisher or Speaker of Information Provided By a Separate Information Content Provider.

The primary protection provided by the CDA is that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.A. § 230(c)(1). The CDA defines an "interactive computer service" to mean "any <u>information service</u>, system, or <u>access software provider</u> that provides or enables computer access by multiple users to a computer server." 47 U.S.C.A. § 230(f)(2)(emphasis added).[2]

---

[2] The Government has consistently classified voicemail as an "information service." In 1981, the FCC confirmed voicemail's regulatory categorization as an unregulated "enhanced/information retrieval service" not subject to Title II regulation. *In re AT&T Pet. For Waiver*, 88 F.C.C.2d 1, at 4, ¶ 9 (Oct. 20, 1981). *See also In re Impl. of Sec. 255 and 251(a)(2) of the Comm. Act of 1934*, 16 F.C.C.R. 6417, 6449, (Sep. 29, 1999) (declining "to expand meaning of 'telecommunications services' to include information services" and recognizing that "voicemail" is "considered information services"); *In re Appropriate Framework For Broadband Access*, 20 F.C.C.R. 14853, 14919, ¶121 (Sep. 23, 2005) (defining voicemail as "information service"); *Am. Council on Educ. v. F.C.C.*, 451 F.3d 226, 234 (D.C. Cir. 2006) (noting that the Government "has long distinguished between 'information services' and the underlying 'telecommunications' that transport them). The term "access software provider" is further defined as "a provider of software (including client or server software), or enabling tools" that, among other things "transmit … content." 47 U.S.C.A. § 230(f)(4)(C) (emphasis added). This makes sense, as "voicemail" is merely an audio recording stored on a computer server.

7

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

"By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) (emphasis added) (holding that the CDA "precludes courts from entertaining claims that would place a computer service provider in a publisher's role."). Just as you can't sue the U.S. Postal Service if a third-party commits mail fraud, the CDA establishes that you can't sue the provider of an information service for unlawful traffic by a third-party user. The Ninth Circuit has set forth the basic test for application of Section 230(c)(1) immunity. Section 230 protects from liability:

A.   a provider or user of an interactive computer service;

B.   whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker; of

C.   information provided by another information content provider.

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended*.[3] The Complaint shows that SNI provides an interactive computer service, the Government's lawsuit seeks to treat SNI as the publisher or speaker of its former users' information, and the Government's claim against SNI is based entirely upon content provided by other information content providers. Section 230 plainly bars the only claim brought against SNI, and the case against it should be dismissed with prejudice.

---

In the case of RVM, the recording is directly transmitted from one computer to another over the Internet.

[3] Although the test is couched in terms of state law, it applies to federal causes of action as well. *Id*., at n.4 (noting that the "amendment's protection also extends to federal law causes of action," *and citing Fair Housing Council of San Fernando Valley v. Roommates.Com*, 521 F.3d 1157 (9th Cir. 2008)).

8

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

132810565v.20

### 2. Each of SNI's RVM and SIP Termination Services Are or Were, Interactive Computer Services.

Both SNI's RVM platform and its now-defunct wholesale SIP termination service constitute "interactive computer services" under Section 230. Platforms for accessing and downloading apps have been found to be "interactive computer services" for purposes of Section 230. *See, e.g., Coffee v. Google, LLC*, 20-CV-03901, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021) (online store offering third-party applications satisfied first prong of immunity test). Providers of interactive computer services include entities that create, own, and operate applications that enable users to share messages over its servers. *Bride v. Snap Inc.,* No. 21-CV-06680, 2023 WL 2016927, at *4 (C.D. Cal. Jan. 10, 2023)(*citing Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021). Allowing access to the Internet is not a requirement. Section "230 does not limit the definition of 'interactive computer service' to services that provide access to the Internet; rather, its singular requirement is for 'access by multiple users to a computer server.'" *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1175–76 (9th Cir. 2009).

Both of SNI's services at issue in this case allow "access by multiple users to a computer server," and both "transmit … content." Both enable users to share messages over SNI's servers. Both are therefore "interactive computer services." As discussed above, the Government has long held that voicemail is an "information service," and SNI is just as readily an "access software provider" because it transmits content. *See supra* n. 2. SNI's RVM system allows 'multiple users' (the authors of RVMs) to access 'a computer server' (each of the servers hosted by SNI and the phone carriers' servers hosted by the carriers). According to the Ninth Circuit's definition in *Zango*, SNI's RVM platform is an "interactive computer service."

SNI's wholesale SIP termination service was also an "interactive computer service." The Complaint itself alleges that SIP termination is simply outbound calling using voice-over-internet protocol ("VoIP"), Compl., ¶ 8, which the Government has

9

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

already held is an "interactive computer service." *In the Matter of Vonage Holdings Corp.*, 19 F.C.C. Rcd. 22404, 22433 (2004) (VoIP "falls <u>squarely</u> within the phrase 'Internet and other <u>interactive computer services</u>' as defined in sections 230(f)(1) & 230(f)(2)"); *see* 47 C.F.R. § 9.3 (VoIP is "a service" that "[p]ermits users generally to receive [or] terminate calls [over] the public switched telephone network."). Like the RVM platform, it meets the test for Section 230 immunity.

SNI is also an "access software provider" under the statute as to both services. What constitutes an access software provider seems to have not been litigated, but the simple terms of the statute state that a "provider of software (including client or server software), or enabling tools" that "transmit … content" is an access service provider, and therefore an "interactive computer service." 47 U.S.C.A. § 230(f)(4)(C). This is precisely what SNI's RVM platform does and its SIP service did. They are "software" and "enabling tools" that "transmit content." The Government's entire claim is based on this definition.

### 3. The Government's Complaint Seeks to Hold SNI Liable Solely as the Speaker or Publisher of Third-Party Content.

Because SNI provides an "interactive computer service," the next step in assessing application of Section 230 immunity is to determine whether the Complaint seeks to treat SNI as the "publisher or speaker" of the third-party content. It does.

"Publication" involves "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102 (*citing Roommates.com, LLC*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.")). The act of publishing includes not just transmitting content, but making available an application or other computer program. *See Diep v. Apple, Inc.*, No. 21-CV-10063, 2022 WL 4021776, at *5 (N.D. Cal. Sept. 2, 2022) (finding that Apple's authorization of the Toast Plus app on the App Store is inherently

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

10

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

publishing activity.  "Apple's role as an app publisher, including its promulgation of review guidelines, its review of all apps submitted to the App Store, and its enforcement of its guidelines, is fundamental 'publisher' activity protected by the CDA"). The Government's allegations here complain exclusively about SNI's decisions "whether to publish or withdraw from publication" the RVMs that the Government alleges violated the TSR. The "content" of those voicemails were created solely and entirely by a "third-party", and without the participation or involvement of SNI, in every instance.

The Government's claim in this case seeks to hold SNI liable solely as a publisher of third-party content. Although the Complaint vaguely alleges that SNI also does "other things" to provide "substantial assistance and support" to the third-parties whose content it transmits, those "other things" are never identified. The only activity alleged as being committed by SNI is "providing [telemarketers] with the means to initiate outbound telephone calls" Compl., ¶ 86, and "providing RVM platform and/or wholesale SIP termination services" to telemarketers and sellers. Compl., ¶ 132. Like the claims in *Diep v. Apple*, the "act for which plaintiffs seek to hold [defendant] liable" is allowing another party's content "to be distributed," and not the development of the content. All of the behavior alleged against SNI by the Government consists of "publishing." SNI therefore meets the second leg of the test for Section 230 immunity.

### 4.    The Government's Claim Against SNI is Based Exclusively on Information Provided By Other Information Content Providers.

The final prong of the test for Section 230 immunity is whether the claim is based on information provided by another content provider. *Barnes*, 570 F.3d at 1101. It is a plaintiff's burden "to affirmatively allege the facts that support their claims." *Diep*, 2022 WL 4021776, at *5. Here, the Government does not allege that SNI developed or created any of the content of the RVMs. Nothing is alleged that would transform SNI from a

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

132810565v.20

11

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

provider of an "interactive computer service" into an "information content provider." Without such allegations, the "third prong of the *Barnes* test is thus satisfied." *Id.*

An interactive computer service provider is responsible for the development of information if it "directly and materially contributed to what made the content itself unlawful." *Force v. Facebook*, 934 F.3d 53, 68 (2d Cir. 2019). In *Roommates*, the Ninth Circuit explained that a defendant becomes an "information content provider" if it "contribute[s] materially to the alleged illegality of the conduct." This "material contribution" test "draw[s] the line at the 'crucial distinction between, on the one hand, taking actions . . . that are necessary to display . . . actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable." *Camacho v. Control Grp. Media Co., LLC,* No. 21-CV-1954, 2022 WL 3093306, at *15 (S.D. Cal. July 18, 2022) (collecting authorities).

Furthermore, an interactive service provider "does not become a developer of content when it provides neutral tools that a user exploits to create a profile or perform a search using criteria that constitutes a protected class." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d at 1099 (*citing Roommates.Com*, 521 F.3d at 1169). Providing "neutral tools to carry out what may be unlawful" is not "development," as the Ninth Circuit explained in *Roommates.com*, 521 F.3d at 1169. "<u>Any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.</u>" 521 F. 3d at 1170 (emphasis added).

Here, the content was developed entirely by other parties with no help from SNI. SNI provided "neutral tools" which the other parties "used to publish" the allegedly offending messages, but SNI did "absolutely nothing to encourage" the offending content of the messages, which if they violated the TSR were "contrary to [its] express policies." *See Roommates*, 521 F.3d at 1171–72. The Government's claim boils down to SNI's alleged failure to police its former users' content before it was disseminated, to ensure

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

12

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC
132810565v.20

that such content did not violate the TSR. The law not only does not impose such a requirement on an interactive computer service (or anyone), it provides immunity for information service providers such as SNI for claims such as those of the Government. SNI's activity falls squarely within the immunity provided by Section 230. SNI should therefore be dismissed with prejudice. *See FTC v. Match Grp.,* No. 3:19-CV-2281-K, 2022 WL 877107 (N.D. Tex. Mar. 24, 2022) (dismissing FTC action with prejudice on basis of Section 230).

**C.      The Government's Complaint Fails to State a Claim against SNI for "Substantial Assistance" of Any Purported Violations of the Telemarketing Sales Rule.**

The Government has not, and cannot, adequately plead a claim against SNI for providing "substantial assistance" to Netlatitude's customers or Atlas Networks, much less the other defendants in this case with whom SNI is not even alleged to have done any business, or the other companies named in the Government's Complaint but not sued. The Government's Complaint fails to adequately allege any of the three required elements of a substantial assistance violation. It must therefore be dismissed.

The "substantial assistance provision in the TSR has three elements: (1) there must be an underlying violation of the TSR; (2) the person must provide substantial assistance or support to the seller or telemarketer violating the TSR; and (3) the person must know or consciously avoid knowing that the seller or telemarketer is violating the TSR." *FTC v. Lake*, 181 F. Supp. 3d 692, 700–01 (C.D. Cal. 2016). The Complaint fails to adequately allege any of these elements.

The first element of "substantial assistance" under the TSR is that there be an underlying violation of the TSR to assist. But the Government fails to adequately allege any violation of the TSR by any defendant (or other third-party). RVMs are not "outbound telephone calls", as defined by the FTCA or the TSR, and do not fall within the TSR's prohibitions. And although SNI's wholesale SIP termination services (which

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

13

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

it stopped providing in 2020) allowed the making of "telephone calls," the Government does not allege any actionable "telephone calls" that were sent over that service, only RVMs. *See* Compl., ¶¶ 110-116. The Government cannot plead a claim for substantial assistance without first adequately alleging a violation of law by a third-party. The Complaint fails to allege facts which, if proven true, would allow "the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Even if the Government could adequately allege underlying violations of the TSR by others, it still fails to adequately allege that SNI provided any assistance or support to any seller or telemarketer who violated the TSR, much less "substantial" assistance. SNI merely sold RVM service to Atlas, and wholesale SIP bandwidth to Netlatitude, who in turn resold that bandwidth to its (not SNI's) customers or to other resellers. In a vague and conclusory fashion the Government alleges that these unidentified customers of Netlatitude used that bandwidth unlawfully, but it doesn't identify which Netlatitude customers used the bandwidth purchased from SNI, nor what they used it for – the only allegation about a Netlatitude customer's use of SNI's network is for an unidentified RVM, not a "telephone call."[4] The Government does not allege sufficient facts from which a court could reasonably conclude that SNI knew that Atlas or Netlatitude's customers were engaged in unlawful activity using SNI's bandwidth, or that it consciously avoided knowing such unlawful activity was occurring.

Finally, SNI had no knowledge of any TSR violations by its users (or customers of its users), nor did it consciously avoid such knowledge. As noted above, SNI terminated any users even suspected of running afoul of good business practices or the law, and did so with no prompting from the Government.

---

[4] Although the Government claims that RVMs sent over SNI's servers pitched homebuying services, student debt relief services, health insurance, fake lawsuit scams, fraudulent sweepstakes, and cable television discount offers, Compl., ¶ 54, there is not a single allegation about any such RVM violating the TSR, anywhere in the Complaint.

14

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

### 1. Because RVMs Are not "Telephone Calls" under the Telemarketing Sales Rule, There Was No Underlying Violation to Assist as to those Voicemails

The Government tellingly does not allege that an RVM is a "telephone call" under the TSR anywhere in its Complaint. *See*, *e.g.,* Compl., ¶¶ 39-45 (describing SNI's RVM platform). By contrast, the Government plainly alleges that Atlas is a "seller" and a "telemarketer" under the TSR, Compl., ¶ 60. It similarly alleges that Netlatitude's customers are "sellers" and "telemarketers." Compl., ¶ 113. But it does not allege that an RVM is a "telephone call" despite alleging the statutory definition of "outbound telephone call." Compl., ¶29.

RVM is not a "telephone call" as defined by the FTC Act and does not implicate the TSR. Voicemail is considered by the Government to be an "information service" and not "telecommunications," a term which would include any "telephone calls." *See supra*, n.2. The term "telemarketing" means a "plan, program, or campaign which is conducted to induce purchases of goods or services … by use of one or more telephones and which involves more than one interstate telephone call." 15 U.S.C. § 6106(4). Not a "call" – a "telephone call." Both the enabling legislation and the TSR itself use the specific term "telephone call" and not the more general term "call," which Congress used in other legislation such as the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[5] *See* 15 U.S.C. §§ 6102(a)(3)(A) (referencing "unsolicited telephone calls"); *see also* 15 U.S.C. § 1692f (5) (prohibiting charges from "collect telephone calls"). RVM is an open

---

[5] The first two prohibitions of the TCPA, 15 U.S.C. § 227 (not at issue in this case), distinguish between a "call" and a "telephone call." Section 227(b)(1)(A) makes it unlawful "to make any call … using any automatic telephone dialing system." The very next provision makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice …" 15 U.S.C. §227(b)(1)(B). Throughout the TCPA, Congress used the terms "any call" and "any telephone call" separately. The Pallone-Thune TRACED Act, P.L. 116-105, enacted a new section 227b to the TCPA in 2019, and repeatedly uses the broader term "call" along with "voice call" in its prohibitions. It never uses the more specific term "telephone call."

15

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

feature provided by telephone carriers with the specific purpose of allowing anyone the ability to insert voicemail messages into a voicemail server, at no time connecting to a consumer's telephone.

The TSR demonstrates that RVM is not a "telephone call." Violation of the TSR involves an attempt to communicate with the recipient in real time, and requires making a telephone ring.

> The Rule's disclosure requirement is triggered <u>once a recipient of a telemarketing call answers the phone</u>. This approach is consistent with the treatment of this issue in the NPRM … <u>A telemarketer initiates a telephone call by causing the called consumer's telephone to ring</u>.

Telemarketing Sales Rule, 68 FR 4580, 4642-43 (2003) (emphasis added). RVM is not a real-time communication, and by definition it does not cause a telephone to ring, so it can hardly be considered a "telephone call." The Government's argument in this case that RVMs are "telephone calls" is contradicted by the FTC's own words in the very regulation under which the Government is suing.[6]

Moreover, the FTC has never even considered whether RVM constitutes a "telephone call" under 16 C.F.R. § 310.2(x). That regulation defines an "outbound telephone call" as a "telephone call initiated by a telemarketer to induce the purchase of

---

[6] Even the FTC's publicity about this case admits that "your phone doesn't ring" due to "ringless voicemails." *See* Rayo, A., *FTC to voice service provider: give the robocalls a rest* (Feb. 17, 2023) found at https://consumer.ftc.gov/consumer-alerts/2023/02/ftc-voice-service-provider-give-robocalls-rest; FTC Press Release (Feb. 17, 2023) found at https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-sues-stop-interconnected-web-voip-service-providers-carrying-robocalls-pitching-phony-debt (stating that a ringless voicemail "goes to a consumer's voicemail without ringing their phone"). The Government seems to understand this problem as it tries to minimize it – the Government alleges that the insertion of a voicemail into a mail box "may trigger" an audible and visual notification." Compl., ¶ 41. Not that it does trigger a notification, just that it might. That is by definition speculative. At no point does the Government allege that any ringless voicemail sent over SNI's network caused any phone to ring.

16

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

132810565v.20

goods or services or to solicit a charitable contribution." The FTC has never initiated a rulemaking on the subject, issued an advisory opinion, filed a legal brief, made a formal interpretation, issued a policy statement, or offered testimony on the subject of whether RVMs are "telephone calls." More importantly, it has never issued a Warning Letter (to SNI's knowledge) to any company regarding RVMs. The FTC routinely issues Warning Letters to companies prior to hauling them into court, and its own advice on Warning Letters states: "The purpose of FTC warning letters is to warn companies that their conduct is likely unlawful and that they can face serious legal consequences, such as a federal lawsuit, if they do not immediately stop."[7] The FTC issued at least 19 Warning Letters to telemarketers in January 2020 alone,[8] and at least 13 since filing this case.[9] In its recently-filed case against XCast Labs for allegedly substantially assisting third-parties in violating the FTC Act and TSR, the Government supported its claim that XCast had "substantially assisted" third-parties in violating the TSR by showing that XCast Labs received both a CID and Warning Letters from the FTC. *U.S. v. XCast Labs*, No. 23-cv-03646 (C.D. Cal.), Dkt. 1. Here, no such Warning Letters or CID were ever issued or sent to SNI, nor does it appear that any Warning Letter has ever been sent to any company about RVMs.

The Complaint also fails to allege any underlying violation of the TSR related to SNI's SIP termination service. Although the Complaint alleges that Netlatitude's customers engaged in unlawful calling activity, the only activity alleged by Netlatitude's customers on SNI's service was a single RVM sent by an unnamed company. Compl., ¶

---

[7]   About FTC Warning Letters, https://www.ftc.gov/news-events/topics/truth-advertising/about-ftc-warning-letters (last visited June 16, 2023).

[8]   FTC Press Release (Jan. 30, 2020) found at https://www.ftc.gov/news-events/news/press-releases/2020/01/ftc-warns-19-voip-service-providers-assisting-facilitating-illegal-telemarketing-or-robocalling.

[9]   Legal Library: Warning Letters, https://www.ftc.gov/legal-library/browse/warning-letters (last accessed June 16, 2023)

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

17

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

114. The Government claims that Netlatitude "routed and transmitted lead generation robocalls utilizing SIP termination service *not* provided by [SNI]," including for Alcazar Networks, Inc. (not a defendant in this case), and for Fortress Leads (also not a defendant in this case) (Compl., ¶¶ 111-12 (emphasis added)). But the Government does not allege that even a single telephone call (or RVM) made by Fortress or Alcazar was made using SNI's wholesale SIP termination service. The Government hasn't alleged sufficiently that Netlatitude's customers were making unlawful calls by providing any of the details of such calls – who made them, to whom they were made, when they were made, or what the content of the calls were.

## 2.     SNI Did Not Substantially Assist in Any Purported Underlying Violations of The TSR

Not only is the Government unable to state a claim against SNI for "substantially assisting" a violation of the TSR with regard to RVM since RVM are not subject to the TSR, and not only has the Government failed to state a claim for "substantial assistance" by failing to adequately allege any underlying violation of the FTC Act or TSR, but even if it could overcome those two hurdles, it still has not, and cannot, adequately plead a claim that SNI substantially assisted the underlying activity of Atlas Networks[10] or Netlatitude's customers, much less those defendants with whom SNI isn't even alleged to have done any business.

The Supreme Court, dismissing a recent "substantial assistance" claim, warned that if aiding and abetting were taken too far, "then ordinary merchants could become liable for any misuse of their goods and services" and "those who merely deliver mail or transmit emails could be liable for the tortious messages contained therein. *Twitter, Inc. v. Tammneh*, 143 S. Ct. 1206, 1221 (2023) (*citing* Rest. (Second) of Torts § 876, Cmt. d, Illus. 9, p. 318 (1979) (cautioning against this result). Here we are.

---

[10] The Government includes a laundry list of RVM users (*see* Compl., ¶ 97) but makes no allegations of what they have done or that any actions of those users was illegal.

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

132810565v.20

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

The Government's allegations as to "substantial assistance" consist of nothing more than an allegation that SNI provided Atlas "with the means to initiate outbound telephone calls." Compl., ¶ 86. This bare allegation is not sufficient to convert "passive assistance into active abetting." *See Tammneh*, 143 S. Ct. at 1227. The Government makes no allegations here about any other RVM users, and it alleges no "assistance" other than providing access to its RVM platform. In *Tammneh*, the Supreme Court found no nexus between Twitter's platform and the unlawful acts of the ISIS attackers, because the complaint alleged "only that defendants supplied generally available virtual platforms that ISIS made use of, and that defendants failed to stop ISIS despite knowing it was using those platforms." 143 S. Ct. at 1230. That bare allegation falls short of the line to meet the pleading standards of either Rule 8(a) or Rule 9(b), and it warrants dismissal here, just as it did in *Tammneh*.

The Government also attempts to allege that SNI "had direct knowledge of, and the right to control" the RVMs made by Atlas (Compl., ¶ 88). But these are not factual allegations; they are mere factual and legal conclusions, which are unsupported by any other allegations in the Complaint and fail to meet the minimal pleading requirements of Rule 8(a). They are no different than the allegations in *Iqbal* that alleged the defendants "each knew of, condoned, and willfully and maliciously agreed to" the unconstitutional policies under which Iqbal was detained; like those allegations, the "conclusory nature" of the Government's allegations about SNI's knowledge here is such that it "disentitles them to the presumption of truth." *See Iqbal*, 556 U.S. at 681. The allegation that users' messages are stored on SNI's platform and the allegation that SNI did not ensure "that they obtain prior express written consent" (Compl., ¶ 88) similarly do not establish either knowledge or the right to control, and their conclusory nature disentitles them to the presumption of truth as well.

19

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

To the contrary, publicly-available information demonstrates SNI's lack of any right to control the content of the messages its users distribute. SNI's privacy policy,[11] which is a binding part of its contracts with users, states that SNI "will not review, share, distribute, or reference" any user data "except as may be required by law." No law requires SNI to review the content of messages third-parties convey using SNI's system. Similarly, SNI had no right to monitor or control the SIP-terminated calls made by Netlatitude's former customers, and the Government does not even allege that it did. The Government seems to be suggesting that SNI had a duty to unlawfully eavesdrop on calls being transmitted by Netlatitude's customers using SNI's bandwidth, determine whether the content of such calls was lawful or unlawful, and then take some non-mandated action if it determined such calls were unlawful.

The Government leans into those suggestions, claiming that SNI should be bound to "requiring and insuring that [its users] obtain prior express written consent from recipients, scrub lists of uploaded phone numbers against the DNC registry, or otherwise comply with the TSR." *Id.* This is a breathtaking list of legal obligations the Government contends, incorrectly, that SNI owed. No law suggests such obligations, and none is identified by the Government. In fact, SNI had no right to control the RVMs at issue here – which were not "telephone calls" in the first place. Nothing in SNI's terms provides such a right, and no legal basis for such a right is alleged. But SNI need not disprove its right to control its former users' messages; the Government needs to plead facts and the law which plausibly demonstrate it.

Rather than alleging that SNI did something to "substantially assist" others in committing unlawful acts, the Government's case against SNI is based on the notion that SNI was obligated to ensure its users acted lawfully, and that if it didn't ensure they did

---

[11]   SNI's   Privacy   Policy   as   of   August   3,   2020, https://web.archive.org/web/20200803180822/https://straticsnetworks.com/privacy-policy/ (last accessed June 16, 2023).

20

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

so, it was "substantially assisting" them. The Government's allegations consist almost entirely of things that SNI did <u>not</u> do, and nothing that SNI actually <u>did</u>. The Government cannot base a claim for "substantial assistance" entirely on things not done. As the Supreme Court noted, "if a plaintiff's theory would hold a defendant liable for all the torts of an enterprise, then a showing of pervasive and systemic aid is required to ensure that defendants actually aided and abetted each tort of that enterprise." *Tammneh*, 2023 WL 3511531, at *18. The Government's failure to allege facts[12] setting out the right to control it suggests or the "pervasive and systematic aid" that the law requires, dooms the only claim made against SNI.

Conclusory allegations of substantial assistance, such as the allegations made here, do not meet the pleading standards of Rule 8 and warrant dismissal. In *Grijalva v. Kevin Mason, P.A.*, No. 18-CV-02010, 2019 WL 8221076, at *4 (C.D. Cal. Dec. 30, 2019), the court dismissed a claim of "substantial assistance" against an exclusive payment processor for telemarketers under 310.3(b) where the complaint was "permeated with conclusory allegations that [the defendant] 'substantially assisted' the TSR-violative RICO enterprise." *Id*. The court there found that "merely acting as a payment processor and accepting, for a fee, monthly payments before remitting them to the other Defendants" failed as a matter of law to state a claim under 310.3(b), granting a 12(b)(6) motion against it. *Id*. at *5. And "repeatedly using the words telemarketer, seller, and telemarketing, and making conclusory allegations of underlying TSR violations" as the

---

[12] The Government does not even make <u>vague</u> allegations that SNI provided "substantial assistance" to Netlatitude by providing it SIP termination service – it skips that allegation entirely and moves straight to alleging knowledge or conscious avoidance (which it also alleges in a conclusory fashion devoid of actual facts that plausibly support such a conclusion). At best, the Government's Complaint can be construed to mean that "providing SIP termination service to Netlatitude" (Compl., ¶ 119), which Netlatitude then resold to its own customers, is "substantial assistance." But that is not alleged, and even if it were, it would be insufficient.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

21

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Government does here against SNI, "isn't enough." *FTC v. Walmart Inc.*, No. 22 CV 3372, 2023 WL 2646741, at *10 (N.D. Ill. Mar. 27, 2023).[13]

The FTC has itself provided guidance on the issue of what constitutes the provision of "substantial assistance" to telemarketers. In enacting the TSR, the FTC stated that:

> Acts of substantial assistance that could meet the Section 310.3(b) liability standard include: providing lists of contacts to a seller or telemarketer that identify persons over the age of 55, persons who have bad credit histories, or persons who have been victimized previously by deceptive telemarketing or direct sales; providing any certificate or coupon which may later be exchanged for travel-related services; providing any script, advertising, brochure, promotional material, or direct marketing piece used in telemarketing; or providing an appraisal or valuation of a good or service sold through telemarketing when such an appraisal or valuation has no reasonable basis in fact or cannot be substantiated at the time it is rendered.

Telemarketing Sales Rule, 60 FR 30406-01 (June 8, 1995).[14] SNI did none of these things, and the Government does not allege that it did. Although the list above is non-exhaustive, it is informative. It shows what another court recently stated in dismissing substantial assistance claims brought by the FTC against another defendant – that "processing routine transactions isn't substantial assistance." *Walmart Inc.*, 2023 WL 2646741, at *13. In *Walmart*, the court held that the FTC had failed to satisfactorily allege that Walmart provided "substantial assistance" to third-parties who used Walmart

---

[13] *See also Allison v. Wells Fargo Bank*, No. 22-CV-0510, 2022 WL 10756885, at *1 (S.D. Cal., Oct. 17, 2022). In *Allison*, this Court held that allegations that "merely recite the words of the TCPA" or that parrot "the statute without providing any factual support for the allegations" do not satisfy the "plausibility pleading standard" and the "Court does not accept such conclusory allegations as true in assessing plausibility." 2022 WL 10756885, at *2, 3.

[14] A few weeks later, it clarified that "the ordinary understanding of the qualifying word 'substantial' encompasses the notion that the requisite assistance must consist of more than mere casual or incidental dealing with a seller or telemarketer that is unrelated to a violation of the Rule. 60 FR 43842, 43852 (Aug. 23, 1995).

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

22

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

services for the transmission of money from engaging in fraud. *Id.* There, the facts alleged were far more compelling than those alleged in this case. All SNI is alleged to have done in this case is provide information services. In *Walmart*, the defendant allegedly *knew* of numerous specific instances of fraudulent activity but took insufficient action to prevent it. If that was not enough to state a claim for "substantial assistance," then the allegations here surely do not state a claim.

Courts of the Ninth Circuit have found "substantial assistance" where a defendant "edited and approved telemarketing scripts" and "directed [others] to use these scripts." *CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022). These actions provided more than mere "casual or incidental" assistance to the direct offenders. *Id.* Similarly, where a defendant supplied "everything" that a TSR violator would need to start a business, "substantial assistance" was found. *See CFPB v. Daniel A. Rosen, Inc.*, No. 21-CV-07492, 2022 WL 1514439, at *5 (C.D. Cal. Apr. 5, 2022). Other courts have also found that substantial assistance is provided when one defendant "formulated, directed, controlled . . . or participated in the unlawful telemarketing acts and practices" of other, more directly liable defendants. *FTC v. Jones*, No. SA CV 17-0058, 2017 WL 11198503, at *3 (C.D. Cal. May 25, 2017); *see also FTC v. Univ. Premium Svcs., Inc.*, No. CV 06-0849, 2006 WL 8442134, at *7-8 (C.D. Cal. Mar. 14, 2006). But no such conduct is alleged here.

To adequately plead "substantial assistance", the Government "must establish that the aider and abettor in some sort associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his action to make it succeed" and "take some affirmative act with the intent of facilitating the offense's commission." *Tammneh*, 143 S.Ct. at 1221 (collecting authorities). The Government comes nowhere near meeting this pleading standard in this case – especially considering that SNI stopped doing business with both Atlas and Netlatitude over two years ago. Like

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

the defendants in *Tammneh*, SNI's relationship with the other defendants in this case is "the same as their relationship with their … other users: arm's length, passive, and largely indifferent." 143 S.Ct. at 1209.

### 3. SNI Neither Knew, Nor Consciously Avoided Knowing About Violations of the TSR, And Terminated Anyone Suspected of Sending Calls or RVM without Consent.

The Government fails to adequately allege that SNI knew or consciously avoided knowing that its users were violating the TSR. The Government alleges the conclusion that SNI "knew" that Atlas[15] was violating the TSR because Atlas "delivered prerecorded messages" without express written consent, to numbers on the National DNC Register, and that failed to disclose Atlas' identity truthfully. *See* Compl., ¶ 90. But none of the facts that are alleged add up to either "knowledge" or "conscious avoidance" of knowledge. Although the allegations are quite vague, the Government seems to argue that SNI could have listened to all of Atlas' messages before they were sent, checked the numbers against the DNC Registry, and verified Atlas' identification in all of them, before allowing Atlas to distribute the messages Atlas created to the persons Atlas selected. The allegation that SNI could have done all of these things but did not is what the Government contends constitutes knowledge of Atlas' alleged wrongdoing. *See* Compl., ¶ 88. The fact that audio files were stored on SNI's platform does not mean that SNI could listen to them or knew what they contained, much less that SNI had any legal obligation to do so, or, as a practical matter, had the ability to review every audio message every user uploaded to the system. A requirement that SNI monitor all of its users' activities is not found in any law or regulation, and such a requirement would be

---

[15] The Complaint alleges violations by other SNI users as well, but it does not identify those users, the messages that they sent or when, why those messages were unlawful, or any other information. Although the Government names several alleged users of SNI in Paragraph 97 of the Complaint (some erroneously), it makes no allegations that any of the actions of these users were unlawful or even what those actions were.

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

impossible as a practical matter. And, even if SNI could have monitored every audio file ever uploaded – legally and practically speaking – was SNI obligated to engage attorneys to review those audio files and offer legal opinions as to their compliance with the TSR or other statutes?

The Government's attempts to demonstrate that SNI had or consciously avoided knowledge that RVMs "were covered by the TSR" are similarly misplaced. The Government claims that SNI was "aware of the FTC's enforcement of the TSR" because the FTC purportedly settled a case in 2020 with an unnamed RVM provider – the name and case number are not provided in the Complaint. The Government then bootstraps that supposed fact into "knowledge or knowledge fairly implied that RVMs are covered by the TSR." Compl. ¶ 87. It is not clear <u>today</u> that RVM is covered by the TSR, much less in 2020. No warnings, guidance, or guides have ever been released by the FTC stating that RVMs are covered by the TSR. The FTC has never initiated a rulemaking procedure[16] on the subject, nor has it engaged in any other formal process to determine whether such voicemails are subject to the TSR. Certainly the fact that some unnamed defendant chose to settle a lawsuit *alleging* that RVMs are "covered by the TSR" cannot be evidence that they are *in fact* "covered by the TSR." Parties to lawsuits settle for all kinds of reasons without admitting the truth of the allegations. Just because the FTC argues that RVMs are covered by the TSR doesn't make it so.

---

[16] The FCC, by way of contrast, issued a Declaratory Ruling and Order in November 2022 finding that RVMs are "calls" for purposes of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), *see* FCC 22-85 (Nov. 21, 2022), but that ruling came out <u>more than two years</u> after the conduct alleged in the Complaint ended, and whether RVM is a "call" under the TCPA is a very different question from whether it is a "telephone call" under the TSR – a question that has never been addressed by any court or agency. The mere fact that the FCC felt it necessary in 2022 to clarify that the TCPA applies to RVM demonstrates that knowledge of RVMs being subject to either the TCPA or the TSR was impossible two years earlier. If the FTC wishes to have RVM covered by the TSR, it can accomplish that goal through regulation, not litigation.

25

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

132810565v.20

To support an inference of the requisite knowledge, the Government must allege SNI "consciously avoided facts about an identifiable telemarketer's fraudulent act or practice: substantial assistance liability attaches to one who consciously avoids knowing that "the seller or telemarketer" is violating the TSR." *Walmart Inc.*, 2023 WL 2646741, at *11 (emphasis in original). In *Walmart*, the court found that "the FTC hasn't plausibly alleged an underlying violation of the TSR" because it failed to set forth "examples of transactions that fit the TSR's definitions, or by describing in more detail categories of fraud that hit all the elements of a TSR violation perpetrated using Walmart's services." *Id.*, at *10. The court stated that without "more information about why Walmart should have suspected specific transactions, Walmart's failure to ask questions and processing of suspected fraud, isn't evidence of conscious avoidance of TSR violations." *Id.* As in *Walmart*, here the Government hasn't alleged enough about the circumstances of the messages and calls at issue to show that SNI knew or consciously avoided knowing about TSR violations by third-parties.

The Government tries to fill that gap with the "traceback requests" issued by US Telecom's Industry Traceback Group ("ITG") in its attempt to demonstrate that SNI knew that Atlas and Netlatitude's customers were violating the TSR. Paragraphs 91-105 and 117-23 of the Complaint are about nothing but traceback requests to SNI and others. The Government's allegations that SNI "knew or consciously avoided knowing" that Atlas was violating the TSR, and that SNI "knew or consciously avoided knowing" that Netlatitude was using SNI's SIP termination service to violate the TSR, are based *entirely* on these traceback requests. Compl., ¶¶ 106, 120.

But there are several things the Government fails to note about the traceback requests. First, SNI was under no obligation to respond to any of those traceback requests, much less an obligation to terminate the users to whom they related. US Telecom was not and is not a Government actor. It is a private entity, and it wasn't even designated as

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

the "official FCC-designated consortium" (*see* Compl., ¶ 91) to trace calls until July 27, 2020. *See FCC Report and Order*, (July 27, 2020). The Order appointing US Telecom demonstrates that responding to traceback requests was not a legal obligation, stating that a designation by US Telecom that an entity is non-cooperative "is not a legal determination and does not have any direct legal implication." *Id.*, ¶ 28. US Telecom itself admits that it "is not a law enforcement agency."[17] US Telecom itself refuses to share calling information "without appropriate legal process (*e.g.*, subpoena, Civil Investigative Demand, or other lawful request)."[18] The Government did not even <u>propose</u> a requirement that telecom providers be required to respond to US Telecom traceback requests until July 17, 2020,[19] did not enact such a requirement until December 30, 2020 – well after the last act alleged against SNI in the Complaint,[20] and after the users identified in the US Telecom tracebacks had long since been terminated by SNI, of its own volition.

The Government seeks to hold SNI liable <u>solely</u> on the basis of its failure to immediately block traffic from Atlas and Netlatitude based on US Telecom traceback requests. SNI was not legally permitted to do so until July 17, 2020, and was <u>never</u> notified by the Government that it should. On that day, the FCC clarified:

> that voice service providers are permitted to block calls from "bad-actor" upstream voice service providers. Specifically, we make clear that a voice service provider may block calls from an upstream voice service provider that, <u>when notified that it is carrying bad traffic by the Commission</u>, fails to effectively mitigate such traffic or fails to implement effective measures to prevent new and renewing

---

[17] About What is the Industry Traceback Group?, https://tracebacks.org/about/ (last accessed June 16, 2023). Even today, ITG's manual says nothing about RVM.

[18] ITG Policies and Procedures, https://tracebacks.org/itg-policies-and-procedures/ (last accessed June 16, 2023)

[19] Third Report and Order, Order on Reconsideration, and Fourth Further Notice of Proposed Rulemaking, FCC-20-96, 35 FCC Rcd 7614 (9), par. 96 (July 17, 2020).

[20] Fourth Report and Order, FCC 20-187, at 7, ¶¶14, 15 (Dec. 30, 2020).

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

customers from using its network to originate illegal calls. The notification from the Commission will be based on information obtained through traceback, likely in coordination with the Traceback Consortium."

*Third Report and Order, Order on Reconsideration, and Fourth Further Notice of Proposed Rulemaking*, FCC-20-96, 35 FCC Rcd 7614 (9), ¶37 (July 17, 2020) (emphasis added). The Government specifies not a single traceback request sent to SNI after that date. The Government does claim that SNI received eight traceback requests regarding Netlatitude "from April 2020 through September 3, 2020," (Compl., ¶120) but does not specify what dates those were sent. The Government identifies no traceback requests regarding Atlas after June 2020, before US Telecom was even appointed by the FCC. *See* Compl., ¶¶ 104-06. And the Government never sent any notification to SNI that it was "carrying bad traffic," as the Order requires before SNI could block calls from any voice service provider.[21]

Moreover, SNI promptly investigated all traceback requests to the best of its ability based on the limited information US Telecom provided, even before this time. The Government alleges that US Telecom sent traceback requests to SNI between April 2019 and February 2021 regarding RVM. Compl., ¶ 95. But the fact that SNI received traceback requests over a nearly 2 year period does not support a claim that SNI had knowledge that anyone was engaged in unlawful conduct. SNI responded to all but one of those requests, and either identified or terminated the originators of those messages from its network in every instance.[22] *See* Compl., ¶¶ 118, 119 (SNI identifying and then

---

[21] The November 2020 CID that the Government references in Paragraphs 102 and 108 of the Complaint was not issued to SNI. The Government knows this (it issued the CID and a follow-up CID), but tries to hide the fact that it issued that CID to Stratics Group, Inc., a separate U.S. company, and not to SNI.

[22] Had the Government pled these traceback requests with any semblance of the specificity required by Rule 8, SNI could respond to them more fully – SNI has always taken these requests seriously and responded as fully and promptly as possible. But

28

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

terminating Netlatitude). No requests related to Atlas were issued after June 15, 2020, there were no requests related to Netlatitude after September 2, 2020 and the Government alleges no violative RVM's by either after those dates. Not a single one of those traceback requests mentioned "fraud," the TSR, or the FTC Act. There was no suggestion that Atlas or Netlatitude were engaged in any kind of fraud. SNI terminated both Atlas and Netlatitude as users and discontinued offering wholesale SIP termination service. All this – <u>everything</u> alleged in the Complaint – happened before the date SNI was even obligated to respond to US Telecom's requests. US Telecom has not issued a single traceback request to SNI since February 10, 2021.[23]

The Government failed to allege any underlying TSR violation that occurred on SNI's system. The Government failed to allege that SNI assisted Atlas or Netlatitude in any way other than selling them information services. And the Government failed to adequately allege that SNI had knowledge of, or consciously avoided knowledge of, any violations of the TSR. The traceback requests the Government relies upon demonstrate that SNI could not have had such knowledge. SNI must therefore be dismissed.

**IV.  THE GOVERNMENT'S COMPLAINT FAILS TO STATE ANY CLAIM FOR INJUNCTIVE RELIEF FOR BUSINESS OPERATIONS AND BUSINESS ACTIVITY THAT SNI SHUT DOWN YEARS AGO WITHOUT GOVERNMENT WARNING OR INVOLVEMENT.**

Even if the Government could show that SNI's former users violated the TSR in 2020, nothing in the Complaint provides any basis for injunctive relief against SNI now, more than two years after SNI itself shut down all traffic from the two supposedly-

---

without some understanding of which requests the Government is referencing, SNI can only discuss them in similarly vague terms as the Government uses.

[23] SNI issued a formal request under FOIA to the FTC on March 14, 2022, seeking, among other things, communications between US Telecom and the FTC regarding SNI, in the hopes of discussing SNI's responses to the traceback requests and avoiding this litigation. Although the FTC acknowledged receipt of the request, it never responded to it in any way.

101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815
Locke Lord LLP

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

offending former users. 15 U.S.C § 53(b)(1) allows for the entry of an injunction only where the FTC has reason to believe that a defendant "is violating, or is about to violate, any provision of law enforced by" it. The Ninth Circuit has denied the FTC the right to seek injunctive relief under the same circumstances as here, stating that "§ 13(b) may not be used to remedy a past violation that is not likely to recur." *FTC v. Evans Prod. Co.*, 775 F.2d 1084, 1089 (9th Cir. 1985). The court found that, because the "alleged practices have ceased and are not likely to recur, the FTC may not obtain preliminary injunctive relief under § 13(b)." *Id*. If "a violator's conduct is neither imminent nor ongoing, there is nothing to enjoin, and the FTC cannot sue under Section 13(b)." *FTC v. AbbVie Inc*, 976 F.3d 327, 376 (3d Cir. 2020).

The Government alleges "the FTC has reason to believe that Defendants [not SNI specifically] are violating or are about to violate laws enforced by" the FTC. Compl., ¶124. The FTC cannot possibly have that belief as to SNI. None of the allegations against SNI claim any current or recent activity. SNI terminated its relationship with both Atlas and Netlatitude in 2020, which the Government effectively admits. *See* Compl., ¶¶ 48, 102. The FTC cannot have reason to believe that SNI is violating or about to violate, any provision of law it enforces. All the allegations of the Complaint address conduct by SNI's former users – not SNI itself – that SNI stopped years ago on its own volition, without demand from the FTC or any other Government agency.[24] The fact that US Telecom has not even sent SNI a single "traceback request" in more than two years

---

[24] There is a different process under Section 5(b) of the FTCA that the FTC can use to address past violations; it is simply not the litigation process that the Government chooses here. "If the FTC wants to [address] a past violation — where an entity 'has been' violating the law — it must use Section 5(b). Section 13(b), by contrast, mainly exists to 'address[ ] a specific problem, namely, that of stopping seemingly unfair practices'… that are ongoing or about to occur 'from taking place' until the Commission can complete an adjudication." *FTC v. Facebook, Inc*., 560 F. Supp. 3d at 26 (*citing AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021)).

30

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

further demonstrates that the Government cannot have a belief that SNI is violating or is about to violate the TSR or the FTCA.

Here, as the Complaint itself demonstrates, all of the alleged third-party conduct ended years ago. The FTC lacks statutory authority to seek an injunction "based on [such] long-past conduct." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 5 (D.D.C. 2021). The Government cannot demonstrate that SNI is violating, or is about to violate, any provision of any law enforced by the FTC. In fact, it makes no attempt to so demonstrate. Its request for injunctive relief against SNI must therefore be dismissed.

## V.   THE GOVERNMENT'S COMPLAINT FAILS TO STATE ANY CLAIM FOR CIVIL PENALTIES FOR BUSINESS OPERATIONS AND BUSINESS ACTIVITY THAT SNI SHUT DOWN YEARS AGO WITH NO GOVERNMENT WARNING OR INVOLVEMENT.

The Government's request for civil penalties against SNI is what this case is all about. The threat of imposing massive civil penalties against SNI and bullying it into a consent decree that can be the subject of another FTC press release is the reason that the Government has skipped all formal and informal rulemaking processes, failed to bother to even issue a Warning Letter to SNI, and instead filed suit directly against SNI while publicizing the filing throughout the nation. SNI's inclusion as a defendant is not the result of any wrongdoing by SNI, but instead results from an improper agenda-driven attempt by the FTC to regulate through litigation. It is illustrative of a new overly-aggressive culture at the FTC that has resulted in the recent resignation of one FTC Commissioner, received widespread criticism, and has resulted in a House probe into allegations that the FTC has recently demonstrated "disregard for the rule of law and due process". *See* Berg, L., *FTC's Khan Accused of "Abuse of Power" in House Probe*, Law360, June 1, 2023, https://www.law360.com/articles/1683928/; Perlman, M., *Departing FTC Member Warns White House About Leadership*, Law360, Mar. 2, 2023, https://www.law360.com/consumerprotection/articles/158175; Sullivan, A., *FTC Actions Show Need to 'Rein In' Agency, Chamber Says*, Law360, May 17, 2023,

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

https://www.law360.com/consumerprotection/articles/1678413. There is little question that the FTC wishes SNI's business were unlawful and seeks to put SNI out of business despite the fact that its business is perfectly lawful and is used lawfully by its users.

SNI is a good corporate citizen. SNI is engaged in a lawful business and its systems are used by its users, including local and federal governments, lawfully every day. It has always been a company that complies with the laws and regulations applicable to information service providers and has a well-deserved reputation for staying compliant with the law and ensuring that its users do the same. SNI requires its users to warrant that they will use SNI's system only lawfully, blocks any attempts to use invalid caller ID's, requires users to represent that they have scrubbed their distribution lists against the national do-not-call registry and against mobile phone numbers, immediately blocks any caller ID's suspected of noncompliant conduct, and permanently terminates all accounts that engage in unlawful or fraudulent conduct.

The only claims made in the Complaint are for violations of the TSR by companies with which SNI has long stopped doing business, on its own initiative. SNI is alleged to have done nothing besides provide information services to those companies, which the Government now claims amounts to "substantial assistance or support" for violations of the TSR allegedly committed by those companies, not SNI.

The FTC thinks it can force SNI to agree to a consent decree that will further the FTC's political agenda by filing this lawsuit and threatening severe civil penalties if SNI refuses to submit. To that end, the Government seeks imposition of civil penalties against SNI only under Section 5(m)(1)(A) of the FTCA, 15 U.S.C. §45(m)(1)(A). Compl., ¶¶ 148-49. Notably, the Government makes no attempt to impose civil penalties under the very next, and much more common, authority for penalties – Section 5(m)(1)(B), 15 U.S.C. § 45(m)(1)(B). The distinction is telling, and it underscores the persecutory nature

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

32

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

of the Government's claim against SNI, substantiating Commissioner Wilson's allegations as she resigned from the FTC.

Section 5(m)(1)(B) allows the FTC to recover a civil penalty only after a proceeding and a final cease and desist order determining that any act or practice is unfair or deceptive, followed by a violation made "with actual knowledge that such act or practice is … unlawful." 15 U.S.C.A. § 45(m)(1)(B). Obviously, the Government cannot avail itself of Section (5)(m)(1)(B). The FTC held no "proceeding" in which it determined that the provision of RVM was unfair or deceptive, and there was no "determination" or "final cease and desist order" issued. There was no "proceeding" before the FTC to determine that RVM is a "telephone call" in the first place. The FTC could not seek civil penalties under Section 5(m)(1)(B) precisely because it could not show that SNI had "actual knowledge" that any act alleged in the Complaint was unlawful under the TSR.

Section 5(m)(1)(A), on the other hand, allows the FTC to recover a civil penalty against a defendant which "violates any <u>rule</u> under this subchapter respecting unfair or deceptive acts or practices … with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited <u>by such rule</u>." 15 U.S.C.A. § 45(m)(1)(A) (emphases added). The Government attempts to fit into this section of the FTCA by pretending that its 1995 enactment of the TSR, without more, was sufficiently precise to apprise SNI of its application to RVM, despite it not being discussed in that regulation or any subsequent rulemaking.

Luckily, rules do exist. The FTCA requires the FTC to prescribe rules which "<u>define with specificity </u>acts or practices which are unfair or deceptive acts or practices," 15 U.S.C. §57a(a)(1)(B) (emphasis added) and requires rules to go through the notice and rulemaking procedure listed in that statute. 15 U.S.C. §57a(b). That has never been done. Here, the Government attempts an end-run around both the rulemaking process and the cease-and-desist order process by claiming that SNI "was aware of the FTC's

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

33

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

enforcement of the TSR" through a single (unnamed) lawsuit, Compl., ¶ 87, and that SNI was aware of the traceback requests issued by US Telecom.[25] Compl., ¶¶ 117-120.

Supreme Court precedent demands that a defendant know that what it (or in SNI's case, its former users) did is a violation of the law in order to impose civil penalties under Section 5(m)(1)(A). In *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), the Supreme Court reiterated that a "fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." That same year, it similarly noted that:

> It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference.

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012). And in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), the Court noted that Congress "intended to provide a mistake-of-law defense to civil liability" in the FTCA, even though it did not in other statutes. *See* 559 U.S. at 583-84 (noting differences in permitting consumers to sue for a defendant's mistaken interpretation of the [Fair Debt Collection Practices Act, at 15 U.S.C. § 1692 et seq.], while reserving the more onerous penalties of the FTCA for those whose intentional actions also reflected "knowledge fairly implied on the basis of objective circumstances" that the conduct was prohibited.").

---

[25] US Telecom is not a Governmental entity, until July 2020 had no affiliation with the federal Government, and even its recent Government "affiliation" is with the FCC, not the FTC. Moreover, none of the US Telecom tracebacks stated that anyone was violating the TSR or requested that SNI shut off service to any user. Even so, SNI investigated the claims in US Telecom's tracebacks from the outset and attempted as best as possible to provide US Telecom what assistance it could provide as US Telecom worked through the problems and inefficiencies of its early existence.

34

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

The dissent also noted that "there is no doubt that § 45(m)(1)(A) permits a mistake-of-law defense." 559 U.S. at 629-30 (Kennedy, J., dissenting). In other words, only "when parties are on notice that the Commission has condemned certain practices in a <u>litigated final order</u>, these practices can become "penalty offenses"--offenses that carry with them the threat of significant civil penalties." Chopra, R. & Levine, S. *The Case for Resurrecting the FTC Act's Penalty Offense Authority*, 170 U. Pa. L. Rev. 71, 95 (2021) (emphasis added).

Former Commissioner Christine Wilson effectively described the FTC's conduct here as she resigned from the FTC, days before this lawsuit was filed. She noted that "due process demands that the lines between lawful and unlawful conduct be clearly drawn, to guide businesses before they face a lawsuit." Wilson, C., *Why I'm Resigning as an FTC Commissioner*, Wall St. Journal, A17 (Feb. 15, 2023). Commissioner Wilson resigned because the FTC is so aggressively pursuing its political agenda that it no longer feels bound by the rule of law. The Supreme Court has agreed. Less than two weeks after Commissioner Wilson's op-ed, it issued *Bittner v. U.S.*, 143 S. Ct. 713 (2023), where it reiterated the "rule of lenity" requiring that "statutes imposing penalties are to be construed strictly against the government and in favor of individuals" … and "an individual is not to be subjected to a penalty unless the words of the statute plainly impose it." 143 S. Ct. at 724. The FTC never took any formal or informal action to alert SNI (or any other defendant) that the FTC considered what they were doing was a violation of the FTCA.[26] The FTC has never issued a CID to SNI, never issued a subpoena to SNI, never sent SNI a Warning Letter, and never sent a "Notice of Penalty Offense" which the

---

[26] A person knowingly violates an FTC rule only if, under the circumstances, a reasonable, prudent person would have known of the existence of the rule and that his or her acts or practices violated the rule. *U.S. v. National Fin. Svcs., Inc.*, 98 F.3d 131, 139-40 (4th Cir. 1996); S. Conf. Rep. 93-1408, 93d Cong., 2d Sess., 7772 (1974).

35

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

FTC admits is required "[i]n order to trigger [its] authority" to issue civil penalties under Section 5(m)(1)(B).[27]

There is no indication that such Notices were served on any of the former users of SNI services who are defendants, either. The FTC describes this required Notice as "a document listing certain types of conduct that the Commission has determined, in one or more administrative orders (other than a consent order), to be unfair or deceptive in violation of the FTC Act. Companies that receive this Notice and nevertheless engage in prohibited practices can face civil penalties." *Id*. The FTC even states that it sends Notices "to ensure that companies understand the law – and that they are deterred from breaking it" and lists the Notices that it sends on its website. *Id*. But nothing was ever sent here.

The absence of any formal rulemaking process, hearings, Warning Letters, CIDs or Notices to SNI or any of its former users demonstrates not only that the Government cannot make the showing necessary to seek civil penalties under Section 5(m)(1)(B), it also demonstrates that SNI could not possibly have had "actual knowledge or knowledge fairly implied on the basis of objective circumstances" that any act performed by it or its former users "is unfair or deceptive and is prohibited by such rule." *See* 15 U.S.C.A. § 45(m)(1)(A). Without such knowledge, the Government cannot seek penalties under Section 5(m)(1)(A), either.

## VI. THE GOVERNMENT'S COMPLAINT VIOLATES ARTICLE II OF THE CONSTITUTION BECAUSE THE COMPLAINT ATTEMPTS TO EXERCISE EXECUTIVE AUTHORITY THAT CANNOT BE WIELDED BY AN INDEPENDENT AGENCY DESPITE CONGRESSIONAL ENACTMENT.

The Government sues under two provisions, 15 U.S.C. § 53(b) and 15 U.S.C. § 45(m)(1)(A), that it claims allow it to enforce the FTCA by suing violators in court for permanent injunctive relief and civil penalties. The FTC's supposed authority to sue

---

[27] *See* Notice of Penalty Offenses, https://www.ftc.gov/enforcement/penalty-offenses (last accessed June 16, 2023).

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

132810565v.20

under these statutes, based upon Congress' expansion of the FTC's law-enforcement authority in the 1970s, is invalid based on the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), because it violates Article II of the Constitution.

The FTC is an independent agency; its commissioners are not removable at will by the President, and can only be removed for "inefficiency, neglect of duty, or malfeasance." *Humphrey's Executor v. U.S.,* 295 U.S. 602, 618-20, 625-32 (1935) (rejecting President's argument that he had Article II power to remove a Commissioner based on policy disagreements). But Article II vests <u>all</u> of "the 'executive Power' [in the] President.'" *Seila Law,* 140 S. Ct. at 2191. Because principal executive officers "must remain accountable to the President, whose authority they wield," the President's power includes "appointing, overseeing, and controlling" such officers. *Id*. at 2197. And "[t]hat power, in turn, generally includes the ability to remove" such officers on an "unrestricted" basis, as "has long been confirmed by history." *Id*. at 2197-98. The President cannot "take Care that the Laws be faithfully executed" if he cannot oversee the faithfulness of the officers who execute them. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 484 (2010).

Congress did not grant the FTC the power to seek permanent injunctive relief in the absence of an agency adjudication, as it does here, until 1973. *See* 15 U.S.C. § 53(b) (amended in Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973)). It did not give the FTC the power to seek the civil penalties it seeks here until 1975. *See* 15 U.S.C. §§ 45(m), 57b (enacted in Pub. L. No. 93-637, §§ 205-06, 88 Stat. 2183, 2200-02 (1975)). Both provisions are incompatible with the FTC's status as a valid independent agency. Prior to these enactments, the FTC exercised only "quasi-legislative or quasi-judicial powers," and "no part of the executive power." *Seila Law*, 140 S. Ct. at 2198 (*quoting Humphrey's Executor*, 295 U.S. at 628). But the power to sue for injunctive relief and civil penalties without agency adjudication is inherently executive, and Congress was powerless to

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

37

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

imbue an agency independent from the President with such authority. *See Seila Law* 140 S. Ct. at 2199-2200 (refusing to extend narrow exception to separation of powers for "multimember expert agencies that do not wield substantial executive power" to CFPB); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783-87 (2020) (refusing to extend exception to Federal Housing Finance Agency); *see Bowsher v. Synar*, 478 U.S. 714 (1986) (finding that Congress violated Article II by giving executive budgetary powers to Comptroller General removable by Congress).

Congress cannot later give an independent agency like the FTC indisputably executive powers. Yet that is precisely what Congress did with the powers at issue here. *Seila Law* recognized that the power of federal officers "to seek daunting monetary penalties against private parties on behalf of the United States" is "a quintessentially executive power not considered in *Humphrey's Executor*." 140 S. Ct. at 2200. The Government argued in *Seila Law* that "the ability to bring enforcement suits in federal court seeking retrospective relief . . . 'cannot possibly be regarded' as anything other than an exercise of the executive power and duty vested solely in the President." Gov't Br. 32, *Seila Law, supra* (No. 19-7), 2019 WL 6727094 (citation omitted).

In *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), the Supreme Court held that Article II prevented the Federal Election Commission, mostly comprised of Congressionally-appointed members, from exercising the "discretionary power to seek judicial relief" against election-law violators in court. 424 U.S. at 113, 137-38. The Court explained that "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President . . . that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Id*. at 138. Litigating civil cases to enforce public rights is an "executive power" that may not be granted to principal officers whom the President cannot appoint, *see id*. at 139-40. Such authority cannot be granted to FTC commissioners immune from policy-based removal; the President must "control … those who execute

101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815
**Locke Lord LLP**

38

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

the laws," *Seila Law*, 140 S. Ct. at 2197. Of particular import to this case is the *Seila Law* Court's admonition that "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court [is] a quintessentially executive power not considered in *Humphrey's Executor*." *Id.* at 2200.

The litigation authority given to the FTC was unconstitutional when given. *See Walmart, Inc*., 2023 WL 2646741, at *25 (finding that the "litigation authority given to the FTC in the 1970s may have taken the Commission's for-cause protections past the outermost constitutional limits"). But where the *Walmart* court suggested that the solution was not to dismiss the Government's lawsuit, and instead to change the removal protections, the Supreme Court has since made clear that "being subjected" to "unconstitutional agency authority" is "a here-and-now injury," and "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903 (2023). Excusing the unconstitutionality of the grant of jurisdiction on which this suit is pled is not an appropriate remedy. The appropriate remedy is to bar the use of the unconstitutional authority until its unconstitutionality is rectified.

Congress violated Article II when it amended the FTCA to grant the independent FTC the executive litigation powers set forth in 15 U.S.C. §53(b) and 15 U.S.C. § 45(m)(1)(A). Each of those "unconstitutional statutory amendment[s] 'is a nullity' and 'void' when enacted," and grants no power that can be exercised here. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2353 (2020) (plurality op.) (citations omitted); *see Bowsher*, 478 U.S. at 734-35 (invalidating executive powers unconstitutionally granted to Comptroller General); 15 U.S.C. § 57 (FTCA severability clause). As the FTC lacks valid authority to bring this suit, the case must be dismissed with prejudice.

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20

## VII.   CONCLUSION

For all of these reasons, SNI respectfully requests that this Court grant its motion to dismiss, in its entirety, and with prejudice.

Dated: June 20, 2023

Respectfully submitted,

LOCKE LORD LLP

By: /s/ *Thomas J. Cunningham*

Thomas J. Cunningham
Meagan S. Tom
*Attorneys for Defendant Stratics Networks Inc.*
*E-mail:* tcunningham@lockelord.com
meagan.tom@lockelord.com

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

40

MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

132810565v.20