1
2
3
4
5

LOCKE LORD LLP
Thomas J. Cunningham (SBN: 263789)
tcunningham@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 485-1500
Fax: (213) 485-1200

6
7
8
9
10

Meagan S. Tom (SBN: 273489)
meagan.tom@lockelord.com
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Tel: (415) 318-8810
Fax: (415) 676-5816

11
12

Attorneys for Defendant
Stratics Networks Inc.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

13

## UNITED STATES DISTRICT COURT

14

## SOUTHERN DISTRICT OF CALIFORNIA

15

16
17

UNITED STATES OF AMERICA
          Plaintiff,

18

vs.

19

STRATICS NETWORKS INC., et al.

20

          Defendants.

21
22

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3:23-CV-00313-BAS-KSC

**DEFENDANT STRATICS NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

DATE:        October 18, 2023
PLACE:       Courtroom 12B

23
24
25
26
27
28

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  LEGAL ARGUMENT ..................................................................................... 2

    A.   **The Government Fails to Rebut SNI's Entitlement to Immunity Under Section 230 of the Communications Decency Act** ................................................................................................. 2

        1.   The Government Fails to Rebut the Fact that SNI's Platforms Are Each an Interactive Computer Service ..................... 2

        2.   The Complaint Seeks to Hold SNI Liable  Solely as a Publisher of Third-Party Content ...................................................... 9

        3.   The Government Makes No Attempt to Argue Whether the Claims Against SNI are Based Exclusively on Information Provided By Other Information Content Providers ....................... 13

    B.   **The Government Fails to State a Claim for "Substantial Assistance" of Any Underlying Violations of the TSR** ....................... 13

        1.   The Government Has Failed to Show An Underlying Violation That SNI Could "Substantially Assist" ......................... 13

            a)   *RVMs are Not "Telephone Calls" Under the Plain Language of the TSR*…...………………………………………..13

            b)   *The Government Does Not Address the Fact that No SIP "Calls" Allegedly Violated the TSR*…………………………18

        2.   The Government Has Failed to Show that SNI "Substantially Assisted" Any Underlying Violations ................... 19

        3.   The Government Has Failed to Show SNI "Knew or Consciously Avoided Knowing" About Any TSR Violations ...... 22

    C.   **The Government Fails to Show Any Right to Injunctive Relief Because SNI is Neither Violating nor About to Violate the TSR** ...... 25

    D.   **The Government Fails to Show Any Right to Civil Penalties** ............ 26

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

i

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**E.**     **The Government Ignores SNI's Argument That the Complaint Attempts to Exercise an Unconstitutional Power, And Instead Argues that the FTC Removal Provisions Are Constitutional** .......... 29

**III.**   **CONCLUSION** ................................................................................. 30

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
-- F. Supp. 3d --, 2023 WL 27356 (N.D. Cal. Jan. 3, 2023)...............................10

*Allison v. Wells Fargo Bank*,
No. 22-CV-0510, 2022 WL 10756885 (S.D. Cal., Oct. 17, 2022) .............15, 18

*AMG Cap. Mgmt., LLC v. F.T.C.*,
141 S. Ct. 1341 (2021)......................................................................................2, 30

*Axon Enter., Inc. v. FTC*,
143 S. Ct. 890 (2023)........................................................................................29, 30

*Barnes v. Yahoo!, Inc.*
570 F.3d 1096 (9th Cir. 2009) ................................................................8, 12, 13

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ...................................................................................6

*Bittner v. U.S.*,
143 S. Ct. 713 (2023).......................................................................................27, 28

*CFPB v. Daniel A. Rosen, Inc.*,
No. 21-CV-07492, 2022 WL 1514439 (C.D. Cal. Apr. 5, 2022)......................19

*Chang v. JPMorgan Chase Bank, N.A.*,
845 F.3d 1087, 1098 (11th Cir. 2017 ................................................................22

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012).................................................................................................27

*Cubby, Inc. v. CompuServe, Inc.*,
776 F. Supp. 135 (S.D.N.Y. 1991) .....................................................................10

*Cunningham v. Montes*,
378 F. Supp. 3d 741 (W.D. Wis. 2019) .............................................................12

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

*Diep v. Apple, Inc.*,
    No. 21-CV-10063, 2022 WL 4021776 (N.D. Cal. Sept. 2, 2022) ....................12

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ................................................................3, 9

*Elec. Workers Local #357 Pens. v. Clovis Oncology, Inc.*,
    185 F. Supp. 3d 1172 (N.D. Cal. 2016) ................................................8

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ................................................................................27

*F.T.C. v. Asia Pacific Telecom, Inc.*,
    802 F. Supp. 2d 925 (N.D. Ill. 2011) ................................................20

*F.T.C. v. Cons. Health Benefits Ass'n*,
    No. 10 Civ. 3551, 2012 WL 1890242 (E.D.N.Y. 2012) ..............................19, 20

*F.T.C. v. Facebook, Inc.*,
    560 F. Supp. 3d 1 (D.D.C. 2021) ................................................................26

*F.T.C. v. Nudge, LLC*,
    No. 2:19-cv-00867, 2021 WL 3145700 (D. Utah July 26, 2021) ...............23, 24

*F.T.C. v. WV Univ. Mgt., LLC*,
    877 F.3d 1234 (11th Cir. 2017) ................................................................20

*F.T.C. v. Walmart*,
    -- F. Supp. 3d --, 2023 WL 2646741 (N.D. Ill. 2023) ......................20, 21, 23, 30

*Fair Hous. Council of San Fernando Valley v. Roommates.com*, *LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................................................3, 10, 12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ................................................................................23

*Gonzalez v. Google LLC*,
    2 F.4th 871 (C.A.9 (Cal.), 2021), *vacated* 143 S.Ct. 1191 (2023) ....................7

*HomeAway.com, Inc. v. City of Santa Monica*,
    918 F.3d 676 (9th Cir. 2019) ................................................................9

iv

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

*In re Vonage Holdings Corp.*,
   19 F.C.C. Rcd. 22404 (2004) ...................................................................5

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016).....................................................................8

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010)...............................................................................27

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................3

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021)...................................................10

*L.W. through Doe v. Snap Inc.*,
   -- F. Supp. 3d --, 2023 WL 3830365 (S.D. Cal. June 5, 2023) .............10

*LabMD, Inc. v. FTC*,
   894 F.3d 1221 (11th Cir. 2018) .............................................................28

*Lusnak v. Bank of Am., N.A.*,
   883 F.3d 1185 (9th Cir. 2018) .............................................................3, 4

*Nat'l Coalition on Black Civic Participation v. Wohl*,
   2021 WL 4254802 (S.D.N.Y. Sep. 17, 2021) .........................................5

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)................................................................................6

*Nunes v. Twitter, Inc.*,
   194 F.Supp.3d 959 (N.D. Cal. 2016).....................................................12

*Pardini v. Unilever U.S.*,
   65 F.4th 1081 (9th Cir. 2023) ..............................................................3, 4

*Rep. Nat'l Cmt. v. Google, Inc.*,
   No. 22-CV-1904, 2023 WL 5487311 (E.D. Cal. Aug. 24, 2023) ...........9

*Saunders v. Dyck O'Neal, Inc.*,
   319 F. Supp. 3d 907 (W.D. Mich. 2018)...............................................18

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

v

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020)....................................................................................29

*Smith v. California*,
    361 U.S. 147 (1959)........................................................................................10

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ................................................10

*The Broadcast Team, Inc. v. F.T.C.*,
    429 F. Supp. 2d 1292 (M.D. Fla. 2006) ...........................................................15

*Twitter v. Taamneh*,
    143 S. Ct. 1206 (2023) .............................................................................*passim*

*U.S. v. Dish Network*,
    75 F. Supp. 3d 942 (C.D. Ill. 2014) .................................................................17

*U.S. v. Dish Network*,
    256 F. Supp. 3d 810 (C.D. Ill. 2017) ...............................................................17

*U.S. v. National Fin. Svcs., Inc.*,
    98 F.3d 131(4th Cir. 1996) .............................................................................26

*U.S. v. Yi*,
    704 F.3d 800 (9th Cir. 2013) ..........................................................................24

**Statutes**

15 U.S.C. § 41 .............................................................................................27, 28

15 U.S.C. § 45 .................................................................................27, 28, 29, 30

15 U.S.C. § 53 ...........................................................................................29, 30

15 U.S.C. § 56 .................................................................................................29

15 U.S.C. §57a ................................................................................................28

15 U.S.C. § 6106 ........................................................................................11, 14

47 U.S.C. § 153 .........................................................................................3, 4

47 U.S.C. § 227 .......................................................................................*passim*

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

vi

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

47 U.S.C. § 230.................................................................................*passim*

Pub. L. 115–164, § 4(a), 132 Stat. 1254 (Apr. 11, 2018) .........................9

Pub. L. No. 93-153, § 408(g), 87 Stat. 576, 592 (1973)........................29

Pub. L. No. 93-637, §204(A), 88 Stat. 2183, 2200-02 (1975) ................29

**Other Authorities**

16 CFR § 310.2 ..........................................................................7, 11, 14

16 CFR § 310.3 ....................................................................................26

16 CFR § 310.4 ............................................................................11, 26

60 FR 30406-01 (June 8, 1995) ..........................................................21

60 FR 43842 (Aug. 23, 1995) .............................................................21

60 FR 43852 (Aug. 23, 1995) .............................................................21

68 FR 4580 (2003) ..............................................................................13

68 FR 4642 (2003) ..............................................................................13

68 FR 4643 (2003) ........................................................................13, 15

Fed. R. Civ. Proc. 8...........................................................................*passim*

Fed. R. Civ. Proc. 12........................................................................1, 2, 4, 16

*F.T.C. v. Cardiff, et al.*,
  No. 5:18-cv-02104 (C.D. Cal.) .....................................................*passim*

https://www.britannica.com/dictionary/platform (last visited October 10,
  2023) ..............................................................................................4

https://docs.fcc.gov/public/attachments/DOC-390423A2.pdf (last visited
  October 10, 2023) ..........................................................................26

https://www.fcc.gov/ecfs/document/1121207032417/1 (Nov. 21, 2022)
  (last visited October 10, 2023) .....................................................26

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

vii

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

https://www.ftc.gov/business-guidance/resources/complying-
    telemarketing-sales-rule (last visited October 10, 2023)..................................22

https://www.verizon.com/support/knowledge-base-225392/ (last visited
    October 10, 2023) ...........................................................................15

https://www.att.com/support/article/wireless/KM1009205/ (last visited
    October 10, 2023) ...........................................................................15

*Impl. of Non-Accounting Safeguards of §§ 271 and 272 of Comm. Act of
    1934, as Amended*, 62 FR 2927-01 ..........................................................5

S. Conf. Rep. 93-1408, 93d Cong., 2d Sess. 7772 (1974)......................................26

U.S. Const. Art. II ...........................................................................29

*U.S. v. Dish Network*,
    09-cv-03073 (C.D. Ill. 2014) ..............................................................17

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

## I.   INTRODUCTION

The Government's Response (the "Response") to Stratics Networks, Inc.'s ("SNI's") Motion to Dismiss ("Motion") ignores SNI's arguments, misconstrues those it cannot defeat, concocts new allegations not in the Complaint, and ignores other allegations in the Complaint. It ignores the terms of the Telemarketing Sale Rule ("TSR"), the statutory authority for that regulation and its enforcement activities, the Orders issued under that regulation, and guidance it issued regarding both the TSR and the limitations on its own enforcement actions. The Response repeatedly avoids addressing the Complaint's failure to allege facts to support the claim it attempts to state against SNI, arguing that despite those fatal omissions, it should be permitted to force SNI into costly and time-consuming discovery.

The Government cites over 100 cases in its Response. None support the imposition of liability on a provider of interactive computer services that played no role in the creation of third-party content. The Government plainly did not consider the application of Section 230 immunity to SNI's RVM and SIP platform software. Its failure to plead facts that, if true, would avoid immunity, requires dismissal pursuant to Rule 12(b)(1).

SNI has shown, based on the Complaint, that:

- It is immune from this suit under 47 U.S.C. § 230(c)(1). SNI's two platforms each fit squarely within the statutory definitions of an "interactive computer service" and an "access software provider."  And SNI is solely a "publisher" of content created entirely by other "information content providers."

- The claim that SNI "substantially assisted" the alleged TSR violations of others fails to allege any actionable "telephone calls" or the use of a telephone, fails to allege that SNI "knew" or "consciously avoided" knowing about alleged TSR violations by others, and fails to meet the standards set by the Supreme Court's recent *Taamneh* decision and the N.D. Ill's recent *Walmart* decision.

The Government addresses none of these arguments head-on. It identifies no authority denying Section 230 immunity to an indifferent transmitter of other parties' messages.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

1

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

The Government likewise identifies no authority demonstrating that an RVM is a "telephone call." It identifies no authority holding a party liable for substantial assistance for simply providing a commercially available messaging platform to alleged wrongdoers. It makes no attempt to plead with specificity that any communication was made to a recipient's telephone whose number was on the National Do Not Call Registry.

The Response illustrates the FTC's abuse of authority and disdain for any guardrails against its enforcement excesses, as it pursues its ends through litigation, rather than regulation. The Supreme Court cautioned the FTC against abusing its authority like this in *AMG Cap. Mgmt., LLC v. F.T.C.*, 141 S. Ct. 1341 (2021), striking down its attempt to bypass its regulatory function and seek monetary relief in court under the guise of restitution and disgorgement. The Government attempts the same strategy here, seeking annihilating civil penalties to force SNI to adhere to non-existent FTC regulations rather than adopting such regulations.

## II.   LEGAL ARGUMENT

### A.   The Government Fails to Rebut SNI's Entitlement to Immunity Under Section 230 of the Communications Decency Act

The Response avoids a plain application of Section 230 immunity by arguing that: 1) its Complaint doesn't allege enough facts to show Section 230's applicability; 2) Section 230 is an "affirmative defense" unavailable in a 12(b)(6) motion; 3) the "policy goals" of Section 230 defeat its plain language; 4) the content of the messages transmitted over SNI's platforms are immaterial to SNI's liability under the TSR; 5) transmitting RVM messages isn't "publishing;" and 6) by making up new, contradictory allegations that the messages were delivered "to telephones." All these arguments fail.

#### 1.   The Government Fails to Rebut the Fact that SNI's Platforms Are Each an Interactive Computer Service

The Government argues that the Complaint does not establish that SNI provides an "interactive computer service," and that the Motion relies on facts outside its

2

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

Complaint when SNI states that its RVM and SIP termination platforms "enable users to share messages over SNI's servers" and that content providers "access a computer server."[1] Dkt. 55, at 42. Thus, the Government claims that the face of its Complaint does not establish these platforms "provide or enable 'computer access' by anyone, much less 'by multiple users to a computer server.'" *Id.* at 42.

The Government has this argument backward. It is the Government's burden to plead enough facts to overcome Section 230, not SNI's burden to establish its applicability. Section 230 protects defendants "not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (*en banc*). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *citing Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016). *Kimsey* cautioned against the very type of "threadbare" pleadings that the Government attempts here, finding them "implausible on their face and … insufficient to avoid immunity under the CDA." 836 F.3d at 1268.[2]

---

[1] The Government asks this Court to disregard the statutory and regulatory framework under the Communications Act of 1934, which has classified both <u>voicemail</u> and <u>VoIP</u> as "information services" for decades. The definition of "interactive computer services" explicitly includes "information services." 47 U.S.C. § 230(f)(2). Statutory construction requires that every word in a statute be given effect. Both the Telecommunications Act of 1996, which defines "information services," 47 U.S.C. § 153(24), and Section 230, which defines "interactive computer service," are part of the Communications Act of 1934. The canon of consistent usage requires that a word or phrase have the same meaning throughout a statute. To accept the Government's arguments about SNI's RVM and SIP platforms would require this court to ignore the statutory definitions of both "interactive computer services" and "information services."

[2] The Government cites *Pardini v. Unilever U.S.*, 65 F.4th 1081 (9th Cir. 2023) and *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018) for the proposition that it is not required to plead an "affirmative defense." Dkt. 55, at 9, 41. Neither case dealt with Section 230 immunity, as both cases involved preemption. *Pardini* <u>granted</u> a motion to

3

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

Even so, the Government's argument is contradicted by its Complaint, which shows that SNI's RVM platform is an "interactive computer service." The Complaint alleges that the RVM platform enables "computer access," in that it alleges that SNI "offers its customers the use of its [RVM] platform[3] service," Dkt. 1, ¶39, alleges that RVM is SNI's "voicemail technology," ¶41, alleges that SNI's users "upload [messages] to its RVM platform," which is a computer server, ¶43, and allowed users "to scrub lists of … numbers against" Do Not Call lists (on computer servers). *Id*., ¶44.

Further, the Complaint alleges that the RVM platform was accessed by "multiple users" – it alleges that the RVM platform was accessed by Atlas, Dkt. 1, ¶59, Azzeh, ¶65, and 12 other users. ¶97. The Government has long held that voicemail is an "information service" Dkt. 50, n.2, the Complaint references "voicemail" 25 times, and RVM easily meets the definition of "information service" in 47 U.S.C. § 153(20) (defining "information service" as "a capability for … making available information via telecommunications, and includes electronic publishing").[4] The Complaint also

---

dismiss, rejecting plaintiff's claim that there were "factual disputes," finding instead that "plaintiffs simply disagree with the FDA's [labeling] framework," and noting that "[t]hese arguments may be readily addressed—and readily rejected—at the Rule 12(b)(6) stage." 65 F.4th at 1087. Likewise here, the Government's claim that it hasn't pled enough to show SNI's immunity simply disagrees with the statutory language and holdings of courts and agencies that VoIP and voicemail are interactive computer services. *See* Dkt. 50, at 7, n.2, at 10. Moreover, *Lusnak* states that "when the defense raises no disputed issues of fact," even preemption can be decided on a motion to dismiss. 883 F.3d at 1194, n.6. As shown above, SNI's immunity raises no disputed issue of fact, and the immunity is shown on the face of the Complaint.

[3] A "platform" is "a program or set of programs that controls the way a computer works and runs other programs." https://www.britannica.com/dictionary/platform (note: all websites referenced in this brief were last visited on October 10, 2023).

[4] The FCC has explicitly held that "telemessaging is an information service," and includes "voice mail and voice storage and retrieval services… and any ancillary services offered in combination with these services." *Impl. of Non-Accounting Safeguards of §§ 271 and 272 of Comm. Act of 1934, as Amended*, 62 FR 2927-01.

4

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

amply alleges that SNI is an "access software provider." An "access software provider" is "a provider of software (including client or server software), or enabling tools" that, among other things "transmit … content." 47 U.S.C. § 230(f)(4)(C). The Complaint shows that the RVM platform is "client or server software" that "transmits content," which meets the definition of an "interactive computer service."

The Government's argument that SNI's now-defunct SIP-termination platform is not an "interactive computer service" similarly contradicts the Complaint. The Complaint alleges that Netlatitude, Fortress Leads, and other (unnamed) users accessed SNI's "wholesale SIP termination (outbound calling) <u>service,</u>" Dkt. 1, ¶¶110, 112, which is "Voice Over Internet Protocol ("VoIP") technology." *Id.*, ¶8. The Government <u>has already admitted</u> that VoIP is an "interactive computer service." *See* Dkt. 50, at 9-10, *citing In re Vonage Holdings Corp.,* 19 F.C.C. Rcd. 22404, 22433 (2004).

Similarly, the Government's reliance on *Nat'l Coalition on Black Civic Participation v. Wohl*, 2021 WL 4254802, at *6 (S.D.N.Y. Sep. 17, 2021) to claim that dismissal is inappropriate "in the absence of allegations affirmatively demonstrating" that the defendant is an interactive computer service, is unavailing. The Ninth Circuit decisions cited in the Motion and above contradict this unpublished, non-controlling, opinion that has never been cited by another court. Moreover, the allegations of the Complaint demonstrate that each of SNI's platforms were "interactive computer services," unlike the *Wohl* case. *Wohl* simply has no bearing here.[5]

The Government next claims that Section 230 does not immunize SNI, despite its platform being an "interactive computer service," because SNI "does not face

---

[5] Also, unlike the *Wohl* defendants, who created the content of the calls, SNI played no role in creation of the RVMs' content here. *See* 2021 WL 4254802, at *8. Unlike the *Wohl* defendants, SNI solely provided a neutral tool by which others transmitted messages they alone created. *Wohl* noted that if liability "were solely predicated on its provision of a tool … by which users can specify the target recipients of robocalls, then there is little doubt that Message would be shielded" by Section 230. *Id.*, at *10.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

5

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

liability 'in its role as a provider or user of a computer service." Dkt. 55, at 42, *citing Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003).[6] The Government similarly argues that Section 230 is inapplicable to SIP termination, because even though SNI's users "use a website to place calls via Stratics' SIP termination services," that is "irrelevant to Count II." Dkt. 55, at 43. These arguments suggest that the only way Section 230 could apply would be if SNI were sued for something related to "the technical mechanisms through which sellers and telemarketers route their traffic," *id.*, *i.e.*, only if the Government sues SNI for being an "interactive computer service."

Put another way, the Government seeks to limit Section 230 immunity for providers like YouTube to claims that relate to how YouTube stores videos, not for the content of the videos. This argument is ludicrous. The entire point of Section 230(c) immunity for those who make systems available that others use to distribute content is to ensure that the provider of the tool is not held liable for the content of the message. The claim that SNI does not face liability "in its role as a provider or user of an interactive computer service," Dkt. 55, at 42, is simply incorrect.[7]

---

[6] The Government argues that whether users upload messages through SNI's platform or in some other way "is irrelevant to the conduct for which [SNI] faces potential liability." Dkt. 55, at 43. Again, the Government ignores the Complaint, which does not allege that customers are mailing thumb drives to SNI. It alleges that SNI's "RVM platform enables customers to upload prerecorded messages, lists of recipients' cell phone numbers, and caller IDs" all of which are third party information, "to transmit along with each recorded message." Dkt. 1, ¶42.

[7] The Government argues that, under SNI's "theory" (*i.e.*, the text of the statute), a newspaper would be "entitled to Section 230 protection for wrongly publishing defamatory advertisements." Dkt. 55, at 43. Newspapers were immune from such liability before computers existed; they would not need Section 230 immunity. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) ("allegedly libelous statements" do not lose constitutional protection because they come in the "form of a paid advertisement"); *see also Gonzalez v. Google LLC*, 2 F.4th 871, 944 (C.A.9 (Cal.), 2021) (Berzon, J., concurring), *vacated* 143 S.Ct. 1191 (2023) (noting that "a claim against a newspaper based on the content of a classified ad (or the decision to publish

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

1   The Government further tries to avoid immunity by (loudly) claiming that the

2   violations relate to "delivering prerecorded messages to consumers' *telephones*." Dkt.

3   55, at 43 (emphasis in original, and again at 43 and 45). But the Government does not

4   allege that SNI delivered anything to anyone's telephone.[8] Although the Response

5   claims <u>eight times</u> that SNI delivers messages "to telephones," the <u>Complaint</u> carefully

6   avoids alleging that the RVMs that SNI transmitted are either made by, or delivered to,

7   telephones. *See* Dkt. 1, ¶3 ("calling their phone number"), ¶4 ("placed to phone

8   numbers"), ¶5 ("voicemail boxes"), ¶41 (messages delivered to "subscribers' voicemail

9   box"), ¶46 ("to a recipient's telephone number"), ¶57 (calls "to numbers"). The

10  Complaint never alleges that any RVM was delivered to a telephone. Because none

11  were. RVM is delivered from one computer server to another. RVMs are not delivered

12  to "telephones," but to a carrier-based computer server. Users can only retrieve a

13  voicemail by accessing another interactive computer service (the carrier's voicemail

14  server). They may use a phone to do this, but they may also use a computer, tablet, or

15  other method to access the data on their carrier's voicemail server. The point is, the

16  voicemail message is not delivered to or stored on the consumer's phone.

17  The Government vaguely argues that applying immunity to SNI would not

18  further Section 230's "express policy goals" and argues, citing no authority, that SNI's

19  services "implicate none of the policies or values protected by Section 230." Dkt. 55, at

20  44-45. That is simply wrong – the policies protected by Section 230 squarely apply in

21

22  _____

… that ad) would fail under the CDA"). Like a newspaper, SNI provides a tool that

23  others use to disseminate messages SNI plays no role in creating. It is not liable for the

24  content of those messages if that content is unlawful.

[8] This exposes another flaw in the Government's contention that RVMs are "telephone

25  calls" under the TSR. The TSR defines "telemarketing" to require "use of one or more

26  telephones" to make an "interstate telephone call." Dkt. 1, ¶25, *citing* 16 C.F.R.

27  310.2(gg). The Complaint does not allege the use of a "telephone" on either side of what

it contends are "phone calls."

28

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

1   this case. The provider of an interactive computer service that is used by a third-party

2   to disseminate a purportedly-unlawful message is immune from liability. That is what

3   this case against SNI is about. Additionally, policies behind a statute are immaterial

4   when the plain language applies. It is "the language of the statute that defines and enacts

5   the concerns and aims of Congress; a particular concern does not rewrite the language."

6   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *see Elec. Workers Local*

7   *#357 Pens. v. Clovis Oncology, Inc.*, 185 F. Supp. 3d 1172, 1176 (N.D. Cal. 2016).[9]

8       The Government next argues that Section 230 shouldn't apply to SNI because

9   SNI is supposedly dissimilar to other parties entitled to Section 230 immunity. The

10  Government asserts that since consumers do not access SNI's platforms, the platforms

11  are not entitled to Section 230 protection, as it is "fundamentally distinct from the

12  dynamic and participatory interactions that characterize interactive computer services."

13  Dkt. 55, at 44. But nothing in Section 230 mentions "dynamic and participatory

14  interactions." And, if there were any authority for the distinction, then the Government

15  would have cited it.[10] The most analogous communication to an RVM is an email – not

16  (as the Government argues) a telephone call. Both email and RVM are delivered from

---

[9] The Government also argues that the consumers are not "users" and they "have no access to the interactive computer systems." Dkt. 55, at 43, *citing* 47 U.S.C. § 230(d). The Government is arguing a different provision of law; one with no bearing here. The immunity provided in Section 230(c)(1) is not conditioned on providing the notifications contemplated in 230(d), nor does the Complaint allege that SNI fails to provide such notifications. Section 230(d) is simply inapplicable.

[10] Ironically, the Government calls out SNI for not citing to any holding that a platform "designed to deliver unwanted and unconsensual robocalls to consumers' telephones is shielded by Section 230." Dkt. 55, at 44. The Complaint does not allege SNI's platforms are designed for that purpose, so there was no reason to argue it. If the Government had alleged that, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 22 (1st Cir. 2016) makes that exact holding, that a "website operator's decisions in structuring its website and posting requirements are publisher functions entitled to section 230(c)(1) protection." *Backpage* prompted Congress to amend Section 230(e)(5) for sex trafficking claims. *See* Pub. L. 115–164, § 4(a), 132 Stat. 1254 (Apr. 11, 2018).

8

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

one party to another through an intermediary and are stored for retrieval on a computer server. The Government could not argue that Gmail or Office 365 fail to meet the definition of interactive computer service. *See Rep. Nat'l Cmt. v. Google, Inc.*, No. 22-CV-1904, 2023 WL 5487311, at *4 (E.D. Cal. Aug. 24, 2023). Likewise, the Government cannot credibly argue that either of SNI's platforms fail to meet the statutory definition of an "interactive computer service;" it argues instead that the definition shouldn't apply to SNI, simply because the Government feels SNI is a bad actor. SNI is not a bad actor, but that is immaterial; the immunity applies regardless.

> 2. The Complaint Seeks to Hold SNI Liable
> <u>Solely as a Publisher of Third-Party Content</u>

The Government claims that the Complaint seeks "in no way" to hold SNI "liable for publishing content developed by others." Dkt. 55, at 45. But it does. The "content" of RVMs is developed by others, not SNI. SNI makes technology available to "publish" that content. The Government argues that Section 230 applies only "where the duty would necessarily require an internet company to monitor third-party content." *Id.* at 45, *citing HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019).[11] This again ignores the Complaint's allegations, because it is <u>exactly</u> what the Government alleges SNI was obligated to do.

Monitoring third-party content is the very "duty" that the Government claims SNI breached, and is the sole basis for liability here. The Government alleges that SNI had "the right to control" the messages, Dkt. 1, ¶88, and seeks to hold SNI liable precisely because SNI did not "ensure that [its users] obtain prior express written consent from

---

[11] The Ninth Circuit quickly distinguished *Homeaway.com* in *Dyroff* on this very point. The Court noted that the *Homeaway.com* defendant "did not face liability for the content of their listings; rather liability arose from facilitating unlicensed booking transactions," while noting that Ultimate Software was being sued for "sending email notifications," which, like here, are "tools meant to facilitate the communication and content of others." *Id.*

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

recipients, scrub lists of uploaded phone numbers against the DNC registry, or otherwise comply with the TSR." *Id*. The Government's case against SNI is that it failed to monitor the content of messages third-parties delivered over SNI's platform, to determine that content was unlawful, and to stop those messages from being delivered. When a claimant's "theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content," the Court treats Defendants as publishers, regardless of how their claims are framed. *L.W. through Doe v. Snap Inc.*, -- F. Supp. 3d --, 2023 WL 3830365, at *4 (S.D. Cal. June 5, 2023). *See Al-Ahmed v. Twitter, Inc.*, -- F. Supp. 3d --, 2023 WL 27356, at *11 (N.D. Cal. Jan. 3, 2023) (suspending a user account is a publishing decision); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 780-81 (N.D. Cal. 2021) (disabling accounts falls under Section 230). The Government argues that it is not seeking to hold SNI liable for the "content" of the messages, but only for transmitting[12] them. Dkt. 55, at 45-46. For support, the Government suggests that it is only trying to hold SNI liable because the people who received the messages "had not provided legally required signed, express agreements to receive them" and were "listed on the National Do Not Call Registry," claiming "[t]hese violations have nothing to do with the content of the messages themselves." Dkt. 55, at 46. The phone numbers and the third-parties' representations as to their DNC status are <u>both</u> "any information provided by another information content provider" under Section 230(c)(1)'s immunity.

The Government is again arguing in favor of a complaint different than the one it filed. The messages' content is the <u>only</u> reason the messages could violate the TSR,

---

[12] If the Government now claims it seeks to hold SNI liable only for distribution of the messages, SNI could not be held liable anyway; distributors are not liable for the content of what they distribute, on First Amendment grounds. *Smith v. California*, 361 U.S. 147, 152–53 (1959), *cited in Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139 (S.D.N.Y. 1991). Congress considered *Cubby* and a case distinguishing it (*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)), when it enacted Section 230. *See Roommates.Com, LLC*, 521 F.3d at 1163.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

and thus the <u>only</u> way SNI could be liable. The only claim against SNI is that it provided "substantial assistance" to "sellers" and "telemarketers" engaged in "telemarketing." Dkt. 1, ¶132. "Telemarketing" is a "plan, program, or campaign which is conducted <u>to induce the purchase of goods or services or a charitable contribution</u> by use of one or more telephones and which involves more than one interstate telephone call." 15 U.S.C. § 6106(4); 16 CFR 310.2(gg). If the messages didn't constitute "telemarketing" there would be no claim. The Complaint alleges that SNI provided "substantial assistance" for messages "to induce the purchase of goods or services," Dkt. 1, ¶86, and for "telemarketing." *Id.* at ¶90. <u>Both</u> Count II(a) and II(b) seek to hold SNI liable because the messages they transmitted were "to induce the purchase of goods or services," *Id.* at ¶132a-b, despite the Government's claims that they "in no way seek to hold [SNI] liable for publishing content developed by others." Dkt. 55, at 45. If the <u>content</u> of the messages is not "telemarketing," there is no TSR violation that SNI could assist. *See* 16 CFR 310.4(a) (defining "abusive telemarketing act or practice"). The Government's entire case against SNI is premised upon the content of the messages transmitted.

Moreover, the Government repeatedly references the messages' content and their design to induce the purchase of goods or services. *See* Dkt. 1, ¶¶54, 96 (alleging calls for homebuying services, student debt relief services, health insurance, fake lawsuit scams, fraudulent sweepstakes, and cable television discount offers), ¶¶65, 66, 67, 104, 110, 114 (pitching debt relief services), ¶¶103, 115 (messages offering or inducing purchase of "goods and services"), ¶113 (telemarketing), ¶117 (pre-approved loans).[13]

---

[13] In this vein, the Government looks to cases under the TCPA for support, but this is not a TCPA case. The TSR holds defendants liable for "telemarketing," which requires the content of "telephone calls" to be an attempt "to induce the purchase of goods or services." 16 CFR 310.2(gg). The TCPA holds defendants liable for the technology used in making a "call," not for its content. *See* 47 U.S.C. § 227(b). The Government cites *Cunningham v. Montes*, 378 F. Supp. 3d 741, 750 (W.D. Wis. 2019) and *Nunes v. Twitter, Inc.,* 194 F.Supp.3d 959, 967 (N.D. Cal. 2016), claiming that one is not sued as

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

The Government attempts to distinguish *Diep v. Apple, Inc*., No. 21-CV-10063, 2022 WL 4021776, at \*5 (N.D. Cal. Sept. 2, 2022) on the basis that "not delivering prerecorded messages from sellers and telemarketers … does not require reviewing content. Nor does ensuring that sellers and telemarketers have prior consent." Dkt. 55, at 47. The Government appears to argue that SNI is not a "publisher" and thus Section 230 is inapplicable, but deciding whether to send a message or not <u>is</u> publishing, whether the message is reviewed or not. "Publication" involves "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102 (*citing Roommates.com, LLC*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.")). Making SNI's platform available to users is also "the act of publishing." *Diep*, 2022 WL 4021776, at \*5. For SNI to make any determination of whether the messages violate the TSR would require it to "review content" to determine whether each message is "telemarketing," whether the senders are "callers" or "telemarketers," and whether the number is on any of several Do Not Call registries. The Government's claim is only about SNI's decisions whether to publish third-party content, meeting the second prong of *Barnes*.

        3.    The Government Makes No Attempt to Argue Whether the Claims Against SNI are Based Exclusively on Information Provided By <u>Other Information Content Providers</u>

Finally, the Government makes no attempt to argue that SNI fails to meet the third prong of the *Barnes* test – that the claim is based on information provided by

---

a "publisher" for "pushing unwanted text messages." Dkt. 55, at 46. *Nunes* involved sending "tweets" to the wrong phone number. Their content was immaterial. 194 F. Supp. 3d at 967, *distinguishing Roommates.com*, 521 F.3d at 1162. Likewise, the content of the "calls" in *Cunningham* had nothing to do with the TCPA violation, and the platform provider -the "interactive computer service" – was not sued. The violation in each instance was based on the technology used, not the content of the messages.

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

another content provider. *Barnes*, 570 F.3d at 1101. The Government does not allege that SNI developed or created any of the content of the RVMs. Nothing is alleged or argued that would transform SNI from a provider of an "interactive computer service" into an "information content provider." Without such allegations, the final prong of *Barnes* is satisfied. The Government makes no argument that SNI contributed to what made the content of the messages unlawful, because it did not; SNI played no role in it.

The Government's attempts to sidetrack SNI's immunity under Section 230 fail in every respect. The Complaint should be dismissed with prejudice.

**B.   The Government Fails to State a Claim for "Substantial Assistance" of Any Underlying Violations of the TSR**

    1.   The Government Has Failed to Show An Underlying Violation That SNI Could "Substantially Assist"

       a)   *RVMs are Not "Telephone Calls" Under the Plain Language of the TSR*

As the Motion explains, the TSR demonstrates that RVMs are not "telephone calls." The TSR requires an attempt to communicate with the recipient in real time, and requires making a telephone ring. TSR requirements are "triggered once a recipient of a telemarketing call answers the phone," and a telemarketer "initiates a telephone call by causing the called consumer's telephone to ring." Dkt. 50, at 16, *citing* 68 FR 4580, 4642-43 (2003). The Complaint does not allege that any RVM here made any phone ring. RVMs cannot be answered, and do not cause a telephone to ring, hence the name "ringless" voicemail. The Government claims SNI is arguing that "the TSR is strictly limited to telephone calls that cause a phone to ring and may be answered in real time by a consumer." Dkt. 55, at 21. That is true, because that is what the TSR requires.

The Government attempts an end-run around the question of whether an RVM is a "telephone call" by claiming the TSR always applied to "calls that deliver prerecorded messages." Dkt. 55, at 2, 6, 22, 29, 47. The Government tries to characterize SNI's

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

13

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

argument as whether "the TSR is limited to telephone calls that cause a phone to ring." *Id*., at 21. But this misstates SNI's argument. SNI asserts that RVMs are not "telephone calls" to begin with. The fact that an RVM does not cause a phone to ring is one reason an RVM is not a "telephone call," but not the only one. An RVM cannot be "answered" by a recipient. And an RVM is not delivered to a telephone, but rather to a voicemail server (an "interactive computer service") maintained by a carrier like AT&T or Verizon.

The Government knew before ever filing this suit that what is or is not a "telephone call" is a legal question. The TSR requires a "telephone to ring," a fact pointed out in the Motion, Dkt. 50, at 16, but ignored in the Response. Further, the term "telemarketing," upon which the Government's entire lawsuit is based, requires the "use of one or more telephones" and "involves more than one interstate telephone call." 15 U.S.C. § 6106(4); 16 CFR § 310.2(gg).[14] The use of a telephone is never alleged in the Complaint, nor is the making of a single "interstate telephone call." Yet the Government incorrectly claims <u>eight times</u> in its Response that RVMs are delivered to "telephones."

The Complaint does not allege that an RVM is a "telephone call" or that it involves the "use of one or more telephones." Rather, it claims: (a) that SNI "uses phone calls" to deliver RVM; (b) that SNI's terms of service suggest that RVM "may in some circumstances make a partial ring or line 'tap' or 'ping' on a phone;"[15] and (c) that SNI's

---

[14] TCPA cases are replete with litigation over whether a communication is a "call" for purposes of 47 U.S.C. § 227(b)(1)(A). Moreover, four months before this suit was filed, the FCC issued an Order in which it ruled that RVMs are "calls" under the TCPA (not "telephone calls" under the TSR) because it was unclear prior to that time whether RVMs would be considered "calls" under that statute. *See* Dkt. 50, n.16. Not only was clarification required (showing that it was unclear prior to that), but that clarification applies to a different term used in a different statute. It is plain that RVM do <u>not</u> constitute "telephone calls" under the TSR – the applicable authority here. If the FTC wishes to amend the definition of "telephone calls" to include RVM, it is free to do so.
[15] The Government does not allege that any RVM made any phone ring in this case. Moreover, whether a notification, such as a "partial ring" or "tap" appears on a consumer's phone has nothing to do with an RVM provider transmitting the message

14

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

1  records include the cell phone numbers of the recipients. Dkt. 55, at 20. None of these

2  allegations meet the standards of Rule 8(a). *See Allison v. Wells Fargo Bank*, No. 22-CV-

3  0510, 2022 WL 10756885, at \*2 (S.D. Cal., Oct. 17, 2022) (allegations which merely

4  parrot statutory language are "conclusory" and the Court does not accept them as true in

5  assessing plausibility). And the Response's repeated claims that RVMs are delivered "to

6  telephones" only highlights the absence of that allegation in the Complaint.[16]

7  Rather than argue what the FTC has said about what constitutes a "telephone call,"

8  the Government instead attempts to rely upon its interpretation of rulemaking history,

9  and three cases: one that had nothing to do with RVMs, another where the question of

10  whether RVMs were "telephone calls" was assumed, but not litigated, and the last arguing

11  that RVMs are "calls" for purposes of the TCPA, a different statute that uses different

12  terminology. Dkt. 55, at 24-25. The Government concludes by claiming that it "is

13  manifest" that RVMs are "telephone calls," because the TSR "explicitly contemplates"

14  that it reaches prerecorded messages in some circumstances, and ends by arguing that the

15  regulation is ambiguous, and the ambiguity must be resolved <u>against</u> SNI. *Id.* at 25.

16

17  ───────────────

18  to the carrier's servers. Every cellular provider gives its customers the ability to control

19  message notifications. *See, e.g.,* https://www.verizon.com/support/knowledge-base-225392/; https://www.att.com/support/article/wireless/KM1009205/. The fact that a

20  user may set the phone to deliver an indication that a voicemail was received does not render delivery of that voicemail to the service provider's server a "telephone call."

21  [16] The Government later attempts to again transmogrify a "telephone call" into something that does not require a "telephone." *See* Dkt. 55, fn.13, *citing The Broadcast*

22  *Team, Inc. v. F.T.C.*, 429 F. Supp. 2d 1292, 1300–01 (M.D. Fla. 2006). *The Broadcast*

23  *Team* stands for the unremarkable proposition that the FTC's construction of "sales representative" to mean "an actual person" comports with "common sense and ordinary

24  usage." *Id.* That is a far cry from redefining "telephone call" into something that does

25  not involve a "telephone," or "cause a telephone to ring," contravening the regulatory

26  text. That case cites the same definition of "telephone call" the Response ignores, noting

27  that a "telemarketer initiates a telephone call by causing the called consumer's telephone to ring." *Id.* at 1295, *citing* 68 FR at 4643.

28

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

The Government also argues that SNI improperly has gone outside the pleadings to describe RVM technology in general terms. Dkt. 55, at 21. SNI describes RVM in general terms only because the Complaint fails to describe what an RVM is, failing Rule 8. The Complaint cheekily alleges that "calls delivering prerecorded messages are commonly called 'robocalls," and that SNI's platform "uses phone calls" to "deliver prerecorded voice messages (*i.e.*, robocalls)." Dkt. 1, ¶¶31, 39. But it does not describe anywhere that what it alleges are "telephone calls" under the TSR, or how RVMs meet the definition of "robocalls" that it does not provide. The Government is trying to put SNI into a trick box, claiming on the one hand that it need not plead sufficient facts to say what an RVM is or does, and on the other hand that SNI cannot describe what an RVM is in a Rule 12(b)(6) motion. The Government even argues that SNI is improperly contradicting the Complaint by stating that "ringless" voicemails do not cause ringing, Dkt. 55, at 21, despite the fact that what is cited are the Government's own press releases about this very case, issued the same day it filed the Complaint. *See* Dkt. 50, fn. 6.

*FTC v. Cardiff* is a thin reed to support the Government's argument that "whether an "'outbound telephone call' has been initiated under the TSR does not turn on whether a consumer's phone rings." Dkt. 50, at 24. The Government cites the grant of summary judgment in *Cardiff* as support for its argument that RVMs are "telephone calls" under the TSR. *Id.*at 25. But that issue was never litigated in *Cardiff*. Most defendants in that case never appeared and were defaulted. *See* FTC Mtn. for Default*, F.T.C. v. Cardiff, et al.*, No. 5:18-cv-02104 (C.D. Cal.), Dkt. No. 422. The FTC's Motion for Summary Judgment against the remaining defendants simply assumed that RVMs violated the TSR, making no reference to whether they were "telephone calls," *See Cardiff,* Dkt. No. 423-2, at 9, and the defendants' response does not even mention that claim, *see id.,* Dkt. No. 491. The *Cardiff* defendants' own summary judgment Motion does not mention the issue, *see* Dkt. No. 441, nor does the FTC's response. *See* Dkt. No. 490. The *Cardiff* court's

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

1   ruling doesn't state that RVM are "telephone calls" either, simply assuming that they

2   violate the TSR. *See* Dkt. 511, at 27. And no case has ever discussed it on this point.

3    Similarly, *U.S. v. Dish Network*, 75 F. Supp. 3d 942 (C.D. Ill. 2014) and 256 F.

4   Supp. 3d 810 (C.D. Ill. 2017), has nothing to do with whether RVMs are "telephone

5   calls." The Government's attempt to conflate actual telephone calls that fail due to

6   numbers being out of service with RVMs that do not attempt to connect to a live phone

7   in the first place, fails due to their dissimilarities. In *Dish*, the court noted that "Outbound

8   telemarketing means making telephone calls to existing or prospective customers to sell

9   products and services," 256 F. Supp. 3d at 820, and that the defendant "used an automatic

10  dialer called a predictive dialer" which would "distinguish between possible results of

11  each call: either no answer, a busy signal, a response by an answering machine, or an

12  answer by a person" to "make outbound telemarketing calls." 256 F. Supp. 3d at 821.

13  There was no argument made in *Dish* whether what were initiated were "telephone calls,"

14  and the Court merely held that uncompleted "telephone calls" could still violate the TSR.

15  In arguing its motion for summary judgment, the FTC noted that "these calls were

16  attempted to be made; they were initiated but they weren't actually completed." Tr. of

17  Oral Arg. at 53:9-11, *U.S. v. Dish Network*, 09-cv-03073 (C.D. Ill. 2014) (Dkt. 451). No

18  case has ever cited either of the two *Dish* opinions for the proposition that the

19  Government contends: that RVMs are "telephone calls" under the TSR.

20   Finally, *Saunders v. Dyck O'Neal, Inc*. does not deal with the question of whether

21  a ringless voicemail is a "telephone call" under the TSR. 319 F. Supp. 3d 907 (W.D.

22  Mich. 2018). That case simply denied a motion for summary judgment under the TCPA,

23  a statute not involved in this case that uses different legal definitions than the TSR. No

24  case cites it for the proposition that RVM is a "telephone call" under the TSR.

25   All of this demonstrates that this case is just an attempt by the Government to get

26  past the pleadings so that the cost of litigation will presumably force a settlement and

27

28

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

17

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

generate a headline, in the FTC's scorched-earth strategy of regulation by litigation. The Court should not reward the Government for this abuse.

b)      *The Government Does Not Address the Fact*
*That No SIP "Calls" Allegedly Violated the TSR*

The Government does not allege any actionable "telephone calls" that were sent over SNI's defunct SIP termination service, only RVMs. *See* Dkt. 1, ¶¶110-116. As argued in the Motion, the Complaint also fails to allege any underlying violation of the TSR related to SNI's SIP termination service. Dkt. 50 at 14, 17-18. The Response completely ignores this argument, claiming that SNI "does not challenge the sufficiency of the underlying TSR allegations relating to its SIP termination services." Dkt. 55 at 26. Although the Response claims that "telemarketers initiated outbound telephone calls to numbers on the DNC Registry" using the SIP termination platform, no such calls are identified in the Complaint. *See* Dkt. 50 at 14, 17-18. The Motion correctly points to the Complaint's failure to allege anything that was transmitted over SNI's SIP termination platform besides a single RVM sent by an unidentified company.  The Government does not allege that a single call (or RVM) made by Fortress or Alcazar was made using SNI's SIP termination service. This fails to satisfy Rule 8. This Court has stated that a claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allison*, 2022 WL 10756885, at *2. The Complaint contains no allegation that any defendant in this case made any call using the SIP service, nor does it allege that any of the Netlatitude customers identified in the Complaint (Fortress and Alcazar) did either.

2.      The Government Has Failed to Show that SNI
"Substantially Assisted" Any Underlying Violations

The Government argues that its burden in pleading that SNI "substantially assisted" the alleged violations of Atlas and Netlatitude's customers "is low." Dkt. 55 at 26. To avoid dismissal, the burden would need to be extremely low. The Government

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

18

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

1    points to no facts to support its conclusory claim that SNI substantially assisted Atlas and

2    Netlatitude in violating the TSR. The Government's allegations that SNI's SIP-

3    termination platform "transmitted" calls, that the "purpose" of the RVM platform was to

4    "deliver prerecorded messages," and that many users "transmit their prerecorded

5    messages" to "induce the purchase of goods or services" on SIP's platforms, Dkt. 55 at

6    26-27, do nothing to either satisfy Rule 8's plausibility standard or defeat SNI's Motion.

7    Simply doing those things is not "substantial assistance" as a matter of law.

8        The bare fact that services were made available to people who may have used them

9    to violate the TSR does not meet Rule 8's standards to demonstrate "substantial

10    assistance." As the Supreme Court recently held, the "mere creation of those platforms"

11    is not culpable, and providers of them cannot be found liable "merely for providing their

12    services to the public" even if those services make violations of law "easier." *Twitter v.*

13    *Taamneh*, 143 S. Ct. 1206, 1226 (2023). And yet, that is all the Government alleges here.

14    SNI made a technology available, and others used that technology to allegedly violate the

15    law. This is not "substantial assistance." The Government cites a litany of cases as support

16    for the idea that a "substantial assistance" claim requires "only more than 'casual or

17    incidental'" help. But none of those cases remotely support the factual allegations here.[17]

18

19

---

20   [17] As discussed in the Motion, *Rosen* found the defendant supplied "everything" a TSR

21   violator needed to start a business. *CFPB v. Daniel A. Rosen, Inc.*, No. 21-CV-07492,

22   2022 WL 1514439, at *5 (C.D. Cal. Apr. 5, 2022). The defendants in *F.T.C. v. Cons.*

    *Health Benefits Ass'n*, No. 10 Civ. 3551, 2012 WL 1890242 (E.D.N.Y. 2012) designed

23   the plans, reviewed the scripts and marketing materials, and oversaw "the sale and

24   administration of" the plans. 2012 WL 1890242, at *2. The defendant in *F.T.C. v. WV*

    *Univ. Mgt., LLC*, provided "merchant accounts" to the telemarketer "despite a slew of

25   red flags indicating [it] was engaged in a fraudulent telemarketing scheme." 877 F.3d

26   1234, 1239 (11th Cir. 2017). And the finding of substantial assistance in *F.T.C. v. Asia*

27   *Pacific Telecom, Inc.*, was based on no facts; it was a sanction for destroying email

    accounts. 802 F. Supp. 2d 925, 928 (N.D. Ill. 2011).

28

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

In *F.T.C. v. Walmart*, -- F. Supp. 3d --, 2023 WL 2646741, at *14 (N.D. Ill. 2023), which the Response completely ignores, the court distinguished several of the cases the Government relies on here in granting Walmart's Motion to Dismiss. The *Walmart* court found that, while "Walmart may have provided an essential service to fraudsters by delivering the proceeds of their misconduct, the FTC hasn't alleged that Walmart's awareness of fraud rose to the level that would transform the processing of money transfers into substantial assistance of TSR violations." *Id.,* 2023 WL 2646741, at *14. There is no meaningful distinction between the allegations in *Walmart* (which were deemed insufficient) and those here. If anything, the Government alleged <u>more</u> in *Walmart* than it does here.

The Government tries to sidestep the effect of *Walmart* and the Supreme Court's *Taamneh* decision, claiming that it connects SNI "to the illegal phone calls at issue in this case far more directly than the allegations against Twitter in *Taamneh* connected it to terrorist attacks," and that it "is difficult to conceive a closer relationship between [SNI] and the underlying violations in this case." Dkt. 55, at 28. But the Government stops at describing, at most, a "nexus" between SNI's services and the alleged violators of the TSR, rather than the required "substantial assistance" to state a claim.

It is true that SNI's RVM platform was used by the alleged violators, just as those violators used electricity and other services provided by other providers. Without electricity or the use of an RVM platform, no messages would be transmitted. But *Tammneh* requires much more than just a bare "nexus" to sufficiently allege "substantial assistance" – it found that the Ninth Circuit failed to consider "that defendants' platforms and content-sorting algorithms were generally available," which reveals that ISIS's "ability to benefit from these platforms was merely incidental to defendants' services and general business models; it was not attributable to any culpable conduct of defendants directed toward ISIS." 143 S. Ct. at 1229. Similarly, the other defendants' ability to

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

20

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

benefit from SNI's RVM platform is incidental to the RVM platform; there is no allegation that their ability to benefit was attributable to any culpable conduct of SNI.

*Taamneh* found that the Ninth Circuit "should have given much greater weight to defendants' arm's-length relationship with ISIS—which was essentially no different from their relationship with their millions or billions of other users—and their undisputed lack of intent to support ISIS." *Id*. at 1229-30. It found allegations against Google insufficient for aiding and abetting liability – despite Google approving ISIS's videos – because the allegations were "devoid of any allegations about how much assistance Google provided" and did not plausibly allege "that Google's assistance was substantial." *Id*. There is no allegation here that SNI's relationship to the other defendants who used its platform was anything other than arms-length and indifferent.

The Government argues that providing a basic service that is available to everyone is "substantial assistance," and claims that anything more than bringing lunch to the alleged offender satisfies the standard. *See* Dkt. 55, at 27. The Government knows this is not a standard. The FTC's own guidance in this very regulation (which it fails to address) demonstrates that this is incorrect. *See* Dkt. 50, at 22 & fn.14 (citing TSR, 60 FR 30406-01 (June 8, 1995), 60 FR 43842, 43852 (Aug. 23, 1995)). Its own recent brief opposing dismissal in *Walmart* even acknowledges it is incorrect, claiming that substantial assistance "occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." No. 22-cv-3372 (N.D. Ill.), Dkt. 72, at 27 (*citing Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017). The other authorities cited in the Motion, none of which are addressed by the Government, establish that it was incorrect, even before the *Taamneh* ruling. *See* Dkt. 50, 18-24. And as Justice Thomas put it in his unanimous opinion in *Taamneh*:

> None of plaintiffs' allegations suggest that defendants culpably "associate[d themselves] with" the Reina attack, "participated in it as something that [they] wish[ed] to bring about," or sought "by [their] action to make it succeed. ... Defendants' mere creation of their media

21

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

> platforms is no more culpable than the creation of email, cell phones, or
> the internet generally.

143 S. Ct. at 1209 (emphasis added). Nor is the creation of a neutral RVM or SIP platform used by others to distribute content.

### 3. The Government Has Failed to Show SNI "Knew or Consciously Avoided Knowing" About Any TSR Violations

The Government fails to adequately allege that SNI knew or consciously avoided knowing that its users were violating the TSR, as described in the Motion. Again, the Government's allegations that SNI "does not require its customers to have prior express written consent," "require them to submit evidence of consent," or "audit its customers' accounts," Dkt. 55, at 29, do not show knowledge of TSR violations, do not show conscious avoidance of knowledge, nor do they raise a plausible inference of knowledge.

Likewise, the Government argues that another laundry list of things that SNI did not do "support a plausible inference that [SNI] could – but chose not to- compare" its users' contact numbers "against the Do Not Call Registry," and that the failure to act "evinces conscious avoidance." Dkt. 55, at 30. The FTC itself requires "taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's TSR violations" to be liable. *See* https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule. As discussed in the Motion, to support an inference of the requisite knowledge, the Government must allege SNI "consciously avoided facts about an identifiable telemarketer's fraudulent act or practice: substantial assistance liability attaches to one who consciously avoids knowing that "the seller or telemarketer" is violating the TSR." Dkt. 50, at 26, *citing Walmart*, 2023 WL 2646741, at *11 (emphasis in original). Allegations that SNI does not monitor its users closely enough is insufficient to show knowledge or even conscious avoidance – the allegations must tie SNI's knowledge to a particular act or practice by a particular violator that SNI knows, or affirmatively avoids knowing, is violating the TSR.

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

22

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

SNI could not have "knowledge" that any acts of its users were violating the TSR – as discussed above, there were no "telephone calls" that could violate the TSR, and SNI could not determine that any messages were for "telemarketing" without listening to them. Even if the messages were "telemarketing," that still does not show knowledge, because "telemarketing" is not a violation of the TSR by itself. The Government claims SNI's "failure to ask for evidence of the highly improbable" demonstrates conscious avoidance, Dkt. 55, at 29, but it does not.[18] It is not "highly improbable" that telemarketers obtain the necessary consent from those they contact. It was required of SNI's users. *See* Dkt. 50, at 5. And companies send many perfectly lawful telemarketing messages every day to individuals who have provided consent to receive them.

The Supreme Court has described the nearly-identical concept of "willful blindness" in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). There, the Court found that willful blindness requires: (1) a subjective belief that there is a high probability that a fact exists, and (2) deliberate action to avoid learning of that fact. *Id*. The Court rejected the standard of knowledge of only a "known risk" of illegality and "deliberate indifference" to that risk, instead requiring "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Id*. at 2071. *See also U.S. v. Yi*, 704 F.3d 800, 804 (9th Cir. 2013) (same). The Complaint's allegations do not suggest that SNI should have believed that a "high probability" of TSR violations existed nor suggest that SNI took any "deliberate actions" to avoid knowledge. The Response, like the Complaint, relies entirely upon the "traceback requests" issued by US Telecom's Industry Traceback Group ("ITG") in its attempt to demonstrate that SNI knew that Atlas

---

[18] Reliance on *F.T.C. v. Nudge, LLC*, No. 2:19-cv-00867, 2021 WL 3145700, at *1 (D. Utah July 26, 2021) does not help the Government demonstrate "conscious avoidance." There, the defendants "served as the celebrity faces" of the alleged violators, complaints "appeared on [their] company website as well as consumer review websites," and one "was personally named as a defendant in two lawsuits brought by consumers claiming they had been defrauded." 2021 WL 3145700, at *6. Nothing of the sort is alleged here.

23
REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC
134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

and Netlatitude's customers were violating the TSR. The Government claims the tracebacks alerted SNI that the messages of these users were "likely illegal," *see* Dkt. 55, at 29, *citing* Dkt. 1, ¶¶95, 98, 117. But the Complaint does not allege that <u>ITG</u> told SNI that these messages were "likely illegal."[19] *Id*. The Government is saying that; the Response misstates its own factual allegations. If the tracebacks, which were not attached to the Complaint, had informed SNI that the messages violated the TSR, or were "likely illegal," they would have been attached to, or recited in, the Complaint. But again, the Government simply underpled the Complaint in the hopes of avoiding dismissal.

The tracebacks the Government discuss in its Response highlight this problem. The Government argues that ITG "notified [SNI] of prerecorded messages from the Atlas Defendants between April and June 2020." Dkt. 55, at 31. But simply sending prerecorded messages is not a violation of any law. Further, in June 2020, when the last of the Atlas tracebacks is alleged, ITG was a private entity whose tracebacks requests did not require any response.[20] The FCC did not begin to require companies to respond to ITG until six months later, and even then limited the scope to "voice service providers." *See* Dkt. 50, at 27-28. A "voice service provider" was not even allowed to block "calls" unless the FCC notified them to do so, *see id*., and that requirement wasn't in effect until July 2020. *Id*.[21] The Complaint does not allege that the FCC notified SNI to block any

[19] In fact, the traceback requests did *not* indicate the RVMs were "likely illegal."

[20] SNI nevertheless took the ITG's traceback requests seriously, investigating them and finding them unsubstantiated. The implication that SNI ignored these requests is false.

[21] The Government's argument about tracebacks related to Netlatitude's use of SNI's SIP termination platform are irrelevant. The Government argues that Netlatitude routed "illegal prerecorded messages" through the SIP platform, Dkt. 55, at 30, but the Complaint alleges none of them, alleging only a single RVM by an unnamed Netlatitude customer on April 9, 2020 that went through that platform. The Complaint does not allege that ITG sent SNI a traceback request about that RVM either, which means that SNI could only have knowledge of its "illegality" by listening to it and getting a legal opinion, neither of which are alleged. The Motion points out these inadequacies, *see* Dkt. 50, at 17-18; Dkt. 1 at ¶114, but the Government does not address them.

24

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

"calls," from any defendant in this case or otherwise, and it does not allege that SNI failed to respond to the tracebacks regarding Atlas.

### C. The Government Fails to Show Any Right to Injunctive Relief Because SNI is Neither Violating nor About to Violate the TSR

The Government makes almost no attempt to rebut SNI's argument that injunctive relief is unavailable for conduct that stopped long ago. The Complaint fails to allege facts that support a conclusion that that SNI "is violating" or "is about to violate" the TSR. It contains a single allegation that "the FTC has reason to believe that Defendants [not SNI] are violating or are about to violate laws enforced by" the FTC. Dkt. 1, ¶124. That is not an allegation of <u>fact</u> – it is an allegation of the FTC's <u>belief</u>, unsupported by a single <u>fact</u>. The Government tries to argue that the Complaint does not allege enough to show the conduct ceased, but this is backward; Rule 8 requires the Government to plead facts to support its "reason to believe" in recurrence. The Government made no attempt to do so.

The Complaint admits that SNI stopped providing the SIP termination platform in 2020 (the only service Netlatitude allegedly used), Dkt. 1, ¶¶48, 110, and does not allege Atlas' use of the RVM platform after November 2020. Dkt. 1, ¶¶65 ,67, 102, 114. The Response, even as it tries to wiggle out of the allegations of the Complaint, demonstrates the inability to support injunctive relief. It claims that SNI "continues to provide its [RVM] services, and it makes no claim to have cut off any customers <u>other than the two identified by name in the Complaint</u>." Dkt. 55, fn. 11 (emphasis added). This admits SNI terminated Netlatitude in September 2020 and Atlas in November 2020, and the Complaint does not allege that any "other customers" of SNI are violating the TSR.

The Response's argument that SNI received traceback requests until February 2021, Dkt. 55, 38-39, does not make the notion of SNI "violating" or "about to violate" the TSR any more plausible. As noted above, the alleged traceback requests do not claim that the "calls" are "likely illegal," are not alleged to relate to any other defendant in this

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

case, and there have been no traceback requests to SNI in the past two and a half years.[22] ITG issues 270 tracebacks a month,[23] meaning none of its 8,100 most recent tracebacks were directed to SNI. The FTC lacks statutory authority to seek an injunction "based on [such] long-past conduct." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 5 (D.D.C. 2021).

### D.    The Government Fails to Show Any Right to Civil Penalties

A person "knowingly" violates an FTC rule only if a reasonable, prudent person would have known of the rule's existence and that her acts or practices violated it. *U.S. v. National Fin. Svcs., Inc.*, 98 F.3d 131, 139-40 (4th Cir. 1996); S. Conf. Rep. 93-1408, 93d Cong., 2d Sess., 7772 (1974). The Response attempts to conflate the "knowledge" required for imposition of civil penalties with the "knowledge" required for "substantial assistance" liability. *See* Dkt. 55, at 34. They are not the same. Liability under TSR Section 310.3 requires knowledge or conscious avoidance that the underlying acts (of the other defendants) violated Section 310.4. Civil penalties require "actual knowledge or knowledge fairly implied … that such act [in this case SNI's own act of providing the messaging service] is unfair or deceptive and is prohibited <u>by such rule</u>." 15 U.S.C. § 45(m)(1)(A). The law must give "fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

The Government's claim that all inferences on knowledge must be drawn in its favor, *see* Dkt. 55, at 34, is wrong, as shown by two other cases it ignored from SNI's Motion. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), notes that Congress "intended to provide a mistake-of-law defense to civil liability" in the Federal Trade Commission Act, 15 U.S.C. § 41 et seq. ("FTCA"), even though it did not in other statutes. *See* 559 U.S. at 583-84. And *Bittner v. U.S.* requires that "statutes imposing penalties are to be construed strictly against the government and in favor of

---

[22] FCC records demonstrate that ITG sent no tracebacks to SNI after February 2021. https://docs.fcc.gov/public/attachments/DOC-390423A2.pdf, at p. 14.
[23] https://www.fcc.gov/ecfs/document/1121207032417/1 (Nov. 21, 2022).

26

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

134581696v.14

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104-4815

individuals" and "an individual is not to be subjected to a penalty unless the words of the statute plainly impose it." 143 S. Ct. 713, at 724 (2023).

The Government patronizingly notes the fact that SNI "did not receive a personalized warning letter" from the FTC. Dkt. 55, at 35. But even if the Government now claims that the Warning Letters and Notices of Penalty Offense, which it otherwise says are required before seeking civil penalties, *see* Dkt. 50, at 17, 35-36, are irrelevant to its authority to seek penalties here, that does not change the fact that they are relevant to SNI's knowledge of whether its own acts were in violation of the law. A defendant cannot be held liable "when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012). The fact that the *Cardiff* defendants did not think to raise this issue in their own (unreported) case does not change the law, and they were the actual telemarketers – the FTC has never claimed that providing an RVM platform to telemarketers violated the TSR prior to this case. And the fact that the Government issued a CID to Stratics Group (not SNI)[24] <u>after</u> all the alleged (third-party) conduct in the Complaint ended does nothing to change the law either.

Moreover, the FTCA requires the FTC to prescribe rules which "<u>define with specificity</u> acts or practices which are unfair or deceptive," 15 U.S.C. §57a(a)(1)(B) (emphasis added) and requires rules to go through the notice and rulemaking procedure therein. 15 U.S.C. §57a(b). *See* Dkt. 50, at 33; Dkt. 45, at 14-15; *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1236 (11th Cir. 2018). That was not done regarding RVM, and the Response fails to address this fact. Without such specificity, the Government cannot show

---

[24] The Government now attempts to claim that Stratics Group is an "affiliate" of SNI. Dkt. 55, fn. 10. That is not alleged in the Complaint and is false. The Complaint claims that they are the same company, Dkt. 1, ¶108, but as the Government's changed argument in the Response demonstrates, that is not true either.

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

1 that SNI "knew" its provision of an RVM platform was a substantial assistance violation,

2 particularly in light of the mistake of law defense and the rule of lenity in *Bittner*.

3   So the Government ignores the entire argument, claiming that a single count of a

4 single case (*Cardiff*) that assumed, but did not litigate, the question of whether RVMs

5 can violate the TSR provides ample "notice" to SNI that it could be subject to massive

6 civil penalties. *See* Dkt. 55, at 35. As an initial matter, summary judgment in that case

7 was not entered until October 9, 2020, after all the conduct alleged here, and judgment

8 was not entered until 2022. *Cardiff*, Dkt. 511, 706. Moreover, neither prosecution of the

9 nearly-helpless defendants in an unreported case nor a press release about that case

10 supplant the FTC's obligation to specify what is prohibited before seeking penalties. They

11 similarly do not suffice to allege, or imply, that SNI had "actual knowledge or knowledge

12 fairly implied … that such act [in this case SNI's own act of providing the messaging

13 service] is unfair or deceptive and is prohibited <u>by such rule</u>." 15 U.S.C. § 45(m)(1)(A).

14 *Cardiff* does not change the Government's burden to allege, sufficient to comply with

15 Rule 8's plausibility standard, that SNI knew that what <u>it was doing</u> violated the TSR. It

16 has not done so, and its claim for civil penalties fails as a result.

   **E.**  **The Government Ignores SNI's Argument That the Complaint Attempts to Exercise an Unconstitutional Power, And Instead Argues that the FTC Removal Provisions Are Constitutional**

19   The Government attempts to reframe SNI's argument that the Complaint violates

20 Article II of the Constitution. The Motion argues that the statutory authority under which

21 this suit was brought was unconstitutional when Congress passed it and is therefore

22 invalid. Dkt. 50, at 36-39; *see Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). The

23 Government ignores that argument, and instead seeks to recast it as an argument that the

24 removal restrictions which make the FTC an independent agency are unconstitutional.

25 See Dkt. 55, at 51-54. The effort fails – SNI makes no challenge to the removal

26 protections, nor claims that those protections harmed SNI, as the Response argues.  So,

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

28

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14

the Government's conclusion that SNI's "failure to identify any specific harm related to the removal protections is dispositive," *id.*, at 54, begs the question of what it disposes.[25]

The Government criticizes SNI's reliance upon *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890 (2023) for the idea that "being subjected" to "unconstitutional agency authority" is "a here-and-now injury," and "impossible to remedy once the proceeding is over." 143 S. Ct. at 903, Dkt. 55, at 53-54. The Government attempts to brush aside *Axon* because that case did not decide the merits of the claim and because this case does not involve an administrative hearing. Dkt. 55, at 53-54. The Government misses the point of *Axon* and again misses the point of SNI's argument. *Axon* described the injury as "here-and-now" because the petitioners were claiming that they were being subjected to "unconstitutional agency authority." Here, SNI is likewise claiming that it is injured by being subjected to unconstitutional agency authority, namely §§ 53(b) and 45(m)(1)(A), and that the injury would be impossible to remedy once the suit is over, win or lose.

The Supreme Court cautioned the FTC against abusing its litigation authority in *AMG*. Striking down the FTC's authority to seek monetary relief under § 53(b), the Court noted that allowing the FTC to "dispense with administrative proceedings to obtain monetary relief" would be allowing "a small statutory tail to wag a very large dog" in "light of the historical importance of administrative proceedings." 141 S. Ct. at 1348. *AMG* discusses the same administrative proceedings the FTC also skipped here, and stripped the FTC of the ability to seek monetary relief in court without those prior

---

[25] The Government argues that this Court need not consider SNI's Article II argument because of its referral to DOJ under 15 U.S.C. § 56(1)(a)(1), Dkt. 55, at 50, but that provision was added in the same unconstitutional enactments that added 15 U.S.C. § 53(b) and 15 U.S.C. § 45(m)(1)(A). *See* 15 U.S.C. § 56(a) (*amended in* Pub. L. No. 93-153, § 408(g), 87 Stat. 576, 592 (1973); Pub. L. No. 93-637, §204(A), 88 Stat. 2183, 2200-02 (1975)). The Government argues that the delegation of authority to DOJ under § 56(1)(a) avoids the statute's unconstitutionality, Dkt. 55, at 51, but that delegation authority is part of the same statutory enactment. *See also* Dkt. 45, at 24 (same).

29

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

administrative proceedings. The Government is trying to obtain through § 45(m)(1)(A)'s civil penalties what *AMG* ruled it could not seek under §53(b). SNI's constitutional argument is not – as the Government claims – a complaint about the removal restrictions on the FTC's Commissioners; it is a complaint about the litigation authority that was later given to those independent Commissioners, which is now being used in this proceeding against SNI in the same way that the Supreme Court rejected in *AMG*. That is a "here-and-now" injury, as *Axon* noted. SNI is injured by being subjected to this lawsuit. While *Walmart*, which also found the FTC's litigation authority unconstitutional, 2023 WL 2646741, at *25, suggested changing the removal protections, *Axon* makes clear that being subject to "unconstitutional agency authority" requires immediate action – in this case, preventing the FTC's use of the unconstitutional authority and dismissing this suit.

## III.     CONCLUSION

For the reasons stated above and in its Motion to Dismiss, SNI respectfully requests that this Court dismiss the Complaint against it, with prejudice.

Dated:  October 11, 2023

Respectfully submitted,

LOCKE LORD LLP

By:*/s/ Meagan S. Tom*

Thomas J. Cunningham
Meagan S. Tom
*Attorneys for Defendant Stratics Networks Inc.*
*E-mail:* tcunningham@lockelord.com
meagan.tom@lockelord.com

**Locke Lord LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA  94104-4815

30

REPLY IN SUPPORT OF MOTION TO DISMISS
*United States of America v. Stratics Networks Inc., et al.*
*U.S.D.C. S.D. of California* Case No. 3:23-cv-00313-BAS-KSC

134581696v.14