1  MANATT, PHELPS & PHILLIPS, LLP
   Christine M. Reilly (SBN 226388)
2  Cody A. DeCamp (SBN 311327)
   2049 Century Park East, Suite 1700
3  Los Angeles, California 90067
   Telephone: 310.312.4000
4  CReilly@manatt.com
   CDeCamp@manatt.com
5
   Bezalel A. Stern (admitted *pro hac vice*)
6  1050 Connecticut Ave. NW, Suite 600
   Washington, DC 20036
7  Telephone: 202.585.6500
   BStern@manatt.com
8
   GARDNER BREWER HUDSON
9  Richard P. Lawson (*pro hac vice* to be filed)
   400 N. Ashley Dr., Suite 1100
10 Tampa, FL 33602
   Telephone: 813.444.5562
11 RLawson@gardnerbrewer.com

12 COUNSEL FOR THE ATLAS DEFENDANTS
   Atlas Marketing Partners, Inc.,
13 Atlas Investment Ventures LLC,
   Tek Ventures, LLC, Eric Petersen,
14 and Todd DiRoberto

15

16         **UNITED STATES DISTRICT COURT**
         **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 UNITED STATES OF AMERICA,              CASE NO. 3:23-cv-00313-BAS-KSC

19              Plaintiff,                Judge: Hon. Cynthia A. Bashant
                                          Courtroom: 12B
20         vs.

21 STRATICS NETWORKS, INC., *et al.*      **ATLAS DEFENDANTS' REPLY**
                                          **IN SUPPORT OF MOTION**
22              Defendants.               **TO DISMISS AND TO STRIKE**

23                                        **NO ORAL ARGUMENT UNLESS**
                                          **REQUESTED BY THE COURT**
24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................1

II.  ARGUMENT ..................................................................................................2

    A.   DOJ Fails To Allege TSR Violations Because Ringless
         Voicemails Are Not Telephone Calls ...............................................2

        1.   The TSR's Text Shows That Ringless Voicemail Is Not A
            "Telephone Call." .................................................................3

        2.   The TSR's Regulatory History Shows That Ringless
            Voicemail Is Not A "Telephone Call." ...................................5

        3.   Atlas' Motion Relies Solely On Pleading Admissions ..............8

        4.   DOJ Relies On A Dearth Of Relevant Case Law .....................11

    B.   The Government Abused Its Discretion ............................................13

        1.   DOJ Fails To Address Case Law Demonstrating That
            Rulemaking, Rather Than Adjudication, Was Required .........13

        2.   CFPB Rulemaking Cautions Against Adjudication ................16

    C.   DOJ Fails To Allege TSR Violations For A Debt Relief Service ......18

        1.   Counts I And V Should Be Dismissed Under Rule 9(b) .........18

        2.   The Debt Relief Service Counts Fail As A Matter of Law. .....19

    D.   The Government Cannot Seek Civil Penalties ...................................20

    E.   DOJ Is Not Entitled To Injunctive Relief .........................................24

    F.   This Enforcement Action Is Constitutionally Infirm .........................25

        1.   This Action Violates Atlas' Due Process Rights .....................25

        2.   This Action Violates The Nondelegation Doctrine .................27

        3.   This Action Violates The Major Questions Doctrine ..............29

        4.   DOJ Lacks Constitutional Authority To Prosecute. ................30

III.  CONCLUSION .............................................................................................30

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)...................................................................................28

*Aegerter v. City of Delafield, Wis.*,
  174 F.3d 886 (7th Cir. 1999)......................................................................10

*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008).....................................................................................23

*AMG Cap. Mgmt. LLC v. FTC*,
  141 S. Ct. 1341 (2021) ..............................................................................14

*Beatrice Foods Co. v. FTC*,
  540 F.2d 303 (7th Cir. 1976)......................................................................23

*CFPB v. Community Fin. Servs. Ass'n. of Am.*,
  No. 22-448..................................................................................................14

*Doe v. Rensselaer Polytechnic Inst.*,
  2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020)...........................................23

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ...................................................................................25

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ...................................................................................29

*Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*,
  2020 WL 6939887 (C.D. Cal. Nov. 25, 2020)...........................................19

*Ford Motor Co. v. FTC*,
  673 F.2d 1008 (9th Cir. 1981)........................................................14, 15, 16

*FTC v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999)....................................................................24

*FTC v. Am. Fin. Benefits Ctr.*,
  2018 WL 11354861 ....................................................................................24

*FTC v. Am. Fin. Benefits Ctr.*,
  324 F. Supp. 3d 1067 (N.D. Cal. 2018) ...............................................18, 20

*FTC v. Am. Vehicle Prot. Corp.*,
  2022 WL 14638465 (S.D. Fla. Oct. 25, 2022)...........................................26

1
2

# TABLE OF AUTHORITIES

**Page**

3
4
*FTC v. Cantkier*,
    767 F. Supp. 2d 147 (D.D.C. 2011) ................................................................18

5
*FTC v. Cardiff*,
    2020 WL 6540509 (C.D. Cal. Oct. 9, 2020) ..............................................12, 22

6
7
*FTC v. D-Link Sys., Inc.*,
    2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) ................................................18

8
9
*FTC v. Elec. Payment Sols. of Am. Inc.*,
    2019 WL 4287298 (D. Ariz. Aug. 28, 2019) ..............................................24, 25

10
*FTC v. Elegant Sols., Inc.*,
    2020 WL 4390381 (C.D. Cal. July 6, 2020) ....................................................20

11
12
*FTC v. Evans Prod. Co.*,
    775 F.2d 1084 (9th Cir. 1985)...........................................................................24

13
*FTC v. Hoyal & Assocs., Inc.*,
    859 F. App'x 117 (9th Cir. 2021) .....................................................................25

14
15
*FTC v. Lights of Am., Inc.*,
    760 F. Supp. 2d 848 (C.D. Cal. 2010)...............................................................18

16
17
*Grant v. Regal Auto. Grp.*,
    2022 WL 20447296 (M.D. Fla. Oct. 17, 2022)...................................................8

18
*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ..........................................................................27, 28, 29

19
20
*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ..........................................................................................30

21
*In re Cincinnati Radiotelephone Sys., Inc.*,
    341 N.E.2d 826 (Ohio 1976)............................................................................10

22
23
*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ......................................................................................14

24
25
*Loper Bright Enters. v. Raimondo*,
    No. 22-451.........................................................................................................14

26
*Montgomery Ward & Co. v. FTC*,
    691 F.2d 1322 (9th Cir. 1982).....................................................................15, 18

27
28
*NLRB v. Bell Aerospace*,
    416 U.S. 267 (1974) ..........................................................................................15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2

# TABLE OF AUTHORITIES

**Page**

3
4

*Patel v. INS*,
   638 F.2d 1199 (9th Cir. 1980)............................................................15

5

*Paul v. United States*,
   140 S. Ct. 342 (2019) .......................................................................29

6
7

*Pepper v. GVG Cap. LLC*,
   2023 WL 205297 (S.D. Tex. Jan. 17, 2023) ......................................13

8
9

*Pfaff v. U.S. Dep't. of Hous. & Urb. Dev.*,
   88 F.3d 739 (9th Cir. 1996)........................................................15, 18

10

*Ruangswang v. INS*,
   591 F.2d 39 (9th Cir. 1978).........................................................14, 15

11
12

*Saunders v. Dyck O'Neal, Inc.*,
   319 F. Supp. 3d 907 (W.D. Mich. 2018)............................................12

13

*SEC v. Chenery*,
   332 U.S. 194 (1947) .....................................................................14, 15

14
15

*SEC v. Jarkesy*,
   No. 22-859.................................................................................14, 30

16
17

*Seila Law, LLC v. CFPB*,
   140 S. Ct. 2183 (2020) .....................................................................30

18

*The Broadcast Team, Inc. v. FTC*,
   429 F. Supp. 2d 1292 (M.D. Fla. 2006) .............................................26

19
20

*United States v. AMC Ent., Inc.*,
   549 F.3d 760 (9th Cir. 2008)..............................................................26

21

*United States v. Dish Network LLC*,
   256 F. Supp. 3d 810 (C.D. Ill. 2017)................................11, 12, 21, 22

22
23

*United States v. Nat'l Fin. Servs., Inc.*,
   98 F.3d 131 (4th Cir. 1996)................................................................21

24
25

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016).....................................................18, 19

26

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ................................................................28, 29

27
28

*Zablocki v. Merchants Credit Guide Co.*,
   968 F.3d 620 (7th Cir. 2020)......................................................27, 28

# TABLE OF AUTHORITIES

**Page**

*Zachs v. Groppo*,
   542 A.2d 1145 (Conn. 1988)...................................................................................10

## STATUTES

15 U.S.C. § 45 ...........................................................................................20, 23, 27

15 U.S.C. § 6102 ..............................................................................................16, 27

15 U.S.C. § 6105 ....................................................................................................26

15 U.S.C. § 6108 ....................................................................................................16

## OTHER AUTHORITIES

16 C.F.R. § 1.3 .......................................................................................................23

16 C.F.R. § 310.2 .............................................................................................19, 20

16 C.F.R. § 310.4 ..........................................................................................*passim*

28 C.F.R. § 0.45 .....................................................................................................30

68 Fed. Reg. 4580 ....................................................................................................3

68 Fed. Reg. 4582 ..................................................................................................16

68 Fed. Reg. 4643 ....................................................................................................3

71 Fed. Reg. 58716 ..............................................................................................5, 6

71 Fed. Reg. 58726 .........................................................................................5, 6, 7

73 Fed. Reg. 51164 ..............................................................................................6, 8

73 Fed. Reg. 51165 ..................................................................................................6

73 Fed. Reg. 51167 ..................................................................................................8

73 Fed. Reg. 51176 ..................................................................................................6

73 Fed. Reg. 51182 ..................................................................................................6

73 Fed. Reg. 51183 ..................................................................................................7

73 Fed. Reg. 51203 ................................................................................................13

84 Fed. Reg. 23274 ................................................................................................17

85 Fed. Reg. 76734 ................................................................................................17

85 Fed. Reg. 76737 ................................................................................................17

85 Fed. Reg. 76802 ................................................................................................17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

87 Fed. Reg. 33662 ................................................................................... 16

87 Fed. Reg. 33677 ................................................................................... 16

87 Fed. Reg. 33678 ................................................................................... 16

87 Fed. Reg. 33680 ................................................................................... 16

Amy Coney Barrett, *Suspension and Delegation*, 99 Cornell L. Rev. 251, 318
(2014) ..................................................................................................... 29

Andrew Rayo, *FTC to voice service provider: give the robocalls a rest*, FTC
(Feb. 17, 2023) https://consumer.ftc.gov/consumer-alerts/2023/02/ftc-
voice-service-provider-give-robocalls-rest (last visited Oct. 10, 2023) .............. 7

"FTC, Law Enforcement Partners Announce New Crackdown on Illegal
Robocalls," FTC (June 25, 2019), (https://www.ftc.gov/news-
events/news/press-releases/2019/06/ftc-law-enforcement-partners-
announce-new-crackdown-illegal-robocalls) ..................................................... 22

*In re Fed. Emps.' Distrib. Co.*,
56 F.T.C. 550 (1959) .............................................................................. 23

*In re Rules & Reguls. Implementing the TCPA of 1991 Petition for
Declaratory Ruling of All About the Message, LLC*,
2022 WL 17225556 (FCC Nov. 21, 2022) ........................................... 13, 17, 19

Lesley Fair, *Three films not on our Top 10 list*, FTC Business Blog (Oct. 24,
2018), https://www.ftc.gov/business-guidance/blog/2018/10/three-films-
not-our-top-10-list ............................................................................... 22

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

## I.     INTRODUCTION

On March 10, 1876, Alexander Graham Bell demonstrated his ability to "talk with electricity" by making the first "telephone call." Despite technological advances, nearly 150 years later, everyone still knows what a "telephone call" is. A caller dials a phone number, the recipient's phone rings, and the call is either answered or a message is left on an answering machine. This is a telephone call. The technology at issue in this case—ringless voicemail—is not.

No person would characterize a voicemail message that is deposited directly into a voicemail box—where the phone does not ring and cannot be answered—as a "telephone call." They might say they received your message or voicemail, but no one would say they received your *telephone call*. That's because these messages are not telephone calls. This view is consistent with the plain meaning of "telephone call" as expressed by Congress in the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act") and by the Federal Trade Commission ("FTC") in the Telemarketing Sales Rule ("TSR" or "Rule"). Neither Congress nor the FTC defined "telephone call" because the meaning of that phrase was, and still is, patently obvious.

The problem for the Government in this case is that the plain and ordinary meaning of telephone call does not fit the Government's agenda. Technology has evolved but the law has not. Rather than address the issue by conforming the Rule to technological advances through rulemaking or official pronouncements, as it has historically done and as sister agencies have done under other federal statutes, the Department of Justice ("DOJ") brings this enforcement action to expand the law by prosecutorial fiat. It seeks to penalize the Atlas Defendants[1] for not knowing what the FTC never fairly expressed. To make matters worse, the ringless voicemails in

---

[1] "Atlas" or "Defendants" refer to Atlas Marketing Partners, Inc., Atlas Investment Ventures LLC, Tek Ventures, LLC, Eric Petersen, and Todd DiRoberto.

question ceased nearly ***three years ago*** when there was a dearth of guidance or authority on how this new technology squared with existing law. This is a classic case of government overreach. The FTC is attempting to skirt its rulemaking, notice, and due process obligations—essentially requiring this Court to legislate.

Rather than address these issues in a forthright manner, DOJ argues that ringless voicemail is obviously covered by the TSR and asks this Court to rubberstamp its overreach. This argument is belied by common sense and the voluminous briefing in this case. This Court should hold the Government accountable to the limits of its authority and decline the invitation to expand the meaning of an ordinary term. If "telephone call" is to be expanded to cover new technology, it must be done legislatively or through rulemaking, not judicially.

This Court should carefully consider the key question of whether a ringless voicemail is a "telephone call" under the TSR by looking at the ordinary and plain meaning of this phrase, which is bolstered by the legislative and regulatory history. If the Court determines that the Government has failed to plead a telephone call, all TSR claims fail as a matter of law and must be dismissed, leaving the remaining claim under the FTC Act, which fails for other reasons.

## II.    ARGUMENT

### A.    <u>DOJ Fails To Allege TSR Violations Because Ringless Voicemails Are Not Telephone Calls.</u>

In its Motion, Atlas demonstrated that ringless voicemail is not a telephone call based on the plain meaning of the phrase and by examining, in extensive detail, the text of the Telemarketing Act and the TSR as well as their legislative and regulatory histories. ECF 45-1 at 6-14. Atlas pointed to numerous provisions of the TSR that reference a telephone call as a ringing telephone that can be answered. For example, the TSR states that a telemarketer must allow a "telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting" and a prerecorded message must play within two seconds after the consumer picks up the phone and

greets the caller, "[w]henever a sales representative is not available to speak with the person answering the call." 16 C.F.R. §§ 310.4(b)(1)(v)(B)(i), (ii); 310.4(b)(4)(iii). In promulgating the Rule, the FTC said it best: "*A telemarketer initiates a telephone call by causing the called consumer's telephone to ring.*"[2] 68 Fed. Reg. 4580, 4643 (Jan. 29, 2003).

The Government's opposition fails to explain how these provisions of the TSR and the FTC's rulemaking history square with its litigation position. The Government's position also cannot be reconciled with the stated purpose of the Telemarketing Act and the TSR, which focuses on intrusions in consumer homes caused by ringing telephones. *See* ECF 45-1 at 9, 11, 13. DOJ ignores a plethora of authority and instead points to a single passage in the TSR concerning telephone calls that are not answered, but are left on answering machines. DOJ argues that Atlas relies on facts outside the pleadings. DOJ also argues a prior TSR case that did not address the issue presented here and irrelevant cases under a different statute. All of these arguments are meritless, as explained below.

### 1.   The TSR's Text Shows That Ringless Voicemail Is Not A "Telephone Call."

The Government argues that the text of the TSR and its history show that outbound telephone calls include calls that deliver prerecorded messages to answering machines or voicemail services without being answered by a consumer. In the DOJ's view, because a specific provision of the TSR recognizes instances in which a prerecorded message may be left on an answering machine or voicemail service, this means that the TSR expressly covers ringless voicemail. ECF 55 at 22-23 (citing 16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(A)-(B)). This tortured reading of the TSR is contrary to its plain language and the regulatory context, which make clear that the FTC is referring to situations where a consumer's phone rings and is

---

[2] *Bold and italics* within quotes denotes "emphasis added."

capable of being answered, but the consumer does not answer the phone. As explained below, the Government's argument is a red herring.

The provision at issue provides that it is an abusive telemarketing act or practice to "[i]nitiat[e] any outbound *telephone call* that delivers a prerecorded message[.]" 16 C.F.R. § 310.4(b)(1)(v). As an initial matter, the provision requires a "telephone call" as a condition precedent. DOJ instead focuses on consequences that occur *after* a company initiates a "telephone call" and the consumer does not pick up the phone. In doing so, it ignores the key threshold issue of whether ringless voicemail is a "telephone call" in the first instance.

Moreover, the TSR's text does not support the Government's position. "*In the case of a call that could be answered in person by a consumer*," the caller must disclose that "the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request … at any time during the message." 16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(A). This mechanism must allow the consumer to add their phone number to the seller's internal do-not-call list and immediately disconnect the call. Stated simply, if the telephone rings and the consumer picks up the phone and hears a prerecorded message begin to play, they must be able to make a Do Not Call request during the message using the aforementioned automated opt-out mechanism.

Conversely, "[i]n the case of *a call that could be answered* by an answering machine or voicemail service,"[3] the caller must disclose "that the person called can use a toll-free telephone number to assert a Do Not Call request." 16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(B). This toll-free number must connect to the automated system described above. In other words, if the telephone rings, but the consumer

---

[3] "Answering machines or voicemail services" have no application to ringless voicemail. A ringless voicemail cannot be "left" on or "roll over" to an answering machine or voicemail service since it is not a telephone call. Instead, messages are delivered directly to a voicemail box. *See* infra Section II.A.2.

1    does not answer and instead the message is left on an answering machine, the caller
2    must leave instructions on how to make a Do Not Call request. In this manner, a
3    "*call* [] could be ***answered*** by an answering machine or voicemail service." *Id.*

4          To summarize, the FTC recognized that an "outbound telephone call that
5    delivers a prerecorded message" could be answered live by a consumer or, *if the*
6    *consumer does not pick up the phone*, a prerecorded message could be left on a
7    consumer's answering machine or voicemail service. 16 C.F.R. § 310.4(b)(1)(v).
8    Nothing about this provision is remarkable. Whether the consumer answers the
9    phone and hears a prerecorded message live or the caller leaves a message on an
10   answering machine, the TSR envisions a ringing telephone capable of being
11   answered—i.e., the plain and ordinary meaning of "telephone call."

12         In both scenarios, a ringing telephone line could be answered by the
13   consumer and introduces an intrusion that the Do Not Call list is meant to remedy.
14   This is fundamentally different from ringless voicemail which indisputably cannot
15   be "answered" and does not cause consumer telephones to ring. Thus, this single
16   provision of the TSR does not support the Government's position. It only further
17   demonstrates why ringless voicemails are not telephone calls.

18         **2.      The TSR's Regulatory History Shows That Ringless**
19   **Voicemail Is Not A "Telephone Call."**

20         DOJ ignores a multitude of TSR provisions cited by Atlas supporting the
21   plain and ordinary meaning of telephone call. Instead, DOJ shifts focus to the
22   TSR's rulemaking history. Specifically, DOJ makes much of the fact that in 2006,
23   the FTC proposed an amendment to the TSR that would prohibit "[i]nitiating any
24   outbound telemarketing call that delivers a prerecorded message when answered by
25   a person." 71 Fed. Reg. 58716, 58726 (Oct. 4, 2006). DOJ points out that in the
26   final enactment passed in 2008, the FTC did not limit this provision to prerecorded
27   message calls "answered by a person" and extended the provision to calls answered
28   by a voicemail system or answering machine. This, argues the DOJ, shows that the

TSR covers ringless voicemail. Not so.

In advancing this half-baked argument, the Government omits the reasoning for the final amendment. The FTC elected not to include the phrase "answered by a person" because the evidence in the record suggested that a significant portion of prerecorded message calls "end up on consumers' answering machines." 73 Fed. Reg. 51164, 51165, 51176 (Aug. 29, 2008). The FTC acknowledged that consumers who "do not simply answer and hang up" when hearing a prerecorded message "may let the message roll over to an answering machine where they can delete it later." *Id.* at 51177. Accordingly, the final rule covers situations in which a consumer answers the phone as well as those in which the consumer does not answer and the telephone call "roll[s] over" to an answering machine. In either case, the phone rings and can be answered. The fundamental nature of a "telephone call" is the same.

That's not all.[4] The FTC explained that in proposing the language "answered by a person" it had assumed that "consumer privacy interests would not be affected to the same degree ***when the consumer is not at home to answer the telephone*** and an answering machine or voicemail service ***picks up the message***." 73 Fed. Reg. at 51182. *See also* 71 Fed. Reg. 58716, 58726 (Oct. 4, 2006) ("The Commission specifically seeks comment on whether the limitation 'when answered by a person' is necessary and appropriate or whether the prohibition on prerecorded messages should be extended to calls answered by a voicemail system or an answering machine. For example, the intrusion of a telemarketing call delivering a prerecorded message would seem less disruptive if it arrives when the party called is not home than if it arrives when he or she is at home in the midst of daily activities."). Thus, the FTC was comparing a consumer who is "not home" and cannot be interrupted

---

[4] DOJ selectively quotes the last line of the discussion without providing the full context, which is herein provided. ECF 55 at 22 n.7, 24.

to one who is "at home in the midst of daily activities" and can be interrupted by the phone ringing.[5]

After receiving consumer comments to the proposal, the FTC recognized "a significant shift in consumer behavior" in which "many consumers now use their answering machines or Caller ID devices while they are at home to screen out telemarketing calls." 73 Fed. Reg. at 51183. Consumers "*listen to the messages as they are being left on [an] answering machine*, and thereby decide if [they] should *pick up the phone*[.]" *Id. See also id.* at 51184 ("Taken as a whole, the comments make it clear that consumers now very often use answering machines not only to pick up messages when they are away, but also to screen out unwanted telemarketing calls when they are at home."). The FTC concluded that "[f]or consumers who are at home but choose not to answer a prerecorded call, the intrusion of the message as the answering machine records it is hardly less than when a message is delivered when they answer such a call." *Id.* at 51184. This makes sense. A consumer who is at home but does not answer the phone can still hear the phone ringing and the prerecorded message being played on their answering machine. Therefore, the consumer experiences the same "intrusion" as if they had answered the phone. *Id.* at 51180 ("The mere ringing of the telephone to initiate such a [prerecorded message] call may be disruptive.").

**None of these circumstances apply to ringless voicemail.** The telephone does not ring, and the consumer cannot hear the message as it is being recorded. In fact, ringless voicemail technology is designed to avoid such intrusions by *not*

---

[5] An FTC video states, "[I]f you answer the phone and hear a recorded message instead of a live person, it's a robocall." It emphasizes "answering" the phone or call, advises to "hang up on illegal robocalls," shows consumers answering their telephones, and even features the sound of a telephone ringing. *See* Andrew Rayo, *FTC to voice service provider: give the robocalls a rest*, FTC (Feb. 17, 2023) https://consumer.ftc.gov/consumer-alerts/2023/02/ftc-voice-service-provider-give-robocalls-rest (last visited Oct. 10, 2023).

interrupting consumers in the midst of their daily activities. A message is deposited directly into the consumer's voicemail box and is retrieved at the consumer's convenience. *See Grant v. Regal Auto. Grp.*, 2022 WL 20447296, at *5 (M.D. Fla. Oct. 17, 2022) ("[U]nlike the ringing of a telephone, which demands the recipient's immediate attention, a ringless voicemail produces no ringing and thus no comparable claim on the recipient's attention.").

* * *

In short, neither the single passage of the TSR cited by the DOJ nor the TSR's regulatory history[6] support the Government's view that ringless voicemail technology is a "telephone call." The Rule's text and regulatory history only highlight the stark contrast between a "telephone call" and ringless voicemail, thereby further supporting dismissal of the TSR counts.

### 3. Atlas' Motion Relies Solely On Pleading Admissions.

Next, DOJ argues that Atlas' Motion relies on facts outside the pleadings. DOJ points to references in the Motion that there is "no dialed connection" and that ringless voicemails are delivered "directly to a voicemail box by way of a server-to-server communication." ECF 55 at 21. But these statements rest squarely on the Government's own admissions.

The Government pleads that "ringless" voicemail is delivered directly to a voicemail box "without causing the recipient's phone to ring and without giving

---

[6] The 2008 rulemaking history is replete with references showing that, unlike ringless voicemail, a telephone call rings a telephone, can be answered, and can "tie up" a phone line. *See* 73 Fed. Reg. at 51164, 51167 (consumers "might find it easier to hang up on recorded sales calls than live ones," but "they would still have to answer when their phones ring, and it is likely that they would be running to answer their phones much more frequently"); 51182 ("prerecorded calls could tie up a consumer's telephone line"). *See also Grant*, 2022 WL 20447296, at *5 ("[N]othing ...suggests that the ringless voicemails interfere — even momentarily — with the continuous operation of the device or the ability to receive other messages.").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   recipients the opportunity to answer[.]" Compl. ¶ 39. *See also id.* ¶ 3 (ringless

2   voicemail "typically does not cause [] phones to ring"); ¶ 45 (Stratics transmission

3   records indicate whether "the prerecorded message reached the consumer's

4   voicemail inbox"). Indeed, the Government's own opposition expressly states that

5   Stratics' ringless voicemail platform "facilitates the ***direct delivery*** of prerecorded

6   messages to individuals' telephone ***voicemail boxes***."). ECF 55 at 41. There is

7   simply no dispute on these pleadings that ringless voicemail delivers messages

8   directly into voicemail boxes and cannot be answered by consumers, the same

9   allegations cited in Atlas' Motion. *See* ECF 45-1 at 3, 7 (citing Compl. ¶¶ 3, 5, 39,

10   45). Any argument otherwise is disingenuous.

11        Despite these pleading admissions, DOJ takes issue with the assertion that

12   "there is no ringing" in connection with "ringless" voicemail. ECF 55 at 21. DOJ

13   points to allegations that a consumer's "voicemail box may trigger an audible and

14   visual notification that alerts recipients that they have new voicemails," and that

15   Stratics acknowledges as much in its terms of service. ECF 55 at 21 (citing Compl.

16   ¶ 41). *See also* ECF 45-1 at 3 n.2 (ringless voicemail may trigger an alert that the

17   recipient has new voicemails depending on a consumer's personalized device

18   settings). DOJ argues that because Stratics' ringless voicemail technology may alert

19   a consumer with a "ping" and include a recipient's cell phone number in

20   transmission records, the Court should infer that ringless voicemail *must* deliver

21   messages to cell phone numbers "via 'outbound telephone calls.'" ECF 55 at 20-21.

22        The Government's argument is easily refuted. An audible voicemail alert is

23   not the same as a ringing telephone which a live person can pick up and answer. In

24   today's modern world, our cell phones "ping" or alert for any number of reasons,

25   depending on a device's personalized settings (including whether the device has

26   been silenced or sound enabled). For example, a consumer's cell phone may "ping"

27   or alert upon the receipt of an email message or an in-app message from Facebook

28   (or any other mobile application), but these alerts are clearly not telephone calls.

1   Recipients of these alerts might say they received your email or message, but no
2   one would say they received your "telephone call." It is axiomatic that these
3   communications do not fit in the ordinary meaning of this phrase.

4   Another analogy is instructive. Before cell phones became ubiquitous in
5   today's society, pagers or "beepers" were more commonplace. Consumers could
6   send messages to someone's pager by dialing the pager phone number from their
7   phone and leaving a return phone number or message. Upon receipt of a pager
8   message, the recipient's pager would "beep" or "ping," alerting the recipient to the
9   receipt of a message, yet a pager message is indisputably not a "telephone call." *See*
10  *Aegerter v. City of Delafield, Wis.*, 174 F.3d 886, 891–92 (7th Cir. 1999) (noting a
11  "number of salient differences between two-way cellular telephone service and one-
12  way paging services" including the fact that "a cellular caller has an interactive and
13  immediate conversation with the recipient of the call; there is no need to find a
14  telephone, call back, or drive to the caller in order to respond"); *Zachs v. Groppo*,
15  542 A.2d 1145, 1150, 1152 (Conn. 1988) (one-way paging or beeper services are
16  not "telephone answering services" because "they do not answer telephone calls"
17  and these services "do not fall within the ordinary understanding of a 'transmission'
18  of a 'telephone message'"); *In re Cincinnati Radiotelephone Sys., Inc.*, 341 N.E.2d
19  826, 828 (Ohio 1976) (one-way paging service "would cause the subscriber's
20  receiver to 'beep,' signalling [sic] the subscriber to [make a call]").

21  Like pager messages, ringless voicemails are not telephone calls. "[T]here
22  can be no verbal communication, so, the subscriber cannot communicate back to
23  the caller or the [ringless service provider] except by going to a telephone and
24  placing a call. No two-way communication is possible[.]" *In re Cincinnati*
25  *Radiotelephone.*, 341 N.E.2d at 828. A cell phone that "pings" or alerts the
26  consumer to the receipt of a ringless voicemail message is no different than the
27  beep of a pager alerting the consumer to the receipt of a pager message.
28  In conclusion, an audible "ping" or alert from the receipt of a ringless

voicemail does not show that ringless voicemail is a "telephone call." That is nonsensical and flies in the face of common sense and everyday experience. DOJ's argument only highlights the fact that the receipt of a ringless voicemail may lead to the *making of a telephone call*, and thus the two cannot be one in the same.

### 4. DOJ Relies On A Dearth Of Relevant Case Law.

To avoid the TSR's plain text and its rulemaking history, the Government points to two cases which purportedly show that telephone calls under the TSR do not require a telephone to ring or the opportunity for the consumer to answer.

First, DOJ cites *United States v. Dish Network LLC*, an out-of-circuit case. After several years of litigation and a bench trial, the court in *Dish Network* considered whether telephone calls that result in "dialer errors" "such as busy, no dial tone, etc." counted as TSR violations, even though the "[telephone] calls did not go through to ring the recipients' phones."[7] *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 874 (C.D. Ill. 2017), *aff'd in part, vacated in part*, 954 F.3d 970 (7th Cir. 2020). The court answered in the affirmative because the TSR prohibits "initiating any outbound telephone call that delivers a prerecorded message[.]" 16 C.F.R. § 310.4(b)(1)(v).

*Dish Network* is not probative of the issues here. In that case, there was no dispute that telephone calls were made or initiated.[8] The issue was whether TSR violations should include telephone calls that were "not completed." *Dish Network*, 256 F. Supp. 3d at 876. Here, the issue is whether ringless voicemail is a "telephone call" in the first instance. On this key issue, *Dish Network* is completely irrelevant.

---

[7] The court considered this narrow issue along with telephone calls that were business to-business or informational in nature, made to the wrong number, or where the recipient did not speak English—i.e., calls where telephones rang and could be answered by the consumer.

[8] Unlike telephone calls, the term "initiate" does not make sense in the context of ringless voicemail given its "direct delivery" into consumer "voicemail boxes." ECF 55 at 41; *supra* at Section II.A.2, 3. *See also* ECF 55 at 20 n.6.

1   There is not a single reference to "ringless voicemail" in the 161-page post-trial

2   opinion because the case did not involve ringless voicemails. In fact, *Dish Network*

3   only bolsters the argument that ringless voicemails are not covered by the TSR

4   because the *Dish Network* telephone calls only failed to ring based on technical

5   errors. In the absence of such errors, the initiated telephone calls would have rung

6   as intended, causing disruption to consumers. In contrast, the technology here does

7   not ring *by design*, minimizing the type of disruption that is the focus of the TSR.

8        Second, the Government cites *FTC v. Cardiff*, which involved alleged

9   violations of the FTC Act, Restore Online Shoppers' Confidence Act, Electronic

10   Fund Transfer Act, and the TSR. This is the only TSR case cited by the

11   Government that involved ringless voicemail, but ringless voicemail was not the

12   focus. There is just a single reference to "ringless voicemail" in one paragraph of

13   the 129-paragraph complaint pertaining to only one out of 16 counts alleged. At

14   summary judgment in October 2020, *around the time the conduct at issue in this*

15   *case had ceased*, the court assumed—without deciding—that ringless voicemails

16   were telephone calls under the TSR. Defendant did not raise the issue.

17   Consequently, the sum total of the court's discussion on ringless voicemail is a two-

18   sentence paragraph relying on the defendant's admissions. *FTC v. Cardiff*, 2020

19   WL 6540509, *17 (C.D. Cal. Oct. 9, 2020). Here, the parties have submitted

20   extensive briefing raising a multitude of challenges on whether the TSR covers the

21   technology in question. *Cardiff* is hardly instructive on the issues presented here

22   and only shows the dearth of authority from the FTC on ringless voicemail.

23        Lastly, DOJ cites another irrelevant, out-of-circuit case, *Saunders v. Dyck*

24   *O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018). Considering an issue of first

25   impression, the court held that direct drop voicemails constituted a "call" under the

26   Telephone Consumer Protection Act ("TCPA"). *Saunders* was decided under a

27   different statute regulated by a different federal agency, the Federal

28   Communications Commission ("FCC"), and was decided in the context of a private

consumer lawsuit, not a government enforcement action.[9] Moreover, the TCPA uses the word "call" while the TSR requires a "telephone call." They are not the same. *See Pepper v. GVG Cap. LLC*, 2023 WL 205297, at *5 (S.D. Tex. Jan. 17, 2023) ("While the word 'call,' used alone, may be ambiguous when used in common contexts . . . 'telephone call,' as a phrase, is not. The placement of 'telephone' before 'call' indicates a particular kind of communication and removes whatever ambiguity might be present with the word 'call,' used alone.").

Tellingly, the DOJ fails to acknowledge that whether ringless voicemails qualified as "telephone calls" under the TCPA remained an open question until November 2022—*four years after the Saunders decision and two years after the conduct at issue here.* Only in late 2022 did the FCC issue a declaratory ruling, and only after the type of public proceeding that the FTC should have held *In re Rules & Reguls. Implementing the TCPA of 1991 Petition for Declaratory Ruling of All About the Message, LLC*, 2022 WL 17225556, at *1-2 ¶¶ 3-4 (FCC Nov. 21, 2022) (ruling on withdrawn FCC petition because a "declaratory ruling is necessary to resolve a controversy and remove uncertainty about ringless voicemail"). DOJ does not dispute that the FTC took no similar action under the TSR. *See also* ECF 45-1 at 2–5 (FTC failed to issue interpretive rules, policy statements, warning letters, or notice of penalty offenses); *id. at* 4-5 n.10 (comparing FTC's lack of notice under TSR to notice provided by FCC under TCPA).

**B.** **The Government Abused Its Discretion.**

    **1.** **DOJ Fails To Address Case Law Demonstrating That**

---

[9] While the TSR and TCPA both cover telecommunication issues, they are not congruent. *See*, *e.g.*, 73 Fed. Reg. at 51203 ("The FTC is mindful that the amendment explicitly prohibiting all prerecorded telemarketing calls without the consumer's express prior written agreement differs from the FCC's regulations[.]"); *id.* at 51172 n.104 (FTC "disagrees that it is obliged to conform its Do Not Call requirements to the parallel requirements of the FCC").

**Rulemaking, Rather Than Adjudication, Was Required.**

Atlas presented a multitude of cases standing for the proposition that the FTC cannot seek to amend the TSR through adjudication where doing so would offend principles of fair notice and/or constitute an abuse of discretion. *See* ECF 45-1 at 14–23. DOJ fails to address any of these cases and focuses instead on rehashing arguments already made. ECF 55 at 47–50; *supra* Sections II.A.1, II.A.2. DOJ also states, in a single sentence, that "the choice made between proceeding by a general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency" and cites a single 76-year-old Supreme Court case from 1947. ECF 55 at 50 (citing *SEC v. Chenery*, 332 U.S. 194 (1947)).

More recent Supreme Court decisions show that FTC discretion is not a foregone conclusion, as the Government suggests. *See, e.g.*, *AMG Cap. Mgmt. LLC v. FTC*, 141 S. Ct. 1341, 1349 (2021) (reversing decades of FTC entitlement to monetary relief under Section 13(b) of the FTC Act); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019) (narrowly upholding *Auer* deference and emphasizing limitations to its scope and application). In fact, the Supreme Court is poised to hear several additional cases questioning agency discretion.[10]

Second, the *Chenery* case does not stand for the proposition that agencies have unfettered discretion to engage in *ad hoc* litigation, rather than proceed through rulemaking. Indeed, "the Court favors, whenever possible, the use of prospective quasi-legislative rule-making powers to formulate new standards rather than ad hoc adjudication." *Ruangswang v. INS*, 591 F.2d 39, 44 (9th Cir. 1978) (citing *Chenery*, 332 U.S. at 202). And "like all grants of discretion, 'there may be situations where the (agency's) reliance on adjudication would amount to an abuse of discretion[.]'" *Ford Motor Co. v. FTC*, 673 F.2d 1008, 1009 (9th Cir. 1981)

---

[10] *See Loper Bright Enters. v. Raimondo*, No. 22-451 (considering whether to overturn nearly four decades of *Chevron* deference); *SEC v. Jarkesy*, No. 22-859; *CFPB v. Community Fin. Servs. Ass'n of Am.*, No. 22-448.

(quoting *NLRB v. Bell Aerospace*, 416 U.S. 267, 294 (1974)); *Bell Aerospace*, 416 U.S. at 294-95 (recognizing *Chenery* but noting that adjudication may be inappropriate where "new liability is sought" or "fines or damages" are involved).

This is not the first time the FTC has abused its discretion in proceeding by adjudication rather than by rulemaking.[11] In *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322 (9th Cir. 1982), the court acknowledged *Chenery*, but explained:

> Adjudication allows an agency to apply a rule to particular factual circumstances and to provide an interpretation of the required conduct in light of those circumstances. ***An adjudicatory restatement of the rule becomes an amendment, however, if the restatement so alters the requirements of the rule that the regulated party had inadequate notice of the required conduct.*** An amendment is proper only when adequate notice is provided to affected parties pursuant to appropriate rule-making procedures.

*Id.* at 1329 (FTC abused its discretion in interpreting pre-sale availability rule). *See also Ford Motor*, 673 F.2d at 1010 (FTC abused its discretion because "th[e] adjudication changes existing law, and has widespread application" and thus "the matter should be addressed by rulemaking").

A court should consider "the extent that the standards applied in the adjudication vary from the plain language of the rule" and "the agency's prior use of rule-making." *Montgomery Ward*, 691 F.2d at 1329. These factors, applied here, clearly favor rulemaking over case-by-case adjudication. The plain meaning of "telephone call," the text of the TSR, and the TSR's rulemaking history show that the FTC intended to cover telephone communications that ring telephone lines and

---

[11] The Ninth Circuit has found agency abuse of discretion despite *Chenery* in non-FTC cases as well. *See, e.g.*, *Ruangswang v. INS*, 591 F.2d 39, 46 (agency abused its discretion "whether it was attempting to create a new standard of conduct by adjudication or believed that it was merely interpreting the relevant regulation"); *Pfaff v. U.S. Dep't. of Hous. & Urb. Dev.*, 88 F.3d 739, 748 (9th Cir. 1996) (agency abused its authority in bringing enforcement action where "parties who violate the new standard face onerous penalties … and liability in damages"); *Patel v. INS*, 638 F.2d 1199, 1205 (9th Cir. 1980) (agency should have proceeded by rulemaking because the rule called for a general standard, not a case-by-case determination).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

can be answered by consumers—i.e., the meaning of telephone call as it has existed for the last 150 years. ECF 45-1 at 6–14; *supra* Sections II.A.1; II.A.2.

Further, the FTC "has made substantial amendments to the TSR over the last 25 years" due to "changes in the marketplace" and "[t]echnological advancements." 87 Fed. Reg. 33662, 33662 (June 3, 2022); 87 Fed. Reg. 33677, 33680 (June 3, 2022); *see also* 87 Fed. Reg. at 33662 ("The Commission reviews its rules and guides periodically to seek information about their costs and benefits and their regulatory and economic impact."); 87 Fed. Reg. at 33678 (proposing amendments to "reflect evolutions in the marketplace"); 68 Fed. Reg. at 4582 (proposing "to amend [the TSR] to better address recurring abuses and to reach emerging problem areas"). *See generally* 15 U.S.C. §§ 6102(a), (b), 6108 (mandatory review); ECF 45-1 at 17-18.

The Government fails to explain its departure from this long-standing history. In fact, the *TSR is undergoing regulatory review right now*, so the FTC could have easily proposed amendments to the TSR to address ringless voicemail. It is manifest that rulemaking was required here given the change in existing law, an interpretation of "telephone call" that is at odds with its plain and ordinary meaning, the resulting expansion of liability, and the pursuit of devastating penalties meant to punish, not inform. DOJ seeks to establish a general rule of wide application to any company that uses ringless voicemail technology, not a fact-specific adjudication unique to Defendants here. *Ford Motor*, 673 F.2d at 1010 (FTC abused its discretion where ruling "would create a national interpretation" and the "FTC could have formulated its position … in its proposed trade rule" but "[i]t did not do so"). This Court should not permit the FTC to attempt an end-run around its rulemaking responsibilities.

## 2. CFPB Rulemaking Cautions Against Adjudication.

DOJ argues that proceedings in which the Consumer Financial Protection Bureau ("CFPB") amended the Fair Debt Collections Practices Act ("FDCPA") to

clarify that ringless voicemails will be considered calls for FDCPA purposes, supports its position to proceed by adjudication rather than rulemaking. DOJ points to a statement in the final amendment that the "focus on telephone calls suggests that the provision was meant to apply to communications that present the opportunity for the parties to engage in a live telephone conversation or that result in an audio message." 85 Fed. Reg. 76734, 76802 (Nov. 30, 2020).

While clever, this statement must be read in context. In the proposed rule, omitted from DOJ's brief, the CFPB stated, "The Bureau proposes this clarification because[]. . . the Bureau believes that Congress may have intended for this provision to apply to communications that present the opportunity for the parties to engage in a live telephone conversation or that result in an audio message." 84 Fed. Reg. 23274, 23308 (May 21, 2019). In this context, "audio message" must refer to its ordinary meaning—i.e., a consumer picking up the phone and hearing a prerecorded message play or a prerecorded message left on an answering machine when a consumer does not answer. Since ringless voicemail does not fall into this common understanding of "audio message," amendment was warranted. If "audio message" meant "ringless voicemail," as DOJ suggests, there would have been no reason for the CFPB "to clarify that 'placing a telephone call' includes conveying a ringless voicemail." 85 Fed. Reg. at 76802.

Importantly, the fact that the issue was raised and addressed by both the CFPB and the FCC under separate federal statutes only exemplifies the lack of fair notice here.[12] Unlike sister agencies, the FTC failed to engage in rulemaking or *any* notice proceedings to expand the scope of the TSR despite countless provisions in the TSR's text, supported by extensive rulemaking history, suggesting the opposite.

---

[12] Both the FCC and CFPB clarifications on ringless voicemail for other federal statutes occurred *after* the conduct in question, and thus could not have provided any notice to Atlas. 85 Fed. Reg. 76734, 76737 (Nov. 30, 2020); *In re Rules & Reguls.*, 2022 WL 17225556, at *1-2 ¶¶ 1, 3-4.

By taking "an inappropriate short cut to an amendment of the rule," *Montgomery Ward*, 691 F.2d at 1334, the FTC's actions "fall well outside the limits of good—or acceptable—government[.]" *Pfaff*, 88 F.3d at 749.

**C.      DOJ Fails To Allege TSR Violations For A Debt Relief Service.**

**1.      Counts I And V Should Be Dismissed Under Rule 9(b).**

Citing out-of-circuit case law, DOJ argues that Rule 9(b)'s specificity requirements are inapplicable to misrepresentation Counts I and V and that Rule 8(a)'s general notice pleading requirements are sufficient. ECF 55 at 13. That may be in other jurisdictions, but it is not the law in the Ninth Circuit.

Ninth Circuit courts have rejected the FTC's argument that claims need only satisfy Rule 9(b) when intent, scienter, or reliance are elements of a claim. *FTC v. D-Link Sys., Inc.*, 2017 WL 4150873, at *2 (N.D. Cal. Sept. 19, 2017) ("[T]he FTC contends Rule 9(b) is inapplicable because fraud is not an essential element of its deception claims. But that is precisely the truncated view of Rule 9(b) that our circuit has rejected."); *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) (applying Rule 9(b) where the "FTC's omission of the 'magic word'—fraud—from its Complaint does not detract from the apparently fraudulent nature of the allegations"). The policy reasons are manifest "[w]here, as here, an agency of the federal Government, with all of its concomitant force, brings an accusation of implicit dishonesty against an individual, even if short of moral turpitude, the heightened pleading requirements of Rule 9(b) may serve an important safeguarding function." *FTC v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011).

DOJ then argues that even if Rule 9(b) applied (which it does), it has pled with the required specificity. ECF 55 at 14–15. It cites *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016), but there, the court dismissed claims on Rule 9(b) grounds for a majority of the defendants, as Atlas urges the Court to do here. DOJ also cites *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067 (N.D. Cal. 2018), but this case is distinguishable. The FTC's

pleading on the allegedly deceptive conduct spanned twenty paragraphs of allegations, replete with nearly ten supporting exhibits. *See* Compl. ¶¶ 22–37, 47–49, 58–59, Exhs. 1–9, *FTC v. Am. Fin. Benefits Ctr.*, Case No. 4:18-cv-00806-SBA (N.D. Cal. Feb. 07, 2018). In comparison, the sum total of the Government's allegations here consists of only three out of 149 paragraphs and there is not a single supporting exhibit attached to the Complaint. ECF 55 at 14-15 (citing Compl. ¶¶ 81-83).

In addition, the Government alleges "numerous instances" of alleged conduct and that "customers did not complete the program, and many filed for bankruptcy" but fails to specify any such instances. Compl. ¶¶ 82–83. In fact, not a single example or exhibit is provided. "At bottom, [DOJ] fail[s] to put forth specific allegations to support any of [its] fraud based claims, and instead rel[ies] on vague assertions and conclusory allegations." *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, 2020 WL 6939887, at *7 (C.D. Cal. Nov. 25, 2020) (granting motion to dismiss on Rule 9(b) grounds); *United Healthcare*, 848 F.3d at 1180 ("'[M]ere conclusory allegations of fraud are insufficient' and "[b]road allegations that include no particularized supporting detail do not suffice.").

### 2. The Debt Relief Service Counts Fail As A Matter of Law.

DOJ argues that the statutory text of the TSR makes clear that Atlas engaged in a "debt relief service" as defined by the Rule. ECF 55 at 11. DOJ is incorrect. This provision is only applicable to "telemarketing" which requires the "use of one or more telephones" and "more than one interstate ***telephone call***." 16 C.F.R. § 310.2(gg). Since ringless voicemails are not telephone calls, *all* TSR claims fail, including Counts III, IV, V and VI.[13]

Instead, DOJ argues that Atlas' document preparation services constitute debt

---

[13] DOJ does not dispute that if a ringless voicemail is not a telephone call, the TSR claims fail.

relief services. ECF 55 at 10-11. But the Complaint alleges that the program "consisted of a series of debt validation letters sent by Ace to consumers' creditors challenging the validity of the consumers' debt[.]" Compl. ¶ 79. Letters challenging the underlying validity of an obligation are distinct from letters "to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt" since a member of the program stands not to have a debt altered or renegotiated, but eliminated entirely. 16 C.F.R. § 310.2(o).

The two cases cited by DOJ do not advance the Government's case. These cases alleged misrepresentations concerning eligibility for federal student loan repayment and forgiveness programs in connection with the Department of Education ("DOE"). *See FTC v. Elegant Sols., Inc.*, 2020 WL 4390381, at *14 (C.D. Cal. July 6, 2020) ("[O]ne of defendants' Service Agreements states that the company 'shall engage each of Client's applicable lenders to initiate and complete either a federal student loan consolidation through DOE, principal reduction, interest rate reduction, deferment, forbearance, and/or a reduced payment option on behalf of the Client.'"); *Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d at 1073, 1082 (alleging misrepresentations from the "Student Loan Payment Reduction Dept" or "program enrollment department" including "representations to consumers about their eligibility for [income-driven repayment] programs" administered through the DOE). No such allegations are made here.

## D.    The Government Cannot Seek Civil Penalties.

DOJ acknowledges that to obtain civil penalties, it must plead a defendant's "actual knowledge or knowledge fairly implied on the basis of objective circumstances that a rule violation is unfair or deceptive and is prohibited by such rule." ECF 55 at 33 (quoting 15 U.S.C. § 45(m)(1)(A)).[14] In determining whether

---

[14] DOJ notes that knowledge is not required for consumer redress. ECF 55 at 33. But DOJ is not seeking consumer redress; it is pursuing civil penalties. *Id.* at 50 (noting authority to "Bring This Civil Penalty Action"); Compl. ¶¶ 148-49.

knowledge may be fairly implied, courts consider whether a "reasonable person under the circumstances would have known of the existence of the [rule] and that the action charged violated" that rule. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) (citation omitted).

The Government argues that it has met this standard, but simply parrots the Complaint in its opposition. ECF 55 at 34 (citing Compl. ¶ 84). Specifically, DOJ reiterates its allegations that DiRoberto and Petersen "received or reviewed consumer complaints and correspondence that allege violations of federal telemarketing regulations," but this is precisely the type of formulaic pleading insufficient to establish knowledge. ECF 55 at 32, 34, 36. No facts are alleged about these complaints, nor are any of them attached to the Complaint. Moreover, DOJ fails to explain how consumer complaints (which all businesses receive in the course of doing business) demonstrate knowledge of the TSR's (unmentioned) coverage of the alleged activities. DOJ again refers to DiRoberto's involvement in the *Dish Network* case, but that case did not involve ringless voicemail or debt relief services and thus has no bearing on knowledge of TSR violations in this case. Allegations concerning Petersen's testimony at an FTC investigatory hearing— *which took place well after the conduct in question*—fare no better.

None of these allegations show that Atlas ***knew*** that ringless voicemail was a "telephone call" (particularly where the text and history of the TSR counsel otherwise) or ***knew*** they were engaged in "debt relief services." The lack of knowledge becomes even more apparent given allegations that Atlas hired "telemarketing compliance counsel." ECF 55 at 34 (citing Compl. ¶ 84). The fact that Atlas engaged telemarketing counsel draws a contrary conclusion—namely they did not "know" and therefore sought legal advice.[15] ***This demonstrates***

---

[15] Even if ringless voicemails are held to be telephone calls, this is still ***not*** a penalty case. The sheer amount of ink spilled on the issue, rulemaking by sister agencies, and Atlas' engagement of telemarketing counsel show precisely why

1   ***precisely why this is not a civil penalty case***.[16]

2        DOJ does not address the Motion's cases regarding lack of fair notice. ECF

3   45-1 at 28–29. Instead, DOJ refers to its prior enforcement actions in *Dish Network*

4   and *Cardiff*, but as explained above, these cases fall far short of providing any

5   meaningful notice. Neither case establishes precedential authority, amends the TSR

6   or provides clear guidance. In an attempt to bolster a noticeably sparse record, DOJ

7   cites an FTC blog post (incorrectly identified as a press release) from October 2018

8   and a June 2019 press release. Not surprisingly, both refer to the *Cardiff* matter—

9   the only TSR case that even mentions ringless voicemail. ECF 55 at 35.

10        But these posts only further demonstrate why the Government has no civil

11   penalty case. The October 2018 blog post—written by an FTC employee—focuses

12   on the deceptive advertising claims in *Cardiff*. Buried 47 lines down at the end the

13   post, the blogger mentions that the case "also" involves a "campaign of robocalls

14   and prerecorded 'ringless voicemails.'"[17] Likewise, the June 2019 press release,

15   which spanned eleven printed pages, focused on 94 actions by federal, state, and

16   local agencies against robocalls. The press release discussed seven FTC cases, and

17   only referred to ringless voicemail under "Other FTC Actions" in connection with a

18   stipulated consent order for one of the *Cardiff* defendants.[18]

19        Passing references to "ringless voicemail" in a blog post or press release are

20   _____

21   under "objective circumstances" civil penalties are wholly inappropriate here.

22   [16] Tellingly, DOJ does not dispute the nature of the legal advice rendered, which concluded that ringless voicemails were unregulated. *See* ECF 45-1 at 27 n.41

23   [17] Lesley Fair, <u>Three films not on our Top 10 list</u>, FTC Business Blog (Oct. 24,
24   2018), <u>https://www.ftc.gov/business-guidance/blog/2018/10/three-films-not-our-top-10-list</u> (last visited Oct. 9, 2023).

25   [18] "FTC, Law Enforcement Partners Announce New Crackdown on Illegal
26   Robocalls," FTC (June 25, 2019), (<u>https://www.ftc.gov/news-events/news/press-releases/2019/06/ftc-law-enforcement-partners-announce-new-crackdown-illegal-robocalls</u>) ("The [consent] order permanently bans Cadiz from all robocall
28   activities, including ringless voicemails.") (last visited Oct. 9, 2023).

hardly pronouncements of the FTC's interpretation under the TSR or an official agency position. A formal staff advisory opinion does even not have the force of law,[19] so *ad hoc* blogs and press releases carry even less weight. *See Doe v. Rensselaer Polytechnic Inst.*, 2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020) ("[T]he Court is not bound to follow the [Department of Education's Office of Civil Rights] [blog] post because it is not an authoritative statement[.]").

Likewise, party-specific, one-off consent decrees fail to provide clear guidance or adequate notice required to show knowledge warranting sanctions in the form of penalties. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 89 n.13 (2008) ("[A] consent order is ... only binding on the parties to the agreement"); *Beatrice Foods Co. v. FTC*, 540 F.2d 303, 312 (7th Cir. 1976) ("The entering of a consent decree, however, is not a decision on the merits and therefore does not adjudicate the legality of any action by a party thereto. Nor is a consent decree a controlling precedent for later Commission action."). *See also* 15 U.S.C. § 45(m)(1)(B) (FTC cannot pursue civil penalties based on consent orders). Even the Government admits as much. *See*, *e.g.*, *In re Fed. Emps.' Distrib. Co.*, 56 F.T.C. 550, 574 (1959) ("[A] consent order ... is not a precedent in other cases for any purpose.").

In sum, since DOJ fails to plead valid TSR claims, it is not entitled to penalties. Even if it has pled claims, it has not pled—and indeed cannot plead— actual knowledge or knowledge fairly implied for this Court to impose penalties. The Government falls far short of its statutory mandate. On these grounds, its request for civil penalties should be dismissed and/or struck from the Complaint.[20]

---

[19] 16 C.F.R. § 1.3(c) ("Advice rendered by the staff is without prejudice to the right of the Commission later to rescind the advice and, where appropriate, to commence an enforcement proceeding.").

[20] DOJ parrots the same allegations to support its claim for personal liability. ECF 55 at 32 ("DiRoberto and Petersen knew or had knowledge fairly implied on the basis of objective circumstances, that their activities were covered by the TSR and violated it.") (citing Compl. ¶ 84). This claim fails for the same reasons, thus

### E.     DOJ Is Not Entitled To Injunctive Relief.

Atlas' Motion argued, in part, that the injunctive relief claim should be dismissed because the conduct at issue ceased years ago. DOJ argues that this statement is "beyond the scope of the Complaint." ECF 55 at 38. Once again, DOJ's position is belied by its own allegations.[21] The Complaint alleges that the allegedly deceptive ringless voicemails were sent between September 2019 and November 2020. Compl. ¶ 65. Thus, by DOJ's own admission, the alleged conduct ceased nearly **three years ago**. DOJ's attempt to distinguish *FTC v. Shire ViroPharma, Inc.* on the basis that "the conduct at issue here did not cease five years before the case was filed" is a distinction without a difference. ECF 55 at 40. Whether the conduct ceased three or five years ago, the alleged conduct has long ceased. *See FTC v. Evans Prod. Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985) (injunctive relief denied where misrepresentations ceased over two years ago).

DOJ then argues that even if the conduct ceased, injunctive relief is still appropriate "when defendants cease violations only after notice of Government inquiry." ECF 55 at 38; *United States v. MyLife.com*, Inc., 499 F. Supp. 3d 757, 767 (C.D. Cal. 2020) (injunctive relief appropriate where defendants "may only have stopped as a result of the FTC's investigation"); *FTC v. Elec. Payment Sols. of Am. Inc.*, 2019 WL 4287298, at *10 (D. Ariz. Aug. 28, 2019) ("[T]he Court finds it reasonable to infer that [defendants'] cessation took place in response to the FTC's litigation ...[and] can hardly be classified as voluntary."). These cases, cited by the Government, are completely irrelevant because the Government has **not** alleged that Atlas ceased the allegedly unlawful conduct "after notice of Government inquiry."

---

Defendants DiRoberto and Petersen should be dismissed.

[21] DOJ is mistaken that Atlas bears the burden. DOJ confuses its pleading burden with the voluntary cessation exception to the mootness doctrine. ECF 55 at 39–40; *FTC v. Affordable Media*, 179 F.3d 1228, 1231 (9th Cir. 1999) (appeal of civil contempt order for failure to comply with preliminary injunction); *FTC v. Am. Fin. Benefits Ctr.*, 2018 WL 11354861 (preliminary injunction motion).

After all, Atlas did not receive a Civil Investigative Demand from the FTC until February 2021. *Cf.* ECF 55 at 38 n.12.

Lastly, DOJ cites *FTC v. Hoyal & Assocs., Inc*., 859 F. App'x 117 (9th Cir. 2021), but this unpublished case only proves that there is nothing to enjoin. Unlike *Hoyal*, this is not a case of "willingness to flout the law." *Id.* 120. Atlas could not have "flouted the law" when the FTC never pronounced the law. Defendants' resulting lack of knowledge only further demonstrates why injunctive relief is improper. *See Elec. Payment Sols. of Am. Inc.*, 2019 WL 4287298, at *10 (considering "degree of scienter involved"). *See supra* Sections II.D; II.D. n. 20.

DOJ has not pled a claim for injunctive relief under Section 13(b) of the FTC Act, therefore Count I should be dismissed.

### F.      This Enforcement Action Is Constitutionally Infirm.

#### 1.      This Action Violates Atlas' Due Process Rights.

The Government does not (and cannot) contest the fundamental notion that Defendants must have been given fair notice that their alleged misconduct was forbidden. ECF 45-1 at 33–34. For a penalty to be imposed, the law must "provide a person of ordinary intelligence fair notice of what is prohibited.'" *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted).

This action is devoid of Due Process because (1) the ordinary and plain meaning of "telephone call" does not encompass ringless voicemail; (2) the text of the Telemarketing Act and the TSR, along with their legislative and regulatory histories, supports this view; (3) neither the Act nor the TSR reference ringless voicemail; (4) the term "telephone call" under the TSR is unconstitutionally vague as applied; (5) at the time of the alleged conduct, no court had analyzed whether ringless voicemails were "telephone calls" under the TSR; and (6) the FTC failed to amend the TSR or provide any official pronouncements that it would interpret the TSR to regulate ringless voicemails, thereby failing to provide fair notice to Atlas

(and others) that it would seek civil penalties through enforcement proceedings.

The Government gives short shrift to Atlas' Due Process arguments because, in its view, this action "easily survives [] constitutional Due Process scrutiny." ECF 55 at 48 n.13. In a footnote, DOJ cites *The Broadcast Team, Inc. v. FTC*, 429 F. Supp. 2d 1292 (M.D. Fla. 2006) to argue that there is no due process problem. But that case interpreted the TSR's "abandoned calls" provision, which requires telemarketers to connect persons answering a call with a "sales representative" within two seconds. The dispute was whether "sales representative" had to be a live person (the FTC's view) or could be a recording. This provision has nothing to do with this case, and the court's analysis only undermines DOJ's attempt to expand a commonly understood term. The defendants had argued that "sales representative" should include a prerecorded message, but this argument readily failed because "common sense and ordinary usage" is that a "sales representative" is "an actual person, and not a recording." *Id.* at 1300-01. Here, the Court should similarly refuse to expand the plain and ordinary meaning of "telephone call."

DOJ's arguments require significant logical and linguistic leaps to reach the result it wants. *See* ECF 55 at 20–25. That is not "fair notice" but tea-leaf reading. *See United States v. AMC Ent., Inc.*, 549 F.3d 760, 769 (9th Cir. 2008) ("[T]ea-leaves does not alleviate the Government from its obligation to fashion coherent regulations that put citizens of 'ordinary intelligence' on notice as to what the law requires of them."). The fact that the Government has to work so hard to assemble and connect so many dots only shows that fair notice does not exist.[22]

---

[22] DOJ argues that the "define with specificity" requirement does not apply. *See* ECF 55 at 48 n.13. But the TSR is enforceable through a statute with that requirement. *See FTC v. Am. Vehicle Prot. Corp.*, 2022 WL 14638465, at *8 (S.D. Fla. Oct. 25, 2022) (rules promulgated under the Telemarketing Act are enforced under the FTC Act "as if the FTC Act were incorporated into and made part of [the Telemarketing Act.]" (citing 15 U.S.C. § 6105(b).).

## 2.    This Action Violates The Nondelegation Doctrine.

The Government concedes, as it must, that the Constitution vests federal legislative powers in Congress, and Congress may not delegate those powers to an agency without providing an "intelligible principle" to direct the agency's actions. ECF 55 at 55. Thus, if a statute fails to provide the requisite guidance, an agency's action is unconstitutional. Here, neither the FTC Act nor the Telemarketing Act provide any "intelligible principle" to guide the FTC's exercise of authority in prohibiting "unfair or deceptive acts or practices" or "deceptive" or "abusive telemarketing acts or practices." 15 U.S.C. §§ 45 (a)(1), 6102(a)(1). Statutory terms like "unfair" and "deceptive" are "as vague as they come." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 625-26 (7th Cir. 2020) (citation omitted). They open the door to unfettered discretion to declare conduct wrongful—i.e., legislating.

DOJ's response is to argue that the "intelligible principle" standard is "not demanding," such that even "very broad" delegations can withstand scrutiny. ECF 55 at 55 (citing *Gundy v. United States*, 139 S. Ct. 2116, 2119 (2019)). DOJ cites instances where an agency could set "fair and equitable prices" or "just and reasonable rates" or set air quality standards to protect public health. *Id.* But these examples are inapposite. In these instances, an agency has been given discretion to set a particular *number* (a price, rate or quality standard) after being given guidance about how to do so. An agency's discretion to set a "fair" price is more precise and qualitatively different than an agency's discretion to vaguely decide what sort of action or conduct is "unfair" for purposes of penalizing that conduct.

Next, the Government argues that Congress has provided "intelligible" guidance as to the meanings of unfair and abuse practices, by defining those terms statutorily. ECF 55 at 55. But these definitions hardly suffice. Defining "unfair" as anything that "causes or is likely to cause substantial injury" provides no meaningful guidance about what sort of conduct or actions qualify. *Id.* Nor does defining an "abusive" telemarketing practice as a "pattern of unsolicited telephone

calls" (made during certain times and intended to sell goods or services) any more clear. *Id.* That definition provides no guidance on how to define "telephone calls" or supply insight or guiderails about what counts as "abusive." Further, DOJ cites case law that defines "deceptive" practices as acts that mislead consumers. *Id.* But case precedent from court opinions cannot satisfy the requirement that Congress itself must provide an agency "intelligible" guidance.

Finally, the Government cites the venerable *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 532-33 (1935), to argue that the Supreme Court has already found that the FTC Act does not violate the nondelegation doctrine. Citing this case is ironic because the Court unanimously held that the National Industrial Recovery Act ("NIRA") violated the nondelegation doctrine. Thus, *Schechter Poultry* is the classic case supporting the nondelegation doctrine by holding that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." 295 U.S. at 529.

Although not at issue in *Schechter Poultry*, the Court contrasted the FTC Act with the obviously deficient NIRA. Although the Court impliedly held in dicta that Section 5 of the FTC Act was constitutionally acceptable as applied almost a century ago, that says little about today's FTC—especially given the 1975 amendment giving the FTC civil penalty authority, among other executive functions. Not only has the FTC's behavior changed, so has the Supreme Court's view. The Court is now much more skeptical when an agency "claim[s] to discover in a long-extant statute an unheralded power," and it is telling when an agency begins to regulate something it has not regulated before, such as ringless voicemail. *West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022).[23]

---

[23] Five Supreme Court Justices have expressed interest in reconsidering the nondelegation doctrine. *See Gundy*, 139 S. Ct. at 2131 (2019) (Alito, J., concurring) ( "If a majority of this Court were willing to reconsider the approach we have taken for the past 84 years, I would support that effort"); *id.* (Gorsuch, J., dissenting,

Congress cannot constitutionally delegate limitless authority to the FTC to determine what is unfair, deceptive or abusive. Guidance from Congress is required for the FTC to address ringless voicemail or any similar new technology.

### 3.    This Action Violates The Major Questions Doctrine.

Similarly, the major questions doctrine prevents Congress from implicitly delegating rulemaking authority over a specific area to an agency. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000). Sweeping grants of regulatory authority is not to be accomplished by "vague terms" or "subtle device[s]"—"something more than a merely plausible textual basis for the agency action is necessary. The agency instead must point to clear congressional authorization for the power it claims." *West Virginia*, 142 S. Ct. at 2609.

The Government tries to narrow application of this doctrine, pointing out that it should only apply to "extraordinary cases" of "economic and political significance." ECF 55 at 56. But here, the doctrine should apply precisely because mobile phones are ubiquitous and the vast majority of Americans have cell phones or voicemail systems subject to ringless voicemail. Moreover, ringless voicemail is becoming more prevalent and its use spans a wide variety of consumer-facing industries. Thus, regulation of ringless voicemail will widely impact both consumers and businesses alike.

To the extent that new technologies require legal oversight, especially telecommunication technologies, that should be done by Congress, not by agencies trying to fit new technologies into laws or regulations for which they were clearly not intended. Since the FTC Act and Telemarketing Act did not contemplate

---

joined by Roberts C.J. & Thomas, J.) (expressing desire to "revisit" the nondelegation doctrine); *Paul v. United States*, 140 S. Ct. 342, 342 (2019) (statement of Kavanaugh, J.) ("Justice Gorsuch's scholarly analysis of the Constitution's nondelegation doctrine in his *Gundy* dissent may warrant further consideration in future cases."); Amy Coney Barrett, <u>Suspension and Delegation</u>, 99 Cornell L. Rev. 251, 318 (2014).

1  ringless voicemail as a "telephone call," the FTC's regulation of this technology

2  would expand the scope of its authority without clear congressional authorization.

3  ### 4.   DOJ Lacks Constitutional Authority To Prosecute.

4  Atlas argues that DOJ lacks authority to bring suit because the President can

5  only remove FTC Commissioners for cause in violation of Article II. DOJ dodges

6  the argument. Initially, it argues that under the doctrine of "constitutional

7  avoidance," this court should just ignore the issue, because the FTC is not bringing

8  this case, even though the FTC is named in the Complaint and referred this matter

9  to the DOJ. ECF 55 at 50. This is too cute by half. As Atlas explained in its Motion,

10  the FTC cannot confer authority that it does not have, and if the DOJ steps into the

11  FTC's shoes (through a referral or otherwise), then it inherits any constitutional

12  infirmity. The statutory language makes this clear. *See* ECF 45-1 at 24. Otherwise,

13  the FTC could easily shirk any constitutional challenge simply by referring the

14  matter to the DOJ. That cannot be right. Also, DOJ cannot have it both ways. It

15  cannot rely on referral authority from the FTC but dispute that the referral is

16  relevant.[24] *See* ECF 55 at 38, 50–51.

17  DOJ argues that existing law already resolves the FTC's authority, citing

18  *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). But Atlas

19  acknowledged—and distinguished—this old precedent, explaining that changes to

20  the FTC in the 1970s and more recent Supreme Court precedent invalidates or casts

21  serious doubt on the continued viability of *Humphrey's Executor*. *See*, *e.g.*, *Seila*

22  *Law, LLC v. CFPB*, 140 S. Ct. 2183 (2020)).[25]

23  ## III.   CONCLUSION

24  The Complaint should be dismissed and the Government's overreach denied.

25

26  [24] DOJ attempts to refocus the discussion from referral to "delegation," but the
supporting authority, 28 C.F.R. § 0.45(j), relies "[u]pon appropriate certification by

27  the Federal Trade Commission." ECF 55 at 51.

28  [25] Indeed, the Supreme Court will soon decide *SEC v. Jarkesy*. *See supra* note 10.

1  Respectfully Submitted,

2   DATED: October 11, 2023          MANATT, PHELPS & PHILLIPS, LLP

3                                    */s/ Christine M. Reilly*
                                     Christine M. Reilly
4                                    Cody A. DeCamp
                                     2049 Century Park East, Suite 1700
5                                    Los Angeles, California 90067
                                     Telephone: 310.312.4000
6                                    CReilly@manatt.com
                                     CDeCamp@manatt.com
7
                                     Bezalel A. Stern (*pro hac vice*)
8                                    1050 Connecticut Ave. NW, Suite 600
                                     Washington, DC 20036
9                                    Telephone: 202.585.6500
                                     BStern@manatt.com
10
                                     GARDNER BREWER HUDSON
11                                   Richard P. Lawson (*pro hac vice* to be filed)
                                     400 N. Ashley Dr., Suite 1100
12                                   Tampa, FL 33602
                                     Telephone: 813.444.5562
13                                   rlawson@gardnerbrewer.com

14                                   *Counsel for the Atlas Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that a true and correct copy of the above

3   and foregoing document has been served on October 11, 2023 to all counsel of

4   record who are deemed to have consented to electronic service via the Court's

5   CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be

6   served by electronic mail, facsimile and/or overnight delivery.

7

8                                                    _/s/ Christine M. Reilly_____
                                                     Christine M. Reilly

9   MANATT, PHELPS & PHILLIPS, LLP

10  Christine M. Reilly
    Cody A. DeCamp
11  2049 Century Park East, Suite 1700
    Los Angeles, California 90067
12  Telephone: 310.312.4000
    CReilly@manatt.com
13  CDeCamp@manatt.com

14  Bezalel A. Stern (admitted *pro hac vice*)
    1050 Connecticut Ave. NW, Suite 600
15  Washington, DC 20036
    Telephone: 202.585.6500
16  BStern@manatt.com

17  GARDNER BREWER HUDSON

18  Richard P. Lawson (*pro hac vice* to be filed)
    400 N. Ashley Dr., Suite 1100
19  Tampa, FL 33602
    Telephone: 813.444.5562
20  rlawson@gardnerbrewer.com

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

32