UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STRATICS NETWORKS INC., et al.,<br><br>Defendants. | Case No.:  3:23-cv-00313-BAS-KSC<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN-PART PLAINTIFF'S MOTION FOR SANCTIONS [Dkt. Nos. 191, 222]** |

Before the Court is plaintiff's Motion for Rule 37(b) and 37(e) Sanctions ("Motion for Sanctions") [Dkt. Nos. 191, 222] filed against defendants Atlas Marketing Partners, Inc. ("Atlas Marketing"); Atlas Investment Ventures, LLC ("Atlas Investment"); Tek Ventures, LLC, d/b/a Provident Solutions ("Provident Solutions"); Eric Petersen ("Petersen"); and Todd DiRoberto ("DiRoberto") (collectively "defendants" or the "Atlas defendants"). For the reasons discussed below, the Court RECOMMENDS that plaintiff's Motion for Rule 37(b) and 37(e) Sanctions be GRANTED in-part with respect to all Atlas defendants. The Court's Order is as follows:

# I.   BACKGROUND

## a.  Procedural Background

On August 29, 2025, plaintiff filed the instant Motion for Sanctions asserting that defendants violated Fed. R. Civ. P. 37(b) ("Rule 37(b)"). Dkt. No. 191. On September 12,

1

2025, the Atlas defendants filed their Opposition to plaintiff's Motion for Sanctions. Dkt. No. 194. On September 19, 2025, plaintiff filed its Reply to defendants' Opposition. Dkt. No. 196.

On November 3, 2025, the Honorable Judge Bashant referred plaintiff's Motion for Sanctions to the Honorable Judge Crawford for Report & Recommendation. Dkt. No. 216. After reviewing the parties' briefs, the Honorable Magistrate Judge Crawford ordered the parties on November 20, 2025 to file supplemental briefing on whether defendants conduct also violated Fed. R. Civ. P. 37(e) ("Rule 37(e)"). Dkt. No. 217.

Plaintiff filed its Supplemental Memorandum in Support of Rule 37(e) Sanctions ("Supplemental Memorandum") on December 3, 2025. Dkt. No. 222. Defendants filed their responsive supplemental briefing on December 10, 2025. Dkt. No. 223.

### b.  The Atlas Defendants

Defendant Atlas Marketing, a Nevada lead generation company, was a customer of Stratics Network, Inc. ("Stratics"), a now dismissed co-defendant. Dkt. No. 71. Defendants Eric Petersen and Todd DiRoberto are co-owners of Atlas Marketing, Atlas Investment, and Provident Solutions. *Id.* at 2. Between September 2019 and November 2020, Atlas Marketing allegedly purchased access to Stratics's ringless voicemail service to offer credit card debt relief services to consumers. Dkt. No. 1 at 16. Atlas Marketing allegedly represented to consumers that it could "resolve [the consumer's] credit card debt in 24 months with affordable repayment options." *Id.* Through Stratics's service, Atlas Marketing was allegedly responsible for delivering more than 23 million pitches. *Id.* When consumers who received these messages called Atlas Marketing back, they were connected to live telemarketers who sold debt services. *Id.* at 17. The phone calls with live telemarketers were recorded and stored on Atlas's Amazon Web Services ("AWS") storage account, along with all other Customer Relationship Management ("CRM") data. The recordings of these phone calls are the disputed spoliated evidence at issue in the present motion.

/ / /

3:23-cv-00313-BAS-KSC

### c.  Factual Background and Chronology

#### i.    The Underlying Claims and Discovery Requests

The United States filed this lawsuit on behalf of the Federal Trade Commission ("FTC") on February 12, 2023, alleging "Atlas's business practices violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the [FTC's Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Part 310]. Specifically: Counts I and V allege that Atlas made misrepresentations to consumers regarding material aspects of its debt relief service, including on telephone calls with consumers." Dkt. No. 191-1 at 11.

First, the United States alleges Atlas Marketing, DiRoberto, and Petersen misrepresented a debt relief service, in violation of the TSR and Section 5 of the FTC Act, by stating to consumers they would be out of credit card debt within 24 months and that they did not apply consumers' monthly payments toward consumer debts ("Count I"; "Count V"). Dkt. No. 71 at 3. Second, plaintiff alleges Atlas Marketing, Petersen, and DiRoberto were responsible for initiating outbound telephone calls that delivered prerecorded sales messages to consumers in violation of the TSR ("Count III"). *Id.* Third, plaintiff alleges these defendants did not truthfully or promptly disclose the seller's identity in their outbound telephone calls in violation of the TSR ("Count IV"). *Id.* Finally, plaintiff alleges Atlas Marketing, Petersen, and DiRoberto requested or received a fee from consumers for a debt relief service prior to the renegotiation, settlement, or reduction of the terms of their debt in violation of the TSR ("Count VI"). *Id.*

Central to plaintiff's claims against the Atlas defendants are allegations that they made "deceptive representations" to consumers over the phone. Dkt. No. 191-1 at 5. The parties do not dispute that recordings of the live phone calls existed, that they were stored on defendants' AWS cloud storage platform, and that they were subsequently deleted from defendants' AWS cloud storage platform. The gravamen of the disputed factual allegations underlying plaintiff's Motion for Sanctions lies in *how* and *why* the audio recordings were deleted from the Atlas defendants' AWS cloud storage platform.

/ / /

3:23-cv-00313-BAS-KSC

Below is a chronology of the key events before and after the recordings were deleted, and the Atlas defendants' conduct after they learned when and how the recordings were deleted.

ii.   The FTC Investigation, the Commencement of This Litigation, and Atlas's First AWS Notification (December 2020 – November 2023)

The alleged illegal conduct underlying this litigation was first brought to light in December 2020, when the Atlas defendants were the subject of an FTC investigation regarding their business practices and alleged violations of "Section 5 of the FTC Act, 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. Part 310." Dkt. No. 191-1 at 9. The claims in the FTC investigation are similar to those here and were brought under the same federal statutes. Dkt. No. 1 at 28-29. During the investigation, on February 19, 2021, the FTC issued a Civil Investigative Demand ("CID") ordering the Atlas defendants to produce, among other things, "[a]udio files containing all prerecorded messages included in, delivered with or through, or played as part of any Outbound Telephone Calls You dialed or caused to be dialed." Dkt. No. 191-1 at 9. The FTC investigation is highly relevant as to when the Atlas defendants' duty to preserve documents arose and when they became aware the call recordings were relevant to such claims.

The investigation resulted in the present litigation, which was filed in February 2023. Dkt. No. 1. Later that year, on November 2, 2023, the Atlas defendants received their first notice that their AWS account payments were overdue. Dkt. No. 194 at 5. After determining that the AWS account was storing the Atlas defendants' "email data, ***call recordings for debt***, and all the Swift backups and leads etc.," Petersen asked if it was possible to preserve the data on a drive or another platform that did not require payment. Dkt. No. 194-1 at 9 (emphasis added). On November 15, 2023, Atlas's Director of Information Technology ("IT"), Ronald Johnson ("Johnson"), responded he would look into it. *Id.* at 6.

/ / /

/ / /

3:23-cv-00313-BAS-KSC

     iii.     <u>Discovery Begins and the Atlas Defendants Continue to Receive Notifications from AWS (April 2024 – August 2024)</u>

Fast forward five months, the parties held two Federal Rule of Civil Procedure 26(f) conferences ("Rule 26(f) Conference") on April 15, 2024 and May 15, 2024 as required by this Court's Notice and Order Setting Early Neutral Evaluation Conference. Dkt. No. 222 at 5. In the month between the two conferences, the Atlas defendants[1] received three more alerts from AWS stating their account was overdue and may be suspended for failure to make payments.[2] Dkt. No. 194-1 at 14, 18, 21. Petersen again followed up with Johnson, who responded informing him that "the download was still running." Dkt. No. 194-1 at 20. On May 11, 2024, Johnson informed Petersen that the download was not working because the account was locked, and payment was needed to reopen the account to continue the download. Dkt. No. 194-1 at 20. Notably, the Atlas defendants did not disclose the existence of the AWS server, the contents of the AWS server, or the issues they were experiencing with regards to the server at either Rule 26(f) conference. Dkt. No. 222 at 6.

On May 27, 2024, AWS sent another email to the Atlas defendants informing them that the account balance was overdue. Dkt. No. 194 at 7. Petersen again reached out to Johnson requesting an update on the progress of the download, to which Johnson replied that it was in progress but going slowly. *Id.*

On July 10, 2024, AWS again emailed the Atlas defendants regarding the overdue account balance. Dkt. No. 194 at 7. Petersen informed Johnson that Atlas paid $1,400 due to the delay in the download and asked when it would be complete. *Id.* The Atlas defendants made additional failed attempts to download the files from the AWS cloud storage. *Id.*

/ / /

---

[1] The AWS emails were sent to "admin@atlasinvestmentventures.com" and carbon copied to Pamela Adams, an Atlas employee.

[2] The email notifications were sent on April 20, 2024; April 25, 2024; and May 8, 2024. Dkt. No. 194-1 at 14, 18, 21.

On July 11, 2024, the parties filed their Rule 26(f) Joint Discovery Plan ("Joint Discovery Plan"). Dkt. No. 99. In the Joint Discovery Plan, "[c]ounsel for the Parties affirm[ed] that they [ ] reviewed the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information [ ] and [ ] met and conferred fully regarding the preservation and discovery of ESI." Dkt. No. 99 at 7. The Rule 26(f) checklist requires counsel to, *inter alia*, "discuss any issues about preserving discoverable information …." Fed. R. Civ. P. 26(f)(2). Counsel for the Atlas defendants failed to inform the Court of their preservation issues associated with the AWS account as required in the Joint Discovery Plan. Fed. R. Civ. P. 26(f)(3)(C) ("A discovery plan must state the parties' views and proposals on … any issues about disclosure, discovery, or preservation of electronically stored information ….").

Between July 12, 2024 and July 23, 2024, the Atlas defendants made several additional attempts to download the AWS files–all attempts failed. Dkt. No. 194 at 7. Neither the records available to the Court nor the representations made by the Atlas defendants in their briefing suggest that defendants made any attempts to preserve the files on the AWS server from July 2024 to March 2025. *See, e.g., id.*

On August 2, 2024, the Atlas defendants received their seventh email from AWS advising them of the overdue account balance and that the account may be suspended or **terminated**. Dkt. No. 194-1 at 33.

                iv.    <u>Plaintiff Serves Formal Written Discovery; Discovery Disputes Arise; and the Atlas Defendants Learn, Delay, then Divulge That Their AWS Account and Its Content Were Deleted (September 2024 – August 2025)</u>

On September 20, 2024, plaintiff served its First Requests for Production ("RFP") on the Atlas defendants seeking "[a]ll documents relating to any agreements or communications between You and any other person that relate to telemarketing, telephone calls, voicemail, or creating, sending, or receiving any audio recording or transmission," as well as "[a]ll documents, including communications with any person, relating to the

3:23-cv-00313-BAS-KSC

advertising, marketing, promotion, offering for sale, sale, or provision of Debt Relief Services." Dkt. No. 191-1 at 11 (quotations omitted). The RFP's definition of "document" covered recordings of calls between the Atlas defendants and consumers. *Id.*

The Atlas defendants made their first production on January 6, 2025, (the "January Production") but failed to produce any call recordings. *Id.* at 12. Unbeknownst to the Atlas defendants, on January 22, 2025, their AWS account was terminated, and all documents were permanently erased for failure to make payments on the account. Dkt. No. 194-2 at 19.  In the following weeks, the parties discussed, *inter alia*, the sufficiency of the Atlas defendants' January Production and ultimately decided to bring their dispute to the Court's attention.  *Id.* at 12. As it relates specifically to electronically stored information ("ESI"), the Atlas defendants informed plaintiff that "it appear[ed] that the ESIs [sic] storage was cloud based and was discontinued years ago." Dkt. No. 167-2 at 9.

On March 5, 2025, the parties filed a Joint Motion relating to, *inter alia*, the Atlas defendants' failure to produce the live call recordings. Dkt. No. 139 at 1. That same day, Peterson sent an email stating that he believed the Atlas defendants' prior counsel was in possession of downloads from the AWS server. Dkt. No. 194-1 at 37. Two days later, on March 7, 2025, the Court ordered the Atlas defendants to produce all relevant documents in their possession no later than March 20, 2025 (the "March 2025 Order"). Dkt. No. 139 at 2.

In a March 28, 2025, meet and confer, plaintiff alleges (and the Atlas defendants do not rebut) that the Atlas defendants' attorney stated: (1) "no audio recordings existed"; (2) the AWS data was deleted after the FTC investigation but before this litigation commenced; and, (3) the AWS data was circulated among key custodians via email. Dkt. No. 167-2 at 12. As a result, the parties brought this discovery dispute back before the Court. Dkt. No. 167 at 1. In their May 21, 2025, statement to the Court, the Atlas defendants represented that Petersen testified in his deposition that access to the cloud storage was lost in 2022. Dkt. No. 167-2 at 3.

3:23-cv-00313-BAS-KSC

On June 16, 2025, following a Discovery Conference, the Court ordered the Atlas defendants to produce all relevant non-privileged documents in their possession on or before July 7, 2025 (the "June 2025 Order"). Dkt. No. 173. Following the Court's instruction, on June 20, 2025, the Atlas defendants issued a subpoena to AWS regarding their account. Dkt. No. 194-2 at 24. After exchanging multiple emails, AWS's counsel informed the Atlas defendants that "[a]s anticipated, all account content has been deleted." Dkt. No. 194-2 at 20. Counsel for the Atlas defendants responded asking if AWS was able to determine when the data was deleted. Dkt. No. 194-2 at 20. At 2:27 p.m. on August 1, 2025, counsel for AWS responded that the account was terminated on January 22, 2025. Dkt. No. 194-2 at 19. At 2:33 p.m. the Atlas defendants' counsel responded "2025???" *Id.* Less than two hours later, at 4:08 p.m., the Atlas defendants' counsel responded to a separate email from plaintiff relating to the call recordings and inaccurately stated: "I also don't have a final answer from AWS. There was supposed to be a call this week, but that did not happen. I have followed up with AWS' counsel and am awaiting a response." Dkt. No. 194-2 at 8.

On August 8, 2025, the Atlas defendants finally informed plaintiff that "AWS' counsel confirmed the account was deleted. Thus, there will be no production by our office." Dkt. No. 194-2 at 4. As of August 25, 2025 (the date plaintiff filed the instant Motion), plaintiff was still unaware of the date on which the documents were deleted. *See generally*, Dkt. No. 191.

Based on the Atlas defendants' statements in their Opposition and exhibits attached thereto [*see* Dkt. No. 194], the Atlas defendants received at least **seven emails** over the course of **nine months**—between November 2023 and August 2024—informing them that their AWS account balance was overdue. In the latter emails, the Atlas defendants were explicitly informed that their account may be suspended or terminated and that if that occurred, they would not be able manage existing resources. *Id.* Furthermore, from July 2024 to March 2025, the Atlas defendants halted their efforts to download the information from their AWS storage account. *See, e.g.,* Dkt. No. 194 at 4.

3:23-cv-00313-BAS-KSC

In sum, the Atlas defendants were aware that the call recordings stored on their AWS storage account were in jeopardy as early as November 2023. Despite at least seven notifications thereafter over the course of nearly one year informing them that their account would be suspended or terminated for non-payment, defendants failed to preserve the call recordings. As a result of their failures, the call recordings were deleted nearly two years after the instant lawsuit was filed, and approximately four years after the information was requested in the underlying FTC investigation. Even after learning of the deletion of this information, the Atlas defendants waited a full week to inform plaintiff that the documents were deleted and would not be produced.

## II.   **LEGAL STANDARD**

Plaintiff seeks adverse inference sanctions against all Atlas defendants under: (1) Federal Rule of Civil Procedure 37(b); and, (2) Federal Rule of Civil Procedure 37(e). "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Rule 37(b) allows for the imposition of sanctions for a party's failure to comply with discovery orders, and Rule 37(e) provides for sanctions for the spoliation of ESI that the party was under a duty to preserve.

The duty to preserve evidence attaches when litigation is "pending or reasonably foreseeable." *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). In the Ninth Circuit, courts generally agree that this duty arises "[a]s soon as a potential claim is identified." *Apple, Inc. v. Samsung Elecs Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citations omitted). This duty extends to evidence that parties knew or should have known was relevant or may be relevant to future litigation. *Kitsap*, 314 F.3d at 1001; *Sunrider Corp.*, 2010 WL 4590766, at *29; *see also Wm. T. Thompson v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) ("Sanctions may be imposed

9

against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.").

Under Rule 37, "[s]anctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) (citing *U.S. v. Town of Colorado City, Ariz.,* 2014 WL 3724232, *7 (D.Ariz. Jul. 28, 2014)) (quotations omitted). "While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3) restores the innocent party to their rightful litigation position." *Id.* (citing *id.*) (quotations omitted). "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Id.* (citing *id.*) (quotations omitted).

District courts in this Circuit apply the preponderance of evidence standard when considering sanctions. *See Weride Corp. v. Kun Huang*, Case No. 18-cv-07233-EJD, 2020 WL 1967209 at *9 (N.D. Cal. Apr. 16, 2020); *Crossfit*, 2019 WL 6527951, at *10; *Colonies Partners, L.P. v. Cnty of San Bernardino*, Case No. 18-cv-00420-JGB (SHK), 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020); *Ramos v. Swatzell*, Case No. ED CV 12-1089-BRO (SPx), 2017 WL 2841695, at *5 (C.D. Cal. June 30, 2017).

## III.   DISCUSSION

### a.   Threshold Issue – Meet and Confer Requirement Pursuant to Local Rule 26.1.a

In their Opposition, the Atlas defendants argue that the Court cannot consider plaintiff's Motion because the parties did not comply with the meet and confer requirements pursuant to Civil Local Rule 26.1.a. While the Court already held that the parties did adequately meet and confer, the Court nonetheless ordered the parties to hold

an additional meet and confer prior to the filing of the parties' supplemental brief. Dkt. No. 217. On December 3, 2025, plaintiff filed a Certificate of Compliance. Dkt. No. 221. Thus, the Court rejects defendants' argument and will consider plaintiff's Motion.

### b. Sanctions Under Fed. R. Civ. Proc. 37(e)

Rule 37(e) applies when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

There is no dispute that the Atlas defendants had a duty to preserve the AWS data. *See* Dkt. No. 194 at 11 ("Defendants concede they were under a duty to preserve the ESI."). Further, there is also no genuine dispute that the AWS data cannot be restored or replaced through additional discovery. *See id.* ("The data from the AWS server is no longer available."). *Id.* While there is written evidence in the record detailing what misrepresentations the Atlas defendants trained their employees to say on phone calls and evidence of these misrepresentations being made to consumers via pre-recorded messages and written advertisements, plaintiff is deprived of arguably the most critical piece of evidence: the verbal statements the Atlas defendants made to consumers on live phone calls. This evidence cannot be replaced and as discussed in detail below, the Atlas defendants failed to take reasonable steps to preserve the AWS data.

#### i. Prejudice to Plaintiff

If the district court finds the spoliation prejudicial, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "Prejudice under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case." *3D Sys., Inc. v. Wynne*, No. 21-CV-1141-AGS-DDL, 2024 WL 3896454 at *6 (S.D. Cal. Aug. 21, 2024) (quotations and citations omitted). Prejudice can also be found where the spoliating party's conduct threatens to "interfere with the rightful decision of the case." *Id.* (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)) (quotations omitted).

As discussed above, the spoliation of the AWS data—the "call recordings for debt"—prejudices plaintiff's ability to obtain evidence it needs for its case, thus threatening

to interfere with the rightful decision of this case. Plaintiff's claims against the Atlas defendants are predicated on alleged misrepresentations the Atlas defendants made to consumers. The Atlas defendants' spoliation of the only recordings of the live calls they had with consumers prevents plaintiff from accessing critical evidence to support its claims. Circumstantial evidence of what may have been said on these phone calls does not rectify plaintiff's inability to access recordings of the actual calls.

The Atlas defendants bear the burden of showing that plaintiff was not prejudiced by their conduct. *Youngevity Int'l v. Smith*, No. 16-cv-704, 2020 WL 7048687, at *3 (S.D. Cal. July 28, 2020) ("Although [Rule] 37(e) does not place the burden of proving or disproving prejudice on either party, if spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial."). Notably, the Atlas defendants failed to make any meaningful argument that the spoliation of the AWS data was not prejudicial. Therefore, corrective measures are appropriate, but they must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

ii.  The Atlas Defendants' Intent to Deprive

Rule 37(e)(2) states that before the court may impose one of the listed sanctions, it must first find that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "On its face, that is a demanding specific-intent standard, and purposely so. The advisory committee notes confirm that the amended rule was specifically intended to abrogate 'cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence.'" *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024) (citing Fed. R. Civ. P. 37(e)(2) Advisory Committee's note to 2015 amendment).

Rule 37(e)(2)'s intent requirement "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (citations omitted). "Because intent can rarely be shown directly, a district court may consider

3:23-cv-00313-BAS-KSC

circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Id.* "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.*

Here, the AWS data was destroyed in January 2025, almost two years after the underlying litigation commenced. While the Atlas defendants were not aware of the actual date of deletion until August 2025, they had ample notice that AWS *would* delete the data if the account service fees were not paid. Further, the evidence was destroyed months after the Rule 26(f) conferences (where Atlas counsel stated that there were no ESI issues), and the issuance of plaintiff's RFPs.

The Atlas defendants consciously abandoned their duty to preserve the data when they halted their efforts to preserve the data and failed to pay for their account for roughly two years. *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), *aff'd*, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022) ("[A] party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2).") (emphasis in original) (quotations and citations omitted). Here, the emails exchanged between Petersen and Johnson demonstrate that Petersen knew the AWS files should have been retained. Despite this knowledge, Petersen and the other Atlas defendants abandoned their efforts to preserve the AWS files.

The Atlas defendants argue that their efforts to preserve the AWS data show a lack of intent to delete the data and try to boil the entire situation down to "technical difficulties and miscommunication …." Dkt. No. 223 at 3. However, "[c]ourts long have recognized that when the deletion of ESI is set to occur, parties have an affirmative duty to step in and prevent its loss." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 346 (D. Ariz. 2022). The Atlas defendants stepped in, made efforts to preserve the data, and then without justifiable explanation, abandoned their efforts despite being put on notice that this precise information was requested by plaintiff in discovery. *See Ungar*, 329 F.R.D. at 13.

///

The Atlas defendants also argue that their failed attempts to download the files are emblematic of the "technical and financial realities faced by the company during this period." Dkt. No. 223 at 6. These statements and the Atlas defendants' conduct, however, are contradictory. They now claim they faced financial and technical difficulties with preserving the AWS data, but at the same time represented to plaintiff's counsel and the Court that they faced no issues with the preservation of ESI. *See, e.g.,* Dkt. No. 99. Both statements cannot be true. The Atlas defendants received three notifications from AWS regarding their overdue payments in the weeks between the parties' first and second Rule 26(f) conferences. The purpose of making such disclosures is to provide the parties and the Court with the opportunity to try to solve preservation issues. Had the Atlas defendants done so, the Court could have addressed this and considered cost shifting under Rule 26(c). The failure to disclose this ESI issue precluded the Court from doing so.  Defendants' misrepresentations and failure to disclose the ESI issues they faced constitute additional facts which support an inference of intent to deprive the plaintiff from the use of this information in support of their claims. *See Est. of Schuck v. Cnty. of San Diego*, No. 3:23-CV-00785-DMS-AHG, 2025 WL 2180987 at *9 (S.D. Cal. Aug. 1, 2025), *report and recommendation adopted* (Oct. 9, 2025), *report and recommendation adopted*, No. 23-CV-0785-DMS-AHG, 2025 WL 3033407 (S.D. Cal. Oct. 9, 2025) ("Thus, the County's failure to acknowledge the video deletion [at the Rule 26(f) Conference] can plausibly lead to an inference of an intent to deprive.").

The Atlas defendants also allege that they halted their efforts to preserve the AWS data and did not disclose the issues they faced because they "mistaken[ly] belie[ved] that the data was already preserved elsewhere." Dkt. No. 223 at 6. Yet again, the Atlas defendants' statements and their conduct contradict each other. The Atlas defendants allege that they made numerous "good faith" efforts to download the AWS data and that it cost them at least $1,400 to do so. Dkt. No. 194-1 at 30. Almost a year after halting their preservation efforts, however, the Atlas defendants represented that they believed the AWS data was preserved by their prior counsel. Dkt. No. 194-1 at 37. They offer no explanation

3:23-cv-00313-BAS-KSC

for why they would allegedly expend the time and the resources to preserve this data if they also believed the data was already preserved by prior counsel. Further, this position is not supported by the contemporaneous evidence they provide which makes no mention of this purported belief. *See, e.g.,* Dkt. No. 194-1 at 13-14, 17-18, 20-21 (emails, *inter alia,* between Petersen and Johnson in which neither mention that they believed prior counsel downloaded the AWS files).

The Atlas defendants' only evidence of this alleged "belief" is an email sent by Petersen in 2025, years after they received the original notification from AWS. Dkt. No. 194-1 at 37. The Atlas defendants failed to establish any other support evidencing attempts to confirm that the data was preserved by former counsel. *See Ahamed v. 563 Manhattan Inc.*, No. 19 CV 6388 (EK) (CLP), 2024 WL 3061962 at *4 (E.D.N.Y. June 17, 2024) (finding defendant's failure to confirm his belief that spoliated ESI was preserved through other means "would be tantamount to a failure to 'take any reasonable steps to preserve' relevant ESI.") (citing *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (finding defendant intentionally spoliated evidence for the purpose of depriving plaintiff by knowingly allowing ESI data to be overwritten, and failing to make any effort over the course of years to confirm the data was properly preserved elsewhere).

Finally, the Atlas defendants' selective preservation of evidence also weighs in favor of a finding of intent to destroy the AWS data for the purpose of preventing plaintiff's access to the information. The Atlas defendants produced evidence of the pre-recorded calls they allegedly sent to consumers and the call scripts that were allegedly relied on by Atlas employees during live calls with consumers. They failed, however, to preserve possibly the most damning evidence: the recordings of the live phone calls wherein Atlas allegedly made these representations. This selective preservation of information that would be less damaging to the Atlas defendants also weighs in favor of a finding of intent to deprive plaintiff from obtaining information that would be potentially favorable to them at trial to prove their case.

3:23-cv-00313-BAS-KSC

In sum, the Atlas defendants offer numerous unpersuasive and contradictory explanations for why they halted their efforts to preserve the AWS data, despite knowing that the information was subject to preservation and being on notice that the data would be deleted. Accordingly, the Court finds by a preponderance of the evidence that the Atlas defendants had the intent to deprive plaintiff from obtaining the AWS data.[3]

### iii. Appropriate Remedies

Because the Court finds by a preponderance of the evidence that the Atlas defendants acted with intent to deprive plaintiff from accessing the AWS data, the Court finds adverse inference sanctions are appropriate. Under Rule 37(e)(2), the court may "instruct the jury that it may or must presume the information was unfavorable to the party …." The Court recommends that the Honorable Cynthia Bashant find: (1) the Atlas defendants had a duty to preserve the AWS data consisting of the recordings of live phone calls with consumers; (2) the Atlas defendants intentionally spoliated the AWS data to deprive the plaintiff from obtaining and using this information; (3) that the District Court should give an adverse inference instruction at trial that the jury must presume that the AWS data, specifically the recordings of live debt relief calls, was unfavorable to the Atlas defendants, with the specific language of the instruction to be decided by the District Court at the pretrial conference; and, (4) in the course of adjudicating any pre-trial, trial, and post-trial motions, the District Court should presume that the AWS data, specifically the recordings of live

---

[3] The Atlas defendants' data retention policy, or lack thereof, is also problematic. In testimony on June 11, 2021 during the FTC investigation, Kenan Azzeh, former defendant in this litigation, was questioned on Atlas's data retention policy, to which he responded, "[w]e just kept everything. We had a huge database. Our systems – our CRM systems and everything are built on a huge database, and we just continued to maintain." Dkt. No. 191-3 at 231. The Atlas defendants do not dispute that this was their practice. Thus, by failing to maintain their database, defendants violated their own data retention policy, further demonstrating an intent to spoliate the AWS data. *See Est. of Schuck*, 2025 WL 2180987 at *9; *Musse v. King County*, No. C18-1736-JCC, 2021 WL 4709875, at *4 (W.D. Wash. Oct. 8, 2021) (finding intent when the county "overwrote footage of the assault not 'according to' its record-retention policy, but in spite of it ….").

debt relief calls, contained information unfavorable to the Atlas defendants and favorable to plaintiff.

### c. Sanctions Available Under Fed. R. Civ. Proc. 37(b)

Rule 37(b) provides that "[i]f a party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A); *see also, Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir. 1990) (stating sanctions are appropriate where a party is guilty of failing to make court-ordered productions). "A judicial finding that a discovery order has been violated is entitled to considerable weight because the judge presiding over the case is best equipped to assess the circumstances of non-compliance." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 493 (C.D. Cal. 2022) (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (quotations omitted).

Here, defendants violated the March Order and the August Order by intentionally failing to preserve the call recordings. The Atlas defendants argue that they could not have violated the March and August Orders because, as a result of their own conduct, the data was deleted prior to the entry of the Court's orders. This proposition and its implications are inherently flawed, deeply concerning, and completely ignores the fact that the Atlas defendants had a duty to preserve which arose well before the March or August Orders were issued. In essence, the Atlas defendants ask this Court to set a precedent that a party who intentionally spoliates evidence cannot be subject to sanctions under Rule 37(b) if the party spoliates the evidence *prior* to the issuance of any discovery orders. The Court will make no such precedent. In fact, courts in this circuit routinely impose sanctions under Rule 37(b) when evidence was spoliated prior to an official order mandating production. *See, e.g., Ramos v. Swatzell*, No. EDCV121089BROSPX, 2017 WL 2857523 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. EDCV121089BROSPX, 2017 WL 2841695 (C.D. Cal. June 30, 2017) (imposing adverse inference sanctions even though the spoliated evidence was technically deleted prior to the issuance of the court order compelling production).

3:23-cv-00313-BAS-KSC

Under Rule 37(b)(2)(A), a court can impose a variety of discovery sanctions on a disobedient party, including:

(i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)    dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Here, plaintiff seeks sanctions under Rule 37(b)(2)(A)(i). "An adverse inference instruction can take many forms, [ ] ranging in degrees of harshness." *Ramos*, 2017 WL 2857523 at *14 (citing *Apple Inc. v. Samsung Elecs. Co.*, 881 F.Supp.2d 1132, 1050 (N.D. Cal. 2012)) (quotations omitted). The severity of the sanction should be commensurate with the egregiousness of the conduct. *Id.* There are three tiers of instructions considered: "(1) when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true; (2) when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption; and (3) the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id.* (quotations omitted).

As discussed above, the Court recommends a finding that the Atlas defendants acted willfully in spoliating the AWS data. The Court recommends a finding that the aforementioned sanctions are equally appropriate under 37(b)(2)(A)(i).

3:23-cv-00313-BAS-KSC

### d.  Payment of Attorney's Fees Under Rule 37

Rule 37(b)(2)(C) states "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added). Accordingly, the undersigned also recommends that plaintiff make an application for its reasonable attorney's fees and costs related to the spoliation if the aforementioned recommendations are adopted.

## IV.    CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

1. approving and adopting this Report and Recommendation;

2. finding the Atlas defendants had a duty to preserve the AWS data consisting of the recordings of live phone calls with consumers and intentionally spoliated this evidence to deprive the plaintiff from obtaining and using this information;

3. directing that plaintiff's Motion for Sanctions [Dkt. Nos. 191, 222] be **GRANTED in-part**. The District Court should give an adverse inference instruction at trial that the jury must presume that the AWS data, specifically the recordings of live debt relief calls, was unfavorable to the Atlas defendants, with the specific language of the instruction to be decided by the District Court at the pretrial conference;[4]

///

///

---

[4]    This holding grants in-part plaintiff's request because the Court does recommend that adverse inference sanctions are warranted in the form of a mandatory presumption; however, the Court does not recommend a finding that defendants should be barred from rebutting this mandatory presumption.

3:23-cv-00313-BAS-KSC

4. In the course of adjudicating any pre-trial, trial, and post-trial motions, the District Court should presume that the AWS data, specifically the recordings of debt relief calls, contained information unfavorable to the Atlas defendants; and,

5. Plaintiff may make an application for reasonable attorney's fees and costs related to the spoliation.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **February 27, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **March 6, 2026**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**

Dated: February 13, 2026

Hon. Karen S. Crawford
United States Magistrate Judge

3:23-cv-00313-BAS-KSC