

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 23-cv-00313-BAS-GC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES** |
| STRATICS NETWORKS, INC., et al., | |
| Defendants. | **[ECF No. 267]** |

Before the Court is an Application for Attorney's Fees filed by Plaintiff United States of America ("Plaintiff").  (ECF No. 267.)  Plaintiff requests an award of attorney's fees in the amount of $16,871.73, pursuant to the Honorable Cynthia Bashant's Order granting in part Plaintiff's Motion for Sanctions against Atlas Marketing Partners, Inc. ("Atlas Marketing"), Atlas Investment Ventures, LLC ("Atlas Investment"), Tek Ventures d/b/a Provident Solutions ("Provident Solutions"), Eric Petersen ("Petersen"), and Todd DiRoberto ("DiRoberto") (collectively, the "Atlas defendants").  (ECF No. 261.)  The Atlas defendants did not file an opposition.  However, former counsel for the Atlas defendants, Gordon Rees Scully Mansukhani, LLP ("GRSM"),[1] did file an opposition.

---

[1]    Attorney Sean P. Flynn was the only counsel of record from GRSM for the Atlas defendants.  (ECF No. 90.)

(ECF No. 271.) Plaintiff filed a reply. (ECF No. 272.) For the reasons set forth below, Plaintiff's Application for Attorney's Fees is **GRANTED**.

## I.       RELEVANT BACKGROUND

Defendant Atlas Marketing, a Nevada lead generation company, was a customer of Stratics Network, Inc. ("Stratics"), a now dismissed co-defendant. (ECF No. 71.) Defendants Petersen and DiRoberto are co-owners of Atlas Marketing, Atlas Investment, and Provident Solutions. (*Id.* at 2.) Between September 2019 and November 2020, Atlas Marketing allegedly purchased access to Stratics's ringless voicemail service to offer credit card debt relief services to consumers. (ECF No. 1 ¶ 65.) Atlas Marketing allegedly represented to consumers that it could "resolve [the consumer's] credit card debt in 24 months with affordable repayment options." (*Id.* ¶ 66.) Through Stratics's service, Atlas Marketing was allegedly responsible for delivering more than 23 million pitches. (*Id.* ¶ 67.) When consumers who received these messages called Atlas Marketing back, they were connected to live telemarketers who sold debt services. (*Id.* ¶ 71.) The phone calls with live telemarketers were recorded and stored on Atlas's Amazon Web Services ("AWS") storage account, along with all other Customer Relationship Management ("CRM") data. (ECF No. 191-1 at 13.)

Plaintiff filed this lawsuit on behalf of the Federal Trade Commission ("FTC") on February 16, 2023, alleging "Atlas's business practices violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the [FTC's Telemarketing Sales Rule ('TSR'), as amended, 16 C.F.R. Part 310]. Specifically: Counts I and V allege that Atlas made misrepresentations to consumers regarding material aspects of its debt relief service, including on telephone calls with consumers." (ECF No. 191-1 at 11 (citing ECF No. 1 ¶¶ 127–30, 140–42).)

On August 29, 2025, Plaintiff filed a motion seeking sanctions against the Atlas defendants for spoilation of evidence, namely the call recordings stored on the AWS server. (ECF No. 191.) Judge Bashant referred the motion to the Honorable Karen S. Crawford. (ECF No. 216.) On February 13, 2026, Judge Crawford issued a Report and Recommendation ("R&R"), finding that the Atlas defendants violated Federal Rule of

Civil Procedure 37(b)(2)(A) and (e) by violating the Court's discovery orders and spoliating evidence.  (ECF No. 256.)

In the R&R, Judge Crawford recommended an order:

1.    approving and adopting [the R&R];

2.    finding the Atlas defendants had a duty to preserve the AWS data consisting of the recordings of live phone calls with consumers and they intentionally spoliated this evidence to deprive the plaintiff from obtaining and using this information;

3.    directing that plaintiff's Motion for Sanctions [] be **GRANTED in-part**.  Judge Bashant should give an adverse inference instruction at trial that the jury must presume that the AWS data, specifically the recordings of live debt relief calls, was unfavorable to the Atlas defendants, with the specific language of the instruction to be decided by Judge Bashant at the pretrial conference;

4.    In the course of adjudicating any pre-trial, trial, and post-trial motions, Judge Bashant should presume that the AWS data, specifically the recordings of debt relief calls, contained information unfavorable to the Atlas defendants; and

5.    Plaintiff may make an application for reasonable attorney fees and costs related to the spoliation.

(*Id.* at 19–20.)

On March 3, 2026, Judge Bashant adopted Judge Crawford's recommendation that adverse inference sanctions against the Atlas defendants are appropriate under Rule 37(b) and (e)(2).  (ECF No. 261.)  Judge Bashant also determined that Plaintiff may make an application for reasonable attorney fees and costs related to spoliation.  (*Id.* at 5.)  That same day, counsel for the Atlas defendants, GRSM, filed an Amended Motion to Withdraw as Counsel. (ECF No. 259.)  On March 13, 2026, Judge Bashant granted GRSM's request to withdraw as counsel and stayed the case until March 27, 2026, to allow the Atlas defendants to retain successor counsel.  (ECF No. 265.)

The Atlas defendants did not retain successor counsel by March 27, 2026. Therefore, on May 1, 2026, Judge Bashant entered default against the Atlas corporate

23-cv-00313-BAS-GC

defendants without prejudice and struck their pending motions for summary judgment without prejudice. (ECF No. 274.) Defendants Petersen and DiRoberto are still proceeding in this litigation pro se.

Plaintiff filed an Application for Attorney's Fees related to the Atlas defendants' spoliation on March 30, 2026. (ECF No. 267.) On April 8, 2026, the Court updated the docket for Petersen and DiRoberto to reflect their addresses listed in GRSM's Amended Motion to Withdraw. (*See* ECF No. 259.) Judge Bashant issued an Order setting a briefing schedule on the Application for Attorney's Fees on April 13, 2026. (ECF No. 270.) The Atlas defendants were ordered to file an opposition by April 21, 2026. (*Id.*) The briefing schedule was mailed to Petersen and DiRoberto. The Atlas defendants did not file any opposition. Rather, former GRSM filed an opposition on its own behalf. (ECF No. 271.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) "empowers the courts to impose sanctions for failures to obey discovery orders." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). "The imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Id.* The failure to obey a discovery order exposes a party *and* counsel to liability under Rule 37(b)(2) "for the resulting costs and attorney's fees." *Id.*; *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763 (1980) ("Both parties and counsel may be held personally liable for expenses, including attorney's fees, caused by the failure to comply with discovery orders." (citation and internal quotation marks omitted)); Fed. R. Civ. P. 37(b)(2)(C). For Rule 37(b)(2), "there is no requirement that the Court provide the party whose conduct necessitated the motion with an opportunity to be heard before awarding reasonable expenses." *Rice v. Am. Nat'l Red Cross*, No. 2:23-cv-1333 MCE-CSK, 2024 WL 3011044, at *4 (E.D. Cal. June 14, 2024), *adopted by* 2024 WL 4216723 (E.D. Cal. Sept. 17, 2024).

An award of attorney's fees must be reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Federal courts employ the 'lodestar' method to determine a reasonable attorney's fees award[.]" *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). This is

4

a "two-step process." *Id.* "First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Id.* The lodestar figure "is treated as a presumptively reasonable award." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). "Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly*, 822 F.3d at 1099. In determining whether to adjust the lodestar figure, courts consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). "The lodestar is presumed to include (or 'subsume') at least some of these factors, and an enhancement can be justified only in 'rare' and 'exceptional' cases where the presumption is overcome." *Edmo*, 97 F.4th at 1168.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). At all times, the court "has a great deal of discretion in determining the reasonableness of the fee[,]" including "the reasonableness of the hours claimed by the prevailing party." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

///

///

///

///

23-cv-00313-BAS-GC

## III.   DISCUSSION

As detailed in the R&R, the Atlas defendants violated the Court's March 7, 2025 and June 16, 2025[2] discovery orders "by intentionally failing to preserve the [AWS] call recordings," which are "arguably the most critical piece of evidence" in this case.[3]  (ECF No. 256 at 11, 17.)  Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), Judge Crawford recommended that Plaintiff "make an application for its reasonable attorney's fees and costs related to the spoilation if" the Court's recommendations were adopted.  (*Id.* at 19.)  Judge Bashant adopted the recommendations in the R&R and authorized Plaintiff to make the instant application for reasonable attorney's fees and costs related to the spoilation.  (ECF No. 261 at 5.)

As laid out in Judge Crawford's R&R, the Atlas defendants were not substantially justified in their non-compliance with multiple court orders, and the requested attorney's fees would not have been incurred but for the Atlas defendants' noncompliance with the Court's orders.  (ECF No. 256 at 17–19.)  No other circumstances make an award of expenses unjust.  Therefore, the awarding of reasonable expenses, including attorney's fees, is mandatory.  *See* Fed. R. Civ. P. 37(b)(2)(C).

In its application, Plaintiff seeks an award of $16,871.73 in attorney's fees for 71.3 hours of work.  (ECF No. 267.)  Plaintiff submitted an itemized list of approximate hours and two declarations in support of its requested fees.  (ECF Nos. 267-1, 267-2.)  For the reasons set forth below, the Court finds the fee request reasonable.

---

[2]    The R&R refers to an August Order, but clearly intended to refer to Judge Crawford's June 16, 2025 Order.  (*See* ECF Nos. 256 at 8; 196 at 3; 261 at 3.)

[3]    The March 7, 2025 Order provided that the Atlas defendants "must produce 1) [an] Amended Privilege Log; 2) [a]ll unprivileged documents responsive to plaintiff's discovery requests; and 3) [a] written discovery response verifying it has produced all unprivileged documents responsive to plaintiff's discovery requests" by March 20, 2025. (ECF No 139.)  The June 16, 2025 Order provided, in part: "On or before July 7, 2025, Atlas defendants shall produce the discovery material at issue, whether by subpoena or by any other means."  (ECF No. 173.)

23-cv-00313-BAS-GC

### A.      Plaintiff's Requested Rate is Reasonable.

"Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (citation and internal quotation marks omitted). "[T]he relevant community is the forum in which the district court sits." *Id.* (citation omitted). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *Id.* (citation omitted); *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (noting that "the court must base its determination on the *current* market rate"). "Once a fee applicant presents such evidence, the opposing party has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry*, 751 F.3d at 1110–11 (citation and internal quotation marks omitted).

Plaintiff argues that the billing rate of its counsel, Daniel J. Petrokas, is reasonable. (ECF No. 267 at 5.) Plaintiff submitted a declaration from the Director of the Finance & Accounting Branch for the U.S. Department of Justice's Civil Division in Washington, D.C. (ECF No. 267-2.) The declaration states that "[c]urrent Department of Justice directives provide that where attorney's fees are awarded to the Department of Justice in civil litigation, the hourly rate to be requested is a calculated rate in which the actual salary (hourly rate) [and] benefits of the employee involved is the primary component," with an added rate of $120.60 per hour for overhead, "which factors in non-personnel costs, such as rental of office space, supplies, etc." (*Id.* ¶ 3.) For Mr. Petrokas, that rate was calculated to be $236.63 per hour. (*Id.* ¶ 4.)

///

///

///

///

7

23-cv-00313-BAS-GC

Plaintiff argues that Mr. Petrokas' billing rate is not only reasonable according to prevailing market rates in the relevant community, but "is considerably *less* than rates which this Court has found to be reasonable for this jurisdiction, including for attorneys with less experience" than Mr. Petrokas' seven years practicing law. (ECF Nos. 267 at 5; 267-1 ¶ 3.)  Neither the Atlas defendants nor GRSM dispute the reasonableness of Mr. Petrokas' rate.

Based on its review of the relevant case law, the Court finds Plaintiff's counsel's hourly rate to be in line with those prevailing in this District for similar services by lawyers of reasonably comparable skill, experience and reputation. *See*, *e.g.*, *Twins Special Co. v. Twins Special, LLC*, No. 21-cv-221-JES-DDL, 2025 WL 1292528, at *17 (S.D. Cal. May 5, 2025) (finding associate rates of $285 and $301.08 per hour and a senior counsel rate of $342.66 per hour reasonable); *3D Sys., Inc. v. Wynne*, No. 21-cv-1141-AGS-DDL, 2025 WL 51443, at *2–4 (S.D. Cal. Jan. 7, 2025) (finding hourly rates of $830 for a litigation partner, $685 for litigation counsel, and $475 and $505 for litigation associates to be reasonable and collecting cases); *Soler v. Cnty. of San Diego*, No. 14-cv-2470-MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021) ("[C]ourts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in [the] range of $550 per hour to more than $1000 per hour."). Accordingly, the Court will utilize the rate of $236.63 in its lodestar analysis.

**B.      Plaintiff's Requested Hours are Reasonable.**

Litigants seeking fees have the "initial burden of production," under which they "must produce satisfactory evidence establishing the reasonableness of the requested fee." *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citation and internal quotation marks omitted).  Thus, the applicant must "document[] the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397.  The fee award "may be based on the affidavits of counsel, so long as they are sufficiently detailed to enable the court to consider all the factors necessary in setting the fees." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (citation and internal

23-cv-00313-BAS-GC

quotation marks omitted). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98.

Billing records submitted by the party seeking fees "may contain entries for hours that are excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal quotation marks and citation omitted). "Because a reasonable attorney's fee would not include compensation for such hours," the court may "conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Id.* (internal quotation marks and citation omitted). Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (citation omitted).

Rule 37(b)(2)(C) mandates the payment of reasonable expenses, including attorney's fees, "caused by the failure" to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(C). The causal connection required to order fees "is appropriately framed as a but-for test: [t]he complaining party . . . may recover only the portion of his fees that he would not have paid but for the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (citation and internal quotation marks omitted); *see also Twins Special Co.*, 2025 WL 1292528, at *16.

Plaintiff argues that 71.3 hours of work is reasonable. (ECF No. 267 at 6.) Plaintiff only seeks fees for hours done by Mr. Petrokas as the lead trial attorney, and not for work done by other attorneys reviewing and editing his filings. (*Id.* at 7.) Plaintiff does not seek fees for time spent on internal communications and meetings within the Department of Justice. (*Id.*) Plaintiff is also not seeking fees or costs associated with processing and reviewing the Atlas defendants' production of documents related to its AWS server or with taking the depositions of the Atlas defendants' witnesses to uncover the spoliation. (*Id.*)

23-cv-00313-BAS-GC

Plaintiff claims hours for work done between May 9, 2025, and December 10, 2025. (ECF No. 267-1 at 2–6.)  Plaintiff first learned that the Atlas defendants stored consumer call recordings on a cloud database provided by AWS during Petersen's deposition on May 6, 2025.  (ECF No. 167-1 at 2.)  After this disclosure, the parties met and conferred on May 9, 2025, and submitted a Joint Discovery Statement on May 13, 2025.  (*Id.*)  The Court thereafter requested additional information regarding the dispute.  (ECF No. 167.) The Court held a Discovery Hearing to address the dispute on June 16, 2025.  (ECF Nos. 167, 170, 173.)  Following the Discovery Hearing, the Court authorized the underlying sanctions motion.  (ECF No. 173.)

Plaintiff filed the sanctions motion on August 25, 2025, and an authorized reply on September 19, 2025.  (ECF Nos. 191, 196.)  Judge Crawford requested supplemental briefing on November 20, 2025.  (ECF No. 217.)  On December 3, 2025, Plaintiff filed its supplemental brief (ECF No. 222), and the Atlas defendants filed their supplemental brief on December 10, 2025 (ECF No. 223).

Plaintiff argues that all of the hours spent on the foregoing are reasonable.  (ECF No. 267 at 6.)  The Court agrees.  The identified hours were all for work reasonably caused by the Atlas defendants' failure to comply with the Court's March 2025 and June 2025 discovery orders.  Accordingly, the Court **GRANTS** in full Plaintiff's Application for Attorney's Fees in the amount of $16,871.73.

## C.     GRSM Is Not Exempt from Liability.

GRSM argues in its Opposition that it should be exempted from any liability for the payment of Plaintiff's attorney's fees in connection with the motion for sanctions.  (ECF No. 271.)  GRSM specifically argues that: (1) it lacked notice that Plaintiff was seeking sanctions against GRSM; (2) both Judge Crawford's R&R and Judge Bashant's Order Approving and Adopting the R&R are "silent" on any wrongdoing by GRSM; and (3) there is no causal link between GRSM and the fees Plaintiff incurred as a result of the Atlas defendants' spoliation.  (*Id.*)

///

In response, Plaintiff argues that GRSM's arguments lack merit. (ECF No. 272 at 2.) Plaintiff argues that joint and several liability between the Atlas defendants and GRSM is appropriate given that GRSM "had ample notice of its potential liability" and was "a direct participant in the contumacious conduct." (*Id.* at 2.) Plaintiff points to the "numerous misrepresentations" made by GRSM related to the spoliated documents and the "pattern of delay it engaged in in response to Plaintiff's attempts to seek discovery of those documents." (*Id.*) Plaintiff requests that the Court hold the Atlas defendants and GRSM jointly and severally liable for the payment of the requested attorney's fees. (*Id.* at 3, 11.) For the reasons set forth below, the Court agrees with Plaintiff and finds GRSM to be jointly and severally liable for Plaintiff's attorney's fees.

Plaintiff commenced this action on February 16, 2023. (ECF No. 1.) GRSM was substituted into the case as counsel for the Atlas Defendants on May 1, 2024, before the filing of the Rule 26(f) Joint Discovery Plan, initial disclosures, and the opening of discovery. (*See* ECF Nos. 90, 99.) As stated in the R&R, between the parties' April 15, 2024 and May 15, 2024 Federal Rule of Civil Procedure 26(f) conferences, the Atlas defendants received three alerts from AWS stating their account was overdue and may be suspended for failure to make payments. (ECF No. 256 at 5.) However, the Atlas defendants "did not disclose the existence of the AWS server, the contents of the AWS server, or the issues they were experiencing with regards to the server at either Rule 26(f) conference." (*Id.*)

Prior to the filing of the Joint Discovery Plan on July 11, 2024, the Atlas defendants received two more alerts from AWS regarding their overdue account, yet, in the Joint Discovery Plan, GRSM affirmed that it had "reviewed the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information [ ] and [ ] met and conferred fully regarding the preservation and discovery of ESI." (*Id.* at 5–6 (quoting ECF No. 99 at 7).) The Rule 26(f) checklist requires counsel to, *inter alia*, discuss any issues about preserving discoverable information. (*Id.* at 6.) However, as clearly stated in the R&R, "[c]ounsel for

23-cv-00313-BAS-GC

the Atlas defendants failed to inform the Court of their preservation issues associated with the AWS account as required in the Joint Discovery Plan." (*Id.*)

The R&R further states that "[n]either the records available to the Court nor the representations made by the Atlas defendants in their briefing suggest that defendants made any attempts to preserve the files on the AWS server from July 2024 to March 2025." (*Id.*) This failure occurred despite the Atlas defendants receiving Plaintiff's First Requests for Production ("RFPs") on September 20, 2024, seeking, *inter alia*, call recordings. (*Id.* at 6.) Upon receiving Plaintiff's discovery requests, the Atlas defendants had "an obligation to conduct a reasonable inquiry into the factual basis of [their] responses to discovery, and, based on that inquiry, . . . an affirmative duty to seek that information reasonably available to [them] from [their] employees, agents, or others subject to [their] control." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (citations and internal quotation marks and alterations omitted). However, there is nothing in the record to indicate that GRSM made any reasonable inquiry into the existence or status of the AWS server after receiving Plaintiff's RFPs until a Court-ordered subpoena was issued in June 2025. (*See* ECF Nos. 194-2 at 24; 256 at 8.)

The Atlas defendants made their first production on January 6, 2025, but failed to produce any call recordings. (ECF No. 256 at 7.) On January 15, 2025, Plaintiff served GRSM with a letter identifying deficiencies in the Atlas defendants' production. (ECF No. 125-1 at 7; *see also* ECF Nos. 167-3 at 32–35; 256 at 7.) The identified deficiencies included the failure to produce "any call recordings between the Atlas Defendants and consumers." (ECF No. 125-1 at 7.) In the letter, Plaintiff noted that "[e]mails produced to-date indicate that the Atlas Defendants have access to recordings of their calls with customers." (ECF No. 167-3 at 34 n.2 (citing ATLAS021717 (February 13, 2019 email from Nate Bachert to Sandy Barnes in which Nate says that he would "listen to" a call between an Atlas agent and a customer requesting a refund)).) Seven days later, on January 22, 2025, the Atlas defendants' AWS account was terminated, and all recordings were permanently erased. (ECF No. 256 at 7.)

23-cv-00313-BAS-GC

During a meet and confer in mid-February 2025, GRSM represented to Plaintiff that (1) all documents produced were collected by prior counsel, and (2) GRSM did not know whether its clients had any additional, potentially responsive documents in their possession. (ECF No. 167-3 at 37.)  GRSM also represented that it would consult with its clients "as to whether Atlas had any recordings of calls to/from consumers," indicating that it had not previously done so.  (*Id.* at 39–40.)  In response to Plaintiff's February 26, 2025 email, GRSM responded, "Regarding document collection, we are still looking into the issue, but it appears that the ESIs storage was cloud based and was discontinued years ago.  As mentioned, we are still looking into the particulars of this matter."  (ECF No. 167-2 at 5; *see also* ECF No. 256 at 7.)  On March 7, 2025, the Court ordered the Atlas defendants to produce all relevant documents in their possession no later than March 20, 2025.  (ECF No. 256 at 7 (citing ECF No. 139).)

During a March 28, 2025 meet and confer about the Atlas defendants' failure to produce recordings of calls with customers, GRSM represented that "Atlas said no audio recordings existed."  (ECF No. 191-1 at 12 (citing ECF No. 167-2 at 12); *see also* ECF No. 256 at 7.)  GRSM further represented that "the AWS data was deleted after the FTC investigation but before this litigation commenced" and "the AWS data was circulated among key custodians via email."  (ECF No. 256 at 7 (citing ECF No. 167-2 at 12).)

Subsequent testimony and documentation confirmed that the AWS cloud data was not deleted before this litigation commenced.  In fact, it was not deleted until January 2025, nearly two years after the Complaint was filed.  Plaintiff first learned of the Atlas defendants use of the AWS server during Petersen's deposition on May 6, 2025.  (*See* ECF Nos. 167-1 at 2; 267 at 9–10.)  Contrary to GRSM's prior representations, Petersen testified "that access to the [AWS] server was lost after Atlas moved out of its office, which he testified 'probably' occurred in September 2023," after commencement of this case.  (ECF No. 167-3 at 3; *see also* ECF No. 167-2 at 19.)  Two days later, Atlas's former sales manager testified that he still had access to the AWS server when he left sometime around the end of 2023.  (ECF No. 167-3 at 3.)

In a May 21, 2025 submission to the Court, GRSM still maintained that the Atlas defendants' ESI storage was cloud based and discontinued years ago. (ECF Nos. 167-2 at 2; 256 at 7.) GRSM did not seek to confirm this representation until June 2025 after the Court ordered the Atlas defendants to "produce the discovery material at issue, whether by subpoena or by any other means" by July 7, 2025. (ECF No. 173; *see also* ECF Nos. 194-2; 256 at 8.) On June 20, 2025, the Atlas defendants served AWS with a subpoena regarding their account. (ECF No. 256 at 8.)

On July 7, 2025, GRSM emailed counsel for AWS and asked, "Most importantly, can you clarify if there are any responsive documents in AWS' possession?" (ECF No. 194-2 at 24.) Counsel for AWS informed GRSM that the data had been deleted on January 22, 2025, and could not be retrieved. (*Id.* at 19.) The fact the data had been deleted in 2025 surprised GRSM, who responded, "2025???" (*Id.*) As stated in the R&R, "[l]ess than two hours later, at 4:08 p.m., [GRSM] responded to a separate email from plaintiff relating to the call recordings and inaccurately stated: 'I also don't have a final answer from AWS. There was supposed to be a call this week, but that did not happen. I have followed up with AWS' counsel and am awaiting a response.'" (ECF No. 256 at 8 (citing ECF No. 194-2 at 8).)

Given the foregoing, the Court finds it just that GRSM be held jointly and severally liable under Rule 37(b)(2)(C) for Plaintiff's attorney's fees. Rather than "silent," the R&R lays out in great detail GRSM's shared culpability with the Atlas defendants for violating the Court's discovery orders. Moreover, contrary to GRSM's argument, the law firm was on notice of a potential fee award pursuant to Rule 37(b)(2)(C) on the basis of Plaintiff's sanctions motion and the R&R and had an opportunity to respond to the sanctions motion, the R&R, and the present fees motion.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's Application for Attorney's Fees is **GRANTED**. (ECF No. 267.) Atlas Marketing Partners, Inc, Atlas Investment Ventures, LLC, Tek Ventures d/b/a Provident Solutions, Eric Petersen, Todd DiRoberto, and Gordon Rees

23-cv-00313-BAS-GC

Scully Mansukhani, LLP are jointly and severally responsible for payment of Plaintiff's attorney's fees in the amount of $16,871.73. The responsible parties shall pay Plaintiff the full amount within thirty (30) days of the date of this Order. Within five (5) days of payment, the responsible parties shall file a Notice of Payment on the docket.

**IT IS SO ORDERED.**

Dated:  June 30, 2026

_____
Hon. Guillermo Cabrera
United States Magistrate Judge

23-cv-00313-BAS-GC