**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>NETLATITUDE, INC. *et al.*,<br>Defendants. | Case No. 23-cv-00313-BAS-GC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ACE DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY DEMAND (ECF No. 285)** |

Pending before the Court is Defendants Ace Business Solutions, LLC's and Sandra Barnes' ("Ace Defendants") motion to strike Plaintiff United States of America's jury demand ("Motion"). (ECF No. 285.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Ace Defendants' Motion. (*Id.*)

## I. BACKGROUND

On July 8, 2026, the Court issued an Order on Parties' motions for summary judgment. (ECF No. 281.) The Court denied Plaintiff's motion for summary judgment against the Ace Defendants on Count VI (Charging or Receiving a Fee in Advance of Providing a Debt Relief Service, 16 C.F.R. § 310.4(a)(5)(i) (ECF No. 1 ¶¶ 143–145)).

When moving for summary judgment, Plaintiff sought civil penalties, consumer redress, and injunctive relief against Ace Defendants for Count VI. (*See* ECF No. 213-1.) More specifically, Plaintiff sought:

1. Civil penalties of "$3,428,366.26, which is equal to the total amount Ace collected in fees from consumers during the applicable penalties limitations period." (ECF No. 213-1 at 50:10–12);
2. Consumer redress for "net revenues of $2,885,805.30 from fees Ace collected from Provident Program customers." (ECF No. 213-1 at 47:2–9); and
3. Injunctive relief prohibiting Ace Defendants "from offering, providing, or requesting or receiving payments for debt relief services." (ECF No. 213-1 at 45:7–9.)

Plaintiff sought a jury trial in its Complaint "of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure." (ECF No. 1 at 33:1–3.) Presently, Ace Defendants seek to strike Plaintiff's jury demand on Ace Defendants' liability and civil penalties requested in Count VI.

## II. LEGAL STANDARD

The Seventh Amendment guarantees a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars . . . ." U.S. Const. amend. VII. Determining whether a party has the right to a jury trial is a two-step process. First, the Court must see if the statutory authority underlying plaintiff's claims authorizes a jury trial. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). If the statutes do not afford the right to a jury trial, the Court must consider whether the case qualifies as a "suit[ ] at common law" under the Seventh Amendment, which is broadly defined as a "statutory claim[ ] that [is] legal . . . as opposed to equitable" in nature. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015).

## III. ANALYSIS

### A. There Is No Right to Jury Trial under the FTC Act or the Telemarketing Sales Rule

Regarding the first step, "[a] right to jury trial must be clearly provided in the legislation creating the cause of action." *KLK, Inc. v. U.S. Dep't of Interior*, 35 F.3d 454, 458 (9th Cir. 1994). Neither the FTC Act, 15 U.S.C. §§ 41–58, nor the TSR, 16 C.F.R. Part 310, explicitly provides for a right to jury trial. Thus, the Court moves to the second step of the analysis.

**B. Right to Jury Trial under the Seventh Amendment**

**1. Section 13(b) of the Federal Trade Commission Act**

First, Parties do not seem to dispute that the Seventh Amendment does not confer a right to jury trial in lawsuits brought under Section 13(b) of the FTC Act. (*See, e.g.*, ECF No. 291 at 8:1–11 (Plaintiff's opposition to Ace Defendants' Motion quoting *Texas v. Google LLC*, 787 F. Supp. 3d 357, 425 (E.D. Tex. 2025), when stating: "[F]or cases brought under Section 13(b) of [the] FTC Act, the FTC may seek only equitable relief and is not entitled to a jury trial."); ECF No. 285 at 6:12–13 (Ace Defendants' Motion quoting *FTC v. Think All Publ'g, L.L.C.*, 564 F. Supp. 2d 663, 665 (E.D. Tex. 2008), when stating: "The cases have unanimously held that the Seventh Amendment does not provide a right to a trial by jury in actions brought under Section 13(b).").)

The Court agrees and finds Plaintiff does not have a right to jury trial on the issue of Plaintiff's injunctive relief under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (*see* ECF No. 1 ¶ 147). *See FTC v. Kochava, Inc.*, No. 2:22-CV-00377-BLW, 2025 WL 1808905, at *2 (D. Idaho July 1, 2025) ("A wealth of case law recognizes that the Seventh Amendment does not confer a right to jury trial in lawsuits brought under Section 13(b) of the Federal Trade Commission Act.").

**2. Civil Penalties under the Federal Trade Commission Act**

Second, Parties dispute whether Plaintiff has a right to jury trial when seeking civil penalties under Section 5(m)(1)(A) of the FTC Act. 15 U.S.C. § 45(m)(1)(A).

As an initial matter, Plaintiff does not dispute that the *amount* of penalties will be decided by the Court. (*See* ECF No. 291 at 1:7–15 ("[T]he United States has specifically asserted a right to jury trial on the question of the Ace Defendants' *liability* for civil

penalties under the FTC Act for violations of the [TSR]" and this is a "narrow issue.") (emphasis added).) In *Tull*, the U.S. Supreme Court held that while the Seventh Amendment required defendant to receive a jury trial as to his liability underlying the civil penalties sought, "the trial court and not the jury should determine the amount of penalty." *Tull v. United States*, 481 U.S. 412, 427 (1987). Thus, the Court turns to evaluating whether Plaintiff can enforce its constitutional right to a jury trial to determine Ace Defendants' TSR liability for which Plaintiff seeks civil penalties under the FTC Act.

To decide on Plaintiff's constitutional right to jury trial for Ace Defendants' TSR liability, the Court must determine whether Plaintiff's cause of action and sought remedy under the FTC Act are "legal" in nature.

The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 122 (2024). To determine whether a suit is legal in nature, the U.S. Supreme Court directed courts to consider the cause of action and the remedy it provides. Since some causes of action sound in both law and equity, the Supreme Court in *Tull* concluded that the remedy was the "more important" consideration. 481 U.S. at 421 (citation modified); *see id.* at 418–21.

Two inquiries into the remedy sought (here, civil penalties under Section 5(m)(1)(A) of the FTC Act) are necessary under *Tull*.

First, the Court must consider whether the penalty seeks to punish and deter or restore the status quo. *Id.* at 422. A civil sanction that seeks to punish "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained *as also* serving either retributive or deterrent purposes." *Jarkesy*, 603 U.S. at 123 (emphasis added) (citing *Austin v. United States*, 509 U.S. 602, 610 (1993)).

Second, where a plaintiff seeks both injunctive relief and civil penalties, the plaintiff retains a right to jury trial on defendant's liability based on underlying legal claims when one or more of the following are true: (1) the civil penalties do not operate as merely "monetary restitution as an adjunct to injunctive relief"; (2) the requested civil penalties are too high to "be considered incidental"; or (3) the statutory scheme allows the

Government to receive legal relief independent from equitable relief. *Tull*, 481 U.S. at 424–25.

In addition, the U.S. Supreme Court has held that whether statutory causes of action are closely analogous to "common law fraud" (*i.e.*, "target[ing] the same basic conduct: misrepresenting or concealing material facts") additionally factors into plaintiff's ability to assert its Seventh Amendment right to jury trial. *Jarkesy*, 603 U.S. at 125.

**i. *Tull* Step One**

In *Tull*, the U.S. Supreme Court found that Section 1319(d) of the Clean Water Act (33 U.S.C. § 1319(d)) "seeks to punish" because under the Act, "[a] court can require retribution for wrongful conduct based on the seriousness of the violations, the number of prior violations, and the lack of good-faith efforts to comply with the relevant requirements" and civil penalties "were not tied to 'profits gained from violations of the statute.' " *Tull*, 481 U.S. at 422–23. More recently, in *Jarkesy*, the U.S. Supreme Court found the federal securities laws' civil penalty provisions (15 U.S.C. §§ 77h–1(g), 78u–2(a), 80b–3(i)(1)) were "designed to punish and deter" rather than to compensate in part because the statutory scheme empowered the decisionmaker to adjust a defendant's punishment based on "the culpability of the defendant and the need for deterrence." *Jarkesy*, 603 U.S. at 124.

Though the Ninth Circuit has not directly addressed the issue of whether liability for civil penalties under the FTC Act is legal in nature and thus suitable for jury trial under the Seventh Amendment, other courts have concluded that "the right to a jury trial is protected when the Government sues for civil penalties . . . under the FTC Act" when applying *Tull* to analyze whether the penalty under the FTC Act seeks to punish. *Google LLC*, 787 F. Supp. 3d at 425; *see also United States v. Dish Network, L.L.C.*, 754 F. Supp. 2d 1002, 1004 (C.D. Ill. 2010) (holding the same).

This Court agrees. Under Section 5(m)(1)(A) of the FTC Act, a defendant "shall be liable for a civil penalty of not more than [$53,088] for each violation" of an FTC rule, committed "with actual knowledge or knowledge fairly implied on the basis of objective

circumstances that such act is unfair or deceptive and is prohibited by such rule." *See* 15 U.S.C. § 45(m)(1)(A) ("[S]uch person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation."); 16 C.F.R. § 1.98(d) (2025) (adjusting $10,000 to $53,088 for each violation to account for inflation). In determining the amount of a civil penalty, the Court is required to consider the following factors: the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require. 15 U.S.C. § 45(m)(1)(C).

Like Section 1319(d) of the Clean Water Act at issue in *Tull*, Section 5(m)(1)(C) of the FTC Act permits the Court to adjust the amount of civil penalties based on the "seriousness of the violations" (*i.e.*, "degree of culpability" in Section 5(m)(1)(C) of the FTC Act) and "the number of prior violations" (*i.e.*, "any history of prior such conduct" in Section 5(m)(1)(C) of the FTC Act). *Tull,* 481 U.S. at 422–23. Additionally, like the federal securities laws' civil penalty provisions more recently considered by the U.S. Supreme Court in *Jarkesy*, Section 5(m)(1)(C) of the FTC Act permits the Court to adjust the amount of penalty based on "the culpability of the defendant" (*i.e.*, "degree of culpability" in Section 5(m)(1)(C) of the FTC Act). *Jarkesy*, 603 U.S. at 124.

Ace Defendants argue that the FTC Act's civil penalty provision is, instead, not designed to punish or to deter because it permits the Court to adjust the amount of penalties based on "ability to pay" and "such other matters as justice may require"—meaning that the civil penalty provision provides an equitable remedy rather than a legal one. (ECF No. 293 at 1:21–8:15.) The Court disagrees. The fact that the Court may consider factors based on fairness to the defendant or "justice" does not change that Plaintiff also seeks monetary penalties for Ace Defendants' TSR violations. *Sripetch v. Sec. & Exch. Comm'n*, 608 U.S. 555, 573 (2026) (Thomas, J., concurring) ("When parties seek (among other things) money damages, monetary relief in legal restitution, or monetary penalties, they seek 'prototypical' legal relief and are entitled to a jury trial under the Seventh Amendment.") (citing *Jarkesy*, 603 U.S. at 123). This result is consistent with the Supreme Court's

admonition in *Beacon Theatres, Inc. v. Westover*: The right to jury trial on a legal claim cannot be impaired "by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action[.]" 359 U.S. 500, 510 (1959).

Ace Defendants' cited authority does not fare any better. First, a few of the cases do not evaluate statutory remedies within the context of the right to jury trial. (*See* ECF No. 285 at 8:4–15 (citing *Sec. & Exch. Comm'n v. Husain*, 70 F.4th 1173, 1177 (9th Cir. 2023); *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1043 (9th Cir. 2021); *Benyamin v. Topgolf Payroll Servs., LLC*, No. 2:23-CV-00303-DAD-SCR, 2025 WL 745827, at *13 (E.D. Cal. Mar. 6, 2025)).)

Next, Ace Defendants' cited authority that does evaluate a party's right to jury trial centers around statutory provisions that courts have found to contain no language enabling the court to adjust the penalty amount based on culpability—which is a material difference from the language in Section 5(m)(1)(C) of the FTC Act that permits the Court to adjust the amount of penalty based on the "degree of culpability." *See, e.g., Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1212 (C.D. Cal. 2008) (cited by Ace Defendants at ECF No. 285 at 8:15–19 and finding California Civil Code § 1747.08 to be "designed to discourage" retailers from illicit behavior, rather than enact penalties for retailers' past illicit behavior); *In re Payless Shoesource, Inc.*, No. 08-CV-2672 FCD/GGH, 2009 WL 3233820, at *3 (E.D. Cal. Sept. 11, 2009) (cited by Ace Defendants at ECF No. 285 at 7:7–14 and distinguishing California Civil Code § 1747.08 from the Clean Water Act in *Tull* because "there is no indication that the legislature has directed the consideration of non-equitable factors, such as punishment or retribution, in determining the amount of statutory damages."); *Steadman v. Bassett Furniture Indus., Inc.*, No. 13CV308 JAH (RBB), 2014 WL 12577587, at *8 (S.D. Cal. Mar. 27, 2014) (similarly distinguishing California Civil Code § 1747.08 from the Clean Water Act in *Tull* because "the amount of penalty imposed under § 1747.08 is discretionary . . . there is no indication the state legislature contemplated non-equitable factors, such as retribution, in determining damages.").

In addition, Plaintiff's claim under the TSR provides a private cause of action. *Cf. FTC v. Commonwealth Mktg. Grp., Inc.*, 72 F. Supp. 2d 530, 544 (W.D. Pa. 1999) (cited by Ace Defendants at ECF No. 285 at 10:17–11:3 and finding Section 19 of the FTC Act cannot be analogized to an action in common law in part because it does not provide a private cause of action). And, Plaintiff's claims under the TSR—for which Plaintiff seeks civil penalties—target the "basic conduct" of "misrepresenting or concealing material facts." *Jarkesy*, 603 U.S. at 125 ("The close relationship between the causes of action in this case and common law fraud confirms that conclusion. Both target the same basic conduct: misrepresenting or concealing material facts."). Plaintiff's TSR claims against Defendants involve the essential conduct of misrepresenting the Provident Solutions program through telemarketing to induce consumer purchases. (*See generally* ECF No. 281.) Thus, unlike *Commonwealth Mktg. Grp., Inc.*, 72 F. Supp. 2d at 544, Plaintiff's claims are analogous to common law fraud. *See id.*; *Jarkesy*, 603 U.S. at 125 (finding the "close relationship between the causes of action in this case and common law fraud confirms th[e] conclusion [that the civil penalties in this case are a type of remedy at common law].").

Thus, this case satisfies *Tull* step one. 481 U.S. at 422.

**ii. *Tull* Step Two**

Next, since Plaintiff seeks both injunctive relief and civil penalties, the Court evaluates the following factors under *Tull*: (1) the civil penalties do not operate as merely "monetary restitution as an adjunct to injunctive relief"; (2) the requested civil penalties are too high to "be considered incidental"; or (3) the statutory scheme allows the Government to receive legal relief independent from equitable relief. *Tull*, 481 U.S. at 424–25.

First, as discussed *supra* § III.B.2.i, the FTC Act clearly allows Plaintiff to receive legal relief under Section 5(m)(1)(A) of the FTC Act independent from equitable relief under Section 13(b) of the FTC Act. *See, e.g., Google LLC*, 787 F. Supp. 3d at 425 (FTC may seek only equitable relief and is not entitled to jury trial under Section 13(b) of the

FTC Act, but can seek legal relief when suing "for civil penalties under a different section of the FTC Act."); *Dish Network, L.L.C.*, 754 F. Supp. 2d at 1004 (same).

Second, like the Government in *Tull*, 481 U.S. at 424–25, Plaintiff here seeks nearly $23 million in civil penalties, which can hardly be considered "incidental" to the modest equitable relief sought (*i.e.*, ban on debt relief services, telemarketing misrepresentations, and recordkeeping obligations against Defendants Eric Petersen, Todd DiRoberto, Atlas Marketing Partners, Inc., Atlas Investment Ventures, LLC, and Tek Ventures, LLC). The equitable relief sought is "modest" given that many of the aforementioned Defendants have already ceased business activity or dissolved (*see* ECF No. 281 at 38:1–17). *See Tull*, 481 U.S. at 424–25 (finding a potential $22 million penalty "hardly can be considered incidental to the modest equitable relief sought" where "the Government was aware when it filed suit that relief would be limited primarily to civil penalties, since petitioner had already sold most of the properties at issue"); *cf. Broadbent v. Internet Direct Response*, No. CV1006508RGKFMOX, 2011 WL 13217499, at *4 (C.D. Cal. Feb. 2, 2011) ("Given the number of claims under which Plaintiffs seek damages and the size of their requested recovery, Plaintiffs' request for monetary damages is not merely incidental to the request for injunctive relief. Plaintiffs bring several causes of action for monetary relief, totaling millions of dollars.").

Moreover, there is no statutory requirement in the FTC Act for a plaintiff to obtain injunctive relief as a prerequisite to plaintiff seeking a civil penalty under the FTC Act. *See Google LLC*, 787 F. Supp. 3d at 429, 433, 435, 443 (recognizing plaintiff's right to jury trial where state deceptive trade practices acts in North Dakota, Alaska, Indiana, and Kentucky "allows [plaintiff] to receive a substantial civil penalty separate from injunctive relief, and without any requirement that injunctive relief be obtained as a prerequisite for a civil penalty to be awarded.").

Thus, the Court finds the case also satisfies *Tull* step two. 481 U.S. at 424–25.[1]

[1] Ace Defendants also argue that consolidating liability and relief issues into a single bench trial (rather than a jury trial as to liability issues and a separate bench trial as to relief issues) would be more

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Ace Defendants' Motion. (ECF No. 285.)

More specifically, to the extent Plaintiff seeks a jury trial as to determining injunctive relief under Section 13(b) of the FTC Act and the *amount* of civil penalties, the Court **STRIKES** Plaintiff's jury demand. (ECF No. 285.) However, the Court **DENIES IN PART** Ace Defendants' Motion and declines to strike Plaintiff's jury demand as to determining Ace Defendants' *liability* on Plaintiff's TSR claims. (ECF No. 285.)

**IT IS SO ORDERED.**

**DATED: October 15, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

---

efficient (ECF No. 285 at 11:5–12:6). However, the Court does not find this argument to be persuasive, given the Court's finding that Plaintiff has a constitutional right to jury trial as to Ace Defendants' TSR liability, *supra* § III.B.2. *See Sharp v. Hawkins*, No. C 03-5023 CW, 2004 WL 2792121, at *5 (N.D. Cal. June 8, 2004) ("Although it may be more expeditious to eschew a separate jury trial, such concerns have little weight when balanced against a constitutional guarantee.").